IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 25-cv-00708-PAB-NRN

JOHN R. MCKOWEN,

    Plaintiff,

v.

GREG HARRINGTON,
TWO RIVERS FARMS F-2, INC.,
TWO RIVERS WATER & FARMING COMPANY,
TR CAPITAL PARTNERS, LLC,
WAYNE HARDING,
STATE OF COLORADO,
PHILIP WEISER, Attorney General,
TUNG CHAN, Securities Commissioner,
ROBERT FINKE,
JENNIFER HUNT,
INDIA KIDD-AARON,
I. WISTAR MORRIS,
SAM MORRIS,
CHARLES F. KIRBY,
JEFFREY PLOEN, and
JUSTIN YORK,

    Defendants.

## ORDER

This matter comes before the Court on plaintiff's Corrected Emergency Motion for Stay of State Court Judgment Based on RICO Predicates, Selective Enforcement, and Due Process Violations [Docket No. 140], which the Court construes as a motion for a preliminary injunction. Defendants the State of Colorado, Colorado Attorney General Philip Weiser, Colorado Securities Commissioner Tung Chan, First Assistant Attorney General Robert Finke, and Senior Assistant Attorney General Jennifer Hunt

(collectively, the "State Defendants") filed a response. Docket No. 152. Defendants Greg Harrington and Jeffrey Ploen filed a response, wherein they indicate that they join the State Defendants' response. Docket Nos. 154, 155. Plaintiff filed a reply. Docket No. 153.

## I. BACKGROUND

### A. *Paulson v. Two Rivers Water and Farming Co*, Case No. 19-cv-02639-PAB-NRN

On September 19, 2019, plaintiff, who was a defendant in *Paulson* and was then represented by counsel, removed *Paulson v. Two Rivers Water and Farming Co*, Case No. 19-cv-02639-PAB-NRN, (D. Colo. Sept. 16, 2019), to this Court from the District Court for Denver County, Colorado. *Paulson*, Case No. 19-cv-02639-PAB-NRN, Docket No. 1. John Paulson brought a securities class action against defendants Two Rivers Water and Farming Company, plaintiff, Wayne Harding, and Timothy Beall. *Id.*, Docket No. 56. On July 21, 2021, Mr. Paulson filed an unopposed motion for preliminary approval of a settlement, approval of notice to the class, preliminary certification of the class for the purposes of settlement, and appointment of class counsel ("motion for preliminary approval"). *Id.*, Docket No. 157. On January 19, 2022, the Court granted plaintiff's motion for preliminary approval. *Id.*, Docket No. 162. On April 29, 2022, the Court held a fairness hearing. *Id.*, Docket No. 176.

On March 15, 2023, the Court granted Mr. Paulson's motion for final approval of the settlement. *Id.*, Docket No. 178 at 17. In connection with the Settlement Agreement, the Court certified the class as follows:

> [A]ll persons or entities that currently hold claims based on securities in GrowCo, and purchased or otherwise acquired the securities through Offerings during the period of October 2014 through December 2017 (the "Class Period"), and

2

suffered Alleged Losses as defined above.  For the avoidance of doubt, persons or entities who purchased or otherwise acquired the securities during the Class Period and who have assigned the securities to VitaNova Partners, LLC are not excluded as Class Members by virtue of such assignment.  Excluded from the Class are (1) the Defendants; (2) the officers and directors of Two Rivers and GrowCo during the Class Period as set forth in the attached Exhibit E for securities purchased at the time or after they were officers or directors; (3) any judge or judicial officer who may hear any aspect of this Class Action and his or her law clerks; and (4) except as provided in clause (2) of this paragraph above, all persons or entities released in the Settlement.  Also excluded from the Settlement Class are the persons and/or entities who request exclusion from the Settlement Class within the time period set by the Court in the Preliminary Approval Order.

*Id.*, Docket No. 178 at 17-18.  The Court gave final approval to the Settlement Agreement and ordered that "plaintiff and all class members are permanently enjoined and barred from asserting, initiating, prosecuting, or continuing any of the claims released by the Settlement Agreement."  *Id.*, Docket No. 178 at 19.  No class members opted out of the settlement.  *Id.*, Docket No. 178 at 13, 19.  The Court ordered "that, without affecting the finality of this Order, this Court retains jurisdiction to consider all further matters arising out of or connected with the Settlement Agreement, including its implementation."  *Id.*, Docket No. 178 at 20.  Final judgment entered on March 16, 2023. *Id.*, Docket No. 179.

### B. *Chan v. Two Rivers Water & Farming Co.*, Case No. 2021CV33922

On December 10, 2021, Tung Chan, the Securities Commissioner for the State of Colorado, filed a civil action against 21 defendants in Denver District Court, including against plaintiff and defendant Wayne Harding, asserting three claims for violations of the Colorado Securities Act.  *See Chan v. Two Rivers Water & Farming Co.*, Case No.

2021CV33922, Complaint (Denver Dist. Ct. Dec. 10, 2021).[1]  The Denver District Court held a bench trial from July 10 to July 18, 2023.  *See Chan*, Case No. 2021CV33922, Findings of Fact, Conclusions of Law, and Judgment, at 1.  Plaintiff and Mr. Harding proceeded to trial pro se.  *See id.* at 1-2.  "The claims against nineteen of the defendants were resolved in some fashion" before the court held the bench trial.  *See id.* at 1.  On July 9, 2025, the court entered judgment, finding that plaintiff violated the Colorado Securities Act.  *See Chan*, Case No. 2021CV33922, Order of Judgment.  The state court judgment states that plaintiff and Mr. Harding are "enjoined from any participation in private securities transactions in or from the state of Colorado for twenty (20) years from the date of this Order" and entered judgment against the defendants, including plaintiff, in the amount of $16,578,690.33.  *Id.* at 1.  On July 28, 2025, plaintiff filed the instant motion to "stay enforcement of the Colorado judgment in Case No. 21CV33922."  Docket No. 140 at 14.  Plaintiff seeks to enjoin the "State of Colorado and its agents"[2] from enforcing the judgment, *see id.* at 14-15, on the basis that the judgment was "obtained through fraud, political retaliation, and constitutional violations."  *Id.* at 3.

---

[1] The Court takes judicial notice of the state court docket in Case No. 2021CV33922.  *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (holding that a court may take judicial notice of facts which are a matter of public record when considering a motion to dismiss); *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 n.2 (10th Cir. 2014) (noting that a court may "take judicial notice of documents and docket materials filed in other courts").

[2] Plaintiff does not specify who is included in the category of the "State of Colorado and its agents."  *See* Docket No. 140 at 14.  Moreover, he does not explain how enjoining the State of Colorado and its agents would prevent enforcement of a judgment that was issued by the Denver District Court.

### C. *McKowen v. Morris*, Case No. 25-cv-00708-PAB-NRN

On May 13, 2025, plaintiff John McKowen filed an amended complaint in this case against defendants, bringing claims for "Violation of Due Process" pursuant to 42 U.S.C. § 1983, "Violation of Equal Protection" pursuant to § 1983, "Retaliation for Protected Activity," "Civil Conspiracy to Deprive Constitutional Rights" pursuant to §§ 1983 and 1985, "Fraud and Constructive Fraud," and "Civil RICO" pursuant to 18 U.S.C. § 1962. Docket No. 49 at 19-25.[3] Plaintiff's claims arise out of an asserted "multi-tiered scheme" that was "executed or enabled" by defendants. *Id*. at 2, ¶ 1. Plaintiff alleges that defendants "misappropriat[ed] . . . investor capital through a Ponzi-like scheme," improperly transferred "control of corporate assets," "misuse[d] a federally-approved settlement agreement . . . to suppress and eliminate preserved investor rights," and were involved in "unauthorized dissolution and asset redistribution." *Id.*

## II. LEGAL STANDARD

To succeed on a motion for a preliminary injunction, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 US. 7, 20 (2008)); *see Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010)). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief

---

[3] Because plaintiff is proceeding pro se, the Court construes his filings liberally without serving as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

5

must be clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)) (internal quotation marks omitted). Granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888–89 (10th Cir. 1989), "is the exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

### III.  ANALYSIS

The Court finds that plaintiff is not entitled to the preliminary injunction he seeks because the Court must abstain from interfering in ongoing state court proceedings pursuant to *Younger v. Harris*, 401 U.S. 37 (1971).

"*Younger* requires federal courts to refrain from ruling when it could interfere with ongoing state proceedings." *Columbian Fin. Corp. v. Stork*, 811 F.3d 390, 393 (10th Cir. 2016). *Younger* is only applicable to three "exceptional" categories of cases: (1) state criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings "involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (citation omitted). If the proceeding falls into a *Sprint* category, then the federal court must abstain if the following conditions are met: (1) there is an ongoing state judicial, civil, or administrative proceeding, (2) which implicates important state interests, and (3) in which there is an adequate opportunity to raise constitutional challenges. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431–32

(1982); *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n,* 319 F.3d 1211, 1215 (10th Cir. 2003).

The Court first determines whether the state proceeding falls into a *Sprint* category. Because plaintiff seeks to enjoin enforcement of a judgment in a state civil case, the Court focuses on whether the state proceeding falls into the second or third *Sprint* category. The second *Sprint* category, civil enforcement proceedings, concern state proceedings that are "akin to a criminal prosecution in important respects." *Sprint*, 571 U.S. at 79 (internal quotations and citation omitted). "In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action." *Id.* "Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Id.* The state proceeding challenged by plaintiff falls into the second *Sprint* category because it was brought by the Securities Commissioner for the State of Colorado, Tung Chan, to sanction plaintiff for his violation of the Colorado Securities Act. *See Chan*, Case No. 2021CV33922, Complaint; Docket No. 140 at 8; *Sprint,* 571 U.S. at 79-80 (noting that examples of civil enforcement proceedings that fall into the second *Sprint* category include a state-initiated proceeding to gain custody of children allegedly abused by their parents, a civil proceeding brought by the State in its sovereign capacity, and a state-initiated proceeding to enforce obscenity laws); *see also Clark v. Colo. Div. of Sec.,* No. 23-cv-02170-SKC-JPO, 2024 WL 1836917, at *3 (D. Colo. Apr. 26, 2024) (holding that a state "administrative proceeding to revoke Plaintiff's securities licenses" "is the type of action to which the *Younger* abstention doctrine applies" because "the state initiated a

coercive civil enforcement proceeding to revoke Plaintiff's securities licenses as a sanction for his alleged violations of state securities licensing requirements").

Given that the state proceeding challenged by plaintiff falls into a *Sprint* category, the Court will determine whether (1) there is an ongoing state judicial, civil, or administrative proceeding, (2) which implicates important state interests, and (3) in which there is an adequate opportunity to raise constitutional challenges. *See Middlesex,* 457 U.S. at 431–32. First, the underlying state proceeding is ongoing because plaintiff filed a Notice of Appeal on August 12, 2025, *see Chan*, Case No. 2021CV33922, Notice of Appeal, and the Colorado Court of Appeals action remains pending. *See McKowen v. Chan*, Case No. 2025CA001513 (Colo. Ct. App. Aug. 12, 2025);[4] *Aurelio v. Mullin*, 2024 WL 4404239, at *3 (10th Cir. Oct. 4, 2024) (holding that a state proceeding was ongoing for *Younger* purposes because plaintiff "seeks relief in federal court that would . . . interfere with his pending appeal in the state appellate court"); *Sweet v. Douglas Cnty., State of Colo.*, No. 20-cv-03318-CMA-SKC12021 WL 4046411, at *2 (D. Colo. July 8, 2021), *report and recommendation adopted sub nom..* 2021 WL 3362073 (D. Colo. Aug. 3, 2021) (holding that a "Colorado enforcement action is ongoing for purposes of the *Younger* analysis" where plaintiff filed a Notice of Appeal and "it is clear the appeal remains pending"); *cf. Covington v. Humphries*, 2025 WL 1448661, at *5 (10th Cir. May 19, 2025) (holding that a state case was not ongoing for *Younger* purposes because, although the state case was ongoing when plaintiff filed her

---

[4] The Court takes judicial notice of the state court docket in Case No. 2025CA001513 for the same reasons noted *supra* n.1.

federal complaint, "it is not ongoing now because the parties dismissed the . . . case with prejudice").

Second, the Court finds that the State of Colorado has an important interest in protecting investors by enforcing its laws that govern the conduct of those engaged in securities trading. The purpose of the Colorado Securities Act is to "protect investors and maintain public confidence in securities markets while avoiding unreasonable burdens on participants in capital markets." See Colo. Rev. Stat. § 11-51-101(2). "Judges in [the District of Colorado] have found this statutory language persuasive regarding the state's interests." Clark, 2024 WL 1836917, at *3 (holding that "the state's interest in licensing securities advisors involve important state interests") (citing Colo. Rev. Stat. § 11-51-101(2)).

Third, the Court finds that plaintiff had an adequate opportunity to raise his federal claims in the state case. The Tenth Circuit has noted that, "[a]s a general matter, 'Colorado law does not bar [federal constitutional] claims,'" finding abstention appropriate where "no particular reason appears why the objections advanced [in federal court] could not be given fully adequate consideration in the state courts." Dauwe v. Miller, 364 F. App'x 435, 437 (10th Cir. 2010) (unpublished) (quoting Crown Point I, L.L.C. v. Intermountain Rural Elec. Ass'n, 319 F.3d 1211, 1215 (10th Cir. 2003)); see also Moore v. Sims, 442 U.S. 415, 425–26 (1979) ("Certainly, [Younger] abstention is appropriate unless state law clearly bars the interposition of the Constitutional claims."). Plaintiff does not explain why he could not raise his federal claims in the state proceeding. Plaintiff argues that the state judgment should be stayed because defendants allegedly engaged in the "misuse of a fraudulent Stipulation,

suppression of exculpatory evidence, and retaliation based on political identity" during the state court proceedings.  See Docket No. 140 at 3.  As plaintiff notes, he did in fact challenge defendants' alleged misconduct in the state case, particularly as it relates to the use of a "stipulation" during trial.  See id. at 9 ("Plaintiff filed a motion for contempt, citing the Stipulation's misuse to justify bankruptcy filings and asset seizures without notice or court approval.").

Plaintiff argues that, "[e]ven if Younger applied, its exceptions compel federal review" because the "state judgment was obtained through fraud, denial of due process, and political retaliation."  Docket No. 153 at 3.  He contends that the fact the "stipulation was unsigned," "[t]rial testimony was suppressed by privilege," and the "evidentiary record was manufactured through selective suppression and procedural obstruction" is "conduct [that] triggers both the bad-faith and extraordinary-circumstances exceptions." Id.  Exceptions to Younger abstention apply when a state proceeding was "(1) commenced in bad faith or to harass, (2) based on a flagrantly and patently unconstitutional statute, or (3) related to any other such extraordinary circumstance creating a threat of 'irreparable injury' both great and immediate."  Phelps v. Hamilton, 59 F.3d 1058, 1063-64 (10th Cir. 1995) ("Phelps I").

Regarding the bad-faith exception, plaintiff appears to argue that the state case was a "targeted and retaliatory" act based upon plaintiff's identity as a "known political actor in Colorado Republican circles–a precinct committee person, county and State delegate, and the only Trump-aligned poll watcher at the Denver Election Commission in 2020."  Docket No. 140 at 14, ¶ 45.  There are "three factors that courts have considered in determining whether a prosecution is commenced in bad faith or to

10

harass: (1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions." *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) ("*Phelps II*"). To "overcome the bar of *Younger* abstention," a plaintiff must set forth "more than mere allegations of bad faith or harassment" and instead must provide "additional, supplemental evidence regarding defendant's alleged bad faith." *See id*. at 889-90. Plaintiff has failed to meet this burden. Plaintiff provides no evidence that defendants filed the state case due to his political affiliation or that the state case was otherwise frivolous, motivated by his suspect class, in retaliation for his protected activities, or "conducted in such a way as to constitute harassment." *See Phelps I*, 59 F.3d at 1065. Plaintiff merely alleges that the state case was brought "based on Plaintiff's known affiliation as a Trump-aligned precinct leader and political whistleblower" and that the "prosecution was political." *See* Docket No. 49 at 17, 18, ¶¶ 67, 69.

      Plaintiff argues that the fact the "stipulation was unsigned," "trial testimony was suppressed by privilege," and the "evidentiary record was manufactured through selective suppression and procedural obstruction" constitute extraordinary circumstances. Docket No. 153 at 3. The Tenth Circuit has "consistently refused to find an exception to *Younger* when the injury could ultimately be corrected through the pending state proceeding or on appeal." *Winn v. Cook*, 945 F.3d 1253, 1259 (10th Cir. 2019). "[A]n error by the state court does not create an irreparable injury simply

11

because the defendant must proceed through the tainted trial before obtaining relief–relief that may well entail a second trial." *Id.* Therefore, plaintiff's allegations of a "tainted trial" do not warrant finding that an exception to *Younger* applies. *See id.*

The Court finds that plaintiff fails to show a likelihood of success on the merits because the Court must abstain pursuant to *Younger*.[5] *Phelps II*, 122 F.3d at 891 ("When *Younger* applies, the district court must refrain from reaching the merits of the plaintiff's claims and, thus, there is no real possibility – let alone a likelihood – that the plaintiff will succeed in the action.") citation omitted). Therefore, plaintiff is not entitled to a preliminary injunction that stays the judgment in the state case.[6]

Even if plaintiff were entitled to a preliminary injunction, plaintiff requests additional relief that is not authorized by Fed. R. Civ. P. 65. Plaintiff asks the Court to enter "findings" that the state judgment was "obtained through fraud, conspiracy, and selective enforcement" and that plaintiff was "subjected to selective and retaliatory enforcement." Docket No. 140 at 5. Filing a motion under Fed. R. Civ. P. 65, however, does not entitle plaintiff to receive a ruling as to the ultimate merits of his case. Because the Court does not reach the ultimate merits of the case, plaintiff is not entitled

---

[5] Because the Court finds that *Younger* abstention applies, the Court does not reach the State Defendants' argument that the Anti-Injunction Act and the *Rooker-Feldman* doctrine bar plaintiff's request for a preliminary injunction. *See* Docket No. 152 at 5-7, 10-11.

[6] Plaintiff requests that the Court "[e]njoin the State of Colorado and its agents from enforcing or acting upon the 'Stipulation for Injunction and Other Relief' executed by Greg Harrington and the State." Docket No. 140 at 14-15. Plaintiff does not explain how the State or "its agents" could enforce or otherwise act upon the challenged stipulation now that the trial has concluded. Therefore, the Court will deny this request for relief. To the extent that plaintiff argues that the state court judgment should be stayed because the stipulation should not have been entered into evidence in the state proceeding, the Court finds that it cannot grant such relief due to *Younger* abstention, as explained above.

to the "costs of suit, including filing fees, service costs, transcripts, document production and Plaintiff's opportunity costs and preparation time." See Docket No. 140 at 15. Finally, plaintiff is not entitled to relief that goes beyond preserving the status quo. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). For this reason, and putting aside the other preliminary injunction standards, plaintiff is not entitled to the enjoinment of "further misuse or seizure of GrowCo assets by the State or any affiliated entity acting on judgment." See Docket No. 140 at 15.

## IV.   CONCLUSION

Therefore, it is

**ORDERED** that plaintiff's Corrected Emergency Motion for Stay of State Court Judgment Based on RICO Predicates, Selective Enforcement, and Due Process Violations [Docket No. 140] is **DENIED**.[7]   It is further

---

[7] The Court concludes that it can appropriately resolve the present motion without a hearing. See *Sgaggio v. Weiser,* No. 22-cv-01791-PAB, 2022 WL 3700723, at *4 n.2 (D. Colo. Aug. 26, 2022) (denying preliminary injunction motion without a hearing); *Zeller v. Ventures Tr. 2013-I-NH*, No. 15-cv-01077-PAB-NYW, 2015 WL 4720313, at *5 n.2 (D. Colo. Aug. 10, 2015) (denying preliminary injunction motion without a hearing) (citing *Prosper, Inc. v. Innovative Software Techs*, 188 F. App'x 703, 706 (10th Cir. 2006) (unpublished) (holding that district court did not abuse its discretion in failing to hold a hearing on motion for preliminary injunction); *Reynolds & Reynolds Co. v. Eaves*, 1998 WL 339465, at *3 (10th Cir. June 10, 1998) (table decision) (rejecting argument that court was required to hold evidentiary hearing on motion for preliminary injunction)); *see also* D.C.COLO.LCivR 7.1(h); Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.").

**ORDERED** that plaintiff's Emergency Motion for Stay of State Court Judgment Based on RICO Predicates, Selective Enforcement, and Due Process Violations [Docket No. 139] is **DENIED as moot**.[8]

DATED August 22, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[8] The Court denies this motion as moot because, after filing, plaintiff filed a "corrected" motion. See Docket No. 140.