FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
*4:10 pm, Jul 13, 2026*
JEFFREY P. COLWELL, CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-00708-PAB-NRN

**JOHN R. McKOWEN,**
Plaintiff,

v.

**GREG HARRINGTON, et al.,**

Defendants.

---

## PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

---

Plaintiff John R. McKowen, appearing pro se, respectfully moves under Fed. R. Civ. P. 15(a)(2) — and, to the extent any allegations post-date the prior pleading, under Fed. R. Civ. P. 15(d) — for leave to file the proposed Second Amended Complaint attached as Exhibit A, together with the comparison copy required by D.C.COLO.LCivR 15.1(b), attached as Exhibit B, which strikes through the text to be deleted and underlines the text to be added.

The proposed Second Amended Complaint identifies the property interest, the deprivation, the process denied, the state-action facts, the protected activity, and the racketeering pattern the Court found insufficiently pleaded. This Motion demonstrates, deficiency by deficiency and with paragraph citations, that the amendment is not futile.

### CERTIFICATE OF CONFERRAL UNDER D.C.COLO.LCivR 7.1(a)

On July 2, 2026, Plaintiff conferred by e-mail with all counsel of record at their addresses of record (Zach.Fitzgerald@coag.gov; Amy.Colony@coag.gov; jennifermccallum@mccallumlaw.net; jthomas@thomaslawllc.com; fvisciano@sennfortis.com) and with Defendant Wayne Harding, who appears pro se (wayne@wayneharding.com), describing

this motion and the relief sought and requesting each party's position by the close of business on July 7, 2026. As of the filing of this motion, counsel for the State Defendants (Mr. Fitzgerald), counsel for Defendant Harrington (Mr. Thomas), and counsel for Defendant Kirby (Mr. Visciano) each stated that their clients oppose the motion; counsel for Defendants Wistar Morris and Jeffrey Ploen (Ms. McCallum) and Defendant Wayne Harding (pro se) did not state a position by the requested date or as of filing.

**ARGUMENT**

The Court's Order of June 23, 2026 (Dkt. 326) dismissed Plaintiff's claims against the moving defendants without prejudice and directed Plaintiff to show cause why the complaint should not be dismissed and why granting leave to amend would not be futile. The court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182 (1962). Under Foman, leave is properly denied only for reasons such as undue delay, bad faith, repeated failure to cure, undue prejudice, or futility. None is present here.

First, there is no undue delay or prejudice: this motion is filed within the 21-day period the Order allows, the case remains at the pleading stage, and no scheduling order has issued. Second, this is Plaintiff's first request to amend in response to an identified pleading deficiency; the Court's Order is the first ruling identifying the defects the proposed pleading cures. Third, amendment is not futile: an amendment is futile only if the proposed pleading would not survive a motion to dismiss, under which the complaint's well-pleaded factual allegations are accepted as true and viewed in the light most favorable to Plaintiff, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and Parts I through V below demonstrate — deficiency by deficiency, defendant by defendant, and claim by claim, with citations to the paragraphs of the proposed pleading attached as Exhibit A

("Ex. A") — that each claim is sufficiently pleaded. The proposed pleading also includes the Fifth Amendment takings claim the Court folded into its futility analysis from Docket No. 313 (Dkt. 326 § III.E). See Part III.F below.

## I. THE DEFICIENCIES THE ORDER IDENTIFIED AND WHERE EXHIBIT A CURES THEM

The Order identified specific pleading deficiencies: the complaint did not identify the property interest Plaintiff holds under the Paulson settlement (Dkt. 326 at 6); did not connect the Stipulation to a deprivation or identify the process owed (id.); did not plead facts showing Harrington acted under color of state law (id. at 6–7); pleaded retaliation without factual support (id. at 8); pleaded conspiracy without the class-based animus 42 U.S.C. § 1985(3) requires (id. at 8–9); pleaded a racketeering "pattern" resting on a single event (id. at 9–10); and described Kirby, Wistar Morris, and Ploen in single sentences that did not satisfy Rule 8 (id. at 10–11). The proposed Second Amended Complaint was rebuilt around those rulings. Each cure is set out below with the paragraph of Exhibit A that contains it.

## II. RULE 8 — EXHIBIT A STATES WHAT EACH DEFENDANT DID, WHEN, HOW IT HARMED PLAINTIFF, AND WHAT RIGHT IT VIOLATED

Under Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007), a complaint must explain what each defendant did, when, how it harmed the plaintiff, and what right it violated. Exhibit A does so for every defendant — moving and non-moving alike — at ¶ 59 and the paragraphs cited below. No defendant is pleaded on receipt alone.

Kirby, a securities professional barred by the Securities and Exchange Commission, was an insider of the TR Capital Partners control group through Elevation Fund, the Kirby Enterprise

Fund, and his personal holding; between 2015 and 2017 he received $729,103.15 in redirected GrowCo note interest through the Blue Yellow and Blue & Green entities at Harding's written direction, with Kirby copied on the instructions; and his Elevation Fund took identical, pre-set "partial payoff" disbursements on both 2019 El Paso closings. Ex. A ¶¶ 59, 61, 63–64.

I. Wistar Morris was the largest individual holder in the TR Capital control group (27.85%; the Morris family entities together held 56.57%); he sat as a director of TR Capital Partners itself — the February 2015 board minutes list him among "all of the directors"; he acted on the Two Rivers and GCP-1 boards through his attorney and installed representative, Sam Morris, whose acts as agent are attributable to him; and he was the largest single recipient of the 2019 El Paso closing proceeds, $14,026.60 through the Cotswold Foundation. Ex. A ¶¶ 59, 63–64.

Ploen, a GrowCo director, voted with Harding at the May 1, 2017 board meeting to defeat an independent audit and outside counsel and to deny the return of GrowCo's books and records, assuring the board that "everything is out in the open" — approximately three and a half months before Harding recorded the fabricated $6,207,943.50 journal entry that an independent audit would have surfaced. Ex. A ¶¶ 59, 61.

Sam Morris was a Two Rivers director from July 2016 until his November 2018 resignation — chair of its compensation committee, chair of its governance and nominating committee, and a member of its audit committee during the period in which the fabricated journal entry was recorded and GrowCo was deconsolidated — and he sat on the board for the October 22, 2018 vote that stripped the protections from the Vaxa transaction, resigning the following month. Ex. A ¶ 59.

Yorke controlled three of the four insider funds in the TR Capital control group, with holdings

running to him personally through the San Gabriel Benefit Plan held for his benefit; he sat and voted as a TR Capital Partners director at the November 12, 2014 board meeting; he executed the modification of TR Capital's limited liability company agreement; he received Harding's weekly reports on the transfer of assets — including the El Paso land — into TR Capital in September 2015; his three funds took identical pre-set disbursements on both 2019 closings of that same land; and Harding's April 2, 2020 email reconciled his funds' legal-fee advances. Ex. A ¶ 59. Harding, as Two Rivers' chief financial officer and later chief executive, recorded the fabricated $6,207,943.50 journal entry on August 16, 2017; executed the Vaxa share issuance; signed the El Paso land conveyances; and received insider payoffs from both closings. Harrington directed the enterprise: a federally convicted securities-fraud felon and previously adjudicated Ponzi-scheme insider, he took control of Two Rivers through the Easby share exchange (agreement February 22, 2019; closing July 31, 2019), jointly executed the May 5, 2023 Stipulation with the State, and solicited the Commissioner's enforcement against Plaintiff by letter of February 2, 2024. Kidd-Aaron signed that Stipulation as to form for the Attorney General and received the same solicitation. Ex. A ¶¶ 32–33, 56, 69. Appendix 2 to this Motion responds to each finding of the Report and Recommendation (Dkt. 283), finding by finding with page citations, identifying the paragraphs of Exhibit A that cure each one.

**III. RULE 12(b)(6) — EXHIBIT A STATES EACH CLAIM**

**A. Due process (Ex. A Second Claim, ¶ 54; Order Count I).**

The property interest is now recorded and identified: Plaintiff's secured lien under Deed of Trust No. 404224, the GCP-1 Preferred priority it secures, the Paulson-preserved collection rights, and the capital Plaintiff personally advanced. Ex. A ¶¶ 39–45, 54. The deprivation is connected: the

May 5, 2023 Stipulation — entered without notice to Plaintiff or the secured investors and without a hearing — admitted allegations against Plaintiff in his absence, committed $2,000,000 to the State from the proceeds of the securing assets, and directed the bankruptcy filings whose stated purpose was to "clear title" on the collateral, followed by adversary proceedings to void the deed. Ex. A ¶¶ 31–38. The process owed and denied is identified: notice and an opportunity to be heard before the disposition of property securing his recorded interest. Ex. A ¶ 54. The entitlement is settled: the holder of a recorded security interest is entitled to actual notice of a proceeding that will adversely affect the interest where his name and address are reasonably ascertainable, *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 798–800 (1983), and the proceeding need not adjudicate the claim's merits to adversely affect it, *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 488 (1988) — the direct answer to the Recommendation's statement that Plaintiff supplied no legal basis for the entitlement (Dkt. 283 at 12–13). And Harrington's state action is no longer the use of a procedure: he negotiated and jointly executed the operative instrument with the State — willful joint participation, not resort to the courts. Ex. A ¶¶ 31–32, 56. The amendment further pleads that Harrington acted in the teeth of the federal judgment: as a "present officer" of Two Rivers he is himself a Paulson Releasee (§ 1.dd(ii)), the release is two-way (§ 1.cc), it binds the Parties' successors and assigns (Settlement Agreement ¶ 45), and the adversary proceedings the Stipulation directed name the Paulson Class Member investors as defendants to void the very security the Final Order preserved. Ex. A ¶¶ 34, 51–52.

**B. Retaliation and selective enforcement (Ex. A Third Claim, ¶ 55; Order Count III).**

The amendment supplies the facts the Court found missing: Plaintiff's July 13, 2018

whistleblower report of the diversion of GrowCo investor capital, made to the Colorado Division of Securities through counsel — identifying the fabricated journal entry, delivering the bank records and investor list, and requesting a subpoena of Harding — with protected activity continuing through the June 11, 2026 federal criminal referrals noticed at Dkt. 324; the State's own 2019 concession — moving to dismiss an earlier contempt against Plaintiff with prejudice — that he retained no control of the company's funds or assets after his May 2016 resignation; the comparator: the Stipulation released the Harrington-controlled Respondents — the parties who held control of the company and its assets, and who kept them — while the State pursued Plaintiff; and the January 19, 2023 internal email of Assistant Attorney General Hunt reflecting a fixed adverse view in advance of adjudication. Ex. A ¶ 55. The protected-class theory the Court faulted is withdrawn; selective enforcement is pleaded within the retaliation claim, anchored to the comparator.

**C. Conspiracy (Ex. A Fourth and Eighth Claims, ¶¶ 56, 73; Order Count IV).**

The Fourth Claim pleads agreement from documents rather than labels: Harrington and the individual State Defendants negotiated and jointly executed the Stipulation, agreed within it to use bankruptcy to clear title on the securing assets, agreed that Harrington would assist the prosecution, and carried the agreement out. Ex. A ¶ 56. The Eighth Claim stands on the first clause of 42 U.S.C. § 1985(2) — conspiracy to deter and retaliate against a party and witness in the federal courts — which, unlike § 1985(3), requires no class-based animus; its core act is the April 14, 2026 contempt citation charging Plaintiff's federal filings themselves as contempt. Ex. A ¶ 73. The amendment also pleads the coercion's documented structure and motive: imprisonment until performance, aimed at the federal proceedings in which the State faces the

consequences of its own acts, with the coercion continued after June 11, 2026 against a noticed federal informant, and with the State–private coordination documented inside the citation itself — its verification affirms that counsel for defendants Wistar Morris and Ploen supplied Plaintiff's creditor communications to the State's investigator, incorporated as the citation's Exhibit D. Ex. A ¶¶ 69, 73.

**D. Fraud (Ex. A Fifth Claim, ¶ 57; Order Count V).**

Pleaded with Rule 9(b) particularity: pursuant to the February 22, 2019 Share Exchange Agreement, as amended, Harrington and Harding caused Two Rivers to issue 30,000,000 shares to the Easby shell at the July 31, 2019 closing in exchange for the insolvent Vaxa entity — negative equity of approximately $582,071 — representing value where there was none, without independent valuation or shareholder vote. Ex. A ¶ 57. The Court declined jurisdiction over this claim only because the federal claims fell (Dkt. 326 at 14); it returns with them.

**E. Civil RICO (Ex. A Sixth Claim, ¶¶ 58–71; Order Count VII).**

The enterprise is an association-in-fact distinct from each defendant: Harrington; the five corporate identities registered to a single UPS Store mailbox at 4400 North Scottsdale Road, Suite 9-289, Scottsdale, Arizona; and the TR Capital control-group funds and their principals. Ex. A ¶ 58; United States v. Turkette, 452 U.S. 576, 583 (1981). Each defendant's conduct of the enterprise's affairs is pleaded at ¶ 59, as set out in Part II above. The predicate and concealment acts are tabulated, act by act with dates, actors, statutes, and record cites, in Appendix 1 to this Motion.

The pattern is dated acts, each enabling the next — not a single event. In the alternative, the 2016–2018 conversion of GrowCo investor capital: the redirected note interest ($729,103.15),

the fabricated $6,207,943.50 journal entry of August 16, 2017 with GrowCo's simultaneous deconsolidation, and the May 1, 2017 defeat of the independent audit — pleaded as creditor and collateral injury, outside the securities-fraud bar of 18 U.S.C. § 1964(c) and outside the Paulson release, whose § 1.cc expressly preserves claims for collection of amounts due under the GrowCo securities. Ex. A ¶¶ 61–62. The enterprise then manufactured the distress that made a takeover plausible: the May 15, 2018 ratified eviction of Amerijuana, the paying tenant of the GCP-1 greenhouse Plaintiff's capital had built and put into production, severed the project's income stream; the June 20, 2018 Vaxa letter of intent followed within five weeks; a binding October 22, 2018 revision stripped its protections; the entire board resigned in November 2018; and Harrington executed the Share Exchange Agreement on February 22, 2019, closing July 31, 2019, for a shell with negative equity. Ex. A ¶¶ 22–30. Then the stripping: the October 18 and December 20, 2019 below-market sales of El Paso parcels with proceeds disbursed to the recurring insider circle on identical pre-set tickets and net proceeds wired to the same Scottsdale mailbox; the January 31, 2020 removal of $72,540.49 — substantially the entire subsidiary account — by verbal instruction recorded only as "per Chad" — Chad Harrington, defendant Harrington's brother, a signer on the company's accounts — with no payee disclosed on the statement; concealment through a reporting blackout; the May 5, 2023 Stipulation extracting $2,000,000 and directing bankruptcy filings to clear title on the collateral; the 2024 deed-voiding adversary proceedings; and the 2026 contempt citation. Ex. A ¶¶ 63–69. The final predicate stands independent of the citation's filing: since June 11, 2026 — when Plaintiff provided truthful information concerning this same conduct to five federal law-enforcement agencies, noticed on the dockets of this Court (Dkt. 324) and the Tenth Circuit (No. 26-1190, Doc. 38) —

the State Defendants have continued to press the citation and to seek Plaintiff's incarceration, knowing him to be a federal informant. That continuation is retaliation against an informant, 18 U.S.C. § 1513(e), an enumerated racketeering predicate, 18 U.S.C. § 1961(1)(B); the predicate act is the continued coercion of a known federal informant, not the act of petitioning a court. Ex. A ¶ 69.

The acts are related in participants, method, victims, and objective, and continuity is satisfied on any measure — nearly a decade from the conversion, approximately six years from the 2019 closings alone. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989); Ex. A ¶ 70. Plaintiff's injury is direct and non-derivative — the clouding and attempted extinguishment of his recorded secured interest, the impairment of the Paulson-preserved collection rights it secures, and the capital he personally advanced (more than $1,400,000 into McGrow; $1,218,157 into GCP Super Units) — and timely from discovery of the concealed injury. Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268 (1992); Rotella v. Wood, 528 U.S. 549, 553–55 (2000); Ex. A ¶ 71.

**F. Fifth Amendment takings (Ex. A Seventh Claim, ¶ 72; Dkt. 313, folded in by Order § III.E).**

The claim is drawn to the jurisdictional lines: relief is prospective and declaratory, against the individual State officials in their official capacities under Ex parte Young, 209 U.S. 123, 159–60 (1908) — a declaration that they may not continue, under the Stipulation, to pursue the extinguishment of the recorded 404224 interest, and an order prospectively restraining further steps to void or clear title to it — framed so as not to enjoin or set aside any pending state-court proceeding. Ex. A ¶¶ 72, 74–79.

**G. Enforcement of the Paulson judgment and declaratory relief (Ex. A First Claim, ¶¶ 46–53; Order Count VI).**

The First Claim rests on this Court's own judgment. What Paulson preserved: the Class Members' GrowCo securities and the limited right to collect amounts due under them, including in a GrowCo liquidation — recited verbatim in the entered order, which retained jurisdiction over implementation; this Court directed that the Paulson-violation question be resolved in this action (Paulson Dkt. 199). What Paulson barred: the investor fraud claims arising from the GrowCo offerings — by the judgment's own text, including claims asserted by "any … person or entity (including any governmental entity) claiming by or through … derivatively for, or as representative of" any Class Member. The State's $16,578,690.33 recovery is that claim: the Colorado Securities Act gives the Commissioner no damages claim of the State's own — the monetary remedy under C.R.S. § 11-51-602 is restitution on behalf of injured investors — and the judgment's measure, investor funds in minus payments out, is the investors' offering-loss claim in an enforcement caption. Why the non-party State yields: not preclusion — Plaintiff asserts neither res judicata nor collateral estoppel — but the Supremacy Clause: a federal judgment is supreme over a conflicting state order regardless of party status. The claim is deliberately narrow: it does not touch the State's regulatory remedies, and reaches only the monetary recovery of the extinguished investor claims and the bankruptcy claims that attack what the bar order expressly "will not bar" — claims for collection. Ex. A ¶¶ 46–53.

**IV. THE ABSTENTION AND IMMUNITY GROUNDS DO NOT RENDER AMENDMENT FUTILE**

Exhibit A is structured to clear the grounds the Order affirmed: no § 1983 or § 1985 claim

against the State and no official-capacity damages claim (Eleventh Amendment); individual-capacity damages, Hafer v. Melo, 502 U.S. 21, 30–31 (1991), and prospective official-capacity relief, Ex parte Young, 209 U.S. 123, 159–60 (1908); no relief that enjoins or voids the state proceeding (Younger) — and if the Court concludes Younger reaches a surviving damages claim, the proper disposition is a stay, not dismissal, Graff v. Aberdeen Enterprizes, II, Inc., 65 F.4th 500, 523 (10th Cir. 2023); and this action predates the state judgment, placing it outside Rooker-Feldman. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005); T.M. v. University of Maryland Medical System Corp., No. 25-197 (U.S. June 18, 2026) (the doctrine reaches judgments rendered before the district-court proceedings commenced; this action was commenced March 3, 2025, before the July 9, 2025 state judgment). Ex. A ¶¶ 46–53, 72–79.

**V. THE NON-MOVING DEFENDANTS AND THE DEFERRED RULINGS**

The Order notes that the claims against the non-moving defendants may be subject to dismissal for the same reasons (Dkt. 326 at 17), and defers ruling on the recommendation as to Counts IV, V, and VII against all defendants (id. at 17 n.7). Part II above states each non-moving defendant's conduct — Harding, Sam Morris, Yorke, Kidd-Aaron, and the entity defendants through the acts of their officers — with the same Nasious specificity as the moving defendants. Because Exhibit A supersedes the prior complaint in its entirety, the deferred rulings may be resolved against the amended pleading rather than the superseded one.

**CONCLUSION**

Plaintiff respectfully requests that the Court grant leave to file the Second Amended Complaint attached as Exhibit A, deem it filed as of the date of the Court's order, and grant such further relief as is just. Plaintiff's request for an extension of time to serve and for alternative service is presented by

separate, contemporaneously filed motion.

Respectfully submitted July 13, 2026.

*/s/ John R. McKowen*
John R. McKowen, Pro Se
5200 S. Quebec St. #117
Greenwood Village, CO 80111
(303) 248-6883
john@johnmckowen.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2026, I filed the foregoing MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT with the Clerk of the Court using the Pro Se Filing email address at , which will send notification of such filing to all counsel of record.cod_prose_filing@cod.uscourts.gov

I further certify that on this same date, I served a copy of the foregoing via email with return receipt requested to the following non-CM/ECF participant:

Wayne Harding – wayne@wayneharding.com

*/s/ John R. McKowen*
John R. McKowen
Pro Se Appearing Individually