# EXHIBIT 34

State Motion and Order Dismissing Contempt with Prejudice
(August 15, 2019)

McKowen v. Harrington, et al.
No. 1:25-cv-00708-PAB-NRN (D. Colo.)

<table>
<tr><td>DISTRICT COURT, WATER DIVISION 2<br>STATE OF COLORADO<br>501 North Elizabeth Street, Suite 116<br>Pueblo, Colorado 81003</td><td rowspan="2">DATE FILED: August 15, 2019 1:55 PM<br>FILING ID: 7C5066196F81C<br>CASE NUMBER: 2015CW3051<br><br>▲ COURT USE ONLY ▲</td></tr>
<tr><td>Plaintiffs:<br>The PEOPLE OF COLORADO, ex rel. KEVIN G. REIN, the State Engineer for the State of Colorado, BILL W. TYNER, the Division Engineer for Water Division No. 2, and HENRY SOLANO, District Attorney, Third Judicial District<br><br>v.<br><br>Defendants:<br>TWO RIVERS WATER AND FARMING COMPANY, a Colorado corporation; HUERFANO-CUCHARAS IRRIGATION COMPANY, a Colorado nonprofit corporation; and HCIC HOLDINGS LLC, a Colorado limited liability company, WATER REDEVELOPMENT COMPANY</td></tr>
<tr><td>Attorneys for State and Division Engineers:<br>PHILIP J. WEISER, Attorney General<br>PAUL L. BENINGTON, First Assistant Attorney General, Attorney Reg. #33079*<br>PHILIP E. LOPEZ, Senior Assistant Attorney General, Attorney Reg. # 40484*<br>Water Resources Unit<br>Natural Resources & Environment Section<br>Colorado Attorney General's Office<br>1300 Broadway, 7th Floor<br>Denver, CO 80203<br>Telephone: (720) 508-6309 (Mr. Benington)<br>(720) 508-6312 (Mr. Lopez)<br>FAX: (720) 508-6039<br>Email: paul.benington@coag.gov<br>philip.lopez@coag.gov<br>*Counsel of Record</td><td>Case No. 15CW3051<br><br>Consolidated with Case Nos. 15CW3039 and 15CV30046</td></tr>
</table>

**District Attorney, Third Judicial District**
HENRY SOLANO, District Attorney
PHILIP E. LOPEZ, Special Deputy District Attorney, Senior Assistant Attorney General
Attorney Reg. No. 40484*
1300 Broadway Avenue, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6312
Email: philip.lopez@coag.gov
*Counsel of Record

**STATE'S UNOPPOSED MOTION TO DISMISS CONTEMPT CITATIONS ISSUED TO JOHN R. MCKOWEN AND WILLIAM M. GREGORAK, AND TO VACATE TRIAL**

The People of the State of Colorado, ex rel. Kevin G. Rein, State Engineer, Bill W. Tyner, Division Engineer for Water Division 2, and Henry Solano, District Attorney, Third Judicial District (collectively, "State"), file this unopposed motion for an order of the Court dismissing the contempt citations issued to John R. McKowen and William M. Gregorak with prejudice under C.R.C.P. 41(a)(2), and vacating the trial herein. In support of this motion, the State advises the Court as follows:

1. Except as provided under C.R.C.P. 41(a)(1), an action shall not be dismissed at the plaintiff's instance save upon order of the Court and upon such terms and conditions as the Court deems proper. C.R.C.P. 41(a)(2).

2. Counsel for the State has conferred with counsel for Mr. McKowen and Mr. Gregorak, and they do not oppose this motion. All other parties who were subject to the Court's contempt citations issued in this case have been dismissed from this contempt of court proceeding.

3. On April 4, 2018, the Court issued a contempt citation that was timely served upon Mr. McKowen and, on April 25, 2018, the Court issued a renewed contempt citation that was timely served upon Mr. Gregorak.

4. A ten-day hearing on the Court's contempt citations is currently set to commence on October 28, 2019 for Mr. McKowen and Mr. Gregorak to show cause as to why the Court should not enter a judgment finding them in contempt of court for failure to comply with the Court's April 27, 2016 Consent Decree requiring removal of the Cucharas #5 Dam, why they should not be ordered to pay the State's reasonable attorney fees and costs included in

instituting the contempt citation action, and further why a fine and/or imprisonment should not be imposed upon them to vindicate the authority and dignity of the Court and ensure further compliance with the Consent Decree.

5. The State has concluded that the contempt citation issued to Mr. McKowen should be dismissed with prejudice for the following reasons.

(a) Although he signed the Consent Decree as Chairman of the Board of Directors for Two Rivers Water & Farming Company ("Two Rivers") and as its Chief Executive Officer, Mr. McKowen left those positions shortly after entry of the Consent Decree at a time when Two Rivers was in compliance with the Consent Decree and was taking steps to fully comply with the Consent Decree.

(b) The State's discovery to date has not produced any evidence to show that Mr. McKowen retained sufficient ability, either directly or indirectly, to control the funds or assets that could have been used by Two Rivers or its subsidiaries to fund the razing of the Cucharas #5 Dam and fully comply with the Consent Decree.

(c) The State's discovery to date has not produced any evidence to show that Mr. McKowen retained sufficient control within Two Rivers or any of its subsidiaries to compel Two Rivers to comply with the Consent Decree.

(d) Although the State has not completed all of its discovery, the State believes it is unlikely to discover evidence that justifies proceeding to trial against Mr. McKowen.

(e) No evidence discovered to date indicates Mr. McKowen's actions or inaction since signing the Consent Decree constitute contempt of this Court's Consent Decree.

6. The State has also concluded that the contempt citation issued to Mr. Gregorak should be dismissed with prejudice for the following reasons.

(a) Mr. Gregorak was hired by Two Rivers as its Chief Financial Officer (CFO) and Secretary of the Board, and as CFO, Treasurer, and Secretary for the Water Redevelopment Company, in June, 2016, after the Consent Decree was entered by the Court.

(b) Mr. Gregorak resigned from those positions in January, 2018, at a time when it was still possible for Two Rivers to fully comply with the Consent Decree.

(c) Two Rivers stipulated with the State to pay $25,000 in punitive sanctions on behalf of Mr. Gregorak as Two Rivers' former CFO, and the Court has approved that stipulation as an order of the Court.

7. The State believes that the Court's previous approvals of the State's stipulations with other alleged contemnors, which provide for the payment of a total of $100,000 in punitive sanctions, are sufficient to vindicate the authority and dignity of the Court and to affirm the importance of compliance with the State Engineer's dam safety orders.

8. The State, Mr. McKowen, and Mr. Gregorak have each agreed to bear their own attorney fees and costs in this matter.

WHEREFORE, the State respectfully requests that the Court grant this motion, dismiss the contempt citations issued to Mr. McKowen and Mr. Gregorak with prejudice and with the parties bearing their own attorney fees and costs, and vacate the trial set herein. A proposed order is efiled herewith for the Court's consideration.

Dated this 15th day of August, 2019.

PHILIP J. WEISER
Attorney General
*Filed pursuant to C.R.C.P. Rule 121 § 1-26.*
*A duly signed original is on file with the Office of the Attorney General for the State of Colorado.*

PHILIP E. LOPEZ, #40484*
Senior Assistant Attorney General
Water Resources Unit
Natural Resources and Environment Section
Colorado Department of Law
Attorneys for the State Engineer
*Counsel of Record

HENRY SOLANO
District Attorney, Third Judicial District
*Filed pursuant to C.R.C.P. Rule 121 § 1-26.*
*A duly signed original is on file with the Office of the Attorney General for the State of Colorado.*

PHILIP E. LOPEZ, #40484*
Special Deputy District Attorney
Senior Assistant Attorney General
Water Resources Unit
Natural Resources and Environment Section
Colorado Department of Law
Attorneys for the People of the State of Colorado
*Counsel of Record

# CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of August, 2019, I caused the foregoing **STATE'S UNOPPOSED MOTION TO DISMISS CONTEMPT CITATIONS ISSUED TO JOHN R. MCKOWEN AND WILLIAM M. GREGORAK, AND TO VACATE TRIAL** to be served electronically by CO E-file & Serve to each of the following:

| Party Name | Party Type | Attorney Name |
|---|---|---|
| Christopher Bragg | Other Interested Party | Lucas Trask Ritchie (Moye White) |
| Division 2 Engineer | Division Engineer | Division 2 Water Engineer (State of Colorado DWR Division 2) |
| Hcic Holdings Llc | Defendant | Peter Krumholz (Hale Westfall LLP)<br>Richard Allen Westfall (Hale Westfall LLP) |
| Huerfano Cucharas Irrigation Company | Defendant | Peter Krumholz (Hale Westfall LLP)<br>Richard Allen Westfall (Hale Westfall LLP) |
| James D Cochran | Other Interested Party | Lucas Trask Ritchie (Moye White) |
| John R Mckowen | Other Interested Party | Scott Alvin (#16110) Meiklejohn (Scott A Meiklejohn LLC) |
| Michael Harnish | Other Interested Party | Lucas Trask Ritchie (Moye White) |
| Samuel W Morris, JR | Other Interested Party | Lucas Trask Ritchie (Moye White)<br>Scott Calvin James (Moye White) |
| State Engineer | State Engineer | Colorado Division Of Water Resources (State of Colorado - Division of Water Resources) |

| Party Name | Party Type | Attorney Name |
|---|---|---|
| T Keith Wiggins | Other Interested Party | Lucas Trask Ritchie (Moye White) |
| Two Rivers Water And Farming Company | Defendant | Peter Krumholz (Hale Westfall LLP)<br>Richard Allen Westfall (Hale Westfall LLP) |
| Water Redevelopment Company | Defendant | Richard Allen Westfall (Hale Westfall LLP) |
| Wayne E Harding, III | Other Interested Party | Ronald A Podboy (Ronald A Podboy PC) |
| William M Gregorak | Other Interested Party | Lyndsay Susan Ressler (Ressler Law) |

Filed pursuant to C.R.C.P. Rule 121 §1-26.
A duly signed original is on file with the Office of the Attorney General for the State of Colorado.

/s/ *Pauline Wilber*

| | |
|---|---|
| **DISTRICT COURT, WATER DIVISION 2**<br>**STATE OF COLORADO**<br>501 North Elizabeth Street, Suite 116<br>Pueblo, Colorado 81003 | DATE FILED: August 15, 2019 2:53 PM<br>CASE NUMBER: 2015CW3051 |
| **Plaintiffs:**<br>**The PEOPLE OF COLORADO, *ex rel.* KEVIN G. REIN, the State Engineer for the State of Colorado, BILL W. TYNER, the Division Engineer for Water Division No. 2, and HENRY SOLANO, District Attorney, Third Judicial District**<br><br>**v.**<br><br>**Defendants:**<br>**TWO RIVERS WATER AND FARMING COMPANY, a Colorado corporation; HUERFANO-CUCHARAS IRRIGATION COMPANY, a Colorado nonprofit corporation; and HCIC HOLDINGS LLC, a Colorado limited liability company, WATER REDEVELOPMENT COMPANY** | **▲ COURT USE ONLY ▲** |
| | Case No. 15CW3051<br><br>Consolidated with Case Nos. 15CW3039 and 15CV30046 |

**ORDER GRANTING STATE'S UNOPPOSED MOTION TO DISMISS CONTEMPT CITATIONS ISSUED TO JOHN R. MCKOWEN AND WILLIAM M. GREGORAK, AND TO VACATE TRIAL**

THIS MATTER comes before the Court on the State's unopposed motion for an order of the Court dismissing the contempt citations issued to John R. McKowen and William M. Gregorak, and vacating the ten-day trial herein. The Court, having reviewed the motion, and being otherwise adequately advised, GRANTS the motion.

The contempt citation issued to John R. McKowen on April 4, 2018 and the contempt citation issued to William R. McKowen on April 25, 2018 are hereby dismissed with prejudice. The parties shall each bear their own attorney fees and costs.

The trial set to commence in this matter on October 28, 2019 is hereby vacated.

DATED: August 15, 2019

BY THE COURT:

Larry C. Schwartz, Water Judge
Water Division 2

# EXHIBIT 35

Bar 10 Road Sale (October 18, 2019)

McKowen v. Harrington, et al.
No. 1:25-cv-00708-PAB-NRN (D. Colo.)

# FIDELITY NATIONAL TITLE COMPANY

1277 Kelly Johnson Blvd # 100, Colorado Springs, CO 80920

Phone: (719) 590-1711 Fax: (719) 531-5864

**Sellers Settlement Statement**

**FINAL**

Escrow No: F0647993 - 370 LTB Close Date: 10/18/2019 Proration Date: 10/18/2019 Disbursement Date: 10/18/2019

Buyer(s)/Borrower(s): Duke James Houghton

Seller(s): TR El Paso Land, LLC.,a Colorado limited liability company

Property: 5080 Bar 10 Rd
Calhan, CO 80808

Brief Legal:

| Description | Debit | Credit |
|---|---|---|
| **TOTAL CONSIDERATION:** | | |
| Sale Price of Property | | 56,500.00 |
| **PAYOFFS:** | | |
| Total Payoffs (See Attached) | 16,716.08 | |
| **ESCROW CHARGES** | | |
| Title - Real Estate Closing Fee to Fidelity National Title Company | 80.00 | |
| **TITLE CHARGES:** | | |
| ALTA Owners Policy 6-17-06 for $56,500.00 to Fidelity National Title Company<br>Premium: $296.00 | 296.00 | |
| 110.1-06 Deletion - Standard Exceptions (OL) to Fidelity National Title Company | 75.00 | |
| **ADDITIONAL CHARGES:** | | |
| 2018 Property Taxes to El Paso County Treasurer<br>$119.82 POC - Seller | | |
| Courtesy Payment to Mountain View Electric Association Inc | 15,348.00 | |
| Courtesy Payment to Porzak Browning & Bushong LLP | 7,515.00 | |
| **PRORATIONS AND ADJUSTMENTS:** | | |
| County Taxes from 1/1/2019 to 10/18/2019 based on the Annual amount of $95.32 | 75.73 | |
| **COMMISSIONS:** | | |
| Commission<br>$4,520.00 (8% of $56,500.00) to Big Star Realty<br>$0.00 to Big Star Realty | 4,520.00 | |
| Sub Totals | 44,625.81 | 56,500.00 |
| Proceeds Due Seller | 11,874.19 | |
| Totals | 56,500.00 | 56,500.00 |

APPROVED AND ACCEPTED

Sales or use taxes on personal property not included. Fidelity National Title Company assumes no responsibility for the adjustment of special taxes or assessments unless they are shown on the Treasurer's Certificate of Taxes Due. The condition of title to the property is to be determined by reference to the title evidence provided by Seller or by personal investigation. The above statement of settlement is approved as of the settlement date shown above and Escrow Holder is hereby authorized to disburse as Trustee funds as indicated.

Seller(s):

TR El Paso Land, LLC.,a Colorado limited liability company

[signature]

Wayne Harding, Chief Financial Officer

Broker/Agent:

Big Star Realty

Susan Schooler

Closing Agent:

FIDELITY NATIONAL TITLE COMPANY

[signature]

by Laurie Thompson

FIDELITY NATIONAL TITLE COMPANY
1277 Kelly Johnson Blvd # 100, Colorado Springs, CO 80920
Phone: (719) 590-1711 Fax: (719) 531-5864

Sellers Settlement Statement
FINAL

Escrow No: F0647993 - 370 LTB Close Date: 10/18/2019 Proration Date: 10/18/2019 Disbursement Date: 10/18/2019

## Payoff Details

| Description | | Amount | Debit |
|---|---|---|---|
| Payoff to Wayne Harding | | | |
| Partial Payoff | | 1,300.00 | |
| | Payoff Total | | 1,300.00 |
| Payoff to Cotswold Foundation | | | |
| partial payoff | | 5,100.00 | |
| | Payoff Total | | 5,100.00 |
| Payoff to JP Brooks | | | |
| Partial Payoff | | 600.00 | |
| | Payoff Total | | 600.00 |
| Payoff to Elevation Fund LLC | | | |
| Partial Payoff | | 2,429.02 | |
| | Payoff Total | | 2,429.02 |
| Payoff to JMW Fund LLC | | | |
| Partial payoff | | 2,429.02 | |
| | Payoff Total | | 2,429.02 |
| Payoff to Richland Fund LLC | | | |
| Partial Payoff | | 2,429.02 | |
| | Payoff Total | | 2,429.02 |
| Payoff to San Gabriel Fund LLC | | | |
| Partial payoff | | 2,429.02 | |
| | Payoff Total | | 2,429.02 |
| | Total as shown on Settlement Statement | | 16,716.08 |

# Closing Disclosure

## Closing Information

| | |
|---|---|
| **Date Issued** | 10/15/2019 |
| **Closing Date** | 10/18/2019 |
| **Disbursement Date** | 10/18/2019 |
| **Settlement Agent** | Fidelity National Title Company |
| **File #** | F0647993-370-LTB |
| **Property** | 5080 Bar 10 Rd<br>Calhan, CO 80808 |
| **Sale Price** | $56,500.00 |

## Transaction Information

| | |
|---|---|
| **Borrower** | Duke James Houghton<br>104 Massey Rd<br>Pueblo, CO 81006 |
| **Seller** | **See Attachment<br>3025 S Parker Rd Ste 140<br>Aurora, CO 80014 |

## Summaries of Transactions

### SELLER'S TRANSACTION

| | | | | |
|---|---|---|---|---|
| **Due to Seller at Closing** | | | | **$56,500.00** |
| 01 | Sale Price of Property | | | $56,500.00 |
| 02 | Sale Price of Any Personal Property Included in Sale | | | |
| 03 | | | | |
| 04 | | | | |
| 05 | | | | |
| 06 | | | | |
| 07 | | | | |
| 08 | | | | |
| **Adjustments for Items Paid by Seller in Advance** | | | | |
| 09 | City/Town Taxes | | to | |
| 10 | County Taxes | | to | |
| 11 | Assessments | | to | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| **Due from Seller at Closing** | | | | **$44,625.81** |
| 01 | Excess Deposit | | | |
| 02 | Closing Costs Paid at Closing (J) | | | $27,316.00 |
| 03 | Existing Loan(s) Assumed or Taken Subject to | | | |
| 04 | Payoff To Elevation Fund LLC | | | $2,429.02 |
| 05 | **See Attachment | | | $14,287.06 |
| 06 | | | | |
| 07 | | | | |
| 08 | Seller Credit | | | |
| 09 | | | | |
| 10 | Title Insurance Premium Adjustment | | | $518.00 |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| **Adjustments for Items Unpaid by Seller** | | | | |
| 14 | City/Town Taxes | | to | |
| 15 | County Taxes | 01/01/19 | to 10/18/19 | $75.73 |
| 16 | Assessments | | to | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |

### CALCULATION

| | |
|---|---|
| Total Due to Seller at Closing | $56,500.00 |
| Total Due from Seller at Closing | -$44,625.81 |
| **Cash ☐ From ☒ To Seller** | **$11,874.19** |

## Contact Information

| | |
|---|---|
| **REAL ESTATE BROKER (B)** | |
| **Name** | Big Star Realty |
| **Address** | 19495 Enoch Road<br>Colorado Springs CO 80930 |
| **CO License ID** | EC150 |
| **Contact** | Susan Schooler |
| **Contact CO License ID** | ER1323433 |
| **Email** | bigstarrealty@elpasotel.net |
| **Phone** | (719) 683-7858 |
| **REAL ESTATE BROKER (S)** | |
| **Name** | Big Star Realty |
| **Address** | 19495 Enoch Road<br>Colorado Springs CO 80930 |
| **CO License ID** | EC150 |
| **Contact** | Susan Schooler |
| **Contact CO License ID** | ER1323433 |
| **Email** | bigstarrealty@elpasotel.net |
| **Phone** | (719) 683-7858 |
| **SETTLEMENT AGENT** | |
| **Name** | Fidelity National Title Company |
| **Address** | 1277 Kelly Johnson Blvd # 100<br>Colorado Springs CO 80920 |
| **CO License ID** | 44452 |
| **Contact** | Laurie Thompson |
| **Contact CO License ID** | 417376 |
| **Email** | lthompson@fnf.com |
| **Phone** | (719) 590-1711 |

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

## Closing Cost Details

| Loan Costs | Seller-Paid At Closing | Seller-Paid Before Closing |
|---|---|---|
| **A. Origination Charges** | **$0.00** | |
| 01 % of Loan Amount (Points) | | |
| 02 | | |
| 03 | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| **B. Services Borrower Did Not Shop For** | **$0.00** | |
| 01 | | |
| 02 | | |
| 03 | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| **C. Services Borrower Did Shop For** | **$0.00** | |
| 01 | | |
| 02 | | |
| 03 | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |

| Other Costs | Seller-Paid At Closing | Seller-Paid Before Closing |
|---|---|---|
| **E. Taxes and Other Government Fees** | **$0.00** | |
| 01 Recording Fees Deed: Mortgage: | | |
| 02 | | |
| **F. Prepaids** | **$0.00** | |
| 01 Homeowner's Insurance Premium (mo.) | | |
| 02 Mortgage Insurance Premium (mo.) | | |
| 03 Prepaid Interest ( per day from to ) | | |
| 04 Property Taxes (mo.) | | |
| **G. Initial Escrow Payment at Closing** | **$0.00** | |
| 01 Homeowner's Insurance per month for mo. | | |
| 02 Mortgage Insurance per month for mo. | | |
| 03 Property Taxes per month for mo. | | |
| 04 Aggregate Adjustment | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| **H. Other** | **$27,435.82** | |
| 01 2018 Property Taxes to El Paso County Treasurer | | $119.82 |
| 02 Courtesy Payment to Mountain View Electric Association Inc | $15,348.00 | |
| 03 Courtesy Payment to Porzak Browning & Bushong LLP | $7,515.00 | |
| 04 Real Estate Commission to Big Star Realty | $4,520.00 | |
| 05 Real Estate Commission to Big Star Realty | $0.00 | |
| 06 Title - 110.1-06 Deletion - Standard Exceptions (OL) to Fidelity National Title Company | $75.00 | |
| 07 Title - ALTA Owners Policy 6-17-06 to Fidelity National Title Company | -$222.00 | |
| 08 Title - Real Estate Closing Fee to Fidelity National Title Company | $80.00 | |
| 09 | | |
| 10 | | |
| **J. TOTAL CLOSING COSTS** | $27,316.00 | $119.82 |

# Closing Disclosure - Attachment

| Closing Information | | Transaction Information | |
|---|---|---|---|
| **Date Issued** | 10/15/2019 | **Borrower** | Duke James Houghton<br>104 Massey Rd<br>Pueblo, CO 81006 |
| **Closing Date** | 10/18/2019 | | |
| **Disbursement Date** | 10/18/2019 | | |
| **Settlement Agent** | Fidelity National Title Company | | |
| **File #** | F0647993-370-LTB | | |
| **Property** | 5080 Bar 10 Rd<br>Calhan, CO 80808 | | |
| **Sale Price** | $56,500.00 | | |

## Closing Disclosure - Page 1 Continued

### Sellers

TR El Paso Land, LLC.,a Colorado limited liability company
3025 S Parker Rd Ste 140
Aurora, CO 80014

# Closing Disclosure - Attachment

**Closing Information**

| | |
|---|---|
| **Date Issued** | 10/15/2019 |
| **Closing Date** | 10/18/2019 |
| **Disbursement Date** | 10/18/2019 |
| **Settlement Agent** | Fidelity National Title Company |
| **File #** | F0647993-370-LTB |
| **Property** | 5080 Bar 10 Rd<br>Calhan, CO 80808 |
| **Sale Price** | $56,500.00 |

**Transaction Information**

**Borrower** Duke James Houghton
104 Massey Rd
Pueblo, CO 81006

## Closing Disclosure - Page 1 Continued

## Payoffs

### Breakdown of Payoff on CDF Section N Line 4

Payoff to: Elevation Fund LLC

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $2,429.02 |
| Total Payoff: | $2,429.02 |
| **Total as shown on CDF Section N Line 4** | **$2,429.02** |

### Breakdown of Payoff on CDF Section N Line 5

Payoff to: Wayne Harding

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $1,300.00 |
| Total Payoff: | $1,300.00 |

Payoff to: Cotswold Foundation

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| partial payoff | $5,100.00 |
| Total Payoff: | $5,100.00 |

Payoff to: JP Brooks

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $600.00 |
| Total Payoff: | $600.00 |

Payoff to: JMW Fund LLC

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial payoff | $2,429.02 |
| Total Payoff: | $2,429.02 |

Payoff to: Richland Fund LLC

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $2,429.02 |
| Total Payoff: | $2,429.02 |

Payoff to: San Gabriel Fund LLC

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial payoff | $2,429.02 |
| Total Payoff: | $2,429.02 |

# Closing Disclosure - Attachment

Closing Information

| | |
|---|---|
| **Date Issued** | 10/15/2019 |
| **Closing Date** | 10/18/2019 |
| **Disbursement Date** | 10/18/2019 |
| **Settlement Agent** | Fidelity National Title Company |
| **File #** | F0647993-370-LTB |
| **Property** | 5080 Bar 10 Rd<br>Calhan, CO 80808 |
| **Sale Price** | $56,500.00 |

Transaction Information

| | |
|---|---|
| **Borrower** | Duke James Houghton<br>104 Massey Rd<br>Pueblo, CO 81006 |

## Closing Disclosure - Page 1 Continued

### Payoffs

| | |
|---|---|
| **Total as shown on CDF Section N Line 5** | **$14,287.06** |

## Closing Disclosure - Page 2 Continued

### Agent Commissions

| | | | |
|---|---|---|---|
| **Selling Agent** | Big Star Realty | 19495 Enoch Road<br>Colorado Springs, CO 80930 | $0.00 Attn: Susan Schooler |
| **Listing Agent** | Big Star Realty | 19495 Enoch Road<br>Colorado Springs, CO 80930 | $4,520.00 Attn: Susan Schooler |

# Closing Disclosure - Attachment

Closing Information

| | |
|---|---|
| **Date Issued** | 10/15/2019 |
| **Closing Date** | 10/18/2019 |
| **Disbursement Date** | 10/18/2019 |
| **Settlement Agent** | Fidelity National Title Company |
| **File #** | F0647993-370-LTB |
| **Property** | 5080 Bar 10 Rd<br>Calhan, CO 80808 |
| **Sale Price** | $56,500.00 |

Transaction Information

| | |
|---|---|
| **Borrower** | Duke James Houghton<br>104 Massey Rd<br>Pueblo, CO 81006 |

## Closing Disclosure - Seller Signatures

By signing, you are only confirming that you have received this form.

TR El Paso Land, LLC.,a Colorado limited liability company

Wayne Harding, Chief Financial Officer — Date 10/16/19

**Big Star Realty**
Susan Schooler
Ph: 719-683-7858 Fax: 719-683-7801

The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission (CL8-5-19) (Mandatory 7-19)

**THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.**

## CLOSING INSTRUCTIONS

Date: ***8/1/2019***

**1. PARTIES, PROPERTY.** ***TR El Paso Land LLC***, (Seller), and ***Duke James Houghton***, (Buyer), engage ***Fidelity National Title Insurance Company***, (Closing Company), who agrees to provide closing and settlement services in connection with the Closing of the transaction for the sale and purchase of the Property known as No. ***5080 Bar 10 Road, Colorado Springs, CO 80928***, and more fully described in the Contract to Buy and Sell Real Estate, dated ***08/31/2019***, including any counterproposals and amendments (Contract). The Buyer's lender may enter into separate closing instructions with the Closing Company regarding the closing of the Buyer's loan. All terms of the Contract are incorporated herein by reference. In the event of any conflict between this Agreement and the Contract, this Agreement controls, subject to subsequent amendments to the Contract or this Agreement.

**2. TITLE COMMITMENT, EXCEPTIONS AND POLICY.** Closing Company ☒ **Agrees** ☐ **Does Not** agree that: upon completion of a satisfactory title search and examination, it will furnish a Title Insurance Commitment; and it will issue a Title Insurance Policy provided that all requirements have been fulfilled. Closing Company ☒ **Agrees** ☐ **Does Not** agree to furnish copies of Exceptions.

**3. INFORMATION, CLOSING, RECORDING.** Closing Company is authorized to obtain any information necessary for the Closing. Closing Company agrees to, deliver and record all documents required or customarily recorded, and disburse all funds pursuant to the Contract that are necessary to carry out the terms and conditions of the Contract.

**4. PREPARATION OF DOCUMENTS.** The Closing Company will prepare the necessary documents to carry out the terms and conditions of the Contract to include:

4.1 **Deed.** If the deed required in the Contract is a special warranty deed, general warranty deed, bargain and sale deed (excluding a personal representative's or trustee's deed) or a quit claim deed, the deed will be prepared in accordance with the Contract by the Closing Company. However, if the Contract requires a different form of deed (e.g.: personal representative's deed or trustee's deed) or requires that the special warranty deed or general warranty deed list exceptions other than the "statutory exceptions" as defined in §38-30-113(5)(a), C.R.S., then the Buyer or Seller must provide the deed or written instructions for preparation of the deed to the Closing Company for Closing. For any Buyer or Seller provided deed or written instructions for preparation of the deed that requires a list of exceptions other than the "statutory exceptions", the Buyer and Seller will hold the Closing Company harmless for any causes of action arising out of the use of such deed. The parties acknowledge that the



Initials

CTMeContracts.com - ©2019 CTM Software Corp.

real estate broker working with either the Buyer or the Seller is not responsible for reviewing or approving any deed not prepared by the real estate broker.

**4.2 Bill of Sale.** If the transaction includes the sale of personal property (i.e. within the Contract or a Personal Property Agreement) from the Seller to the Buyer, Seller and Buyer authorize Closing Company to prepare the bill of sale conveying the personal property from the Seller to the Buyer as their scrivener. The Buyer and Seller understand that the bill of sale is a legal document and it is recommended that it be reviewed and approved by their respective attorneys.

**4.3 Closing Statement.** Closing Company will prepare and deliver accurate, complete and detailed closing statements to Buyer, Seller and the real estate brokers working with Buyer and Seller. Closing Statements will be prepared in accordance with the Contract and written instructions from the Buyer, Seller, lender or real estate brokers so long as such written instructions are not contrary to the Contract. If the written instructions are contrary to the Contract, the Buyer and Seller must execute an Agreement to Amend/Extend Contract.

LT. 160-

**5. CLOSING FEE.** Closing Company will receive a fee of $ ~~180~~ for providing closing and settlement services (Closing Fee).

**6. RELEASE, DISBURSEMENT.** Closing Company is not authorized to release any signed documents or things of value prior to receipt and disbursement of Good Funds, except as provided in §§10, 11 and 12.

**7. DISBURSER.** Closing Company must disburse all funds, including real estate commissions, except those funds as may be separately disclosed in writing to Buyer and Seller by Closing Company or Buyer's lender on or before Closing. All parties agree that no one other than the disburser can assure that payoff of loans and other disbursements will actually be made.

**8. SELLER'S NET PROCEEDS.** Seller will receive the net proceeds of Closing as indicated: ☐ **Cashier's Check** , at Seller's expense ☒ **Funds Electronically Transferred** (wire transfer) to an account specified by Seller, at Seller's expense ☐ **Closing Company's** trust account check.

**9. WIRE AND OTHER FRAUDS.** Wire and other frauds occur in real estate transactions. Anytime Buyer or Seller is supplying confidential information, such as social security numbers, bank account numbers, transferring or receiving funds, Buyer and Seller should provide the information in person or in another secure manner.

**10. FAILURE OF CLOSING.** If Closing or disbursement does not occur on or before Closing Date set forth in the Contract, Closing Company, except as provided herein, is authorized and agrees to return all documents, monies and things of value to the depositing party, upon which Closing Company will be relieved from any further duty, responsibility or liability in connection with these Closing Instructions. In addition, any promissory note, deed of trust or other evidence of indebtedness signed by Buyer will be voided by Closing Company, with the originals returned to Buyer and a copy to Buyer's lender.

**11. RETURN OF EARNEST MONEY.** Except as otherwise provided in §12 (Earnest Money Dispute), if the Earnest Money is being held by Closing Company and has not already been returned following receipt of a Notice to Terminate or other written notice of termination, Closing Company must release the Earnest Money as directed by written mutual instructions from the Buyer and the Seller. Such release of Earnest Money must be made within five days of Closing Company's receipt of the written

mutual instructions signed by both Buyer and Seller, provided the Earnest Money check has cleared.

**12. EARNEST MONEY DISPUTE.** In the event of any controversy regarding the Earnest Money (notwithstanding any termination of the Contract), provided Closing Company is holding the Earnest Money, Closing Company is not required to take any action. Closing Company, at its option and sole subjective discretion, may: (1) await any proceeding, (2) interplead all parties and deposit Earnest Money into a court of competent jurisdiction and recover court costs and reasonable attorney and legal fees, or (3) provide notice to Buyer and Seller that unless Closing Company receives a copy of a Summons and Complaint or Claim (between Buyer and Seller) containing the case number of the lawsuit (Lawsuit) within one hundred twenty days of Closing Company's notice to the parties, Closing Company is authorized to return the Earnest Money to Buyer. In the event Closing Company does receive a copy of the Lawsuit, and has not interpled the monies at the time of any Order, Closing Company must disburse the Earnest Money pursuant to the Order of the Court.

**13. SUBSEQUENT AMENDMENTS.** Any amendments to, or termination of, these Closing Instructions must be in writing and signed by Buyer, Seller and Closing Company.

**14. CHANGE IN OWNERSHIP OF WATER WELL.** Within sixty days after Closing, Closing Company will submit any required Change in Ownership form or registration of existing well form to the Division of Water Resources in the Department of Natural Resources (Division), with as much information as is available. Closing Company is not liable for delaying Closing to ensure Buyer completes any required form.

**15. FIRPTA AND COLORADO WITHOLDING.**

**15.1 FIRPTA.** Seller agrees to cooperate with Buyer and Closing Company to provide any reasonably requested documents to determine Seller's foreign person status. If withholding is required, Seller authorizes Closing Company to withhold any required amount from Seller's proceeds and remit it to the Internal Revenue Service.

**15.2 Colorado Withholding.** Seller agrees to cooperate with Closing Company to provide any reasonably requested documents to determine Seller's status. If withholding is required under Colorado law, Seller authorizes Closing Company to withhold any required amount from Seller's proceeds and remit it to the Colorado Department of Revenue.

**16. ADDITIONAL PROVISIONS.** (The following additional provisions have not been approved by the Colorado Real Estate Commission.)

***n/a***

**17. COUNTERPARTS.** This document may be executed by each party, separately, and when each party has executed a copy, such copies taken together are deemed to be a full and complete contract between the parties.

**18. BROKER'S COPIES.** Closing Company must provide, to each real estate broker in this transaction, copies of all signed documents that such real estate brokers are required to maintain pursuant to the rules of the Colorado Real Estate Commission. Closing Company is authorized by both Buyer and Seller to deliver their respective Closing Statement to one or both real estate brokers involved in the transaction.

**19. NOTICE, DELIVERY AND CHOICE OF LAW.**



Initials ____________

CTMeContracts.com - ©2019 CTM Software Corp.

**19.1 Physical Delivery and Notice.** Any document, or notice to another party must be in writing, except as provided in §19.2 and is effective when physically received by such party.

**19.2 Electronic Notice.** As an alternative to physical delivery, any notice, may be delivered in electronic form to another party at the electronic address of the recipient by facsimile, email or .

**19.3 Electronic Delivery.** Electronic Delivery of documents and notice may be delivered by: (1) email at the email address of the recipient, (2) a link or access to a website or server, provided the recipient receives the information necessary to access the documents or (3) facsimile at the facsimile number (Fax No.) of the recipient.

**19.4 Choice of Law.** These Closing Instructions and all disputes arising hereunder are governed by and construed in accordance with the laws of the State of Colorado that would be applicable to Colorado residents who sign a contract in Colorado for real property located in Colorado.

________________________________ Date: ***9/3/2019***

Buyer: ***Duke James Houghton***

Address:

Phone No.:

Fax No.:

Email Address:

Buyer: ________________________________ Date: ____________

Address:

Phone No.:

Fax No.:

Email Address:

Wayne Harding, CFO Date: ***8/1/2019***

Seller: ***TR El Paso Land LLC***

***By: Wayne Harding, CFO***

Address:

Phone No.:



Initials ________________

CTMeContracts.com - ©2019 CTM Software Corp.

Fax No.:
Email Address:

Seller: ______________________________ Date: ____________

Address:

Phone No.:
Fax No.:
Email Address:

**Closing Company's Name:** Fidelity National Title Insurance Company

______________________________ Date: 9.17.19

By: ***Laurie Thompson***
Authorized Signature Title: Closer

Address: 1277 Kelly Johnson Blvd #100
1277 Kelly Johnson Blvd #100, CO
Phone No.: 719-268-0347
Fax No.: 719-531-5864
Email Address: lthompson@fnf.com

**CL8-5-19. CLOSING INSTRUCTIONS**
CTM eContracts - ®2016 CTM Software Corp.



Initials ______________________

CTMeContracts.com - ©2019 CTM Software Corp.

**Fidelity National Title Company**
F0647993 Laurie Thompson

TAXES/WATER/SEWER/HOA AGREEMENT

PROPERTY: 5080 Bar 10 Rd, Calhan, CO 80808

## I. TAXES, TAX PRO-RATIONS

Purchaser has received, as of this date , a credit from seller for taxes for the current year. This pro-ration was calculated based on:

Most recent Mill Levy and the most recent Assessed Value; adjusted by any applicable qualifying seniors tax exemption or qualifying disabled veteran exemption

THIS ADJUSTMENT BETWEEN SELLER AND PURCHASER SHALL BE CONSIDERED A FINAL SETTLEMENT.

Fidelity National Title Company assumes no responsibility for the adjustment of special taxes or assessments or for the exception of these items in the conveyance. Seller(s) hereby warrants that special assessments affecting subject property, including but not limited to Homeowners Association dues or assessments, are paid in full, except as reflected on the statements of settlement.

## II. WATER AND SEWER –

Escrow agent has not adjusted. Adjustments as required will be made between parties and are not a part of settlement.

## III. HOMEOWNER'S/CONDOMINIUM ASSOCIATION

To the best of my/our knowledge, there is NO active Homeowner's Association

**Fidelity National Title Company** ☐ has ☑ has not collected or prorated any dues for this transaction and is not responsible or liable for any payment of fees not collected due to non disclosure of an Homeowner's Association prior to closing , collections or proration's of any Home Owner's Association dues, working capital reserves or transfer fees. All parties agree to hold **Fidelity National Title Company**. harmless for the collection or payment of any such fees.

**THE UNDERSIGNED, by their signatures below agree to and understand the above information.**

**October 18, 2019**

**SELLER:**

**TR El Paso Land, LLC.,a Colorado limited liability company**

[signature] 10/16/19
**Wayne Harding, Chief Financial Officer** Date

**BUYER:**

[signature] 18 Oct 19
**Duke James Houghton** Date

# AFFIDAVIT AND INDEMNITY

## TO Fidelity National Title Insurance Company

This is written evidence to you that there are **no unpaid bills**, and to the extent there may be unpaid bills that the undersigned undertakes and agrees to cause the same to be paid such that there shall be **no mechanic's or materialmen's liens** affecting the property for materials or labor furnished for the construction and erection, repairs or improvements contracted by or on behalf of the undersigned on property located at:

**5080 Bar 10 Rd , Calhan, CO 80808**

and legally described as:

**See Exhibit A attached hereto and made a part hereof.**

We further represent that there are **no public improvements affecting the property** prior to the date of closing that would give rise to a special property tax assessment against the property after the date of closing.

We further represent that there are **no pending proceedings or unsatisfied judgments of record**, in any Court, State or Federal, nor any tax liens filed or taxes assessed against us which may result in liens, and that if there are judgments, **bankruptcies**, probate proceedings, state or federal tax liens of record against parties with same or similar names, they are not against us.

We further represent that there are **no unrecorded contracts, leases, easements, or other agreements** or interests relating to said premises of which we have knowledge.

We further represent that **we are in sole possession of the real property** described herein other than lease hold estates reflected as recorded items under the subject commitment for title insurance.

We further represent that there are **no unpaid charges and assessments that could result in a lien** in favor of any association of homeowners which are provided for in any document referred to in Schedule B of Commitment referenced herein.

We further understand that any payoff figures shown on the settlement statement have been supplied to **Fidelity National Title Company** as settlement agent by the seller's/borrower's lender and are subject to confirmation upon tender of the payoff to the lender. **If the payoff figures are inaccurate, we hereby agree to immediately pay any shortage(s) that may exist.**

The undersigned affiant(s) know the matters herein stated are true and indemnifies **Fidelity National Title Insurance Company** and **Fidelity National Title Company** against loss, costs, damages and expenses of every kind incurred by it by reason of its reliance on the statements made herein.

This agreement is executed with and forms a part of the sale and/or financing of the above described premises, and is given in addition to the conveyance and/or financing of the premises in consideration for the conveyance and/or financing and forms a complete agreement by itself for any action thereon.

**SELLER:**

**TR El Paso Land, LLC.,a Colorado limited liability company**

[signature]

**Wayne Harding, Chief Financial Officer**

STATE OF **COLORADO** }ss:
COUNTY OF Arapahoe

The foregoing instrument was acknowledged, subscribed, and sworn to before me this 16 day of October, 2019 by **Wayne Harding as Chief Financial Officer of TR El Paso Land, LLC.,a Colorado limited liability company.**

[signature]

(SEAL)

Notary Public
My Commission Expires: 9/6/20

SHERRY KLEIN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19964015431
MY COMMISSION EXPIRES SEPTEMBER 6, 2020

**Exhibit A**

That portion of the South ½ of Section 11, Township 15 South, Range 63 West of the 6th P.M., El Paso County, Colorado, described as follows:

Commencing at the East ¼ Corner of said Section 11, thence S 00° 51' 49" E, 22.63 feet along the east line of the Southeast ¼ of said Section 11 to the True Point of Beginning;

Thence continue S 00° 51' 49" E, 604.11 feet along the east line of the Southeast ¼ of said Section 11;
Thence S 90° 00' 00" W, 2511.52 feet;
Thence N 00° 00' 00" W, 615.87 feet;
Thence S 89° 43' 46" E, 2502.44 feet to the True Point of Beginning,
County of El Paso,
State of Colorado

# WATER AGREEMENT

This Agreement dated October 16, 2019, is between TR El Paso Land, LLC (the "Seller"), whose address is 3025 S Parker Rd, #140, Aurora CO 80014 and Duke James Houghton ("Buyer"), whose address is 104 Massey Rd, Pueblo CO 81006

## RECITALS

A. Buyer has agreed to buy, and Seller has agreed to sell the property (the "Property") described as 5080 Bar 10 Rd, Calhan CO 80808. In addition to the Property, Seller is conveying to Buyer 0.5 acre-feet per year out of the 15 acre-feet that was excluded from the Findings and Order dated December 22, 2006, in Determination No. 1001-BD (the "Water Rights"). Seller will apply for a well permit from the Office of the State Engineer to withdraw the Water Rights.

B. All owners of property that will use portions of the 15 acre-feet of water described in recital A above, including Buyer, will be required to include their wells in a replacement plan and substitute water supply plan (the "Plans"). The purpose of the Plans is to use return flows from the initial use of the water pumped from the wells to replace out of priority depletions in the Upper Black Squirrel Creek Designated Ground Water Basin.

C. Accordingly, Buyer and Seller desire to enter into this Agreement to effectuate the foregoing recitals.

## AGREEMENT

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Seller will convey to Buyer the Water Rights, reserving to Seller the return flows associated with the pumping and use of the Water Rights. The return flows so reserved will be included in an application for approval of the Plans with the Colorado Ground Water Commission.

2. Buyer agrees to participate with Seller to complete the adjudication of the Plans, including without limitation providing information; installing any meters, recording devices or other instruments required by the State Engineer and/or Ground Water Commission; provide meter readings; describe water use; and be subject to all terms and conditions set forth in the approval of the Plans and the issuance of Buyer's well permit by the State Engineer. Nothing herein is intended to prevent Buyer from withdrawing the Water Rights each year, up to 0.5 acre-feet per year, for domestic and irrigation uses. Buyer also agrees to complete any paperwork or execute any documents necessary to complete the adjudication of the Plans.

3. Buyer acknowledges that Seller may transfer the return flows and the rights and obligations associated with the Plans to the Sunset Metropolitan District, or to a homeowner's association or other similar entity for the purpose of collecting meter readings, accounting for, and reporting all information associated with, and administering the Plans as may be required by the State Engineer and/or the Colorado Ground Water Commission. Buyer consents to such transfer, and Buyer agrees to enter into any extraterritorial service agreement with the Sunset Metropolitan District or other administration agreement with any other entity that may administer the Plans as necessary to effectuate the purpose of this Agreement. The Sunset Metropolitan District or other entity may charge a reasonable monthly or annual fee in connection with collecting meter readings, accounting, and reporting associated with administering the Plans. Such fee will not exceed Buyer's pro rata percentage of the actual costs associating with such meter reading, accounting, reporting, and administration activities, such percentage being determined by dividing the amount of the Water Rights by the total amount of water rights included in the Plans (currently 15 acre-feet).

4. Any information or payment required to be given to the parties hereunder shall be sufficiently given when sent by registered or certified mail addressed or made by hand delivery to:

Buyer:
Duke James Houghton
104 Massey Rd.
Pueblo CO 81006

Seller:
TR El Paso Land, LLC
3025 S Parker Rd #140
Aurora CO 80014

Executed as of the date first set forth above.

BUYER

By: ______________________
Duke Houghton James

SELLER

By: ______________________
Title CFO / WAYNE HARDING

# QUITCLAIM DEED

This Quitclaim Deed dated this 16th day of October, 2019, is from TR El Paso Land, LLC a Colorado limited liability company ("Grantor") to Duke James Houghton ("Grantee") whose address is 104 Massey Rd. Pueblo CO 81006.

In consideration of good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor hereby sells and quitclaims to Grantee all of Grantor's right, title and interest, if any, in and to:

1.0 acre-foot per year out of the 15 acre-feet per year of water from the Laramie-Fox Hills Aquifer that was excluded from the Findings and Order dated December 22, 2006, in Determination No. 1001-BD.

Executed as of the date first above written.

TR El Paso Land, LLC

By: [signature] WAYNE HARDING
Its: CFO

STATE OF COLORADO )
) ss.
COUNTY OF Arapahoe )

The foregoing instrument was acknowledged before me this 16 day of Oct 2019 by Wayne Harding, as the Chief Financial Officer of TR El Paso Land, LLC

My commission expires 9/6/20

Witness my hand and official seal.

SHERRY KLEIN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19964015431
MY COMMISSION EXPIRES SEPTEMBER 6, 2020

[signature]
Notary

MB0949

# WARRANTY DEED

THIS DEED, Made this 16th day of October, 2019 between

**TR El Paso Land, LLC.,a Colorado limited liability company**

of the County of Denver, State of Colorado, grantor and

DH **Duke James Houghton**

whose legal address is: 104 Massey Rd, Pueblo, CO 81006
of the County of Pueblo State of Colorado, grantee:
WITNESSETH, That the grantor for and in consideration of the sum of **Fifty-Six Thousand Five Hundred Dollars and No/100's ($56,500.00)** the receipt and sufficiency of which is hereby acknowledged, has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell, convey and confirm, unto the grantee, his heirs and assigns forever, all the real property together with improvements, if any, situate, lying and being in the County of El Paso , and State of COLORADO, described as follows:

**That portion of the South ½ of Section 11, Township 15 South, Range 63 West of the 6th P.M., El Paso County, Colorado, described as follows:**
**Commencing at the East ¼ Corner of said Section 11, thence S 00° 51' 49" E, 22.63 feet along the east line of the Southeast ¼ of said Section 11 to the True Point of Beginning;**
**Thence continue S 00° 51' 49" E, 604.11 feet along the east line of the Southeast ¼ of said Section 11;**
**Thence S 90° 00' 00" W, 2511.52 feet;**
**Thence N 00° 00' 00" W, 615.87 feet;**
**Thence S 89° 43' 46" E, 2502.44 feet to the True Point of Beginning,**
**County of El Paso,**
**State of Colorado**

Doc Fee
$ 5.65

also known by street and number as 5080 Bar 10 Rd , Calhan, CO 80808
TOGETHER with all and singular the hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all the estate, right, title, interest, claim and demand whatsoever of the grantor, either in law or equity, of, in and to the above bargained premises, with the hereditaments and appurtenances .
TO HAVE AND TO HOLD the said premises above bargained and described, with the appurtenances, unto the grantee, his heirs and assigns forever. And the grantor, for himself, his heirs, and personal representatives, does covenant, grant, bargain and agree to and with the grantee, his heirs and assigns, that at the time of the ensealing and delivery of these presents, he is well seized of the premises above conveyed, has good, sure, perfect, absolute and indefeasible estate of inheritance, in law, in fee simple, and has good right, full power and lawful authority to grant, bargain, sell and convey the same in manner and form as aforesaid, and that the same are free and clear from all former and other grants, bargains, sales, liens, taxes, assessments, encumbrances and restrictions of whatever kind or nature soever, **except for taxes for the current year, a lien but not yet due and payable, subject to statutory exceptions as defined in CRS 38-30-113, revised.**

The grantor shall and will WARRANT AND FOREVER DEFEND the above-bargained premises in the quiet and peaceable possession of the grantee his heirs and assigns, against all and every person or persons lawfully claiming the whole or any part thereof. The singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.
IN WITNESS WHEREOF, the grantor has executed this deed on the date set forth above.
**SELLER:**

**TR El Paso Land, LLC.,a Colorado limited liability company**

[signature]
**Wayne Harding, Chief Financial Officer**

STATE OF COLORADO }ss:
COUNTY OF Arapahoe

The foregoing instrument was acknowledged before me this 16 day of October, 2019 by Wayne Harding as Chief Financial Officer of TR El Paso Land, LLC.,a Colorado limited liability company.

[signature]
Notary Public
Witness my hand and official seal. My Commission expires: 9/6/20

SHERRY KLEIN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19964015431
MY COMMISSION EXPIRES SEPTEMBER 6, 2020

# EXHIBIT 36

Henderson Lane Distributions (December 20, 2019)

McKowen v. Harrington, et al.
No. 1:25-cv-00708-PAB-NRN (D. Colo.)

# Closing Disclosure

Closing Information

| | |
|---|---|
| **Date Issued** | 12/19/2019 |
| **Closing Date** | 12/20/2019 |
| **Disbursement Date** | 12/20/2019 |
| **Settlement Agent** | Fidelity National Title Company |
| **File #** | F0652337-370-LTB |
| **Property** | 5185 Henderson Lane<br>Calhan, CO 80808 |
| **Sale Price** | $57,000.00 |

Transaction Information

| | |
|---|---|
| **Borrower** | Elizabeth A. Dalzell-Wagers |
| **Seller** | **See Attachment<br>3025 S Parker Rd Ste 140<br>Aurora, CO 80014 |

## Summaries of Transactions

**SELLER'S TRANSACTION**

| | | |
|---|---|---|
| **Due to Seller at Closing** | | **$57,000.00** |
| 01 Sale Price of Property | | $57,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | | |
| **Adjustments for Items Paid by Seller in Advance** | | |
| City/Town Taxes | to | |
| County Taxes | to | |
| Assessments | to | |
| **Due from Seller at Closing** | | **$34,374.40** |
| 01 Excess Deposit | | |
| 02 Closing Costs Paid at Closing (J) | | $4,484.00 |
| 03 Existing Loan(s) Assumed or Taken Subject to | | |
| Payoff To Elevation Fund LLC | | $4,251.55 |
| **See Attachment | | $25,006.85 |
| Seller Credit | | |
| Title Insurance Premium Adjustment | | $540.00 |
| **Adjustments for Items Unpaid by Seller** | | |
| City/Town Taxes | to | |
| County Taxes | 01/01/19 to 12/20/19 | $92.00 |
| Assessments | to | |

**CALCULATION**

| | |
|---|---|
| Total Due to Seller at Closing | $57,000.00 |
| Total Due from Seller at Closing | -$34,374.40 |
| **Cash ☐ From ☒ To Seller** | **$22,625.60** |

## Contact Information

| | |
|---|---|
| **REAL ESTATE BROKER (B)** | |
| **Name** | Treasure Davis Team |
| **Address** | 5155 Academy Blvd. Suite 200<br>Colorado Springs CO 80918 |
| **CO License ID** | 100084447 |
| **Contact** | Treasure Davis |
| **Contact CO License ID** | FA40043774 |
| **Email** | homes@treasuredavis.com |
| **Phone** | (719) 268-4116 |
| **REAL ESTATE BROKER (S)** | |
| **Name** | Big Star Realty |
| **Address** | 19495 Enoch Road<br>Colorado Springs CO 80930 |
| **CO License ID** | EC150 |
| **Contact** | Susan Schooler |
| **Contact CO License ID** | ER1323433 |
| **Email** | bigstarrealty@elpasotel.net |
| **Phone** | (719) 683-7858 |
| **SETTLEMENT AGENT** | |
| **Name** | Fidelity National Title Company |
| **Address** | 1277 Kelly Johnson Blvd # 100<br>Colorado Springs CO 80920 |
| **CO License ID** | 44452 |
| **Contact** | Laurie Thompson |
| **Contact CO License ID** | 417376 |
| **Email** | lthompson@fnf.com |
| **Phone** | (719) 590-1711 |

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

# Closing Disclosure

Closing Information

| | |
|---|---|
| Date Issued | 12/19/2019 |
| Closing Date | 12/20/2019 |
| Disbursement Date | 12/20/2019 |
| Settlement Agent | Fidelity National Title Company |
| File # | F0652337-370-LTB |
| Property | 5185 Henderson Lane<br>Calhan, CO 80808 |
| Sale Price | $57,000.00 |

Transaction Information

| | |
|---|---|
| Borrower | Elizabeth A. Dalzell-Wagers |
| Seller | **See Attachment<br>3025 S Parker Rd Ste 140<br>Aurora, CO 80014 |

## Summaries of Transactions

SELLER'S TRANSACTION

| | | | |
|---|---|---|---|
| **Due to Seller at Closing** | | | **$57,000.00** |
| 01 Sale Price of Property | | | $57,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | | | |
| **Adjustments for Items Paid by Seller in Advance** | | | |
| City/Town Taxes | | to | |
| County Taxes | | to | |
| Assessments | | to | |
| **Due from Seller at Closing** | | | **$34,374.40** |
| 01 Excess Deposit | | | |
| 02 Closing Costs Paid at Closing (J) | | | $4,484.00 |
| 03 Existing Loan(s) Assumed or Taken Subject to | | | |
| 04 Payoff To Elevation Fund LLC | | | $4,251.55 |
| **See Attachment | | | $25,006.85 |
| Seller Credit | | | |
| Title Insurance Premium Adjustment | | | $540.00 |
| **Adjustments for Items Unpaid by Seller** | | | |
| City/Town Taxes | | to | |
| County Taxes | 01/01/19 | to 12/20/19 | $92.00 |
| Assessments | | to | |

| CALCULATION | |
|---|---|
| Total Due to Seller at Closing | $57,000.00 |
| Total Due from Seller at Closing | -$34,374.40 |
| **Cash ☐ From ☒ To Seller** | **$22,625.60** |

## Contact Information

| | |
|---|---|
| **REAL ESTATE BROKER (B)** | |
| Name | Treasure Davis Team |
| Address | 5155 Academy Blvd. Suite 200<br>Colorado Springs CO 80918 |
| CO License ID | 100084447 |
| Contact | Treasure Davis |
| Contact CO License ID | FA40043774 |
| Email | homes@treasuredavis.com |
| Phone | (719) 268-4116 |
| **REAL ESTATE BROKER (S)** | |
| Name | Big Star Realty |
| Address | 19495 Enoch Road<br>Colorado Springs CO 80930 |
| CO License ID | EC150 |
| Contact | Susan Schooler |
| Contact CO License ID | ER1323433 |
| Email | bigstarrealty@elpasotel.net |
| Phone | (719) 683-7858 |
| **SETTLEMENT AGENT** | |
| Name | Fidelity National Title Company |
| Address | 1277 Kelly Johnson Blvd # 100<br>Colorado Springs CO 80920 |
| CO License ID | 44452 |
| Contact | Laurie Thompson |
| Contact CO License ID | 417376 |
| Email | lthompson@fnf.com |
| Phone | (719) 590-1711 |

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

## Closing Cost Details

| Loan Costs | Seller-Paid At Closing | Seller-Paid Before Closing |
|---|---|---|
| **A. Origination Charges** | **$0.00** | |
| % of Loan Amount (Points) | | |
| **B. Services Borrower Did Not Shop For** | **$0.00** | |
| **C. Services Borrower Did Shop For** | **$0.00** | |

| Other Costs | Seller-Paid At Closing | Seller-Paid Before Closing |
|---|---|---|
| **E. Taxes and Other Government Fees** | **$13.00** | |
| Recording Fees Deed: Mortgage: | | |
| Record Statement of Authority to Fidelity National Title Company | $13.00 | |
| **F. Prepaids** | **$0.00** | |
| Homeowner's Insurance Premium (mo.) | | |
| Mortgage Insurance Premium (mo.) | | |
| Prepaid Interest ( per day from to ) | | |
| Property Taxes (mo.) | | |
| **G. Initial Escrow Payment at Closing** | **$0.00** | |
| Homeowner's Insurance per month for mo. | | |
| Mortgage Insurance per month for mo. | | |
| Property Taxes per month for mo. | | |
| Aggregate Adjustment | | |
| **H. Other** | **$4,471.00** | |
| Real Estate Commission to Treasure Davis Team | $2,280.00 | |
| Real Estate Commission to Big Star Realty | $2,280.00 | |
| Title - 110.1-06 Deletion - Standard Exceptions (OL) to Fidelity National Title Company | $75.00 | |
| Title - ALTA Owners Policy 6-17-06 to Fidelity National Title Company | -$244.00 | |
| Title - Real Estate Closing Fee to Fidelity National Title Company | $80.00 | |
| **J. TOTAL CLOSING COSTS** | $4,484.00 | |

## Closing Cost Details

| Loan Costs | Seller-Paid At Closing | Seller-Paid Before Closing |
|---|---|---|
| **A. Origination Charges** | $0.00 | |
| % of Loan Amount (Points) | | |
| **B. Services Borrower Did Not Shop For** | $0.00 | |
| **C. Services Borrower Did Shop For** | $0.00 | |

| Other Costs | Seller-Paid At Closing | Seller-Paid Before Closing |
|---|---|---|
| **E. Taxes and Other Government Fees** | $13.00 | |
| Recording Fees Deed: Mortgage: | | |
| Record Statement of Authority to Fidelity National Title Company | $13.00 | |
| **F. Prepaids** | $0.00 | |
| Homeowner's Insurance Premium (mo.) | | |
| Mortgage Insurance Premium (mo.) | | |
| Prepaid Interest ( per day from to ) | | |
| Property Taxes (mo.) | | |
| **G. Initial Escrow Payment at Closing** | $0.00 | |
| Homeowner's Insurance per month for mo. | | |
| Mortgage Insurance per month for mo. | | |
| Property Taxes per month for mo. | | |
| Aggregate Adjustment | | |
| **H. Other** | $4,471.00 | |
| Real Estate Commission to Treasure Davis Team | $2,280.00 | |
| Real Estate Commission to Big Star Realty | $2,280.00 | |
| Title - 110.1-06 Deletion - Standard Exceptions (OL) to Fidelity National Title Company | $75.00 | |
| Title - ALTA Owners Policy 6-17-06 to Fidelity National Title Company | -$244.00 | |
| Title - Real Estate Closing Fee to Fidelity National Title Company | $80.00 | |
| **J. TOTAL CLOSING COSTS** | $4,484.00 | |

## Closing Disclosure - Attachment

Closing Information

| | |
|---|---|
| **Date Issued** | 12/19/2019 |
| **Closing Date** | 12/20/2019 |
| **Disbursement Date** | 12/20/2019 |
| **Settlement Agent** | Fidelity National Title Company |
| **File #** | F0652337-370-LTB |
| **Property** | 5185 Henderson Lane<br>Calhan, CO 80808 |
| **Sale Price** | $57,000.00 |

Transaction Information

**Borrower** Elizabeth A. Dalzell-Wagers

**Closing Disclosure - Page 1 Continued**

**Buyers**

Joshua R. Wagers

**Sellers**

TR El Paso Land, LLC, a Colorado limited liability company
3025 S Parker Rd Ste 140
Aurora, CO 80014

# Closing Disclosure - Attachment

Closing Information

| | |
|---|---|
| **Date Issued** | 12/19/2019 |
| **Closing Date** | 12/20/2019 |
| **Disbursement Date** | 12/20/2019 |
| **Settlement Agent** | Fidelity National Title Company |
| **File #** | F0652337-370-LTB |
| **Property** | 5185 Henderson Lane<br>Calhan, CO 80808 |
| **Sale Price** | $57,000.00 |

Transaction Information

**Borrower** Elizabeth A. Dalzell-Wagers

**Closing Disclosure - Page 1 Continued**

**Buyers**

Joshua R. Wagers

**Sellers**

TR El Paso Land, LLC., a Colorado limited liability company
3025 S Parker Rd Ste 140
Aurora, CO 80014

# Closing Disclosure - Attachment

Closing Information

**Date Issued** 12/19/2019
**Closing Date** 12/20/2019
**Disbursement Date** 12/20/2019
**Settlement Agent** Fidelity National Title Company
**File #** F0652337-370-LTB
**Property** 5185 Henderson Lane
Calhan CO 80808

**Sale Price** $57,000.00

Transaction Information

**Borrower** Elizabeth A. Dalzell-Wagers

## Closing Disclosure - Page 1 Continued

### Payoffs

**Breakdown of Payoff on CDF Section N Line 4**

Payoff to: Elevation Fund LLC

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $4,251.55 |
| Total Payoff: | $4,251.55 |
| **Total as shown on CDF Section N Line 4** | **$4,251.55** |

**Breakdown of Payoff on CDF Section N Line 5**

Payoff to: JMW Fund LLC

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $4,251.55 |
| Total Payoff: | $4,251.55 |

Payoff to: Richland Fund LLC

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $4,251.55 |
| Total Payoff: | $4,251.55 |

Payoff to: San Gabriel Fund LLC

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $4,251.55 |
| Total Payoff: | $4,251.55 |

Payoff to: Cotswold Foundation

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $8,926.60 |
| Total Payoff: | $8,926.60 |

Payoff to: JP Brooks

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $1,050.19 |
| Total Payoff: | $1,050.19 |

Payoff to: Wayne Harding

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $2,275.41 |
| Total Payoff: | $2,275.41 |

# Closing Disclosure - Attachment

Closing Information

| | |
|---|---|
| **Date Issued** | 12/19/2019 |
| **Closing Date** | 12/20/2019 |
| **Disbursement Date** | 12/20/2019 |
| **Settlement Agent** | Fidelity National Title Company |
| **File #** | F0652337-370-LTB |
| **Property** | 5185 Henderson Lane<br>Calhan, CO 80808 |
| **Sale Price** | $57,000.00 |

Transaction Information

**Borrower** Elizabeth A. Dalzell-Wagers

## Closing Disclosure - Page 1 Continued

### Payoffs

**Breakdown of Payoff on CDF Section N Line 4**

Payoff to: Elevation Fund LLC

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $4,251.55 |
| Total Payoff: | $4,251.55 |
| **Total as shown on CDF Section N Line 4** | **$4,251.55** |

**Breakdown of Payoff on CDF Section N Line 5**

Payoff to: JMW Fund LLC

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $4,251.55 |
| Total Payoff: | $4,251.55 |

Payoff to: Richland Fund LLC

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $4,251.55 |
| Total Payoff: | $4,251.55 |

Payoff to: San Gabriel Fund LLC

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $4,251.55 |
| Total Payoff: | $4,251.55 |

Payoff to: Cotswold Foundation

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $8,926.60 |
| Total Payoff: | $8,926.60 |

Payoff to: JP Brooks

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $1,050.19 |
| Total Payoff: | $1,050.19 |

Payoff to: Wayne Harding

Loan #:

| Description | Amount |
|---|---|
| Principal Balance | $0.00 |
| Interest | $0.00 |
| Partial Payoff | $2,275.41 |
| Total Payoff: | $2,275.41 |

# Closing Disclosure - Attachment

| Closing Information | | Transaction Information | |
|---|---|---|---|
| **Date Issued** | 12/19/2019 | **Borrower** | Elizabeth A. Dalzell-Wagers |
| **Closing Date** | 12/20/2019 | | |
| **Disbursement Date** | 12/20/2019 | | |
| **Settlement Agent** | Fidelity National Title Company | | |
| **File #** | F0652337-370-LTB | | |
| **Property** | 5185 Henderson Lane<br>Calhan, CO 80808 | | |
| **Sale Price** | $57,000.00 | | |

## Closing Disclosure - Page 1 Continued

### Payoffs

| | |
|---|---|
| **Total as shown on CDF Section N Line 5** | **$25,006.85** |

## Closing Disclosure - Page 2 Continued

### Agent Commissions

| | | | |
|---|---|---|---|
| **Listing Agent** | Big Star Realty | 19495 Enoch Road<br>Colorado Springs, CO 80930 | $2,280.00 Attn: Susan Schooler |
| **Selling Agent** | Treasure Davis Team | 5155 Academy Blvd. Suite 200<br>Colorado Springs, CO 80918 | $2,280.00 Attn: Treasure Davis |

# Closing Disclosure - Attachment

Closing Information

| | |
|---|---|
| **Date Issued** | 12/19/2019 |
| **Closing Date** | 12/20/2019 |
| **Disbursement Date** | 12/20/2019 |
| **Settlement Agent** | Fidelity National Title Company |
| **File #** | F0652337-370-LTB |
| **Property** | 5185 Henderson Lane<br>Calhan, CO 80808 |
| **Sale Price** | $57,000.00 |

Transaction Information

**Borrower** Elizabeth A. Dalzell-Wagers

## Closing Disclosure - Page 1 Continued

**Payoffs**

| | |
|---|---|
| **Total as shown on CDF Section N Line 5** | **$25,006.85** |

## Closing Disclosure - Page 2 Continued

**Agent Commissions**

| | | | |
|---|---|---|---|
| **Listing Agent** | Big Star Realty | 19495 Enoch Road<br>Colorado Springs, CO 80930 | $2,280.00 Attn: Susan Schooler |
| **Selling Agent** | Treasure Davis Team | 5155 Academy Blvd. Suite 200<br>Colorado Springs, CO 80918 | $2,280.00 Attn: Treasure Davis |

## Closing Disclosure - Attachment

Closing Information

| | |
|---|---|
| **Date Issued** | 12/19/2019 |
| **Closing Date** | 12/20/2019 |
| **Disbursement Date** | 12/20/2019 |
| **Settlement Agent** | Fidelity National Title Company |
| **File #** | F0652337-370-LTB |
| **Property** | 5185 Henderson Lane<br>Calhan, CO 80808 |
| **Sale Price** | $57,000.00 |

Transaction Information

**Borrower** Elizabeth A. Dalzell-Wagers

**Closing Disclosure - Seller Signatures**

By signing, you are only confirming that you have received this form.

TR El Paso Land, LLC, a Colorado limited liability company

[signature] VP 12-19-19

Chad Harrington, VP Date

## Closing Disclosure - Attachment

| Closing Information | | Transaction Information | |
|---|---|---|---|
| **Date Issued** | 12/19/2019 | **Borrower** | Elizabeth A. Dalzell-Wagers |
| **Closing Date** | 12/20/2019 | | |
| **Disbursement Date** | 12/20/2019 | | |
| **Settlement Agent** | Fidelity National Title Company | | |
| **File #** | F0652337-370-LTB | | |
| **Property** | 5185 Henderson Lane<br>Calhan, CO 80808 | | |
| **Sale Price** | $57,000.00 | | |

### Closing Disclosure - Seller Signatures

By signing, you are only confirming that you have received this form.

TR El Paso Land, LLC, a Colorado limited liability company

[signature] VP 12-19-19

Chad Harrington, VP Date

1277 Kelly Johnson Blvd # 100, Colorado Springs, CO 80920
Phone: (719) 590-1711 Fax: (719) 531-5864

**Sellers Settlement Statement**
**FINAL**

**Escrow No:** F0652337 - 370 LTB **Close Date:** 12/20/2019 **Proration Date:** 12/20/2019 **Disbursement Date:** 12/20/2019

**Buyer(s)/Borrower(s):** Elizabeth A. Dalzell-Wagers
Joshua R. Wagers

**Seller(s):** TR El Paso Land, LLC., a Colorado limited liability company

**Property:** 5165 Henderson Lane
Calhan, CO 80808

**Brief Legal:**

| Description | Debit | Credit |
|---|---|---|
| **TOTAL CONSIDERATION:** | | |
| Sale Price of Property | | 57,000.00 |
| **PAYOFFS:** | | |
| Total Payoffs (See Attached) | 29,258.40 | |
| **ESCROW CHARGES** | | |
| Title - Real Estate Closing Fee to Fidelity National Title Company | 80.00 | |
| **TITLE CHARGES:** | | |
| ALTA Owners Policy 6-17-06 for $57,000.00 to Fidelity National Title Company<br>Premium: $296.00 | 296.00 | |
| 110.1-06 Deletion - Standard Exceptions (OL) to Fidelity National Title Company | 75.00 | |
| **ADDITIONAL CHARGES:** | | |
| Record Statement of Authority to Fidelity National Title Company | 13.00 | |
| **PRORATIONS AND ADJUSTMENTS:** | | |
| County Taxes from 1/1/2019 to 12/20/2019 based on the Annual amount of $95.13 | 92.00 | |
| **COMMISSIONS:** | | |
| Commission<br>$2,280.00 (4% of $57,000.00) to Treasure Davis Team<br>$2,280.00 (4% of $57,000.00) to Big Star Realty | 4,560.00 | |
| Sub Totals | 34,374.40 | 57,000.00 |
| Proceeds Due Seller | 22,625.60 | |
| Totals | 57,000.00 | 57,000.00 |

APPROVED AND ACCEPTED

Sales or use taxes on personal property not included. Fidelity National Title Company assumes no responsibility for the adjustment of special taxes or assessments unless they are shown on the Treasurer's Certificate of Taxes Due. The condition of title to the property is to be determined by reference to the title evidence provided by Seller or by personal investigation. The above statement of settlement is approved as of the settlement date shown above and Escrow Holder is hereby authorized to disburse as Trustee funds as indicated.

**Seller(s):**

TR El Paso Land, LLC., a Colorado limited liability company

[signature] VP
Chad Harrington, VP

**Broker/Agent:**

Big Star Realty

**Closing Agent:**

FIDELITY NATIONAL TITLE COMPANY

[signature]
by Laurie Thompson

1277 Kelly Johnson Blvd # 100, Colorado Springs, CO 80920
Phone: (719) 590-1711 Fax: (719) 531-5864

**Sellers Settlement Statement**
**FINAL**

**Escrow No:** F0652337 - 370 LTB **Close Date:** 12/20/2019 **Proration Date:** 12/20/2019 **Disbursement Date:** 12/20/2019

**Buyer(s)/Borrower(s):** Elizabeth A. Dalzell-Wagers
Joshua R. Wagers

**Seller(s):** TR El Paso Land, LLC., a Colorado limited liability company

**Property:** 5185 Henderson Lane
Calhan, CO 80808

**Brief Legal:**

| Description | Debit | Credit |
|---|---|---|
| **TOTAL CONSIDERATION:** | | |
| Sale Price of Property | | 57,000.00 |
| **PAYOFFS:** | | |
| Total Payoffs (See Attached) | 29,258.40 | |
| **ESCROW CHARGES** | | |
| Title - Real Estate Closing Fee to Fidelity National Title Company | 80.00 | |
| **TITLE CHARGES:** | | |
| ALTA Owners Policy 6-17-06 for $57,000.00 to Fidelity National Title Company Premium: $296.00 | 296.00 | |
| 110.1-06 Deletion - Standard Exceptions (OL) to Fidelity National Title Company | 75.00 | |
| **ADDITIONAL CHARGES:** | | |
| Record Statement of Authority to Fidelity National Title Company | 13.00 | |
| **PRORATIONS AND ADJUSTMENTS:** | | |
| County Taxes from 1/1/2019 to 12/20/2019 based on the Annual amount of $95.13 | 92.00 | |
| **COMMISSIONS:** | | |
| Commission<br>$2,280.00 (4% of $57,000.00) to Treasure Davis Team<br>$2,280.00 (4% of $57,000.00) to Big Star Realty | 4,560.00 | |
| Sub Totals | 34,374.40 | 57,000.00 |
| Proceeds Due Seller | 22,625.60 | |
| Totals | 57,000.00 | 57,000.00 |

APPROVED AND ACCEPTED

Sales or use taxes on personal property not included. Fidelity National Title Company assumes no responsibility for the adjustment of special taxes or assessments unless they are shown on the Treasurer's Certificate of Taxes Due. The condition of title to the property is to be determined by reference to the title evidence provided by Seller or by personal investigation. The above statement of settlement is approved as of the settlement date shown above and Escrow Holder is hereby authorized to disburse as Trustee funds as indicated.

**Seller(s):**

TR El Paso Land, LLC., a Colorado limited liability company

[signature] VP

Chad Harrington, VP

**Broker/Agent:**

Big Star Realty

**Closing Agent:**

FIDELITY NATIONAL TITLE COMPANY

[signature]

by Laurie Thompson

# FIDELITY NATIONAL TITLE COMPANY

1277 Kelly Johnson Blvd # 100, Colorado Springs, CO 80920

Phone: (719) 590-1711 Fax: (719) 531-5864

**Sellers Settlement Statement**

**FINAL**

**Escrow No:** F0652337 - 370 LTB **Close Date:** 12/20/2019 **Proration Date:** 12/20/2019 **Disbursement Date:** 12/20/2019

## Payoff Details

| Description | | Amount | Debit |
|---|---|---|---|
| Payoff to Elevation Fund LLC | | | |
| Partial Payoff | | 4,251.55 | |
| | Payoff Total | | 4,251.55 |
| Payoff to JMW Fund LLC | | | |
| Partial Payoff | | 4,251.55 | |
| | Payoff Total | | 4,251.55 |
| Payoff to Richland Fund LLC | | | |
| Partial Payoff | | 4,251.55 | |
| | Payoff Total | | 4,251.55 |
| Payoff to San Gabriel Fund LLC | | | |
| Partial Payoff | | 4,251.55 | |
| | Payoff Total | | 4,251.55 |
| Payoff to Cotswold Foundation | | | |
| Partial Payoff | | 8,926.60 | |
| | Payoff Total | | 8,926.60 |
| Payoff to JP Brooks | | | |
| Partial Payoff | | 1,050.19 | |
| | Payoff Total | | 1,050.19 |
| Payoff to Wayne Harding | | | |
| Partial Payoff | | 2,275.41 | |
| | Payoff Total | | 2,275.41 |
| | **Total as shown on Settlement Statement** | | **29,258.40** |

# FIDELITY NATIONAL TITLE COMPANY

1277 Kelly Johnson Blvd # 100, Colorado Springs, CO 80920

Phone: (719) 590-1711 Fax: (719) 531-5864

**Sellers Settlement Statement**

**FINAL**

**Escrow No:** F0652337 - 370 LTB **Close Date:** 12/20/2019 **Proration Date:** 12/20/2019 **Disbursement Date:** 12/20/2019

## Payoff Details

| Description | | Amount | Debit |
|---|---|---|---|
| Payoff to Elevation Fund LLC | | | |
| Partial Payoff | | 4,251.55 | |
| | **Payoff Total** | | 4,251.55 |
| Payoff to JMW Fund LLC | | | |
| Partial Payoff | | 4,251.55 | |
| | **Payoff Total** | | 4,251.55 |
| Payoff to Richland Fund LLC | | | |
| Partial Payoff | | 4,251.55 | |
| | **Payoff Total** | | 4,251.55 |
| Payoff to San Gabriel Fund LLC | | | |
| Partial Payoff | | 4,251.55 | |
| | **Payoff Total** | | 4,251.55 |
| Payoff to Cotswold Foundation | | | |
| Partial Payoff | | 8,926.60 | |
| | **Payoff Total** | | 8,926.60 |
| Payoff to JP Brooks | | | |
| Partial Payoff | | 1,050.19 | |
| | **Payoff Total** | | 1,050.19 |
| Payoff to Wayne Harding | | | |
| Partial Payoff | | 2,275.41 | |
| | **Payoff Total** | | 2,275.41 |
| | **Total as shown on Settlement Statement** | | **29,258.40** |

CH

CH

# FIDELITY NATIONAL TITLE COMPANY

1277 Kelly Johnson Blvd # 100, Colorado Springs, CO 80920
Phone: (719) 590-1711 Fax: (719) 531-5864

**Sellers Settlement Statement**
**FINAL**

**Escrow No:** F0652337 - 370 LTB **Close Date:** 12/20/2019 **Proration Date:** 12/20/2019 **Disbursement Date:** 12/20/2019

**Buyer(s)/Borrower(s):** Elizabeth A. Dalzell-Wagers
Joshua R. Wagers

**Seller(s):** TR El Paso Land, LLC., a Colorado limited liability company

**Property:** 5185 Henderson Lane
Calhan, CO 80808

**Brief Legal:**

| Description | Debit | Credit |
|---|---|---|
| **TOTAL CONSIDERATION:** | | |
| Sale Price of Property | | 57,000.00 |
| **PAYOFFS:** | | |
| Total Payoffs (See Attached) | 29,258.40 | |
| **ESCROW CHARGES** | | |
| Title - Real Estate Closing Fee to Fidelity National Title Company | 80.00 | |
| **TITLE CHARGES:** | | |
| ALTA Owners Policy 6-17-06 for $57,000.00 to Fidelity National Title Company Premium: $296.00 | 296.00 | |
| 110.1-06 Deletion - Standard Exceptions (OL) to Fidelity National Title Company | 75.00 | |
| **ADDITIONAL CHARGES:** | | |
| Record Statement of Authority to Fidelity National Title Company | 13.00 | |
| **PRORATIONS AND ADJUSTMENTS:** | | |
| County Taxes from 1/1/2019 to 12/20/2019 based on the Annual amount of $95.13 | 92.00 | |
| **COMMISSIONS:** | | |
| Commission<br>$2,280.00 (4% of $57,000.00) to Treasure Davis Team<br>$2,280.00 (4% of $57,000.00) to Big Star Realty | 4,560.00 | |
| Sub Totals | 34,374.40 | 57,000.00 |
| Proceeds Due Seller | 22,625.60 | |
| Totals | 57,000.00 | 57,000.00 |

APPROVED AND ACCEPTED

Sales or use taxes on personal property not included. Fidelity National Title Company assumes no responsibility for the adjustment of special taxes or assessments unless they are shown on the Treasurer's Certificate of Taxes Due. The condition of title to the property is to be determined by reference to the title evidence provided by Seller or by personal investigation. The above statement of settlement is approved as of the settlement date shown above and Escrow Holder is hereby authorized to disburse as Trustee funds as indicated.

**Seller(s):**

TR El Paso Land, LLC., a Colorado limited liability company

______________________________
Chad Harrington, VP

**Broker/Agent:**

Big Star Realty

Susan Schooler
______________________________

**Closing Agent:**

FIDELITY NATIONAL TITLE COMPANY

______________________________
by Laurie Thompson

# FIDELITY NATIONAL TITLE COMPANY

1277 Kelly Johnson Blvd # 100, Colorado Springs, CO 80920

Phone: (719) 590-1711 Fax: (719) 531-5864

**Sellers Settlement Statement**

**FINAL**

**Escrow No:** F0552337 - 370 LTB **Close Date:** 12/20/2019 **Proration Date:** 12/20/2019 **Disbursement Date:** 12/20/2019

**Buyer(s)/Borrower(s):** Elizabeth A. Dalzell-Wagers
Joshua R. Wagers

**Seller(s):** TR El Paso Land, LLC., a Colorado limited liability company

**Property:** 5165 Henderson Lane
Calhan, CO 80808

**Brief Legal:**

| Description | Debit | Credit |
|---|---|---|
| **TOTAL CONSIDERATION:** | | |
| Sale Price of Property | | 57,000.00 |
| **PAYOFFS:** | | |
| Total Payoffs (See Attached) | 29,258.40 | |
| **ESCROW CHARGES** | | |
| Title - Real Estate Closing Fee to Fidelity National Title Company | 80.00 | |
| **TITLE CHARGES:** | | |
| ALTA Owners Policy 6-17-06 for $57,000.00 to Fidelity National Title Company<br>Premium: $296.00 | 296.00 | |
| 110.1-06 Deletion - Standard Exceptions (OL) to Fidelity National Title Company | 75.00 | |
| **ADDITIONAL CHARGES:** | | |
| Record Statement of Authority to Fidelity National Title Company | 13.00 | |
| **PRORATIONS AND ADJUSTMENTS:** | | |
| County Taxes from 1/1/2019 to 12/20/2019 based on the Annual amount of $95.13 | 92.00 | |
| **COMMISSIONS:** | | |
| Commission<br>$2,280.00 (4% of $57,000.00) to Treasure Devis Team<br>$2,280.00 (4% of $57,000.00) to Big Star Realty | 4,560.00 | |
| Sub Totals | 34,374.40 | 57,000.00 |
| Proceeds Due Seller | 22,625.60 | |
| Totals | 57,000.00 | 57,000.00 |

APPROVED AND ACCEPTED

Sales or use taxes on personal property not included. Fidelity National Title Company assumes no responsibility for the adjustment of special taxes or assessments unless they are shown on the Treasurer's Certificate of Taxes Due. The condition of title to the property is to be determined by reference to the title evidence provided by Seller or by personal investigation. The above statement of settlement is approved as of the settlement date shown above and Escrow Holder is hereby authorized to disburse as Trustee funds as indicated.

**Seller(s):**

TR El Paso Land, LLC., a Colorado limited liability company

______________________________

Chad Harrington, VP

**Broker/Agent:**

Big Star Realty

Susan Schooler
______________________________

**Closing Agent:**

FIDELITY NATIONAL TITLE COMPANY

______________________________

by Laurie Thompson

The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission
(CL8-5-19) (Mandatory 7-19)

THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.

# CLOSING INSTRUCTIONS

Date: December 20, 2019
Escrow No.: F0652337-370-LTB

1. **PARTIES, PROPERTY.** **TR El Paso Land, LLC., a Colorado limited liability company**, Seller, and **Elizabeth A. Dalzell-Wagers and Joshua R. Wagers**, Buyer, engage **Fidelity National Title Company**, Closing Company, who agrees to provide closing and settlement services in connection with the Closing of the transaction for the sale and purchase of the Property

known as No. 5185 Henderson Lane, Calhan, CO 80808
Street Address City State Zip

and more fully described in the Contract to Buy and Sell Real Estate, dated October 16, 2019, including any counterproposals and amendments (Contract). The Buyer's lender may enter into separate closing instructions with the Closing Company regarding the closing of the Buyer's loan. All terms of the Contract are incorporated herein by reference. In the event of any conflict between this Agreement and the Contract, this Agreement controls, subject to subsequent amendments to the Contract or this Agreement.

2. **TITLE COMMITMENT, EXCEPTIONS AND POLICY.** Closing Company ☑ Agrees ☐ Does Not agree that: upon completion of a satisfactory title search and examination, it will furnish a Title Insurance Commitment; and it will issue a Title Insurance Policy provided that all requirements have been fulfilled. Closing Company ☑ Agrees ☐ Does Not agree to furnish copies of Exceptions.

3. **INFORMATION, CLOSING, RECORDING.** Closing Company is authorized to obtain any information necessary for the Closing. Closing Company agrees to, deliver and record all documents required or customarily recorded, and disburse all funds pursuant to the Contract that are necessary to carry out the terms and conditions of the Contract.

4. **PREPARATION OF DOCUMENTS.** The Closing Company will prepare the necessary documents to carry out the terms and conditions of the Contract to include:

4.1. **Deed.** If the deed required in the Contract is a special warranty deed, general warranty deed, bargain and sale deed (excluding a personal representative's or trustee's deed) or a quit claim deed, the deed will be prepared in accordance with the Contract by the Closing Company. However, if the Contract requires a different form of deed (e.g.: personal representative's deed or trustee's deed) or requires that the special warranty deed or general warranty deed list exceptions other than the "statutory exceptions" as defined in §38-30-113(5)(a), C.R.S., then the Buyer or Seller must provide the deed or written instructions for preparation of the deed to the Closing Company for Closing. For any Buyer or Seller provided deed or written instructions for preparation of the deed that requires a list of exceptions other than the "statutory exceptions", the Buyer and Seller will hold the Closing Company harmless for any causes of action arising out of the use of such deed. The parties acknowledge that the real estate broker working with either the Buyer or the Seller is not responsible for reviewing or approving any deed not prepared by the real estate broker.

4.2. **Bill of Sale.** If the transaction includes the sale of personal property (i.e. within the Contract or a Personal Property Agreement) from the Seller to the Buyer, Seller and Buyer authorize Closing Company to prepare the bill of sale conveying the personal property from the Seller to the Buyer as their scrivener. The Buyer and Seller understand that the bill of sale is a legal document and it is recommended that it be reviewed and approved by their respective attorneys.

4.3. **Closing Statement.** Closing Company will prepare and deliver accurate, complete and detailed closing statements to Buyer, Seller and the real estate brokers working with Buyer and Seller. Closing Statements will be prepared in accordance with the Contract and written instructions from the Buyer, Seller, lender or real estate brokers so long as such written instructions are not contrary to the Contract. If the written instructions are contrary to the Contract, the Buyer and Seller must execute an Agreement to Amend/Extend Contract.

5. **CLOSING FEE.** Closing Company will receive a fee of **$280.00** for providing closing and settlement services (Closing Fee).

6. **RELEASE, DISBURSEMENT.** Closing Company is not authorized to release any signed documents or things of value prior to receipt and disbursement of Good Funds, except as provided in §§ 10, 11 and 12.

7. **DISBURSER.** Closing Company must disburse all funds, including real estate commissions, except those funds as may be separately disclosed in writing to Buyer and Seller by Closing Company or Buyer's lender on or before Closing. All parties agree that no one other than the disburser can assure that payoff of loans and other disbursements will actually be made.

8. **SELLER'S NET PROCEEDS.** Seller will receive the net proceeds of Closing as indicated: ☐ **Cashier's Check**, at Seller's expense ☐ **Funds Electronically Transferred** (wire transfer) to an account specified by Seller, at Seller's expense ☑ **Closing Company's** trust account check.

9. **WIRE AND OTHER FRAUDS.** Wire and other frauds occur in real estate transactions. Anytime Buyer or Seller is supplying confidential information, such as social security numbers, bank account numbers, transferring or receiving funds, Buyer and Seller should provide the information in person or in another secure manner.

10. **FAILURE OF CLOSING.** If Closing or disbursement does not occur on or before Closing Date set forth in the Contract, Closing Company, except as provided herein, is authorized and agrees to return all documents, monies, and things of value to the depositing party, upon which Closing Company will be relieved from any further duty, responsibility or liability in connection with these Closing Instructions. In addition, any promissory note, deed of trust or other evidence of indebtedness signed by Buyer shall be voided by Closing Company, with the originals returned to Buyer and a copy to Buyer's lender.

11. **RETURN OF EARNEST MONEY.** Except as otherwise provided in § 12, (Earnest Money Dispute), if the Earnest Money is being held by Closing Company and has not already been returned following receipt of a Notice to Terminate or other written notice of termination, Closing Company must release the Earnest Money as directed by the written mutual instructions from the Buyer and the Seller. Such release of Earnest Money must be made within five days of Closing

The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission (CL8-5-19) (Mandatory 7-19)

THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.

# CLOSING INSTRUCTIONS

Date: December 20, 2019
Escrow No.: F0652337-370-LTB

1. **PARTIES, PROPERTY.** **TR El Paso Land, LLC., a Colorado limited liability company**, Seller, and **Elizabeth A. Dalzell-Wagers and Joshua R. Wagers**, Buyer, engage **Fidelity National Title Company**, Closing Company, who agrees to provide closing and settlement services in connection with the Closing of the transaction for the sale and purchase of the Property

known as No. 5185 Henderson Lane, Calhan, CO 80808
Street Address City State Zip

and more fully described in the Contract to Buy and Sell Real Estate, dated October 16, 2019, including any counterproposals and amendments (Contract). The Buyer's lender may enter into separate closing instructions with the Closing Company regarding the closing of the Buyer's loan. All terms of the Contract are incorporated herein by reference. In the event of any conflict between this Agreement and the Contract, this Agreement controls, subject to subsequent amendments to the Contract or this Agreement.

2. **TITLE COMMITMENT, EXCEPTIONS AND POLICY.** Closing Company ☑ Agrees ☐ Does Not agree that: upon completion of a satisfactory title search and examination, it will furnish a Title Insurance Commitment; and it will issue a Title Insurance Policy provided that all requirements have been fulfilled. Closing Company ☑ Agrees ☐ Does Not agree to furnish copies of Exceptions.

3. **INFORMATION, CLOSING, RECORDING.** Closing Company is authorized to obtain any information necessary for the Closing. Closing Company agrees to, deliver and record all documents required or customarily recorded, and disburse all funds pursuant to the Contract that are necessary to carry out the terms and conditions of the Contract.

4. **PREPARATION OF DOCUMENTS.** The Closing Company will prepare the necessary documents to carry out the terms and conditions of the Contract to include:

4.1. **Deed.** If the deed required in the Contract is a special warranty deed, general warranty deed, bargain and sale deed (excluding a personal representative's or trustee's deed) or a quit claim deed, the deed will be prepared in accordance with the Contract by the Closing Company. However, if the Contract requires a different form of deed (e.g.: personal representative's deed or trustee's deed) or requires that the special warranty deed or general warranty deed list exceptions other than the "statutory exceptions" as defined in §38-30-113(5)(a), C.R.S., then the Buyer or Seller must provide the deed or written instructions for preparation of the deed to the Closing Company for Closing. For any Buyer or Seller provided deed or written instructions for preparation of the deed that requires a list of exceptions other than the "statutory exceptions", the Buyer and Seller will hold the Closing Company harmless for any causes of action arising out of the use of such deed. The parties acknowledge that the real estate broker working with either the Buyer or the Seller is not responsible for reviewing or approving any deed not prepared by the real estate broker.

4.2. **Bill of Sale.** If the transaction includes the sale of personal property (i.e. within the Contract or a Personal Property Agreement) from the Seller to the Buyer, Seller and Buyer authorize Closing Company to prepare the bill of sale conveying the personal property from the Seller to the Buyer as their scrivener. The Buyer and Seller understand that the bill of sale is a legal document and it is recommended that it be reviewed and approved by their respective attorneys.

4.3. **Closing Statement.** Closing Company will prepare and deliver accurate, complete and detailed closing statements to Buyer, Seller and the real estate brokers working with Buyer and Seller. Closing Statements will be prepared in accordance with the Contract and written instructions from the Buyer, Seller, lender or real estate brokers so long as such written instructions are not contrary to the Contract. If the written instructions are contrary to the Contract, the Buyer and Seller must execute an Agreement to Amend/Extend Contract.

5. **CLOSING FEE.** Closing Company will receive a fee of **$280.00** for providing closing and settlement services (Closing Fee).

6. **RELEASE, DISBURSEMENT.** Closing Company is not authorized to release any signed documents or things of value prior to receipt and disbursement of Good Funds, except as provided in §§ 10, 11 and 12.

7. **DISBURSER.** Closing Company must disburse all funds, including real estate commissions, except those funds as may be separately disclosed in writing to Buyer and Seller by Closing Company or Buyer's lender on or before Closing. All parties agree that no one other than the disburser can assure that payoff of loans and other disbursements will actually be made.

8. **SELLER'S NET PROCEEDS.** Seller will receive the net proceeds of Closing as indicated: ☐ **Cashier's Check**, at Seller's expense ☐ **Funds Electronically Transferred** (wire transfer) to an account specified by Seller, at Seller's expense ☑ **Closing Company's** trust account check.

9. **WIRE AND OTHER FRAUDS.** Wire and other frauds occur in real estate transactions. Anytime Buyer or Seller is supplying confidential information, such as social security numbers, bank account numbers, transferring or receiving funds, Buyer and Seller should provide the information in person or in another secure manner.

10. **FAILURE OF CLOSING.** If Closing or disbursement does not occur on or before Closing Date set forth in the Contract, Closing Company, except as provided herein, is authorized and agrees to return all documents, monies, and things of value to the depositing party, upon which Closing Company will be relieved from any further duty, responsibility or liability in connection with these Closing Instructions. In addition, any promissory note, deed of trust or other evidence of indebtedness signed by Buyer shall be voided by Closing Company, with the originals returned to Buyer and a copy to Buyer's lender.

11. **RETURN OF EARNEST MONEY.** Except as otherwise provided in § 12, (Earnest Money Dispute), if the Earnest Money is being held by Closing Company and has not already been returned following receipt of a Notice to Terminate or other written notice of termination, Closing Company must release the Earnest Money as directed by the written mutual instructions from the Buyer and the Seller. Such release of Earnest Money must be made within five days of Closing

instructions from the Buyer and the Seller. Such release of Earnest Money must be made within five days of Closing Company's receipt of the written mutual instructions signed by both Buyer and Seller, provided the Earnest Money check has cleared.



12. **EARNEST MONEY DISPUTE.** In the event of any controversy regarding the Earnest Money (notwithstanding any termination of the Contract), provided Closing Company is holding the Earnest Money, Closing Company is not required to take any action. Closing Company, at its option and sole subjective discretion, may: (1) await any proceeding, (2) interplead all parties and deposit Earnest Money into a court of competent jurisdiction and recover court costs and reasonable attorney and legal fees, or (3) provide notice to Buyer and Seller that unless Closing Company receives a copy of a Summons and Complaint or Claim (between Buyer and Seller) containing the case number of the lawsuit (Lawsuit) within one hundred twenty days of Closing Company's notice to the parties, Closing Company is authorized to return the Earnest Money to Buyer. In the event Closing Company does receive a copy of the Lawsuit, and has not interpled the monies at the time of any Order, Closing Company must disburse the Earnest Money pursuant to the Order of the Court.

13. **SUBSEQUENT AMENDMENTS.** Any amendments to, or termination of, these Closing Instructions must be in writing and signed by Buyer, Seller and Closing Company.

14. **CHANGE IN OWNERSHIP OF WATER WELL:** Within sixty days after Closing, Closing Company will submit any required Change in Ownership form or registration of existing well form to the Division of Water Resources in the Department of Natural Resources (Division), with as much information as is available. Closing Company is not liable for delaying Closing to ensure Buyer completes any required form.

15. **FIRPTA AND COLORADO WITHHOLDING.** The Internal Revenue Service and the Colorado Department of Revenue may require Closing Company to withhold a substantial portion of the proceeds of this sale when Seller is either of the following: (a) a foreign person, or (b) will not be a Colorado resident after Closing. Seller should inquire of Seller's tax advisor to determine if withholding applies or if an exemption exists.

15.1 **FIRPTA.** Seller agrees to cooperate Buyer and Closing Company to provide any reasonably requested documents to determine Seller's foreign person status. If withholding is required, Seller authorizes Closing Company to withhold any required amount from Seller's proceeds and remit it to the Internal Revenue Service.

15.2 **Colorado Withholding.** Seller agrees to cooperate with Closing Company to provide any reasonably requested documents to determine Seller's status. If withholding is required under Colorado law, Seller authorizes Closing Company to withhold any required amount from Seller's proceeds and remit it to the Colorado Department of Revenue.

16. **ADDITIONAL PROVISIONS.** (The following additional provisions have not been approved by the Colorado Real Estate Commission.)

17. **COUNTERPARTS.** This document may be executed by each party, separately, and when each party has executed a copy, such copies taken together shall be deemed to be a full and complete contract between the parties.

18. **BROKER'S COPIES.** Closing Company must provide, to each real estate broker in this transaction, copies of all signed documents that such brokers are required to maintain pursuant to the rules of the Colorado Real Estate Commission. Closing Company is authorized by both Buyer and Seller to deliver their respective Closing Statement to one or both real estate brokers involved in this transaction.

19. **NOTICE, DELIVERY AND CHOICE OF LAW.**

19.1. **Physical Delivery and Notice.** Any document, or notice to another party must be in writing, except as provided in §19.2 and is effective when physically received by such party.

19.2 **Electronic Notice.** As an alternative to physical delivery, any notice, may be delivered in electronic form to another party at the electronic address of the recipient by facsimile, email or .

19.3. **Electronic Delivery.** Electronic Delivery of documents and notice may be delivered by: (1) email at the email address of the recipient, (2) a link or access to a website or serer, provided the recipient receives the information necessary to access the documents or (3) facsimile at the facsimile number (Fax No.) of the recipient.

19.4. **Choice of Law.** These Closing Instructions and all disputes arising hereunder are governed by and construed in accordance with the laws of the State of Colorado that would be applicable to Colorado Residents who sign a contract in Colorado for real property located in Colorado.

**SELLER:**

**TR El Paso Land, LLC., a Colorado limited liability company**

[signature] VP — 12-19-19
Chad Harrington, VP — Date

**BUYERS:**

[signature] — 12/20/19
Elizabeth A. Dalzell-Wagers — Date

[signature] — 12-20-19
Joshua R. Wagers — Date

instructions from the Buyer and the Seller. Such release of Earnest Money must be made within five days of Closing Company's receipt of the written mutual instructions signed by both Buyer and Seller, provided the Earnest Money check has cleared.



12. **EARNEST MONEY DISPUTE.** In the event of any controversy regarding the Earnest Money (notwithstanding any termination of the Contract), provided Closing Company is holding the Earnest Money, Closing Company is not required to take any action. Closing Company, at its option and sole subjective discretion, may: (1) await any proceeding, (2) interplead all parties and deposit Earnest Money into a court of competent jurisdiction and recover court costs and reasonable attorney and legal fees, or (3) provide notice to Buyer and Seller that unless Closing Company receives a copy of a Summons and Complaint or Claim (between Buyer and Seller) containing the case number of the lawsuit (Lawsuit) within one hundred twenty days of Closing Company's notice to the parties, Closing Company is authorized to return the Earnest Money to Buyer. In the event Closing Company does receive a copy of the Lawsuit, and has not interpled the monies at the time of any Order, Closing Company must disburse the Earnest Money pursuant to the Order of the Court.

13. **SUBSEQUENT AMENDMENTS.** Any amendments to, or termination of, these Closing Instructions must be in writing and signed by Buyer, Seller and Closing Company.

14. **CHANGE IN OWNERSHIP OF WATER WELL:** Within sixty days after Closing, Closing Company will submit any required Change in Ownership form or registration of existing well form to the Division of Water Resources in the Department of Natural Resources (Division), with as much information as is available. Closing Company is not liable for delaying Closing to ensure Buyer completes any required form.

15. **FIRPTA AND COLORADO WITHHOLDING.** The Internal Revenue Service and the Colorado Department of Revenue may require Closing Company to withhold a substantial portion of the proceeds of this sale when Seller is either of the following: (a) a foreign person, or (b) will not be a Colorado resident after Closing. Seller should inquire of Seller's tax advisor to determine if withholding applies or if an exemption exists.

15.1 **FIRPTA.** Seller agrees to cooperate Buyer and Closing Company to provide any reasonably requested documents to determine Seller's foreign person status. If withholding is required, Seller authorizes Closing Company to withhold any required amount from Seller's proceeds and remit it to the Internal Revenue Service.

15.2 **Colorado Withholding.** Seller agrees to cooperate with Closing Company to provide any reasonably requested documents to determine Seller's status. If withholding is required under Colorado law, Seller authorizes Closing Company to withhold any required amount from Seller's proceeds and remit it to the Colorado Department of Revenue.

16. **ADDITIONAL PROVISIONS.** (The following additional provisions have not been approved by the Colorado Real Estate Commission.)

17. **COUNTERPARTS.** This document may be executed by each party, separately, and when each party has executed a copy, such copies taken together shall be deemed to be a full and complete contract between the parties.

18. **BROKER'S COPIES.** Closing Company must provide, to each real estate broker in this transaction, copies of all signed documents that such brokers are required to maintain pursuant to the rules of the Colorado Real Estate Commission. Closing Company is authorized by both Buyer and Seller to deliver their respective Closing Statement to one or both real estate brokers involved in this transaction.

19. **NOTICE, DELIVERY AND CHOICE OF LAW.**

19.1. **Physical Delivery and Notice.** Any document, or notice to another party must be in writing, except as provided in §19.2 and is effective when physically received by such party.

19.2 **Electronic Notice.** As an alternative to physical delivery, any notice, may be delivered in electronic form to another party at the electronic address of the recipient by facsimile, email or .

19.3. **Electronic Delivery.** Electronic Delivery of documents and notice may be delivered by: (1) email at the email address of the recipient, (2) a link or access to a website or serer, provided the recipient receives the information necessary to access the documents or (3) facsimile at the facsimile number (Fax No.) of the recipient.

19.4. **Choice of Law.** These Closing Instructions and all disputes arising hereunder are governed by and construed in accordance with the laws of the State of Colorado that would be applicable to Colorado Residents who sign a contract in Colorado for real property located in Colorado.

**SELLER:**

**TR El Paso Land, LLC., a Colorado limited liability company**

[signature] VP 12-18-19
Chad Harrington, VP
Date

**BUYERS:**

[signature] 12/20/19
Elizabeth A. Dalzell-Wagers
Date

[signature] 12-20-19
Joshua R. Wagers
Date

| | |
|---|---|
| Closing Company's Name | Fidelity National Title Company |
| | Authorized Signature — Closer (Title) — 12-20-19 (Date) |
| Address: | 1277 Kelly Johnson Blvd # 100<br>Colorado Springs, CO 80920 |
| Phone No.: | (719) 590-1711 |
| Fax No.: | (719) 531-5864 |
| Email Address: | |



**Fidelity National Title Company**
F0652337 Laurie Thompson

**TAXES/WATER/SEWER/HOA AGREEMENT**

**PROPERTY: 5185 Henderson Lane, Calhan, CO 80808**

**I. TAXES, TAX PRO-RATIONS**

Purchaser has received, as of this date , a credit from seller for taxes for the current year. This pro-ration was calculated based on:

Most recent Mill Levy and the most recent Assessed Value; adjusted by any applicable qualifying seniors tax exemption or qualifying disabled veteran exemption

THIS ADJUSTMENT BETWEEN SELLER AND PURCHASER SHALL BE CONSIDERED A FINAL SETTLEMENT.

Fidelity National Title Company assumes no responsibility for the adjustment of special taxes or assessments or for the exception of these items in the conveyance. Seller(s) hereby warrants that special assessments affecting subject property, including but not limited to Homeowners Association dues or assessments, are paid in full, except as reflected on the statements of settlement.

**II. WATER AND SEWER –**

Escrow agent has not adjusted. Adjustments as required will be made between parties and are not a part of settlement.

**III. HOMEOWNER'S/CONDOMINIUM ASSOCIATION**

To the best of my/our knowledge, there is NO active Homeowner's Association

**Fidelity National Title Company** ☐ has ☑ has not collected or prorated any dues for this transaction and is not responsible or liable for any payment of fees not collected due to non disclosure of an Homeowner's Association prior to closing , collections or proration's of any Home Owner's Association dues, working capital reserves or transfer fees. All parties agree to hold **Fidelity National Title Company**. harmless for the collection or payment of any such fees.

**THE UNDERSIGNED, by their signatures below agree to and understand the above information.**

**SELLER:** **BUYERS:**

**TR El Paso Land, LLC., a**

| | |
|---|---|
| Closing Company's Name | Fidelity National Title Company |
| | Authorized Signature — Title: Closer — Date: 12-20-19 |
| Address: | 1277 Kelly Johnson Blvd # 100<br>Colorado Springs, CO 80920 |
| Phone No.: | (719) 590-1711 |
| Fax No.: | (719) 531-5864 |
| Email Address: | |



**Fidelity National Title Company**
F0652337 Laurie Thompson

**TAXES/WATER/SEWER/HOA AGREEMENT**

**PROPERTY: 5185 Henderson Lane, Calhan, CO 80808**

**I. TAXES, TAX PRO-RATIONS**

Purchaser has received, as of this date , a credit from seller for taxes for the current year. This pro-ration was calculated based on:

Most recent Mill Levy and the most recent Assessed Value; adjusted by any applicable qualifying seniors tax exemption or qualifying disabled veteran exemption

THIS ADJUSTMENT BETWEEN SELLER AND PURCHASER SHALL BE CONSIDERED A FINAL SETTLEMENT.

Fidelity National Title Company assumes no responsibility for the adjustment of special taxes or assessments or for the exception of these items in the conveyance. Seller(s) hereby warrants that special assessments affecting subject property, including but not limited to Homeowners Association dues or assessments, are paid in full, except as reflected on the statements of settlement.

**II. WATER AND SEWER –**

Escrow agent has not adjusted. Adjustments as required will be made between parties and are not a part of settlement.

**III. HOMEOWNER'S/CONDOMINIUM ASSOCIATION**

To the best of my/our knowledge, there is NO active Homeowner's Association

**Fidelity National Title Company** ☐ has ☒ has not collected or prorated any dues for this transaction and is not responsible or liable for any payment of fees not collected due to non disclosure of an Homeowner's Association prior to closing , collections or proration's of any Home Owner's Association dues, working capital reserves or transfer fees. All parties agree to hold **Fidelity National Title Company**, harmless for the collection or payment of any such fees.

**THE UNDERSIGNED, by their signatures below agree to and understand the above information.**

**SELLER:** **BUYERS:**

**TR El Paso Land, LLC, a**

Colorado limited liability company

Chad Harrington, VP — Date: 12-19-19

Elizabeth A. Dalzell-Wagers — Date: 12/20/19

Joshua R. Wagers — Date: 12-20-19



## TD-1000
## Confidential Document

This form provides essential market information to the county assessor to ensure accurate, fair and uniform assessments for all property. **This document is not recorded, is kept confidential, and is not available for public inspection.**

**This declaration must be completed and signed by either the grantor (seller) or grantee (buyer).** Questions 1, 2, 3, and 4 may be completed (prefilled) by a third party, such as a title company or closing agent, familiar with details of the transaction. The signatory should confirm accuracy before signing.

This form is required when conveyance documents are presented for recording. If this form is not completed and submitted, the county assessor may send notice. If the completed and signed form is not returned to the assessor within 30 days of notice, the assessor may impose a penalty of $25.00 or 0.025% (0.00025) of the sale price, whichever is greater.

Additional information as to the purpose, requirements, and level of confidentiality regarding this form are outlined in Colorado Revised Statutes, sections 39-14-102, 39-5-121.5, and 39-13-102.

1. Physical Address and/or legal description of the real property sold: Please do not use P.O. Box numbers.
   5185 Henderson Lane, Calhan, CO 80808

2. Type of property purchased: ☐ Single Family Residential ☐ Townhome ☐ Condominium ☐ Multi-Unit Residential ☐ Commercial ☐ Industrial ☐ Agricultural ☐ Mixed Use ☒ Vacant Land ☐ Other ______

3. Date of closing: 12/20/2019 (mm/dd/yyyy) Date of contract: 10/16/2019 (mm/dd/yyyy)

Colorado limited liability company

Chad Harrington, VP — Date: 12-19-19

Elizabeth A. Dalzell Wagers — Date: 12/20/19

Joshua R. Wagers — Date: 12-20-19



## TD-1000
## Confidential Document

This form provides essential market information to the county assessor to ensure accurate, fair and uniform assessments for all property. **This document is not recorded, is kept confidential, and is not available for public inspection.**

**This declaration must be completed and signed by either the grantor (seller) or grantee (buyer).** Questions 1, 2, 3, and 4 may be completed (prefilled) by a third party, such as a title company or closing agent, familiar with details of the transaction. The signatory should confirm accuracy before signing.

This form is required when conveyance documents are presented for recording. If this form is not completed and submitted, the county assessor may send notice. If the completed and signed form is not returned to the assessor within 30 days of notice, the assessor may impose a penalty of $25.00 or 0.025% (0.00025) of the sale price, whichever is greater.

Additional information as to the purpose, requirements, and level of confidentiality regarding this form are outlined in Colorado Revised Statutes, sections 39-14-102, 39-5-121.5, and 39-13-102.

1. Physical Address and/or legal description of the real property sold: Please do not use P.O. Box numbers.
   5185 Henderson Lane, Calhan, CO 80808

2. Type of property purchased: ☐ Single Family Residential ☐ Townhome ☐ Condominium ☐ Multi-Unit Residential ☐ Commercial ☐ Industrial ☐ Agricultural ☐ Mixed Use ☒ Vacant Land ☐ Other ______

3. Date of closing: 12/20/2019 (mm/dd/yyyy) Date of contract: 10/16/2019 (mm/dd/yyyy)

4. $ 57,000.00 — Total sale price: Include all real and personal property
$ ____ Contracted price (if different from final sale price)

5. List any personal property included in the transaction that materially impact the total sale price. Personal property may include, but is not limited to: machinery or equipment, vehicles, exceptional appliances, electronic devises, furniture, or anything that would not typically transfer with the real property (attach additional pages if necessary).

| Description | Approximate Value |
|---|---|
| | $ |
| | $ |
| | $ |
| Personal Property Total: | $ |

If no personal property is listed, the entire purchase price will be assumed to be for the real property.

6. Did the total sale price include a trade or exchange of additional real or personal property? ☒ No ☐ Yes
If Yes, approximate value of the goods or services as of the date of closing: $ ____
If Yes, does this transaction involve a trade under IRS Code Section 1031? ☐ No ☐ Yes

7. Was 100% interest in the real property purchased? ☐ No ☒ Yes
Mark "No" if only a partial interest is being purchased. If No, interest purchased ____ %

8. Is this a transaction between related parties or acquaintances? This includes persons connected by blood or marriage, or business affiliates, or those acquainted prior to the transaction. ☒ No ☐ Yes

9. Please mark type of sale: ☐ Builder (new constructions ☐ Private (For Sale By Owner) ☒ Public (MLS or Broker Representation ☐ Other ____

10. Mark any of the following that apply to the condition of the improvements at the time of purchase.
☐ New ☐ Excellent ☐ Good ☐ Average ☐ Fair ☐ Poor ☐ Salvage.

11. Type of financing: (mark all that apply)
- ☐ None (all cash or cash equivalent)
- ☒ New/Mortgage Lender (government-backed or conventional bank loan)
- ☐ New/Private Third Party (nonconventional lender, e.g., relative, friend, or acquaintance)
- ☐ Seller (buyer obtained a mortgage directly from the seller)
- ☐ Assumed (buyer assumed an existing mortgage)
- ☐ Combination or Other: Please explain ____

12. Total amount financed $ 47,402.42

13. Terms:
- ☐ Variable; Starting interest rate ____ % ☒ Fixed; Interest rate 6.960 %
- ☐ Length of time 19 years
- ☐ Balloon payment ☐ No ☐ Yes If yes, amount $ ____ Due date: ____



14. Mark any that apply: ☐ Seller assisted down payments ☐ Seller concessions ☐ Special terms or financing
If marked, please specify terms: ____

15. Was an independent appraisal obtained in conjunction with this transaction? ☒ No ☐ Yes

For properties **OTHER THAN** Residential (Residential is defined as: single family detached, townhomes, apartments and condominiums) please complete questions 16-18, if applicable.

16. Did the purchase price include a franchise or license fee? ☒ No ☐ Yes
If yes, franchise or license fee value $ ____

17. Did the purchase price involve an installment land contract? ☒ No ☐ Yes

4. $ 57,000.00 ________________ $ ________________
Total sale price: Include all real and personal property — Contracted price (if different from final sale price)

5. List any personal property included in the transaction that materially impact the total sale price.
Personal property may include, but is not limited to: machinery or equipment, vehicles, exceptional appliances, electronic devises, furniture, or anything that would not typically transfer with the real property (attach additional pages if necessary).

| Description | Approximate Value |
|---|---|
| ________________ | $ ________ |
| ________________ | $ ________ |
| ________________ | $ ________ |
| Personal Property Total: | $ ________ |

If no personal property is listed, the entire purchase price will be assumed to be for the real property.

6. Did the total sale price include a trade or exchange of additional real or personal property? ☒ No ☐ Yes
If Yes, approximate value of the goods or services as of the date of closing: $ ________
If Yes, does this transaction involve a trade under IRS Code Section 1031? ☐ No ☐ Yes

7. Was 100% interest in the real property purchased? ☐ No ☒ Yes
Mark "No" if only a partial interest Is being purchased. If No, interest purchased ______ %

8. Is this a transaction between related parties or acquaintances? This includes persons connected by blood or marriage, or business affiliates, or those acquainted prior to the transaction. ☒ No ☐ Yes

9. Please mark type of sale: ☐ Builder (new constructions ☒ Public (MLS or Broker Representation
☐ Private (For Sale By Owner) ☐ Other ________________

10. Mark any of the following that apply to the condition of the improvements at the time of purchase.
☐ New ☐ Excellent ☐ Good ☐ Average ☐ Fair ☐ Poor ☐ Salvage.

11. Type of financing: (mark all that apply)
☐ None (all cash or cash equivalent)
☒ New/Mortgage Lender (government-backed or conventional bank loan)
☐ New/Private Third Party (nonconventional lender, e.g., relative, friend, or acquaintance)
☐ Seller (buyer obtained a mortgage directly from the seller)
☐ Assumed (buyer assumed an existing mortgage)
☐ Combination or Other: Please explain ________________

12. Total amount financed $ 47,402.42

13. Terms:
☐ Variable; Starting interest rate ________ % ☒ Fixed; Interest rate 6.960 %
☐ Length of time 19 ________ years
☐ Balloon payment ☐ No ☐ Yes If yes, amount $ ________ Due date: ________



14. Mark any that apply: ☐ Seller assisted down payments ☐ Seller concessions ☐ Special terms or financing
If marked, please specify terms: ________________

15. Was an independent appraisal obtained in conjunction with this transaction? ☒ No ☐ Yes

**For properties OTHER THAN Residential** (Residential is defined as: single family detached, townhomes, apartments and condominiums) please complete questions 16-18, if applicable.

16. Did the purchase price include a franchise or license fee? ☒ No ☐ Yes
If yes, franchise or license fee value $ ________________

17. Did the purchase price involve an installment land contract? ☒ No ☐ Yes

☒ No ☐ Yes

If yes, date of contract ______________________

18. If this is vacant land, was an on-site inspection conducted by the buyer prior to the closing? ☐ No ☒ Yes
Please include any additional information concerning the transaction and price paid that you feel is important:

______________________

______________________

**BUYERS:**

| | | | |
|---|---|---|---|
| Elizabeth A Dalzell-Wagers (signature) | 12/20/19 | Joshua R. Wagers (signature) | 12-20-19 |
| Elizabeth A. Dalzell-Wagers | Date | Joshua R. Wagers | Date |

Buyer Mailing Address: Future correspondence (tax bills, property valuations, etc.) regarding this property should be mailed to:

| | | | |
|---|---|---|---|
| 6515 Falcon Springs Pt. | Peyton | CO | 80831 |
| Address (mailing) | City | State | Zip Code |

| | |
|---|---|
| | |
| Daytime Phone | Email address |

Contact information is kept confidential, for County Assessor and Treasurer use only, to contact buyer with questions regarding this form, property valuation, or property tax information.

☒ No ☐ Yes

If yes, date of contract ____________________

18. If this is vacant land, was an on-site inspection conducted by the buyer prior to the closing? ☐ No ☒ Yes
Please include any additional information concerning the transaction and price paid that you feel is important:

____________________

____________________

**BUYERS:**

| | | | |
|---|---|---|---|
| Elizabeth A. Dalzell-Wagers | 12/20/19 Date | Joshua R. Wagers | 12-20-19 Date |

Buyer Mailing Address: Future correspondence (tax bills, property valuations, etc.) regarding this property should be mailed to:

| | | | |
|---|---|---|---|
| 6515 Falcon Springs Pt. | Peyton | CO | 80831 |
| Address (mailing) | City | State | Zip Code |

Daytime Phone ____________________ Email address ____________________

Contact information is kept confidential, for County Assessor and Treasurer use only, to contact buyer with questions regarding this form, property valuation, or property tax information.

# WATER AGREEMENT

This Agreement dated December 6th, 2019, is between TR El Paso Land LLC (the "Seller"), whose address is 3025 S. Parker Rd. #140, Aurora, CO 80014, and Elizabeth A. Dalzell-Wagers and Joshua Wagers ("Buyer"), whose address is 6515 Falcon Springs Pt., Peyton, CO 80831.

## RECITALS

A. Buyer has agreed to buy, and Seller has agreed to sell the property (the "Property") described on the attached Exhibit A. In addition to the Property, Seller is conveying to Buyer 0.5 acre-feet per year out of the 15 acre-feet that was excluded from the Findings and Order dated December 22, 2006, in Determination No. 1001-BD (the "Water Rights"). Seller will apply for a well permit from the Office of the State Engineer to withdraw the Water Rights.

B. All owners of property that will use portions of the 15 acre-feet of water described in recital A above, including Buyer, will be required to include their wells in a replacement plan and substitute water supply plan (the "Plans"). The purpose of the Plans is to use return flows from the initial use of the water pumped from the wells to replace out of priority depletions in the Upper Black Squirrel Creek Designated Ground Water Basin.

C. Accordingly, Buyer and Seller desire to enter into this Agreement to effectuate the foregoing recitals.

## AGREEMENT

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Seller will convey to Buyer the Water Rights, reserving to Seller the return flows associated with the pumping and use of the Water Rights. The return flows so reserved will be included in an application for approval of the Plans with the Colorado Ground Water Commission.

2. Buyer agrees to participate with Seller to complete the adjudication of the Plans, including without limitation providing information; installing any meters, recording devices or other instruments required by the State Engineer and/or Ground Water Commission; provide meter readings; describe water use; and be subject to all terms and conditions set forth in the approval of the Plans and the issuance of Buyer's well permit by the State Engineer. Nothing herein is intended to prevent Buyer from withdrawing the Water Rights each year, up to 0.5 acre-

# EXHIBIT 37

TR El Paso Land Bank Statement (January 31, 2020)

McKowen v. Harrington, et al.
No. 1:25-cv-00708-PAB-NRN (D. Colo.)

First Fidelity Bank
PO Box 32282
Oklahoma City OK 73123-0482

FDIC

EQUAL HOUSING LENDER

Date 1/31/20 Page 1
Account Number 2653057727

13982903

TR El Paso Land LLC
4400 N Scottsdale Road
Ste 9-289
Scottsdale AZ 85251

# Checking Accounts

Account Title: TR El Paso Land LLC

**Commercial Checking** **0**

| | | | |
|---|---|---|---|
| Account Number | 2653057727 | Statement Dates 1/01/20 thru | 2/02/20 |
| Previous Balance | 104,966.68 | Days This Statement Period | 33 |
| 1 Deposits/Credits | 22,585.81 | Average Ledger | 119,577.60 |
| 3 Checks/Debits | 72,554.49 | Average Collected | 119,577.60 |
| Service Charge | .00 | | |
| Interest Paid | .00 | | |
| Current Balance | 54,998.00 | | |

## Deposits and Additions

| Date | Description | | Amount |
|---|---|---|---|
| 1/03 | Wire Transfer Credit<br>ESCROW TRUST ACCOUNT, FKA SECU<br>DENVER CO US 80246-2759<br>5075 HENDERSON PROPADDR:5075 H<br>20200103I1B7033R009731<br>01031238FT01 | FIDELITY NATIONAL TITLE COMPAN<br>950 S CHERRY ST STE 1510<br>FN:F0656349 PO:2653057727 PROC<br>SON LANE<br>20200103MMQFMPEL000031 | 22,585.81 |

## Withdrawals and Deductions

| Date | Description | | Amount |
|---|---|---|---|
| 1/03 | Wire Transfer Fee | | 12.00- |
| 1/31 | Paper Statement Fee | | 2.00- |
| 1/31 | Phone/In-Person Transfer | per Chad | 72,540.49- |

## Daily Balance Information

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 1/01 | 104,966.68 | 1/03 | 127,540.49 | 1/31 | 54,998.00 |

Please call us at Customer Service
(405) 416-2223 OKC • (918) 728-6345 Tulsa
Arizona (602) 912-5555
1-800-299-7047 Nationwide
8:00 AM - 7:00 PM CT • Monday - Friday
8:00 AM - 1:00 PM CT • Saturday

Please write us at
First Fidelity Bank
Account Services Center
P.O. Box 32282
Oklahoma City, Oklahoma 73123-0482
www.FFB.com

# Lost or Stolen Check Card 1-800-791-2525

Change of Address: Please call the telephone number listed above or write to us at the address below to tell us about a change of address.

Balancing Your Account: Before you start, be sure to enter in your account register any interest earned, automatic transactions or bank charges, including those in this statement.

**A. Enter deposits not shown on this statement.**

| Date of Deposit | Amount |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total A** | |

**B. Enter all checks, withdrawals and bank charges not shown on this or any prior statements.**

| Outstanding Item | Amount |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total B** | |

**C. Follow instructions below to compare transactions recorded on your statement with those in your account register.**

**New Balance Shown on other side** ____________

**Plus (+) Total A** ____________

**Equals =** ____________

**Minus (-) Total B** ____________

**Equals (=) Your Current register balance** ____________

### CONSUMER CREDIT LINE INFORMATION
### IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us (on a separate sheet) as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information: (1) your name and account number. (2) The dollar amount of the suspected error. (3) Describe the error and explain if you can, why you believe there is an error. If you need information, describe the item you are unsure about. You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount in question.

### BALANCE CALCULATION

We figure the Finance Charge on your account by applying the periodic rate to the "average daily balance" of you account including current transactions. To get the "average daily balance" we take the beginning balance of your account each day, add any new advances and subtract any payments or credits and unpaid Finance Charges. This gives us the daily balance. Then we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily balance."

### ELECTRONIC TRANSFER RIGHTS SUMMARY FOR CONSUMERS
### IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFER, PLEASE FOLLOW THESE SIMPLE INSTRUCTIONS:

If you need more information about a transfer on your statement or receipt, or you think your statement or receipt is incorrect, you need to contact us no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Telephone or write us at the address listed above.

- Tell us your name and account number.
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you need more information.
- Tell us the dollar amount of the suspected error.
- If you tell us orally, we may require that you send us your complaint in writing within 10 business days.
- We will determine whether an error occurred within 10 business days (20 business days if the notice of error involves an electronic fund transfer to or from the account within 30 days after the first deposit to the account was made) after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days (90 days if the notice of error involves an electronic fund transfer that: (1) was not initiated within a state; (2) resulted from a point-of-sale debit card transaction; or (3) occurred within 30 days after the first deposit to the account was made) to investigate your complaint or question. If we decide to do this, we will credit your account within 10 business days (20 business days if the notice of error involves an electronic fund transfer to or from the account with 30 days after the first deposit to the account was made) for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account.
- We will tell you the results within three business days after completing our investigation. If we decide that there was no error, we will send you a written explanation.
- You may ask for copies of the documents that we used in our investigation.

### NON-VISA TRANSACTIONS

You may use your VISA Check Card to initiate both VISA debit transactions and non-VISA debit transactions. If you do not enter a PIN, transactions may be processed as either a VISA Check Card transaction or a pin-less transaction on the PULSE network. Merchants must provide you with a clear way of choosing to make a VISA Check Card transaction if they support non-VISA (pin-less) debit transactions. Please be advised that should you choose to use PULSE when making a transaction without a PIN, certain rewards and protections or rights applicable only to VISA Check Card transactions as described in your cardholder agreement will not apply to Non-VISA (pin-less) transactions.

# EXHIBIT 38

Fenner & Beane Email (March 24, 2020)

McKowen v. Harrington, et al.
No. 1:25-cv-00708-PAB-NRN (D. Colo.)

Friday, May 9, 2025 at 6:32:13 AM Mountain Daylight Time

**Subject:** old-InvoiceBook.pdf
**Date:** Tuesday, March 24, 2020 at 5:06:51 PM Mountain Daylight Time
**From:** Greg Harrington
**To:** John McKowen
**Attachments:** old-InvoiceBook.pdf, FENNER & BEANE LOGO-xsmall.jpg

Greg Harrington
gh@fennerbeane.com

FENNER & BEANE
MERCHANT BANKERS
*Since 1919. A Division of IFTC.*

SECURITY NOTICE: This message (including any and all attachments) is covered by the Electronic Communications Privacy Act 18 U.S.C. 2510-2521, is confidential and legally privileged. In addition, the information contained in this E-mail message is personal and confidential and is intended for a specific individual (s) and purpose and therefore is protected from disclosure under the Gramm-Leach-Bliley Act. The sender is not a licensed securities broker-dealer. This E-mail message is neither a solicitation of investment nor and offer to sell and/or buy securities. If your are not the intended recipient, you should delete this message immediately and/or any of its attachments and are hereby notified that any disclosure, copying, or distribution of this message and/or its attachments, or the taking of any action based on it, is STRICTLY PROHIBITED as noted above. If you have received this communication in error, please notify the sender and erase this e-mail message immediately. This electronic communication is covered by the Electronic Communications Privacy Act of 1986, codified at 18 U.S.C. §§ 1367, 2510-2521, 2701-2710, 3121-3126.Also, see: https://it.ojp.gov/PrivacyLiberty/authorities/statutes/1285 Gramm-Leach-Bliley Act15 USC, Subchapter I, Sec. 6801-6809. All inquiries are to be directed to Greg Harrington

info@fennerbeane.com

FENNER & BEANE
*Part of the Investors Fiduciary Group*

Home About Us Liquidity Alternatives Contact Us

OUR STORY

# What We Do

Founded in 1919, Fenner & Beane, LLLP. is private investment firm active in London, Winnipeg and San Diego. We are actively engaged in a continuous investment program of acquiring companies with strong balance sheets, experienced management teams and demonstrated operating results. In certain cases, we consider companies in turn-around situations or involved companies in Chapter 11 proceedings, if actions can be taken to correct or improve the situation.

Fenner & Beane, LLLP. wishes to maintain an active dialogue with other investment pools, investment bankers, financial institutions, venture capitalists, insurance companies, pension fund managers, finders, business brokers, accountants, attorneys, and other members of the financial community.

info@fennerbeane.com

FENNER & BEANE
*Part of the Investors Fiduciary Group*



# GREG HARRINGTON, Managing Director

Mr. Greg Harrington has over 25 years of experience in corporate finance. After eight years in the merger & acquisition field with a prominent wall street firm, Mr. Harrington has been a principal or co-investor in acquisitions of private/public companies with combined sales in excess of $500MM and has divested these companies to Fortune 1000 companies to London AIM listed company.

He is has acquired in excess of $150,000,000.00 of Commercial and Residential real estate in North America and Mexico. He has served as Chairman of the Board for the largest Tobacco/Confectionery Company (Sales $160,000,000). The company received the Arizona Corporate Excellence Award 2005 as one of the top 50 private companies. Mr. Harrington was the board member and majority shareholder of a publicly-traded REIT, Director and Chairman of one of top 10 independent Mortgage banking firm (AMEX) in Southern California, and CEO of one of the largest engine re-manufactures in the west coast.

Mr. Harrington is the Principle, Officer, or Director of several public companies that have traded on OTC:BB/AMEX/Nasdaq exchanges. He has been, and continues to serve as an Officer and/or Director of private and public companies, both in the North America and abroad.

He has established excellent relationships with several large investment funds, hedge funds and private equity located in North America, Europe and the Mexico, and has engineered capital formation in excess of $250,000,000. In the current marketplace, Mr. Harrington has concentrated his efforts to the acquisition of small to mid-market private low-tech manufacturing and wholesale distribution companies (Min. Sales $5.0MM to 200MM), as well as going private offers for small-cap public companies and co-investment with management or CEO led buyouts of private companies.

Additionally, Mr. Harrington has over four decades of experience in agricultural operations farming and cattle operations and continues to be active today. For over a decade, he has played an active role in the all-natural Canadian Industrial Hemp industry, has been instrumental in securing capital and patents in revolutionizing the hemp industry, and has been in the forefront of CBD and extraction process. Mr. Harrington was a founder and one of the first investors in a Canadian-based company that processes hemp to create environmentally safe hemp animal products, and a pioneer investor in the Medical Marijuana industry in Colorado, having owned grows and dispensaries. He is also the CEO of Two Rivers Water & Farming Company (OTCQB:

WIKIPEDIA
The Free Encyclopedia

# Fenner & Beane

**Fenner & Beane** was a brokerage firm based in New Orleans, Louisiana. Founded in 1916 as Fenner Gatling & Beane, it was renamed in 1919. The firm was founded by the Beane Brothers, who were New Orleans cotton merchants, to manage their exposure to fluctuations in commodity prices.

**Fenner & Beane**

FENNER & BEANE
GENERAL COMMISSION MERCHANTS

| | |
|---|---|
| **Company type** | Acquired |
| **Industry** | Financial services |
| **Predecessor** | Fenner, Gatling & Beane[1] |
| **Founded** | 1916 |
| **Founder** | Charles Erasmus Fenner<br>Alpheus Crosby Beane |
| **Fate** | Acquired in 1941 by Merrill Lynch |
| **Successor** | Merrill Lynch, Pierce, Fenner & Beane<br>Merrill Lynch, Pierce, Fenner & Smith |
| **Headquarters** | New Orleans, Louisiana, United States |
| **Products** | Brokerage, Futures exchange, Commodities |

## History

The firm's predecessor, Beane Brothers was founded in early 1900s by Alpheus Crosby ("Alph") Beane and his brothers Frank E. Beane Jr. and William Sterling Robert Beane. The firm traded primarily in cotton with offices in Columbus, Georgia, and New Orleans. Beane Brothers was dissolved about 1915, and in 1916 Alph Beane entered into a new brokerage firm Fenner, Gatling & Beane.

Beane's partner, Charles E. Fenner, came from a distinguished New Orleans family, as his cousin was a justice of the Louisiana Supreme Court. Confederate president Jefferson Davis died in the Fenner home in New Orleans in 1889.[2]

The firm expanded quickly through the Southern states and Midwestern U.S. through the 1920s, focusing primarily on the trading of commodities, particularly futures contracts for grain and cotton. The firm was a member of the various commodity exchanges in New Orleans, Chicago, and Memphis, Tennessee. By the 1930s, Fenner & Beane had established itself as the second largest brokerage firm in the U.S. However, the firm was suffering from decreased trading volumes caused by the Great Depression. Following the death of Alph Beane in 1937, Charles Fenner and Alpheus Beane's son began discussions with Merrill Lynch about a potential merger. The merger was completed in August 1941 creating Merrill Lynch, Pierce, Fenner & Beane. The length of the name prompted outsiders to label the new firm "We the people" or "The thundering herd".[3]

Alph Beane's son had come to work at Fenner & Beane in 1931 and would spend more than 25 years at the firm and later at Merrill Lynch before founding his own firm, which was later acquired by Reynolds & Company.[4]

## Merger

In 1941, Fenner & Beane merged with what was then known as Merrill Lynch, E.A. Pierce and Cassatt to become Merrill Lynch, Pierce, Fenner & Beane.[5][6] In 1957, Merrill discontinued the use of the name Beane, replacing it with Smith in recognition of Winthrop H. Smith, a longtime chief of the firm.

# References

1. Cotton facts: A compilation from official and reliable sources of the crops (https://books.google.com/books?id=QgpLAAAAYAAJ&pg=PA225). A. B. Shepperson, 1918
2. Eulogy of Robert E. Lee By Charles E. Fenner (https://archive.today/20120710150336/http://leearchive.wlu.edu/?page=reference/misc/fenner/index.html). Washington & Lee University
3. Wall Street to main street: Charles Merrill and middle-class investors (https://books.google.com/books?id=ppL4_kGxZW0C&pg=PA167). Cambridge University Press, 1999
4. Gilpin, Kenneth N. (September 27, 1994). "Alpheus C. Beane, Investment Banker And Executive, 84" (https://www.nytimes.com/1994/09/27/obituaries/alpheus-c-beane-investment-banker-and-executive-84.html). *The New York Times*.
5. Co-leaders: the power of great partnerships (https://books.google.com/books?id=zHo_-TeTGREC&pg=PA65) John Wiley and Sons, 1999
6. The crash and its aftermath: a history of securities markets in the United States, 1929-1933 (https://books.google.com/books?id=I_Bs3s3rdHwC&pg=PA238). Greenwood Publishing Group, 1985

Retrieved from "https://en.wikipedia.org/w/index.php?title=Fenner_%26_Beane&oldid=1182699337"

Document must be filed electronically.
Paper documents are not accepted.
Fees & forms are subject to change.
For more information or to print copies
of filed documents, visit www.sos.state.co.us.

E-Filed

Colorado Secretary of State
Date and Time: 09/03/2014 12:28 AM
ID Number: 20141540352

Document number: 20141540352
Amount Paid: $1.00

ABOVE SPACE FOR OFFICE USE ONLY

# Certificate of Limited Partnership and Statement of Registration to Register as a Limited Liability Limited Partnership

filed pursuant to § 7-62-201 and § 7-60-144 or § 7-64-1002 of the Colorado Revised Statutes (C.R.S.)

1. The name that has been the true name of the domestic limited partnership is FENNER & BEANE.

*(The name of a limited partnership must contain the term or abbreviation "limited partnership", "limited", "company", "l.p.", "lp", "ltd." or "co.". See §7-90-601, C.R.S.)*

2. The domestic entity name of the limited liability limited partnership is FENNER & BEANE, LLLP.

*(The name of a limited liability limited partnership must contain the term or abbreviation "limited partnership", "limited", "company", "limited liability limited partnership", "registered limited liability limited partnership", "l.p.", "lp", "co.", "l.l.l.p.", "lllp", "LTD.", "r.l.l.l.p." or "rlllp". See §7-90-601, C.R.S.)*

*(Caution: The use of certain terms or abbreviations are restricted by law. Read instructions for more information.)*

3. The principal office address of the limited liability limited partnership's principal office is

Street address: 385 Sheridan Blvd. *(Street number and name)*

Denver *(City)* CO *(State)* 80226 *(ZIP/Postal Code)*

*(Province – if applicable)* United States *(Country)*

Mailing address
(leave blank if same as street address)

*(Street number and name or Post Office Box information)*

*(City)* *(State)* *(ZIP/Postal Code)*

*(Province – if applicable)* *(Country)*.

4. The registered agent name and registered agent address of the limited liability limited partnership's registered agent are

Name
(if an individual) *(Last)* *(First)* *(Middle)* *(Suffix)*

or

(if an entity) FENNER & BEANE

*(Caution: Do not provide both an individual and an entity name.)*

Street address: 385 Sheridan Blvd. *(Street number and name)*

Denver | CO | 80226
(City) (State) (ZIP/Postal Code)

Mailing address
(leave blank if same as street address)

(Street number and name or Post Office Box information)

CO .
(City) (State) (ZIP/Postal Code)

*(The following statement is adopted by marking the box.)*
☑ The person appointed as registered agent has consented to being so appointed.

5. The true name and mailing address of the general partner are

Name
(if an individual)
(Last) (First) (Middle) (Suffix)

or

(if an entity) FENNER & BEANE
*(Caution: Do not provide both an individual and an entity name.)*

Address 385 Sheridan Blvd.
(Street number and name or Post Office Box information)

Denver | CO | 80226
(City) (State) (ZIP/Postal Code)

United States
(Province – if applicable) (Country)

*(If the following statement applies, adopt the statement by marking the box and include an attachment.)*
☐ The limited partnership has one or more additional general partners and the name and mailing address of each additional general partner are stated in an attachment.

6. *(The following statement is adopted by marking the box.)*
☑ There are at least two partners in the partnership, at least one of whom is a limited partner.

7. *(If the following statement applies, adopt the statement by marking the box and include an attachment.)*
☐ This document contains additional information as provided by law.

8. *(Caution: Leave blank if the document does not have a delayed effective date. Stating a delayed effective date has significant legal consequences. Read instructions before entering a date.)*

*(If the following statement applies, adopt the statement by entering a date and, if applicable, time using the required format.)*
The delayed effective date and, if applicable, time of this document is/are ______________________.
*(mm/dd/yyyy hour:minute am/pm)*

Notice:
Causing this document to be delivered to the Secretary of State for filing shall constitute the affirmation or acknowledgment of each individual causing such delivery, under penalties of perjury, that the document is the individual's act and deed, or that the individual in good faith believes the document is the act and deed of the person on whose behalf the individual is causing the document to be delivered for filing, taken in conformity with the requirements of part 3 of article 90 of title 7, C.R.S., the constituent documents, and the organic

statutes, and that the individual in good faith believes the facts stated in the document are true and the document complies with the requirements of that Part, the constituent documents, and the organic statutes.

This perjury notice applies to each individual who causes this document to be delivered to the Secretary of State, whether or not such individual is named in the document as one who has caused it to be delivered.

9. The true name and mailing address of the individual causing the document to be delivered for filing are

Harrington G A
*(Last)* *(First)* *(Middle)* *(Suffix)*

422 - 300 Richards Street
*(Street number and name or Post Office Box information)*

Vancouver BC V6B2Z4
*(City)* *(State)* *(ZIP/Postal Code)*

Canada.
*(Province – if applicable)* *(Country)*

*(If the following statement applies, adopt the statement by marking the box and include an attachment.)*

☐ This document contains the true name and mailing address of one or more additional individuals causing the document to be delivered for filing.

Disclaimer:
This form/cover sheet, and any related instructions, are not intended to provide legal, business or tax advice, and are furnished without representation or warranty. While this form/cover sheet is believed to satisfy minimum legal requirements as of its revision date, compliance with applicable law, as the same may be amended from time to time, remains the responsibility of the user of this form/cover sheet. Questions should be addressed to the user's legal, business or tax advisor(s).

# EXHIBIT 39

Scottsdale One-Mailbox Record

McKowen v. Harrington, et al.
No. 1:25-cv-00708-PAB-NRN (D. Colo.)

# Harrington Financial Empire

## Corporate Address

4400 North Scottsdale Rd
Suite 9 289
Scottsdale, AZ. 85251

**Investors Fiduciary, LLC**
**Fenner & Beane, LLP**
**Easby Land & Cattle, LLP**
**Easy Water, LLC**
**WaterVault America, Inc**
**WaterVault America, LLC**



# EXHIBIT 40

Black Mountain Financing (March–April 2017)

McKowen v. Harrington, et al.
No. 1:25-cv-00708-PAB-NRN (D. Colo.)

# Two Rivers Water & Farming Co.

## SUMMARY OF TERMS AND CONDITIONS

March 21,2017

*The purpose of this letter is to set forth the indicative terms pursuant to which, subject to certain conditions set forth herein, the Investors would purchase certain securities of the Issuer, and the Issuer would sell such securities to the Investors. The terms and conditions set forth herein are subject to change and this letter does not constitute an offer. The issuance and sale of such securities is subject to, among other things, completion of due diligence to the Investors' satisfaction, the preparation of definitive documentation to effect the Transaction that is mutually satisfactory to each party and, in the case of the Investors, that the Investors shall have determined that subsequent to the date hereof and prior to the closing of the Transaction, there shall have been no material adverse developments relating to the business, assets, operations, properties, condition (financial or otherwise) or prospects of the Issuer and its subsidiaries, taken as a whole.*

| | |
|---|---|
| Issuer: | Two Rivers Water & Farming Co. (the "Company") |
| Securities: | $495,000 principal Promissory Note (the "Note") due September 30, 2017. |
| Purchase Price: | $450,000 |
| Investor: | Black Mountain Equities, Inc. |
| OID: | 10% |
| Warrants: | 650.000 5-year warrants, exercisable at $0.70. |
| Pre-payment Period: | The Note may be pre-paid at anytime. |
| Legal Expense | $3,000 to be taken out of closing proceeds |

*Neither this Summary of Terms and Conditions nor any discussion or negotiation of the proposed transaction constitutes an agreement or obligation on the part of any person to purchase securities of the Company or enter into any agreement to purchase securities of the Company. Any such agreement or obligation shall arise with respect to a particular Investor solely upon execution and delivery to the Issuer by such Investor of definitive documents acceptable to such Investor. Notwithstanding the foregoing, the provisions opposite the heading "Fees and Expenses" are intended to be binding.*

**Two Rivers Water & Farming Co.**

**By:** WAYNE HARDING

**Its:** CEO/CFO

**Black Mountain Equities, Inc.**

**By:**

**Name:**

**Title: President**

# Two Rivers Water & Farming Co.

## SUMMARY OF TERMS AND CONDITIONS

March 21,2017

*The purpose of this letter is to set forth the indicative terms pursuant to which, subject to certain conditions set forth herein, the Investors would purchase certain securities of the Issuer, and the Issuer would sell such securities to the Investors. The terms and conditions set forth herein are subject to change and this letter does not constitute an offer. The issuance and sale of such securities is subject to, among other things, completion of due diligence to the Investors' satisfaction, the preparation of definitive documentation to effect the Transaction that is mutually satisfactory to each party and, in the case of the Investors, that the Investors shall have determined that subsequent to the date hereof and prior to the closing of the Transaction, there shall have been no material adverse developments relating to the business, assets, operations, properties, condition (financial or otherwise) or prospects of the Issuer and its subsidiaries, taken as a whole.*

| | |
|---|---|
| Issuer: | Two Rivers Water & Farming Co. (the "Company") |
| Securities: | $495,000 principal Promissory Note (the "Note") due September 30, 2017. |
| Purchase Price: | $450,000 |
| Investor: | Black Mountain Equities, Inc. |
| OID: | 10% |
| Warrants: | 650.000 5-year warrants, exercisable at $0.70. |
| Pre-payment Period: | The Note may be pre-paid at anytime. |
| Legal Expense | $3,000 to be taken out of closing proceeds |

*Neither this Summary of Terms and Conditions nor any discussion or negotiation of the proposed transaction constitutes an agreement or obligation on the part of any person to purchase securities of the Company or enter into any agreement to purchase securities of the Company. Any such agreement or obligation shall arise with respect to a particular Investor solely upon execution and delivery to the Issuer by such Investor of definitive documents acceptable to such Investor. Notwithstanding the foregoing, the provisions opposite the heading "Fees and Expenses" are intended to be binding.*

**Two Rivers Water & Farming Co.**

**By:** WAYNE HARDING

**Its:** CEO/CFO

**Black Mountain Equities, Inc.**

**By:**

**Name:**

**Title: President**

# SECURITIES PURCHASE AGREEMENT

**THIS SECURITIES PURCHASE AGREEMENT** (the "***Agreement***") is made as of the 26th day of April, 2017 by and between **Two Rivers Water & Farming Co.**, a Colorado corporation (the "***Company***"), and **Black Mountain Equities, Inc.**, a California company (collectively, the "***Investors***").

**WHEREAS**, upon the terms and condition stated in the Agreement and pursuant to Section 4(a)(2) of the 1933 Act (as defined below) and Rule 506 of Regulation D promulgated thereunder, the Investors wishes to purchase, and the Company wishes to sell promissory note in the aggregate original principal amount of $300,000, in the form attached hereto as **Exhibit A** (the "***Notes***"), and (ii) a common stock purchase warrants, in the form attached hereto as **Exhibit B** (the "***Warrants***"), which Warrants shall initially be exercisable into and aggregate of 440,000 Common Shares (as exercised, collectively, the "***Warrant Shares***"), at an exercise price of $0.70 per Warrant Share, subject to adjustment, until 5:00 p.m. (Eastern time) on the date of expiration of the Warrant, which is five (5) years following the Closing Date (as defined herein);

**WHEREAS**, the parties have agreed that the obligation to repay the Note shall be an unsecured obligation of the Company; and

**WHEREAS**, the Note, the Warrant and the Warrant Shares, are collectively referred to herein as the "***Securities***" and the offering contemplated hereby is referred to herein as the "***Offering***".

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of the premises and the mutual agreements, representations and warranties, provisions and covenants contained herein, the parties hereto, intending to be legally bound hereby, agree as follows:

1. Purchase and Sale of Note and Warrant. On the Closing Date (as hereinafter defined), subject to the terms and conditions of this Agreement, the Investors hereby agrees to purchase, and the Company hereby agrees to sell and issue, the Notes and the Warrants, with such principal amount of Note and such number of Warrant Shares for which each Warrant is exercisable being as set forth for each Investor on its signature page hereto. The Notes shall be issued with an original issue discount.

2. Purchase Price. The aggregate purchase price for the Notes and the Warrants to be purchased by the Investors at the Closing shall be $300,000 (the "***Purchase Price***"). At the Closing, the Investors shall fund the Purchase Price by wire transfer of immediately available funds to the account specified in writing by the Company prior to the date hereof.

3. The Closing. Subject to the conditions set forth below, the purchase and sale of the Notes and Warrants shall take place at a mutually agreeable location, on or about the date hereof (the "***Closing***" and the "***Closing Date***"). At the Closing, the Company shall deliver to the Investors: (i) this Agreement duly executed by the Company, (ii) the Notes purchased hereby duly executed by the Company and registered in the name of the Investors, and (iii) the Warrants purchased hereby duly executed by the Company and registered in the name of the Investors. At

the Closing, the Investors shall deliver to the Company (x) this Agreement duly executed by the Investors and (y) the Purchase Price for the Notes and Warrants.

4. Closing Conditions; Certain Covenants.

4.1 Conditions to the Investor's Obligations. The obligation of the Investors to purchase the Notes and Warrants to be issued to the Investors at the Closing is subject to the fulfillment, to the Investors' reasonable satisfaction, prior to or at the Closing, of each of the following conditions:

(a) Representations and Warranties. The representations and warranties of the Company contained in this Agreement shall be true and correct in all respects on the date hereof (except for representations and warranties that speak as of a specific date, which shall be true and correct as of such specific date).

(b) Covenants. The Company shall have performed, satisfied and complied in all respects with the covenants, agreements and conditions required to be performed, satisfied or complied with by the Company at or prior to the Closing Date.

(c) Notes and Warrants. At the Closing, the Company shall have duly executed and delivered to the Investors the Notes and Warrants purchased hereby, in each case duly executed by the Company and registered in the name of the Investors.

(d) No Actions. No action, proceeding, investigation, regulation or legislation shall have been instituted, threatened or proposed before any court, governmental agency or authority or legislative body to enjoin, restrain, prohibit or obtain substantial damages in respect of, this Agreement or the consummation of the transactions contemplated by this Agreement.

(e) Proceedings and Documents. All proceedings in connection with the transactions contemplated hereby and all documents and instruments incident to such transactions shall be reasonably satisfactory in substance and form to the Investors, and the Investors shall have received all such counterpart originals or certified or other copies of such documents as they may reasonably request.

(f) No Consents. The Company shall have obtained all governmental, regulatory or third party consents and approvals, if any, necessary for the sale of the Securities.

4.2 Conditions to the Company's Obligations. The obligation of the Company to sell and issue the Notes and Warrants to the Investors at the Closing is subject to the fulfillment, to the Company's reasonable satisfaction, prior to or at the Closing, of each of the following conditions:

(a) Representations and Warranties. The representations and warranties of the Investors contained in this Agreement shall be true and correct in all respects on the date hereof (except for representations and warranties that speak as of a specific date, which shall be true and correct as of such specific date).

(b) Purchase Price. At the Closing, the Investors shall have tendered to the Company the Purchase Price by wire transfer of immediately available funds to the account specified in writing by the Company prior to the date hereof.

(c) No Actions. No action, proceeding, investigation, regulation or legislation shall have been instituted, threatened or proposed before any court, governmental agency or authority or legislative body to enjoin, restrain, prohibit, or obtain substantial damages in respect of, this Agreement or the consummation of the transactions contemplated by this Agreement.

(d) Proceedings and Documents. All proceedings in connection with the transactions contemplated hereby and all documents and instruments incident to such transactions shall be satisfactory in substance and form to the Company and the Company shall have received all such counterpart originals or certified or other copies of such documents as the Company may reasonably request.

4.3 Securities Law Disclosure; Publicity. If the Company determines in its sole discretion that a Form 8-K disclosing the material terms of the transactions contemplated hereby is required, then it will file such Form 8-K timely. The Company represents to the Investors that the Company has publicly disclosed all material, non-public information delivered to the Investor by the Company or any of its Subsidiaries, or any of their respective officers, directors, employees or agents in connection with the transactions contemplated by this Agreement. The Company shall not, and the Company shall cause each of its Subsidiaries and each of its and their respective officers, directors, employees and agents not to, provide the Investors with any material, non-public information regarding the Company or any of its Subsidiaries from and after the date hereof without the express prior written consent of the Investors (which may be granted or withheld in the Investors' sole discretion). To the extent that the Company or any Person acting on its behalf delivers any material, non-public information to the Investors (as determined in the reasonable good faith judgment of the Investor) without the Investors' consent, (i) the Company hereby covenants and agrees that the Investors shall not have any duty of confidentiality with respect to, or a duty not to trade on the basis of, such material, non-public information, and (ii) in addition to any other remedy provided herein or in the Notes or Warrants, the Investors shall have the right to make a public disclosure, in the form of a press release, public advertisement or otherwise, of such material, non-public information without the prior approval by the Company; provided the Investors shall have first provided notice to the Company that it believes it has received information that constitutes material, non-public information, the Company shall have at least 24 hours to publicly disclose such material, non-public information prior to any such disclosure by the Investors, and the Company shall have failed to publicly disclose such material, non-public information within such time period. The Company shall afford the Investors and its counsel with a reasonable opportunity to review and comment upon, shall consult with the Investors and their counsel on the form and substance of, and shall give due consideration to all such comments from the Investors or its counsel on, any press release, Commission filing or any other public disclosure made by or on behalf of the Company relating to the Investors, its purchases hereunder or any aspect of this Agreement or the transactions contemplated hereby, prior to the issuance, filing or public disclosure thereof, and the Company shall not issue, file or publicly disclose any such information to which the Investors shall object. For the avoidance of doubt, the Company shall not be required to submit for review any such disclosure contained in periodic reports filed with the Commission under the

Exchange Act if it shall have previously provided the same disclosure for review in connection with a previous filing.

4.4 Legends. The Securities may only be disposed of in compliance with state and federal securities laws. In connection with any transfer of Securities other than pursuant to an effective registration statement or Rule 144 (as defined below), to the Company or to an affiliate of the applicable Investor, the Company may require the transferor thereof to provide to the Company an opinion of counsel selected by the transferor and reasonably acceptable to the Company, the form and substance of which opinion shall be reasonably satisfactory to the Company, to the effect that such transfer does not require registration of such transferred Securities under the 1933 Act. Each Investor understands that the Securities, except as set forth below, may bear any legends as required by applicable state securities or "Blue Sky" laws in addition to a restrictive legend in substantially the following form (and a stop-transfer order may be placed against transfer of such stock certificates):

> [NEITHER THE ISSUANCE AND SALE OF THE SECURITIES REPRESENTED BY THIS CERTIFICATE NOR THE SECURITIES INTO WHICH THESE SECURITIES ARE [CONVERTIBLE] [EXERCISABLE] HAVE BEEN][THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN] REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS. THE SECURITIES MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR ASSIGNED (I) IN THE ABSENCE OF (A) AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR (B) AN OPINION OF COUNSEL TO THE HOLDER (IF REQUESTED BY THE COMPANY), IN A FORM REASONABLY ACCEPTABLE TO THE COMPANY, THAT REGISTRATION IS NOT REQUIRED UNDER SAID ACT OR (II) UNLESS SOLD OR ELIGIBLE TO BE SOLD PURSUANT TO RULE 144 OR RULE 144A UNDER SAID ACT. NOTWITHSTANDING THE FOREGOING, THE SECURITIES MAY BE PLEDGED IN CONNECTION WITH A BONA FIDE MARGIN ACCOUNT OR OTHER LOAN OR FINANCING ARRANGEMENT SECURED BY THE SECURITIES.

The Company shall use its reasonable best efforts to cause its transfer agent to remove the legend set forth above and to issue a certificate without such legend to the holder of the Securities upon which it is stamped, or to issue to such holder by electronic delivery at the applicable balance account at the Depository Trust Company ("***DTC***"), unless otherwise required by state securities or "blue sky" laws, at such time as (i) such Securities are registered for resale under the 1933 Act, (ii) in connection with a sale, assignment or other transfer, such holder provides the Company with an opinion of counsel, in a form generally acceptable to the Company's legal counsel, to the effect that such sale, assignment or transfer of the Securities may be made without registration under the 1933 Act, or (iii) such holder provides the Company and its legal counsel with reasonable assurance in writing that the Securities can be sold, assigned or transferred pursuant to Rule 144 or Rule 144A. In furtherance of the foregoing, the Company agrees that, following the effective date of a registration statement covering the resale of such Securities or at such time as such legend is not required pursuant to this Section 4.4, the Company shall, no later than three Trading Days following the delivery by the Investor to the Company or the Company's transfer agent of a certificate representing the Warrant Shares, as

applicable, issued with a restrictive legend (such third Trading Day, the "***Legend Removal Date***"), either: (A) issue and deliver (or cause to be issued and delivered) to such Investor a certificate representing such Warrant Shares that is free from all restrictive and other legends or (B) cause the Company's transfer agent to credit such Investor's or its designee's account at DTC through its Deposit/Withdrawal at Custodian (DWAC) system with a number of Common Shares equal to the number of Warrant Shares represented by the certificate so delivered by such Investor. If the Company fails on or prior to the Legend Removal Date to either (i) issue and deliver (or cause to be issued and delivered) to such Investor a certificate representing the Warrant Shares that is free from all restrictive and other legends or (ii) cause the Company's transfer agent to credit the balance account of such Investor or its designee at DTC through its Deposit/Withdrawal at Custodian (DWAC) system with a number of Common Shares equal to the number of Warrant Shares represented by the certificate delivered by such Investor pursuant hereto, then, in addition to all other remedies available to such Investor, the Company shall pay in cash to the Investor on each day after the Legend Removal Date that the issuance or credit of such shares is not timely effected an amount equal to 1.0% of the product of (A) the sum of the number of Warrant Shares not issued to such Investor on a timely basis and to which such Investor is entitled and (B) the VWAP for the five Trading Day period immediately preceding the Legend Removal Date. In addition to the foregoing, if the Company fails to so properly deliver such unlegended certificates or so properly credit the account of such Investor or its designee at DTC by the Legend Removal Date, and if on or after the Legend Removal Date such Investor purchases (in an open market transaction or otherwise) Common Shares to deliver in satisfaction of a sale by such Investor of Warrant Shares that such Investor anticipated receiving from the Company without any restrictive legend, then the Company shall, within three Trading Days after such Investor's request, pay cash to such Investor in an amount equal to such Investor's total purchase price (including brokerage commissions, if any) for the Common Shares so purchased, at which point the Company's obligation to deliver a certificate or credit such Investor's or its designee's account at DTC for such Warrant Shares shall terminate and such shares shall be cancelled.

5. Representations and Warranties of the Company. Except as set forth in the Disclosure Schedules or the Public Reports (as defined herein), which Disclosure Schedules shall be deemed a part hereof and shall qualify any representation or otherwise made herein to the extent of the disclosure contained in the corresponding section of the Disclosure Schedules, the Company hereby makes the following representations and warranties to the Investors:

5.1 Organization, Good Standing and Qualification. The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware. The Company is duly qualified to transact business and is in good standing in each jurisdiction in which the failure to so qualify would have a Material Adverse Effect.

5.3 Authorization; Enforcement. All corporate action on the part of the Company, its officers, directors and stockholders necessary for the authorization, execution and delivery of this Agreement, the Notes and the Warrants, and the performance of all obligations of the Company, and the authorization (or reservation for issuance), sale and issuance of the Notes, the Warrants, and the Warrant Shares, have been taken on or prior to the date hereof. Each of this Agreement, the Notes and the Warrants has been duly executed by the Company and, when delivered in accordance with the terms hereof and thereof, will constitute the valid and binding

obligation of the Company enforceable against the Company in accordance with its terms, except: (i) as limited by general equitable principles and applicable bankruptcy, insolvency, reorganization, moratorium and other laws of general application affecting enforcement of creditors' rights generally, (ii) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies and (iii) insofar as indemnification and contribution provisions may be limited by applicable law.

5.4 Valid Issuance of the Securities; The Notes and the Warrants are duly authorized and, when issued and paid for in accordance with this Agreement, will be duly and validly issued, and free and clear of all Liens imposed by the Company other than restrictions on transfer under this Agreement and under applicable state and federal securities laws. The Warrant Shares when issued and delivered in accordance with the terms of this Agreement and the Warrant for the consideration expressed herein and therein, will be duly and validly issued, fully paid and non-assessable and free and clear of all Liens imposed by the Company other than restrictions on transfer under this Agreement and under applicable state and federal securities laws.

5.5 Offering. Subject to the truth and accuracy of the Investor's representations set forth in Section 6 of this Agreement, the offer and sale of the Securities, as contemplated by this Agreement are exempt from the registration requirements of the Securities Act of 1933, as amended (the "***1933 Act***"), and the qualification or registration requirements of state securities laws or other applicable blue sky laws. Neither the Company nor any authorized agent acting on its behalf will take any action hereafter that would cause the loss of such exemptions.

5.6 Public Reports. The Company is current in its filing obligations under the 1934 Act, including without limitation as to its filings of Annual Reports on Form 10-K, Quarterly Reports on Form 10-Q and Current Reports on Form 8-K (collectively, the "***Public Reports***"). The Public Reports do not contain any untrue statement of a material fact or omit to state any fact necessary to make any statement therein not misleading. The financial statements included within Company's Annual Report on Form 10-K for the year ended December 31, 2015 and for each quarterly period thereafter (the "***Financial Statements***") have been prepared in accordance with generally accepted accounting principles ("***GAAP***") applied on a consistent basis throughout the periods indicated and with each other, except that unaudited Financial Statements may not contain all footnotes required by generally accepted accounting principles. The Financial Statements fairly present, in all material respects, the financial condition and operating results of the Company as of the dates, and for the periods, indicated therein, subject in the case of unaudited Financial Statements to normal year-end audit adjustments.

5.7 Compliance With Laws. The Company has not violated any law or any governmental regulation or requirement which violation has had or would reasonably be expected to have a Material Adverse Effect on its business and the Company has not received written notice of any such violation. The Company is not in violation of the requirements of the Trading Market and has no knowledge of any facts or circumstances which could reasonably lead to delisting or suspension of the Common Shares in the foreseeable future.

5.8 Violations. The consummation of the transactions contemplated by this Agreement and all other documents and instruments required to be delivered in connection

therewith will not result in or constitute any of the following: (a) a violation of any provision of the articles of incorporation, bylaws or other governing documents of the Company; (b) a violation of any provisions of any applicable law or of any writ or decree of any court or governmental instrumentality; (c) a default or an event that, with notice or lapse of time or both, would be a default, breach, or violation of a lease, license, promissory notes, conditional sales contract, commitment, indenture, mortgage, deed of trust, or other agreement, instrument, or arrangement to which the Company is a party or by which the Company or its property is bound; (d) an event that would permit any party to terminate any agreement or to accelerate the maturity of any indebtedness or other obligation of the Company; or (e) the creation or imposition of any lien, pledge, option, security agreement, equity, claim, charge, encumbrance or other restriction or limitation on the capital stock or on any of the properties or assets of the Company.

5.9 Consents; Waivers. No consent, waiver, approval or authority of any nature, or other formal action, by any Person, or any agency, bureau or department of any government or any subdivision thereof, not already obtained, is required in connection with the execution and delivery of this Agreement by the Company or the consummation by the Company of the transactions provided for herein.

5.10 Sarbanes-Oxley Act. The Company is in compliance with any and all applicable requirements of the Sarbanes-Oxley Act of 2002 that are effective as of the date hereof, and any and all applicable rules and regulations promulgated by the Commission thereunder that are effective as of the date hereof.

5.11 Absence of Litigation. Except as disclosed in the Company's Public Reports, there is no action, suit, proceeding, inquiry or investigation before or by any court, public board, government agency, self-regulatory organization or body pending or, to the knowledge of the Company, threatened against or affecting the Company, the Common Shares or any of the Company's officers or directors in their capacities as such.

5.12 Material Changes; Undisclosed Events, Liabilities or Developments. Since the date of the latest audited financial statements included within the Public Reports, except as specifically disclosed in a subsequent Public Report filed prior to the date hereof: (i) there has been no event, occurrence or development that has had or that could reasonably be expected to result in a Material Adverse Effect, (ii) the Company has not incurred any liabilities (contingent or otherwise) other than (A) trade payables and accrued expenses incurred in the ordinary course of business consistent with past practice and (B) liabilities not required to be reflected in the Company's financial statements pursuant to GAAP or disclosed in filings made with the Commission, (iii) the Company has not altered its method of accounting, (iv) the Company has not declared or made any dividend or distribution of cash or other property to its stockholders or purchased, redeemed or made any agreements to purchase or redeem any shares of its capital stock and (v) the Company has not issued any equity securities to any officer, director or affiliate, except pursuant to existing Company stock option plans. The Company does not have pending before the Commission any request for confidential treatment of information. Except for the issuance of the Securities contemplated by this Agreement, no event, liability, fact, circumstance, occurrence or development has occurred or exists or is reasonably expected to occur or exist with respect to the Company or its Subsidiaries or their respective businesses, properties, operations, assets or financial condition, that would be required to be disclosed by the Company under applicable securities laws at the time this representation is made or deemed

made that has not been publicly disclosed at least one Trading Day prior to the date that this representation is made.

5.13 Intellectual Property. The Company has, or has rights to use, all patents, patent applications, trademarks, trademark applications, service marks, trade names, trade secrets, inventions, copyrights, licenses and other intellectual property rights and similar rights as described in the Public Reports as necessary or required for use in connection with their respective businesses and which the failure to so have could have a Material Adverse Effect (collectively, the "***Intellectual Property Rights***"). The Company has not received a notice (written or otherwise) that any of, the Intellectual Property Rights has expired, terminated or been abandoned, or is expected to expire or terminate or be abandoned, within two (2) years from the date of this Agreement. The Company has not received, since the date of the latest audited financial statements included within the Public Reports, a written notice of a claim or otherwise has any knowledge that the Intellectual Property Rights violate or infringe upon the rights of any Person, except as could not have or reasonably be expected to not have a Material Adverse Effect. To the knowledge of the Company, all such Intellectual Property Rights are enforceable and there is no existing infringement by another Person of any of the Intellectual Property Rights. The Company has taken reasonable security measures to protect the secrecy, confidentiality and value of all of their intellectual properties, except where failure to do so could not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

5.14 Intentionally Deleted.

5.15 Disclosure. Except with respect to the material terms and conditions of the transactions contemplated by this Agreement, the Company confirms that neither it nor any other Person acting on its behalf has provided any Investor or its agents or counsel with any information that it believes constitutes or might constitute material, non-public information. The Company understands and confirms that the Investors will rely on the foregoing representation in effecting transactions in securities of the Company. All of the disclosure furnished by or on behalf of the Company to the Investors regarding the Company and its Subsidiaries, their respective businesses and the transactions contemplated hereby, including the Disclosure Schedules to this Agreement, is true and correct and does not contain any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made therein, in light of the circumstances under which they were made, not misleading. The press releases disseminated by the Company during the twelve months preceding the date of this Agreement taken as a whole do not contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements therein, in light of the circumstances under which they were made and when made, not misleading. The Company acknowledges and agrees that the Investors do not make nor has made any representations or warranties with respect to the transactions contemplated hereby other than those specifically set forth in Section 6 hereof.

5.16 No Integrated Offering. Assuming the accuracy of each Investor's representations and warranties set forth in Section 6, neither the Company, nor any of its affiliates, nor any Person acting on its or their behalf has, directly or indirectly, made any offers or sales of any security or solicited any offers to buy any security, under circumstances that would cause this offering of the Securities to be integrated with prior offerings by the Company for purposes of (i) the 1933 Act which would require the registration of any such securities under

the 1933 Act, or (ii) any applicable shareholder approval provisions of any Trading Market on which any of the securities of the Company are listed or designated.

5.17 No General Solicitation; Placement Agent's Fees. Neither the Company, nor any of its Subsidiaries or affiliates, nor any Person acting on its or their behalf, has engaged in any form of general solicitation or general advertising (within the meaning of Regulation D) in connection with the offer or sale of the Securities. The Company shall be responsible for the payment of any placement agent's fees, financial advisory fees, or brokers' commissions (other than for Persons engaged by the Investor) relating to or arising out of the transactions contemplated hereby. Neither the Company nor any of its Subsidiaries has engaged any placement agent or other agent in connection with the offer or sale of the Securities.

5.18 Bankruptcy Status; Indebtedness. Neither the Company nor any of its Subsidiaries has taken any steps to seek protection pursuant to any law or statute relating to bankruptcy, insolvency, reorganization, receivership, liquidation or winding up, nor does the Company or any Subsidiary have any knowledge or reason to believe that any of their respective creditors intend to initiate involuntary bankruptcy proceedings or any actual knowledge of any fact which would reasonably lead a creditor to do so. Schedule 5.18 sets forth as of the date hereof all outstanding secured and unsecured Indebtedness (as defined below) of the Company or any of its Subsidiary, or for which the Company or any Subsidiary has commitments. For the purposes of this Agreement, "***Indebtedness***" means (x) any liabilities for borrowed money or amounts owed (other than trade accounts payable incurred in the ordinary course of business), (y) all guaranties, endorsements and other contingent obligations in respect of indebtedness of others, whether or not the same are or should be reflected in the Company's consolidated balance sheet (or the notes thereto), except guaranties by endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business; and (z) the present value of any lease payments due under leases required to be capitalized in accordance with GAAP. The Company is not in default with respect to any Indebtedness. The Company and its Subsidiaries, individually and on a consolidated basis, are not, and after giving effect to the transactions contemplated hereby to occur at the Closing will not be, Insolvent (as defined below). "***Insolvent***" means, (I) with respect to the Company and its Subsidiaries, on a consolidated basis, (i) the present fair saleable value of the Company's and its Subsidiaries' assets is less than the amount required to pay the Company's and its Subsidiaries' total Indebtedness (as defined below), (ii) the Company and its Subsidiaries are unable to pay their debts and liabilities, subordinated, contingent or otherwise, as such debts and liabilities become absolute and matured or (iii) the Company and its Subsidiaries intend to incur or believe that they will incur debts that would be beyond their ability to pay as such debts mature; and (II) with respect to the Company and each Subsidiary, individually, (i) the present fair saleable value of the Company's or such Subsidiary's (as the case may be) assets is less than the amount required to pay its respective total Indebtedness, (ii) the Company or such Subsidiary (as the case may be) is unable to pay its respective debts and liabilities, subordinated, contingent or otherwise, as such debts and liabilities become absolute and matured or (iii) the Company or such Subsidiary (as the case may be) intends to incur or believes that it will incur debts that would be beyond its respective ability to pay as such debts mature. Neither the Company nor any of its Subsidiaries has engaged in any business or in any transaction, and is not about to engage in any business or in any transaction, for which the Company's or such Subsidiary's remaining assets constitute unreasonably small capital.

5.19 Regulation M Compliance. The Company has not, and to its knowledge no one acting on its behalf has, (i) taken, directly or indirectly, any action designed to cause or to result in the stabilization or manipulation of the price of any security of the Company to facilitate the sale or resale of any of the Securities, (ii) sold, bid for, purchased, or paid any compensation for soliciting purchases of, any of the Securities, or (iii) paid or agreed to pay to any Person any compensation for soliciting another to purchase any other securities of the Company.

5.20 Acknowledgment Regarding Investor's Purchase of Securities. The Company acknowledges and agrees that each Investor is acting solely in the capacity of an arm's length purchaser with respect to this Agreement and the transactions contemplated hereby and that such Investor is not (i) an officer or director of the Company or any of its Subsidiaries, (ii) an "affiliate" (as defined in Rule 144) of the Company or any of its Subsidiaries or (iii) to its knowledge, a "beneficial owner" of more than 10% of the Common Shares (as defined for purposes of Rule 13d-3 of the 1934 Act). The Company further acknowledges that such Investor is not acting as a financial advisor or fiduciary of the Company or any of its Subsidiaries (or in any similar capacity) with respect to this Agreement and the transactions contemplated hereby, and any advice given by such Investor or any of its representatives or agents in connection with this Agreement and the transactions contemplated hereby is merely incidental to such Investor's purchase of the Securities. The Company further represents to such Investor that the Company's decision to enter into this Agreement has been based solely on the independent evaluation by the Company and its representatives.

5.21 Shell Company Status. The Company is not a shell company (as defined in Rule 405 under the Securities Act) and has not been a shell company within the past 2 years. The Company has filed "Form 10 information" with the Commission as described pursuant to Rule 144 under the Securities Act and at least 12 months has passed since such "Form 10 information" was filed with the Commission.

5.22 Dilutive Effect. The Company acknowledges that its obligation to issue the Warrant Shares upon exercise of the Warrants in accordance with this Agreement and the Warrants is absolute and unconditional, regardless of the dilutive effect that such issuance may have on the ownership interests of other stockholders of the Company.

5.23 Application of Takeover Protections; Rights Agreement. The Company and its board of directors have taken all necessary action, if any, in order to render inapplicable any control share acquisition, interested stockholder, business combination, poison pill (including, without limitation, any distribution under a rights agreement), stockholder rights plan or other similar anti-takeover provision under the articles of incorporation, bylaws or other organizational documents or the laws of the jurisdiction of its incorporation or otherwise which is or could become applicable to either Investor as a result of the transactions contemplated by this Agreement, including, without limitation, the Company's issuance of the Securities and such Investor's ownership of the Securities. The Company and its board of directors have taken all necessary action, if any, in order to render inapplicable any stockholder rights plan or similar arrangement relating to accumulations of beneficial ownership of Common Shares or a change in control of the Company or any of its Subsidiaries.

5.24 Insurance. The Company is insured by insurers of recognized financial responsibility against such losses and risks and in such amounts as management of the Company

believes to be prudent and customary in the business in which the Company is engaged. The Company has not been refused any insurance coverage sought or applied for, and the Company has no reason to believe that it will be unable to renew its existing insurance coverage as and when such coverage expires or to obtain similar coverage from similar insurers as may be necessary to continue its business at a cost that would not have a Material Adverse Effect.

5.25 Employee Relations. The Company is not a party to any collective bargaining agreement and does not employ any member of a union. The Company believes that its relations with its employees are good. No executive officer (as defined in Rule 501(f) promulgated under the 1933 Act) or other key employee of the Company has notified the Company that such officer intends to leave the Company or otherwise terminate such officer's employment with the Company. No executive officer or other key employee of the Company is, or is now expected to be, in violation of any material term of any employment contract, confidentiality, disclosure or proprietary information agreement, non-competition agreement, or any other contract or agreement or any restrictive covenant, and the continued employment of each such executive officer or other key employee (as the case may be) does not subject the Company to any liability with respect to any of the foregoing matters. The Company is in compliance with all federal, state, local and foreign laws and regulations respecting labor, employment and employment practices and benefits, terms and conditions of employment and wages and hours, except where failure to be in compliance would not, either individually or in the aggregate, reasonably be expected to result in a Material Adverse Effect.

5.26 Title. The Company and its Subsidiaries have good and marketable title in fee simple to all real property, and have good and marketable title to all personal property, owned by them which is material to the business of the Company and its Subsidiaries, in each case, free and clear of all liens, encumbrances and defects except such as do not materially affect the value of such property and do not interfere with the use made and proposed to be made of such property by the Company and any of its Subsidiaries. Any real property and facilities held under lease by the Company or any of its Subsidiaries are held by them under valid, subsisting and enforceable leases with such exceptions as are not material and do not interfere with the use made and proposed to be made of such property and buildings by the Company or any of its Subsidiaries.

5.27 Environmental Laws. The Company and its Subsidiaries (i) are in compliance with all Environmental Laws (as defined below), (ii) have received all permits, licenses or other approvals required of them under applicable Environmental Laws to conduct their respective businesses and (iii) are in compliance with all terms and conditions of any such permit, license or approval where, in each of the foregoing clauses (i), (ii) and (iii), the failure to so comply could be reasonably expected to have, individually or in the aggregate, a Material Adverse Effect. "***Environmental Laws***" means all federal, state, local or foreign laws relating to pollution or protection of human health or the environment (including, without limitation, ambient air, surface water, groundwater, land surface or subsurface strata), including, without limitation, laws relating to emissions, discharges, releases or threatened releases of chemicals, pollutants, contaminants, or toxic or hazardous substances or wastes (collectively, "***Hazardous Materials***") into the environment, or otherwise relating to the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling of Hazardous Materials, as well as all authorizations, codes, decrees, demands or demand letters, injunctions, judgments,

licenses, notices or notice letters, orders, permits, plans or regulations issued, entered, promulgated or approved thereunder.

5.28 Tax Status. The Company and each of its Subsidiaries (i) has timely made or filed all foreign, federal and state income and all other tax returns, reports and declarations required by any jurisdiction to which it is subject, (ii) has timely paid all taxes and other governmental assessments and charges that are material in amount, shown or determined to be due on such returns, reports and declarations, except those being contested in good faith and (iii) has set aside on its books provision reasonably adequate for the payment of all taxes for periods subsequent to the periods to which such returns, reports or declarations apply. There are no unpaid taxes in any material amount claimed to be due by the taxing authority of any jurisdiction, and the officers of the Company and its Subsidiaries know of no basis for any such claim. The Company is not operated in such a manner as to qualify as a passive foreign investment company, as defined in Section 1297 of the U.S. Internal Revenue Code of 1986, as amended (the "***Code***").

5.29 Transfer Taxes. On the Closing Date, all stock transfer or other taxes (other than income or similar taxes) which are required to be paid in connection with the issuance, sale and transfer of the Securities to be sold to the Investors hereunder will be, or will have been, fully paid or provided for by the Company, and all laws imposing such taxes will be or will have been complied with.

5.30 Foreign Corrupt Practices. Neither the Company nor any of its Subsidiaries nor any director, officer, agent, employee or other Person acting on behalf of the Company or any of its Subsidiaries has, in the course of its actions for, or on behalf of, the Company or any of its Subsidiaries (i) used any corporate funds for any unlawful contribution, gift, entertainment or other unlawful expenses relating to political activity; (ii) made any direct or indirect unlawful payment to any foreign or domestic government official or employee from corporate funds; (iii) violated or is in violation of any provision of the U.S. Foreign Corrupt Practices Act of 1977, as amended; or (iv) made any unlawful bribe, rebate, payoff, influence payment, kickback or other unlawful payment to any foreign or domestic government official or employee.

5.31 Illegal or Unauthorized Payments; Political Contributions. Neither the Company nor any of its Subsidiaries nor, to the best of the Company's knowledge (after reasonable inquiry of its officers and directors), any of the officers, directors, employees, agents or other representatives of the Company or any of its Subsidiaries or any other business entity or enterprise with which the Company or any Subsidiary is or has been affiliated or associated, has, directly or indirectly, made or authorized any payment, contribution or gift of money, property, or services, whether or not in contravention of applicable law, (a) as a kickback or bribe to any Person or (b) to any political organization, or the holder of or any aspirant to any elective or appointive public office except for personal political contributions not involving the direct or indirect use of funds of the Company or any of its Subsidiaries.

5.32 Money Laundering. The Company and its Subsidiaries are in compliance with, and have not previously violated, the USA Patriot Act of 2001 and all other applicable U.S. and non-U.S. anti-money laundering laws and regulations, including, without limitation, the laws, regulations and Executive Orders and sanctions programs administered by the U.S. Office

of Foreign Assets Control, including, without limitation, (i) Executive Order 13224 of September 23, 2001 entitled, "Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism" (66 Fed. Reg. 49079 (2001)); and (ii) any regulations contained in 31 CFR, Subtitle B, Chapter V.

5.33 Investment Company Status. The Company is not, and upon consummation of the sale of the Securities will not be, an "investment company," an affiliate of an "investment company," a company controlled by an "investment company" or an "affiliated person" of, or "promoter" or "principal underwriter" for, an "investment company" as such terms are defined in the Investment Company Act of 1940, as amended.

5.34 U.S. Real Property Holding Corporation. Neither the Company nor any of its Subsidiaries is, or has ever been, and so long as any of the Securities are held by either Investor, shall become, a U.S. real property holding corporation within the meaning of Section 897 of the Code, and the Company and each Subsidiary shall so certify upon any Investor's request.

5.35 No Disqualification Events. None of the Company, any of its predecessors, any affiliated issuer, any director, executive officer, other officer of the Company participating in the offering contemplated hereby, any beneficial owner of 20% or more of the Company's outstanding voting equity securities, calculated on the basis of voting power, nor any promoter (as that term is defined in Rule 405 under the 1933 Act) connected with the Company in any capacity at the time of sale (each, an "***Issuer Covered Person***") is subject to any of the "Bad Actor" disqualifications described in Rule 506(d)(1)(i) to (viii) under the 1933 Act (a "***Disqualification Event***"), except for a Disqualification Event covered by Rule 506(d)(2) or (d)(3) under the 1933 Act. The Company has exercised reasonable care to determine whether any Issuer Covered Person is subject to a Disqualification Event.

6. Representations and Warranties of the Investors. Each Investor hereby represents, warrants and covenants, as to itself only and not the other Investor, that:

6.1 Authorization. The Investor has full power and authority to enter into this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby and has taken all action necessary to authorize the execution and delivery of this Agreement, the performance of its obligations hereunder and thereunder and the consummation of the transactions contemplated hereby and thereby.

6.2 No Public Sale or Distribution. The Investor is (i) acquiring its Note and Warrant, and (ii) upon exercise of its Warrant will acquire its Warrant Shares, in each case for its own account, not as a nominee or agent, and not with a view towards, or for resale in connection with, the public sale or distribution of any part thereof, except pursuant to sales registered or exempted under the 1933 Act. The Investor is acquiring the Securities hereunder in the ordinary course of its business. The Investor does not presently have any contract, agreement, undertaking, arrangement or understanding, directly or indirectly, with any individual, a limited liability company, a partnership, a joint venture, a corporation, a trust, an unincorporated organization and a government or any department or agency thereof (a "***Person***") to sell, transfer, pledge, assign or otherwise distribute any of the Securities.

6.3 Accredited Investor Status; Investment Experience. The Investor is an "accredited investor" as that term is defined in Rule 501(a) of Regulation D. The Investor can bear the economic risk of its investment in the Securities, and has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of an investment in the Securities.

6.4 Reliance on Exemptions. The Investor understands that the Securities are being offered and sold to it in reliance on specific exemptions from the registration requirements of United States federal and state securities laws and that the Company is relying in part upon the truth and accuracy of, and the Investor's compliance with, the representations, warranties, agreements, acknowledgments and understandings of the Investor set forth herein in order to determine the availability of such exemptions and the eligibility of the Investor to acquire the Securities.

6.5 Information. The Investor and its advisors, if any, have been furnished with all materials relating to the business, finances and operations of the Company and materials relating to the offer and sale of the Securities which have been requested by the Investor. The Investor and its advisors, if any, have been afforded the opportunity to ask questions of the Company. Neither such inquiries nor any other due diligence investigations conducted by the Investor or its advisors, if any, or its representatives shall modify, amend or affect the Investor's right to rely on the Company's representations and warranties contained herein. The Investor understands that its investment in the Securities involves a high degree of risk. The Investor has sought such accounting, legal and tax advice as it has considered necessary to make an informed investment decision with respect to its acquisition of the Securities. The Investor is relying solely on its own accounting, legal and tax advisors, and not on any statements of the Company or any of its agents or representatives, for such accounting, legal and tax advice with respect to its acquisition of the Securities and the transactions contemplated by this Agreement.

6.6 No Governmental Review. The Investor understands that no United States federal or state agency or any other government or governmental agency has passed on or made any recommendation or endorsement of the Securities or the fairness or suitability of the investment in the Securities nor have such authorities passed upon or endorsed the merits of the offering of the Securities.

6.7 Validity; Enforcement; No Conflicts. This Agreement has been duly and validly authorized, executed and delivered on behalf of the Investor and shall constitute the legal, valid and binding obligation of the Investor enforceable against the Investor in accordance with its terms, except as such enforceability may be limited by general principles of equity or to applicable bankruptcy, insolvency, reorganization, moratorium, liquidation and other similar laws relating to, or affecting generally, the enforcement of applicable creditors' rights and remedies. The execution, delivery and performance by the Investor of this Agreement and the consummation by the Investor of the transactions contemplated hereby will not (i) result in a violation of the organizational documents of the Investor or (ii) conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Investor is a party, or (iii) result in a violation of any law, rule, regulation, order, judgment or decree (including federal and state securities or "Blue Sky" laws) applicable to the Investor, except in the case of clause (ii) above, for such

conflicts, defaults or rights which would not, individually or in the aggregate, reasonably be expected to have a material adverse effect on the ability of the Investor to perform its obligations hereunder.

7. Use of Proceeds. The Company shall use the proceeds from the sale of the Securities for general working capital purposes.

8. Rule 144 Availability; Public Information. At all times during the period commencing on the Closing Date and ending at such time that all of the Securities can be sold without the requirement to be in compliance with Rule 144(c)(1) under the 1933 Act and otherwise without restriction or limitation pursuant to Rule 144 under the 1933 Act, the Company shall use its reasonable best efforts to ensure the availability of Rule 144 under the 1933 Act to the Investors with regard to the Warrant Shares, including compliance with Rule 144(c)(1) under the 1933 Act. If, (i) at any time any Investor owns any Securities, the Company shall fail for any reason to satisfy the current public information requirement under Rule 144(c) under the 1933 Act (a "***Public Information Failure***"), or (ii) the Company shall fail to take such action as is reasonably requested by any Investor to enable such Investor to sell the Warrant Shares pursuant to Rule 144 under the 1933 Act (including, without limitation, delivering all such legal opinions, consents, certificates, resolutions and instructions to the Company's transfer agent as may be reasonably requested from time to time by such Investor and otherwise fully cooperate with Investor and Investor's broker to effect such sale of securities pursuant to Rule 144 under the 1933 Act), then, in either case, in addition to such Investor's other available remedies, the Company shall pay to such Investor, in cash, as liquidated damages and not as a penalty, by reason of any such delay in or reduction of its ability to sell the Securities, an amount in cash equal to one percent (1.0%) of the aggregate Purchase Price of such Investor's Securities on the day of a Public Information Failure and on every thirtieth (30th) day (pro rated for periods totaling less than thirty days) thereafter until the earlier of (a) the date such Public Information Failure is cured and (b) such time that such public information is no longer required for such Investor to transfer the Warrant Shares pursuant to Rule 144 under the 1933 Act. The payments to which the Investor shall be entitled pursuant to this Section 8 are referred to herein as "***Rule 144 Failure Payments***." Rule 144 Failure Payments shall be paid on the earlier of (i) the last day of the calendar month during which such Rule 144 Failure Payments are incurred and (ii) the third (3rd) Trading Day after the event or failure giving rise to the Rule 144 Failure Payments is cured.

9. Indemnification. In consideration of each Investor's execution and delivery of this Agreement and acquiring the Securities hereunder and in addition to all of the Company's other obligations under this Agreement, the Notes and the Warrants, the Company shall defend, protect, indemnify and hold harmless each Investor and each holder of any Securities and all of their stockholders, partners, members, officers, directors, employees and direct or indirect investors and any of the foregoing Persons' agents or other representatives (including, without limitation, those retained in connection with the transactions contemplated by this Agreement) (collectively, the "***Indemnitees***") from and against any and all actions, causes of action, suits, claims, losses, costs, penalties, fees, liabilities and damages, and expenses in connection therewith (irrespective of whether any such Indemnitee is a party to the action for which indemnification hereunder is sought), and including reasonable attorneys' fees and disbursements (the "***Indemnified Liabilities***"), incurred by any Indemnitee as a result of, or

arising out of, or relating to (a) any misrepresentation or breach of any representation or warranty made by the Company in this Agreement, the Notes or the Warrants, (b) any breach of any covenant, agreement or obligation of the Company contained in any of this Agreement, the Notes or the Warrants, or (c) any cause of action, suit, proceeding or claim brought or made against such Indemnitee by a third party (including for these purposes a derivative action brought on behalf of the Company or any Subsidiary) or which otherwise involves such Indemnitee that arises out of or results from (i) the execution, delivery, performance or enforcement of any of this Agreement, the Notes or the Warrants, (ii) any transaction financed or to be financed in whole or in part, directly or indirectly, with the proceeds of the issuance of the Securities, or (iii) the status of the Investor or holder of the Securities either as an investor in the Company pursuant to the transactions contemplated by this Agreement or as a party to this Agreement (including, without limitation, as a party in interest or otherwise in any action or proceeding for injunctive or other equitable relief). To the extent that the foregoing undertaking by the Company may be unenforceable for any reason, the Company shall make the maximum contribution to the payment and satisfaction of each of the Indemnified Liabilities which is permissible under applicable law.

10. Listing; Blue Sky. The Company shall promptly secure the approval for listing of the maximum number of Warrant Shares issuable upon exercise of the Warrant (without taking into account any limitations on the exercise of the Warrant set forth therein) that may from time to time be issuable under the terms of the Warrant, in each case on the Trading Market, if required by the Trading Market. The Company shall not take any action which could be reasonably expected to result in the delisting or suspension of the quotation of the Common Shares on the Trading Market. The Company shall take such action as the Company shall reasonably determine is necessary in order to obtain an exemption for, or to, qualify the Securities for sale to the Investors at the Closing pursuant to this Agreement under applicable securities or "Blue Sky" laws of the states of the United States (or to obtain an exemption from such qualification), and shall provide evidence of any such action so taken to the Investors on or prior to the Closing Date. Without limiting any other obligation of the Company under this Agreement, the Company shall timely make all filings and reports relating to the offer and sale of the Securities required under all applicable securities laws (including, without limitation, all applicable federal securities laws and all applicable "Blue Sky" laws), and the Company shall comply with all applicable federal, foreign, state and local laws, statutes, rules, regulations and the like relating to the offering and sale of the Securities to the Investor. The Company shall pay all fees and expenses in connection with satisfying its obligations under this Section 10.

11.

12. Conduct of Business. The business of the Company and its Subsidiaries shall not be conducted in violation of any law, ordinance or regulation of any governmental entity, except where such violations would not result, either individually or in the aggregate, in a Material Adverse Effect.

13. Passive Foreign Investment Company. The Company shall conduct its business, and shall cause its Subsidiaries to conduct their respective businesses, in such a manner as will ensure that the Company will not be deemed to constitute a passive foreign investment company within the meaning of Section 1297 of the Code.

14. Restriction on Redemption and Cash Dividends. So long as any Note is outstanding, the Company shall not, directly or indirectly, redeem, or declare or pay any cash dividend or distribution on, any securities of the Company without the prior express written consent of each Investor still holding a Note.

15. Corporate Existence. So long as any Note or Warrant is outstanding, the Company shall not be party to any Fundamental Transaction (as defined in the Notes) unless the Company is in compliance with the applicable provisions governing Fundamental Transactions set forth in the Notes and the Warrants.

16. Limitation on Variable Rate and Section 3(a)(10) Transactions.

(a) So long as any Note or Warrant is outstanding, the Company agrees not to enter into any debt settlement agreements pursuant to Section 3(a)(10) of the Securities Act of 1933.

17. Miscellaneous

17.1 Successors and Assigns. Except as otherwise provided herein, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties (including transferees of the Securities). Nothing in this Agreement, express or implied, is intended to confer upon any party, other than the parties hereto or their respective successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

17.2 Governing Law; Jurisdiction; Jury Trial. All questions concerning the construction, validity, enforcement and interpretation of this Agreement shall be governed by the internal laws of the State of Nevada, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of California or any other jurisdictions) that would cause the application of the laws of any jurisdictions other than the State of California. Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in San Diego County, California, for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper. Each party hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof to such party at the address for such notices to it under this Agreement and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law. **EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE, AND AGREES NOT TO REQUEST, A JURY TRIAL FOR THE ADJUDICATION OF ANY DISPUTE HEREUNDER OR IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREBY**.

17.3 Titles and Subtitles. The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

17.4 Notices. All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed telex or facsimile or email if sent during normal business hours of the recipient; if not, then on the next Trading Day, (c) five (5) Trading Days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent to (a) in the case of the Company, to Two Rivers Water & Farming, Co., 3025 South Parker Rd. Suite 140 Aurora, CO. 80014 bgregorak@2riverswater.com and (b) in the case of the Investors, as the case may be, to INSERT ADDRESS AND EMAIL, Email:, or Black Mountain Equities, Inc., Email: adam@blackmountainequities.com.

17.5 Amendments and Waivers. No provision of this Agreement may be amended other than by a written instrument signed by both parties hereto. No provision of this Agreement may be waived other than in a written instrument signed by the party against whom enforcement of such waiver is sought. No failure or delay in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercises thereof or of any other right, power or privilege.

17.6 Brokers or Finder's Fees. The Company shall indemnify and hold harmless each Investor from any liability for any commission or compensation in the nature of a broker's or finders' fee (and the costs and expenses of defending against such liability or asserted liability) for which the Company or any of its officers, employees or representatives is responsible.

17.7 Severability. If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision shall be excluded from this Agreement and the balance of the Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

17.8 Entire Agreement. This Agreement and the documents referred to herein constitute the entire agreement among the parties and no party shall be liable or bound to any other party in any manner by any warranties, representations or covenants except as specifically set forth herein or therein.

17.9 Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

17.10 Interpretation. Unless the context of this Agreement clearly requires otherwise, (a) references to the plural include the singular, the singular the plural, the part the whole, (b) references to any gender include all genders, (c) "including" has the inclusive meaning frequently identified with the phrase "but not limited to" and (d) references to "hereunder" or "herein" relate to this Agreement.

17.11 Remedies. In addition to being entitled to exercise all rights provided herein or granted by law, including recovery of damages, the Investor and the Company will be entitled to specific performance under this Agreement. The parties agree that monetary damages may not be adequate compensation for any loss incurred by reason of any breach of obligations contained in this Agreement and hereby agree to waive and not to assert in any action for specific performance of any such obligation the defense that a remedy at law would be adequate.

18. Additional Defined Terms. In addition to the terms defined elsewhere in this Agreement, the Note and the Warrant, the following terms have the meanings set forth in this Section 18:

18.1 "***1934 Act***" means the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

18.2 "***Commission***" means the United States Securities and Exchange Commission.

18.3 "***Common Shares***" means the common stock, par value $0.001 per share, of the Company.

18.4 "***Liens***" means a lien, charge pledge, security interest, encumbrance, right of first refusal, preemptive right or other restriction.

18.5 "***Material Adverse Effect***" means (i) a material adverse effect on the legality, validity or enforceability of this Agreement, the Note or the Warrant, (ii) a material adverse effect on the results of operations, assets, business, prospects or condition (financial or otherwise) of the Company and its Subsidiaries, taken as a whole, or (iii) a material adverse effect on the Company's ability to perform in any material respect on a timely basis its obligations under this Agreement, the Note or the Warrant.

18.6 "***Registrable Securities***" means (i) the Warrant Shares issuable upon exercise of the Warrant (without taking into account any limitations on the exercise of the Warrant set forth therein), and (ii) any capital stock of the Company issued or issuable with respect to the Warrant Shares, including, without limitation, (1) as a result of any stock split, stock dividend, recapitalization, exchange or similar event or otherwise and (2) shares of capital stock of the Company into which the Common Shares are exercised or exchanged and shares of capital stock of a successor entity into which the Common Shares are converted or exchanged.

18.7 "***Subsidiary***" means any corporation or other entity of which at least a majority of the securities or other ownership interest having ordinary voting power for the election of directors or other persons performing similar functions are at the time owned directly or indirectly by the Company and/or any of its other Subsidiaries.

18.8 "***Trading Day***" means any day on which the Common Shares are traded on the Trading Market, provided that "***Trading Day***" shall not include any day on which the Common Shares are scheduled to trade on the Trading Market for less than 4.5 hours or any day that the Common Shares are suspended from trading during the final hour of trading on the Trading Market (or if the Trading Market does not designate in advance the closing time of

trading on the Trading Market, then during the hour ending at 4:00:00 p.m., Eastern time) unless such day is otherwise designated as a Trading Day in writing by the Investor.

18.9 "***Trading Market***" means the OTCQB operated by the OTC Markets Group, Inc. (or any nationally recognized successor thereto); provided, however, that in the event the Company's Common Shares are ever listed or traded on The NASDAQ Capital Market, The NASDAQ Global Market, The NASDAQ Global Select Market, the New York Stock Exchange, the NYSE MKT, or the OTCQX operated by the OTC Markets Group, Inc. (or any nationally recognized successor to any of the foregoing), then the "Trading Market" shall mean such other market or exchange on which the Company's Common Shares are then listed or traded.

18.10 "***VWAP***" means the volume weighted average price (the aggregate sales price of all trades of Common Shares during a Trading Day divided by the total number of Common Shares traded during such Trading Day) of the Common Shares during a Trading Day as reported by www.NASADAQ.com.

[SIGNATURES ON THE FOLLOWING PAGE]

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be duly executed and delivered as of the date provided above.

**THE COMPANY**

**TWO RIVERS WATER & FARMING CO.**

By: ______________________________
Name: Wayne Harding
Title: CEO

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be duly executed and delivered as of the date provided above.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be duly executed and delivered as of the date provided above.

**INVESTOR:**

**BLACK MOUNTAIN EQUITIES, INC.**

By:________________________
Name: Adam Baker
Its: President

Original Principal Amount of Note: $330,000
Purchase Price: $300,000
Warrants: 440,000

# EXHIBIT A

## FORM OF NOTE

*(attached)*

**EXHIBIT B**

**FORM OF WARRANT**

*(attached)*

# Schedule 5.18

## INDEBTEDNESS

**NEITHER THIS NOTE NOR THE SECURITIES INTO WHICH THIS NOTE IS PROMISSORY HAVE BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION OR THE SECURITIES COMMISSION OF ANY STATE. THESE SECURITIES HAVE BEEN SOLD IN RELIANCE UPON AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND, ACCORDINGLY, MAY NOT BE OFFERED OR SOLD EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT OR PURSUANT TO AN AVAILABLE EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS.**

# TWO RIVERS WATER & FARMING COMPANY

## PROMISSORY NOTE

Issuance Date: **April 26, 2017**
Note No. **BME1**

Original Principal Amount: **$330,000**
Consideration Paid at Close: **$300,000**

**FOR VALUE RECEIVED, Two Rivers Water & Farming Company**, a Colorado corporation (the "Company"), hereby promises to pay to the order of **Black Mountain Equities Inc.** or registered assigns (the "Holder") the amount set out above as the Original Principal Amount (together with any other Outstanding Balance, as defined below) upon the Maturity Date (as defined below) in accordance with the terms hereof, which amount includes interest deemed to be accrued on the Original Principal Amount as set forth herein.

The Original Principal Amount is $330,000 (three hundred thirty thousand dollars). The Consideration is $300,000 (three hundred thousand dollars) payable by wire transfer. The Holder shall pay $300,000 of Consideration upon closing of this Note. For purposes hereof, the term "Outstanding Balance" means the Original Principal Amount, as reduced or increased, as the case may be, pursuant to the terms hereof, breach hereof or otherwise, plus any collection and enforcements costs, and any other fees or charges incurred under this Note.

(1) GENERAL TERMS

(a) Payment of Outstanding Balance. The "Maturity Date" shall be October 26, 2017, and may be extended at the option of the Holder in the event that, and for so long as, an Event of Default (as defined below) shall not have occurred and be continuing on the Maturity Date (as may be extended pursuant to this Section 1) or any event shall not have occurred and be continuing on the Maturity Date (as may be extended pursuant to this Section 1) that with the passage of time and the failure to cure would result in an Event of Default.

(b) Interest. A one-time interest charge of ten percent (10%) of the Consideration, or $30,000 (thirty thousand dollars), shall be applied on the Issuance Date and is included in the Original Principal Amount. Interest hereunder shall be paid on the Maturity Date (or sooner as provided herein) to the Holder or its assignee, by payment of the Original Principal Amount.

(c) Security. This Note shall not be secured by any collateral or any assets pledged to the Holder.

(d) Pre-Payment. The Company will be allowed to pre-pay the note to the Holder in whole or in part at any time without any pre-payment penalty.

(2) EVENTS OF DEFAULT.

(a) An "Event of Default", wherever used herein, means any one of the following events (whatever the reason and whether it shall be voluntary or involuntary or effected by operation of law or pursuant to any judgment, decree or order of any court, or any order, rule or regulation of any administrative or governmental body):

(i) The Company's failure to pay to the Holder any amount of the Outstanding Balance.when and as due under this Note

(ii) The Common Stock is suspended or delisted for trading on the Over the Counter Bulletin Board market (the "Primary Market").

(iii) The Company's Common Stock trades at or below a price of $0.01 as reported by the OTC Markets website.

(iv) The Company loses its status as "DTC Eligible."

(viii) The Company shall becomes delinquent in its filing requirements as a fully-reporting issuer registered with the Securities & Exchange Commission.

(b) Upon the occurrence of any Event of Default, the Outstanding Balance shall immediately increase to 120% of the Outstanding Balance immediately prior to the occurrence of the Event of Default (the "Default Effect"). The Default Effect shall automatically apply upon the occurrence of an Event of Default without the need for any party to give any notice or take any other action.

(6) REISSUANCE OF THIS NOTE.

(a) Assignability. The Company may not assign this Note. This Note will be binding upon the Company and its successors and will inure to the benefit of the Holder and its successors and assigns and may be assigned by the Holder to anyone of its choosing without Company's approval.

(b) Lost, Stolen or Mutilated Note. Upon receipt by the Company of evidence reasonably satisfactory to the Company of the loss, theft, destruction or mutilation of this Note, and, in the case of loss, theft or destruction, of any indemnification undertaking by the Holder to the Company in customary form and, in the case of mutilation, upon surrender and cancellation of this Note, the Company shall execute and deliver to the Holder a new Note representing the outstanding Principal.

(7) NOTICES. Any notices, consents, waivers or other communications required or permitted to be given under the terms hereof must be in writing and will be deemed to have been delivered: (i) upon receipt, when delivered personally; (ii) upon receipt, when sent by facsimile (provided confirmation of transmission is mechanically or electronically generated and kept on file by the sending party) (iii) upon receipt, when sent by email; or (iv) one (1) Business Day after deposit with a nationally recognized overnight delivery service, in each case properly addressed to the party to receive the same. The addresses and facsimile numbers for such communications shall be those set forth in the communications and documents that each party has provided the other immediately preceding the issuance of this Note or at such other address and/or facsimile number and/or to the attention of such other person as the recipient party has specified by written notice given to each other party three (3) Business Days prior to the effectiveness of such change. Written confirmation of receipt (i) given by the recipient of such notice, consent, waiver or other communication, (ii) mechanically or electronically generated by the sender's facsimile machine containing the time, date, recipient facsimile number and an image of the first page of such transmission or (iii) provided by a nationally recognized overnight delivery service, shall be rebuttable evidence of personal service, receipt by facsimile or receipt from a nationally recognized overnight delivery service in accordance with clause (i), (ii) or (iii) above, respectively.

The addresses for such communications shall be:

If to the Company, to:

Two Rivers Water & Farming Company
3025 South Parker Rd. Suite 140
Aurora Co. 80014
Attn: CEO
Email: wayne.harding@2riverswater.com

If to the Holder:

BLACK MOUNTAIN EQUITIES, INC.
13366 Greenstone Court
San Diego CA 92131
Attn: Adam Baker
Email: adam@blackmountainequities.com

(9) APPLICABLE LAW AND VENUE. This Note shall be governed by and construed in accordance with the laws of the State of Nevada, without giving effect to conflicts of laws thereof. Any action brought by either party against the other concerning the transactions contemplated by this Agreement shall be brought only in the state courts of Nevada or in the federal courts located in the city and county of San Diego, in the State of Nevada. Both parties and the individuals signing this Agreement agree to submit to the jurisdiction of such courts.

(10) WAIVER. Any waiver by the Holder of a breach of any provision of this Note shall not operate as or be construed to be a waiver of any other breach of such provision or of any breach of any other provision of this Note. The failure of the Holder to insist upon strict adherence to any term of this Note on one or more occasions shall not be considered a waiver or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Note. Any waiver must be in writing.

**IN WITNESS WHEREOF**, the Company has caused this Promissory Note to be duly executed by a duly authorized officer as of the date set forth above.

**COMPANY:**

**Two Rivers Water & Farming Company**

By: ______________

Name: Wayne Harding

Title: Chief Executive Officer

**HOLDER:**

**BLACK MOUNTAIN EQUITIES, INC.**

By: ______________

Name: Adam Baker

Title: President

THIS WARRANT AND THE COMMON STOCK ISSUABLE UPON EXERCISE OF THIS WARRANT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. THIS WARRANT AND THE COMMON STOCK ISSUABLE UPON EXERCISE OF THIS WARRANT MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT AS TO THIS WARRANT UNDER SUCH ACT AND ANY APPLICABLE STATE SECURITIES LAW OR AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT SUCH REGISTRATION IS NOT REQUIRED.

TWO RIVERS WATER & FARMING COMPANY

WARRANT TO PURCHASE SHARES OF COMMON STOCK

1. Issuance. In consideration of good and valuable consideration as set forth in the Purchase Agreement (defined below), including without limitation the Purchase Price (as defined in the Purchase Agreement), the receipt and sufficiency of which are hereby acknowledged by TWO RIVERS WATER & FARMING COMPANY, a Colorado corporation (the "**Company**"), BLACK MOUNTAIN EQUITIES, INC., its successors and/or registered assigns (the "**Holder**"), is hereby granted the right to purchase at any time on or after the Issue Date (as defined below) until the date which is the last calendar day of the month in which the fifth anniversary of the Issue Date occurs (the "**Expiration Date**"), 440,000 fully paid and nonassessable shares (the "**Warrant Shares**") of the Company's common stock, par value $0.001 per share (the "**Common Stock**"), as such number of Warrant Shares may be adjusted from time to time pursuant to the terms and conditions of this Warrant to Purchase Shares of Common Stock (this "**Warrant**"). This Warrant is being issued pursuant to the terms of that certain Securities Purchase Agreement dated April 26, 2017, to which the Company and the Holder are parties (as the same may be amended from time to time, the "**Purchase Agreement**").

Unless otherwise indicated herein, capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Purchase Agreement.

This Warrant was originally issued to the Holder on April 26, 2017 (the "**Issue Date**").

2. Exercise of Warrant.

2.1. General.

(a) This Warrant is exercisable in whole or in part at any time and from time to time commencing on the Issue Date and ending on the Expiration Date. Such exercise shall be effectuated by submitting to the Company (either by delivery to the Company or by email or facsimile transmission) a completed and duly executed Notice of Exercise substantially in the form attached to this Warrant as Exhibit A (the "**Notice of Exercise**"). The date such Notice of Exercise is either faxed, emailed or delivered to the Company shall be the "**Exercise Date**," provided that, if such exercise represents the full exercise of the outstanding balance of the Warrant, the Holder shall tender this Warrant to the Company within five (5) Trading Days thereafter, but only if the Warrant Shares to be delivered pursuant to the Notice of Exercise have been delivered to the Holder as of such date. The Notice of Exercise shall be executed by the Holder and shall indicate (i) the number of Warrant Shares (as defined below) to be issued pursuant to such exercise, and (ii) if applicable (as provided below), whether the exercise is a cashless exercise.

For purposes of this Warrant, the term "**Trading Day**" means any day during which the principal market on which the Common Stock is traded (the "**Principal Market**") shall be open for business.

(b) To the extent this Warrant is not previously exercised, and if the Market Price of one (1) Share is greater than the Exercise Price, the Holder may elect to receive Warrant Shares, in lieu of a cash exercise, equal to the value of this Warrant determined in the manner described below (or of any portion thereof remaining unexercised) by surrender of this Warrant and a Notice of Exercise, in which event the Company shall issue to Holder a number of Shares computed using the following formula:

$$X = \frac{Y\,(A-B)}{A}$$

Where X = the number of Warrant Shares to be issued to Holder.

Y = the number of Warrant Shares purchasable under this Warrant at the date of such calculation or, if only a portion of this Warrant is being exercised, the portion of this Warrant being canceled.

A = the Market Price (at the date of such calculation).

B = Exercise Price (as adjusted to the date of such calculation).

For the purposes of this Warrant, the following terms shall have the following meanings:

"**Affiliate**" shall mean an affiliate as such term is defined in Rule 144 under the Securities Act of 1933, as amended (or a successor rule).

"**Aggregate Exercise Price Payable**" shall mean the product of multiplying the number of Warrant Shares exercisable by the Exercise Price.

"**Closing Price**" shall mean the last sale price of the Common Stock on the Principal Market on the relevant Trading Day(s), as reported by Bloomberg LP (or if that service is not then reporting the relevant information regarding the Common Stock, a comparable reporting service of national reputation selected by the Holder and reasonably acceptable to the Company) for the relevant date.

"**Common Stock Equivalents**" shall mean any stock or securities (convertible into or exercisable or exchangeable) for shares of Common Stock, not including the Company's employee stock incentive plan.

"**Exercise Price**" shall mean seventy cents ($0.70) per share of Common Stock, subject to adjustments herein.

"**Market Price**" shall mean the Volume Weighted Average Price for the Common Stock on the Trading Day that is (i) five Trading Days prior to the Exercise Date or (ii) the Issue Date, whichever is greater.

"**Note**" shall mean that certain Promissory Note issued by the Company to the Holder pursuant to the Purchase Agreement, as the same may be amended from time to time, and including any promissory note(s) that replace or are exchanged for such referenced promissory note.

(c) If the Notice of Exercise form elects a "cash" exercise (or if the cashless exercise referred to in the immediately preceding subsection (b) is not available in accordance with the terms hereof), the Exercise Price per share of Common Stock for the Warrant Shares shall be payable, at the election of the Holder, in cash or by certified or official bank check or by wire transfer in accordance with instructions provided by the Company at the request of the Holder.

(d) Upon the appropriate payment to the Company, if any, of the Exercise Price for the Warrant Shares, together with the surrender of this Warrant (if required), the Company shall promptly, but in no case later than the date that is five (5) Trading Days following the date the Exercise Price is paid to the Company (or with respect to a "cashless exercise," the date that is three (3) Trading Days following the Exercise Date) (the **"Delivery Date"**), provided that all [conditions (**"DWAC Eligible Conditions"**) to the Company's eligibility for the Depositary Trust Company's Deposit/Withdrawal at Custodian (**"DWAC"**) system] are then satisfied, deliver or cause the Company's Transfer Agent to deliver the applicable Warrant Shares electronically via the DWAC system to the account designated by the Holder on the Notice of Exercise. If all DWAC Eligible Conditions are not then satisfied, the Company shall instead issue and deliver or cause to be issued and delivered (via reputable overnight courier) to the address as specified in the Notice of Exercise, a certificate, registered in the name of the Holder or its designee, for the number of Warrant Shares to which the Holder shall be entitled. For the avoidance of doubt, the Company has not met its obligation to deliver Warrant Shares by the Delivery Date unless the Transfer Agent has posted the shares for DWAC pickup and the Holder or its broker, as applicable, has been notified of this availability, or if the DWAC Eligible Conditions are not then satisfied, has actually received the certificate representing the applicable Warrant Shares no later than the close of business on the relevant Delivery Date pursuant to the terms set forth above.

(e) If Warrant Shares are delivered later than as required under subsection (d) immediately above, the Company agrees to pay, in addition to all other remedies available to the Holder in the Purchase Agreement or the Note, a late charge equal to the greater of (i) $1,000.00 and (ii) 2% of the product of (1) the sum of the number of shares of Common Stock not issued to the Holder on a timely basis and to which the Holder is entitled multiplied by (2) the Closing Price of the Common Stock on the Trading Day immediately preceding the last possible date which the Company could have issued such shares of Common Stock to the Holder without violating this Warrant, per Trading Day until such Warrant Shares are delivered. The Company shall pay any late charges incurred under this subsection in immediately available funds upon demand; *provided, however*, that, at the option of the Holder (without notice to the Company), such amount owed may be added to the principal amount of the Note. Furthermore, in addition to any other remedies which may be available to the Holder, in the event that the Company fails for any reason to effect delivery of the Warrant Shares as required under subsection (d) immediately above, the Holder may revoke all or part of the relevant Warrant exercise by delivery of a notice to such effect to the Company, whereupon the Company and the Holder shall each be restored to their respective positions immediately prior to the exercise of the relevant portion of this Warrant, except that the late charge described above shall be payable through the date notice of revocation or rescission is given to the Company.

(f) The Holder shall be deemed to be the holder of the Warrant Shares issuable to it in accordance with the provisions of this Section 2.1 on the Exercise Date.

2.2. Ownership Limitation. If at any time upon exercise of the Warrant, the Holder advises the Company (or the Company otherwise has actual knowledge) that the Holder would, together with other shares of Common Stock held by it or its Affiliates, own or beneficially

own by virtue of such action or receipt of additional shares of Common Stock a number of shares exceeding 4.99% of the number of shares of Common Stock outstanding on such date (the "**Maximum Percentage**"), the Company shall not be obligated and shall not issue to the Holder shares of Common Stock which would exceed the Maximum Percentage, but only until such time as the Maximum Percentage would no longer be exceeded by any such receipt of shares of Common Stock by the Holder. Upon delivery of a written notice to the Company, the Holder may from time to time increase (with such increase not effective until the sixty-first (61st) day after delivery of such notice) or decrease the Maximum Percentage to any other percentage not in excess of 4.99% as specified in such notice; provided that (i) any such increase in the Maximum Percentage will not be effective until the sixty-first (61st) day after such notice is delivered to the Company and (ii) any such increase or decrease will apply only to the Holder and its Affiliates. The provisions of this paragraph shall be construed and implemented in a manner otherwise than in strict conformity with the terms of this Section 2.2 to the extent necessary to correct this paragraph (or any portion of this paragraph) which may be defective or inconsistent with the intended beneficial ownership limitation contained in this Section 2.2 or to make changes or supplements necessary or desirable to properly give effect to such limitation. The limitation contained in this paragraph may not be waived and shall apply to a successor holder of the Note and Warrant.

3. Mutilation or Loss of Warrant. Upon receipt by the Company of evidence satisfactory to it of the loss, theft, destruction or mutilation of this Warrant, and (in the case of loss, theft or destruction) receipt of reasonably satisfactory indemnification, and (in the case of mutilation) upon surrender and cancellation of this Warrant, the Company will execute and deliver to the Holder a new Warrant of like tenor and date and any such lost, stolen, destroyed or mutilated Warrant shall thereupon become void.

4. Rights of the Holder. The Holder shall not, by virtue of this Warrant alone, be entitled to any rights of a stockholder in the Company, either at law or in equity, and the rights of the Holder with respect to or arising under this Warrant are limited to those expressed in this Warrant and are not enforceable against the Company except to the extent set forth herein.

5. Certain Adjustments.

5.1. Capital Adjustments. If the Company shall at any time prior to the expiration of this Warrant subdivide the Common Stock, by split-up or stock split, or otherwise, or combine its Common Stock, or issue additional shares of its Common Stock as a dividend, the number of Warrant Shares issuable upon the exercise of this Warrant shall forthwith be automatically increased proportionately in the case of a subdivision, split or stock dividend, or proportionately decreased in the case of a combination. Appropriate adjustments shall also be made to the Exercise Price, Market Price (in the event of a cashless exercise), and other applicable amounts, but the aggregate purchase price payable for the total number of Warrant Shares purchasable under this Warrant (as adjusted) shall remain the same. Any adjustment under this Section 5.1 shall become effective automatically at the close of business on the date the subdivision or combination becomes effective, or as of the record date of such dividend, or in the event that no record date is fixed, upon the making of such dividend.

5.2. Subsequent Equity Sales. If the Company or any Subsidiary thereof, as applicable, at any time while this Warrant is outstanding, shall sell or grant any option to purchase, or sell or grant any right to reprice, or otherwise dispose of or issue (or announce any offer, sale, grant or any option to purchase or other disposition) any Common Stock or Common Stock Equivalents entitling any person to acquire shares of Common Stock, at an effective price per share less than the then Exercise Price (such lower price, the "**Base Share Price**" and such issuances collectively, a "**Dilutive Issuance**") (if the holder of the Common Stock or Common Stock Equivalents so issued

shall at any time, whether by operation of purchase price adjustments, reset provisions, floating conversion, exercise or exchange prices or otherwise, or due to warrants, options or rights per share which are issued in connection with such issuance, be entitled to receive shares of Common Stock at an effective price per share which is less than the Exercise Price, such issuance shall be deemed to have occurred for less than the Exercise Price on such date of the Dilutive Issuance), then the Exercise Price shall be reduced (and only reduced) to equal the Base Share Price and the number of Warrant Shares issuable hereunder shall be increased such that the Aggregate Exercise Price Payable hereunder, after taking into account the decrease in the Exercise Price, shall be equal to the Aggregate Exercise Price Payable prior to such adjustment.. Such adjustment shall be made whenever such Common Stock or Common Stock Equivalents are issued. The Company shall notify the Holder in writing, no later than the Trading Day following the issuance of any Common Stock or Common Stock Equivalents subject to this Section 5.2, indicating therein the applicable issuance price, or applicable reset price, exchange price, conversion price and other pricing terms (such notice the "**Dilutive Issuance Notice**"). For purposes of clarification, whether or not the Company provides a Dilutive Issuance Notice pursuant to this Section 5.2, upon the occurrence of any Dilutive Issuance, after the date of such Dilutive Issuance the Holder is entitled to receive a number of Warrant Shares based upon the Base Share Price regardless of whether the Holder accurately refers to the Base Share Price in the Notice of Exercise. No adjustment will be made for shares issued to Water Redevelopment Co.

Initial: [initials]

6. Certificate as to Adjustments. In each case of any adjustment or readjustment in the shares of Common Stock issuable on the exercise of this Warrant, the Company at its expense will promptly cause its Chief Financial Officer or other appropriate designee to compute such adjustment or readjustment in accordance with the terms of this Warrant and prepare a certificate setting forth such adjustment or readjustment and showing in detail the facts upon which such adjustment or readjustment is based, including a statement of (a) the consideration received or receivable by the Company for any additional shares of Common Stock issued or sold or deemed to have been issued or sold, (b) the number of shares of Common Stock outstanding or deemed to be outstanding, and (c) the Exercise Price and the number of shares of Common Stock to be received upon exercise of this Warrant, in effect immediately prior to such adjustment or readjustment and as adjusted or readjusted as provided in this Warrant. The Company will forthwith mail a copy of each such certificate to the Holder and any Warrant Agent (as defined below) appointed pursuant to Section 8 hereof. Nothing in this Section 6 shall be deemed to limit any other provision contained herein.

7. Transfer to Comply with the Securities Act. This Warrant, and the Warrant Shares, have not been registered under the 1933 Act. This Warrant, the Warrant Shares and any other security issued or issuable upon exercise of this Warrant may only be sold, transferred, pledged or hypothecated (other than to an Affiliate) if (a) there exists an effective registration statement under the 1933 Act relating to such security or (b) the Company has received an opinion of counsel reasonably satisfactory to the Company that registration is not required under the 1933 Act. Until such time as registration has occurred under the 1933 Act, each certificate for this Warrant, the Warrant Shares and any other security issued or issuable upon exercise of this Warrant shall contain a legend, in form and substance satisfactory to counsel for the Company, setting forth the restrictions on transfer contained in this Section 7. Any such transfer shall be accompanied by a transferor assignment substantially in the form attached to this Warrant as Exhibit B (the "**Transferor Assignment**"), executed by the transferor and the transferee and submitted to the Company. Upon receipt of the duly executed Transferor Assignment, the Company shall register the transferee thereon as the new Holder on the books and records of the Company and such transferee shall be deemed a

"registered holder" or "registered assign" for all purposes hereunder, and shall have all the rights of the Holder.

8. Warrant Agent. The Company may, by written notice to the Holder, appoint an agent (a "**Warrant Agent**") for the purpose of issuing shares of Common Stock on the exercise of this Warrant pursuant hereto, exchanging this Warrant pursuant hereto, and replacing this Warrant pursuant hereto, or any of the foregoing, and thereafter any such issuance, exchange or replacement, as the case may be, shall be made at such office by such Warrant Agent.

9. Transfer on the Company's Books. Until this Warrant is transferred on the books of the Company, the Company may treat the Holder as the absolute owner hereof for all purposes, notwithstanding any notice to the contrary.

10. Notices. Any notice required or permitted hereunder shall be given in the manner provided in the subsection titled "Notices" in the Purchase Agreement, the terms of which are incorporated herein by reference.

11. Supplements and Amendments; Whole Agreement. This Warrant may be amended or supplemented only by an instrument in writing signed by the parties hereto. This Warrant, together with the Purchase Agreement and the Note, taken together, contain the full understanding of the parties hereto with respect to the subject matter hereof and thereof and there are no representations, warranties, agreements or understandings with respect to the subject matter hereof and thereof other than as expressly contained herein and therein.

12. Governing Law. This Warrant shall be governed by and interpreted in accordance with the laws of the State of Nevada, without giving effect to the principles thereof regarding the conflict of laws. The Company and, by accepting this Warrant, the Holder, each irrevocably (a) consent to and expressly submit to the exclusive personal jurisdiction of any state or federal court sitting in San Diego County, Nevada in connection with any dispute or proceeding arising out of or relating to this Warrant, (b) agree that all claims in respect of any such dispute or proceeding may only be heard and determined in any such court, (c) expressly submit to the venue of any such court for the purposes hereof, and (d) waive any claim of improper venue and any claim or objection that such courts are an inconvenient forum or any other claim or objection to the bringing of any such proceeding in such jurisdictions or to any claim that such venue of the suit, action or proceeding is improper. The Company and, by accepting this Warrant, the Holder, each hereby irrevocably consent to the service of process of any of the aforementioned courts in any such proceeding by the mailing of copies thereof by reputable overnight courier (e.g., FedEx) or certified mail, postage prepaid, to such party's address as provided for herein, such service to become effective ten (10) calendar days after such mailing. **THE COMPANY HEREBY IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO, AND AGREES NOT TO REQUEST, A JURY TRIAL FOR THE ADJUDICATION OF ANY DISPUTE HEREUNDER OR IN CONNECTION WITH OR ARISING OUT OF THIS WARRANT OR ANY TRANSACTION CONTEMPLATED HEREBY.**

13. Remedies. The remedies at law of the Holder of this Warrant in the event of any default or threatened default by the Company in the performance of or compliance with any of the terms of this Warrant are not and will not be adequate and, without limiting any other remedies available to the Holder in the Purchase Agreement or the Note, law or equity, to the fullest extent permitted by law, such terms may be specifically enforced by a decree for the specific performance of any agreement contained herein or by an injunction against a violation of any of the terms hereof or otherwise.

14. Counterparts. This Warrant may be executed in any number of counterparts and each of such counterparts shall for all purposes be deemed to be an original, and all such counterparts shall together constitute but one and the same instrument. Signature delivered via facsimile or email shall be considered original signatures for purposes hereof.

15. Descriptive Headings. Descriptive headings of the sections of this Warrant are inserted for convenience only and shall not control or affect the meaning or construction of any of the provisions hereof.

16. Attorney's Fees. In the event of any litigation or dispute arising from this Warrant, the parties agree that the party who is awarded the most money shall be deemed the prevailing party for all purposes and shall therefore be entitled to an additional award of the full amount of the attorneys' fees and expenses paid by said prevailing party in connection with the litigation and/or dispute without reduction or apportionment based upon the individual claims or defenses giving rise to the fees and expenses. Nothing herein shall restrict or impair a court's power to award fees and expenses for frivolous or bad faith pleading.

17. Severability. Whenever possible, each provision of this Warrant shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Warrant shall be invalid or unenforceable in any jurisdiction, such provision shall be modified to achieve the objective of the parties to the fullest extent permitted and such invalidity or unenforceability shall not affect the validity or enforceability of the remainder of this Warrant or the validity or enforceability of this Warrant in any other jurisdiction.

[*Remainder of page intentionally left blank*]

IN WITNESS WHEREOF, the Company has caused this Warrant to be duly executed by an officer thereunto duly authorized.

Dated: April 26, 2017

THE COMPANY:

TWO RIVERS WATER & FARMING COMPANY.

By: ______________________________
Name: Wayne Harding
Title: Chief Executive Officer

April 28, 2017

Broadridge Financial Solutions, LLC
16540 Pointe Village Dr., Suite 206
Lutz, FL 33558
Ladies and Gentlemen:

Two Rivers Water & Farming Company a Colorado corporation (the "Company") and Black Mountain Equities, Inc. (the "Investor") entered into a $330,000 Promissory Note (the "Note") dated April 26, 2017, and, and a Warrant to Purchase Shares of Common Stock ("Warrant") dated April 26, 2017 A copy of the Note, and Warrant are attached hereto. You should familiarize yourself with your issuance and delivery obligations, as Transfer Agent, contained therein.

You are hereby irrevocably authorized and instructed to reserve a sufficient number of shares of common stock ("Common Stock") of the Company at least 440,000 (four hundred and forty thousand) shares of Common stock for the Warrant which should be held in reserve for the Investor as of this date) for issuance upon full exercise of the Warrant in accordance with the terms thereof. In the event that the price per share of the Common Stock falls below 70% of the closing price on the date of this letter, the Investor may from time to time provide you with written notice to increase the number of shares of Common Stock so reserved, without any further action or confirmation of the Company, to such number of shares as equals 2 times the Aggregate Exercise Price of the Warrant at the time of the notice divided by the average of the closing prices of the Common Stock for the three trading days prior to the date of the notice. In the event of a reverse stock split the reserve should remain unchanged unless instructed by the Investor and the Company.

The ability to process a notice of exercise under the Warrant (an "Exercise Notice") in a timely manner is a material obligation of the Company pursuant to the Warrant. Your firm is hereby irrevocably authorized and instructed to issue shares ("Shares") of Common Stock of the Company to the Investor **without any further action or confirmation by the Company** (from the reserve, but in the event there are insufficient reserve shares of Common Stock to accommodate an Exercise Notice (defined below) your firm and the Company agree that the Exercise Notice should be completed using authorized but unissued shares of Common Stock that the Company has in its treasury) upon your receipt from the Investor of an Exercise Notice executed by the Investor. The Shares should be issued without any restrictive legend if: (A) the Investor provides you with an opinion of counsel of the Investor, in form, substance and scope customary for opinions of counsel in comparable transactions (and satisfactory to the transfer agent), to the effect that the Shares issued to the Investor pursuant to the Exercise Notice are not "restricted securities" as defined in Rule 144 and should be issued to the Investor without any restrictive legend, provided that the Company is current on its SEC filings and the opinion is dated within 90 days from the date of the issuance or transfer request; and (B) the number of Shares to be issued is less than 9.99% of the total issued common stock of the Company.

The Company hereby requests that your firm act immediately, without delay and without the need for any action or confirmation by the Company with respect to the issuance of Common Stock pursuant to any Exercise Notices received from the Investor.

The Shares shall not be subject to any stop-transfer restrictions at any time. The Company hereby confirms to you and to the Investor that no instruction other than as contemplated herein will be given to you by the Company with respect to the matters referenced herein. The Company hereby authorizes you, and you shall be obligated, to disregard any contrary instruction received by or on behalf of the Company or any other person purporting to represent the Company.

You are hereby authorized and directed to promptly disclose to the Investor, after Investor's request from time to time, the total number of shares of Common Stock issued and outstanding, the total number of shares of Common

Stock in the Float and the total number of shares of Common Stock that are authorized but unissued and unreserved.

The Company shall indemnify you and your officers, directors, principals, partners, agents and representatives, and hold each of them harmless from and against any and all loss, liability, damage, claim or expense (including the reasonable fees and disbursements of its attorneys) incurred by or asserted against you or any of them arising out of or in connection the instructions set forth herein, the performance of your duties hereunder and otherwise in respect hereof, including the costs and expenses of defending yourself or themselves against any claim or liability hereunder, except that the Company shall not be liable hereunder as to matters in respect of which it is determined that you have acted with gross negligence or in bad faith (which gross negligence or bad faith must be determined by a final, non-appealable order, judgment, decree or ruling of a court of competent jurisdiction). You shall have no liability to the Company in respect to any action taken or any failure to act in respect of this if such action was taken or omitted to be taken in good faith, and you shall be entitled to rely in this regard on the advice of counsel.

The Board of Directors of the Company has approved the foregoing (irrevocable instructions) and does hereby extend the Company's irrevocable agreement to indemnify your firm for all loss, liability or expense in carrying out the authority and direction herein contained on the terms herein set forth.

If the Company's account is in arrears with the Transfer Agent, the Transfer Agent shall not have any obligation to act upon these instructions; however the Investor shall have the option to cure the outstanding balance with the Transfer Agent.

The Company agrees that in the event that the Transfer Agent resigns as the Company's transfer agent, or if the Company decides to switch or terminate the current Transfer Agent, the Company shall engage a suitable replacement transfer agent that will agree to serve as transfer agent for the Company and be bound by the terms and conditions of these Irrevocable Instructions within five (5) business days.

The Investor is intended to be and is third party beneficiary hereof, and no amendment or modification to the instructions set forth herein may be made without the consent of the Investor.

Very truly yours,

Two Rivers Water & Farming Company

By: ______________________________
Mr. Wayne Harding
Chief Executive Officer

Acknowledged and Agreed:

______________________________
Adam Baker, Principal
Black Mountain Equities, Inc.

Broadridge Financial Solutions, LLC

By: ______________________________
Name:
Title:

# AMENDMENT

TO THE $330,000 PROMISORRY NOTE DATED April 26, 2017

This Amendment (this "**Agreement**") is entered into as of September 18, 2017 (the "**Effective Date**"), by and between Two Rivers Water & Farming Company a Colorado corporation (the "**Company**") and Black Mountain Equities, Inc. (the "**Holder**") collectively, the Company and Holder shall be referred to as the "**Parties**" and each a "**Party.**"

## RECITALS:

**WHEREAS**, on April 26, 2017 (the "**Issuance Date**"), the Company and the Holder entered into a Promissory Note (the "**Note**") pursuant to which the Company promised to pay $330,000 (the "**Original Principal Amount**").

**WHEREAS**, the parties hereto desire to enter into this Amendment to the Note.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the Parties hereby agree as follows:

1) The Maturity Date is herby extended to Jan 1, 2018.

2) The Original Principal Amount is hereby amended to $340,000

3) The Company shall issue a Common Stock Purchase Warrant for 146,000 shares of Common Stock attached hereto as <u>**Exhibit A**</u>

ALL OTHER TERMS AND CONDITIONS OF THE NOTE REMAIN IN FULL FORCE AND EFFECT.

Please indicate acceptance and approval of this amendment dated September 18, 2017 by signing below:

| | |
|---|---|
| Wayne Harding<br>Two Rivers Water & Farming Company<br>Chief Executive Officer | Adam Baker<br>Black Mountain Equities, Inc.<br>Principal |

**AMENDMENT #2**
TO THE PROMISSORY NOTE DATED April 26, 2017

The parties entered into a Promissory Note Dated April 26, 2017 in the Original Principal Amount of $330,000 (the "Note") by and between Two Rivers Water & Farming Company ("Company") and Black Mountain Equities, Inc. ("Holder");

WHEREAS: The Note has been amended on September 18, 2017 such that the Maturity Date was extended to Jan 1, 2018 and the Original Principal Amount was increased to $340,000.

The parties agree that the Note is hereby amended as follows:

Maturity: The Maturity Date shall be extended to February 1, 2018.

Partial Conversion: The Holder shall immediately convert a portion of the Note in the amount of $50,000 into 187,125 shares of freely tradeable common stock of the Company. The remaining balance of the note shall be due and payable on February 1, 2018.

In the event of an occurrence of an Event of Default, as defined in the Note, the Note shall become immediately due and payable. The Company shall meet all requirements to satisfy the availability of Rule 144 to the Holder including but not limited to timely fulfillment of its filing requirements as a fully-reporting issuer registered with the SEC, requirements for XBRL filings, and requirements for disclosure of financial statements on its website. Failure to meet such requirements, or failure to deliver shares within three business days of the date of this Amendment #2, shall render the partial conversion null and void, and the shares shall be returned to treasury, the conversion amount shall be returned to the Outstanding Balance, and the January 1, 2018 Maturity Date shall be reinstated.

ALL OTHER TERMS AND CONDITIONS OF THE CONVERTIBLE NOTE REMAIN IN FULL FORCE AND EFFECT.

Please indicate acceptance and approval of this amendment dated 12/12/2017 by signing below:

Bill Gregorak
Two Rivers Water & Farming Company
Chief Financial Officer

Adam Baker
Black Mountain Equities, Inc.
President

Two Rivers
WATER & FARMING

December 29, 2017

Broadridge Corporate Issuer Solutions, Inc.
ATTN: Issuance Department
1717 Arch St., Ste. 1300
Philadelphia, PA 19103

SUBMIT VIA EMAIL TO: Issuance@broadridge.com

Dear Broadridge:

This letter requests the below issuance from our 2011 plan of common shares.

Please take the necessary steps to issue the shares as indicated below.

| Registration Name | Registration Address | Social Sec No. or TIN | No. of Shares | Issuance Date | Cost Basis | Restricted? |
|---|---|---|---|---|---|---|
| Black Mountain Equities, Inc. | 13366 Greenstone Crt. San Diego, CA 92131 | 27-0156544 | 187,125 | December 12, 2017 | $0.2672 | No |

Spencer Edwards
DTC #8072
Black Mountain Equities
ACT # 178481800

If you need additional information, please contact me.

Sincerely,

Bill Gregorak CFO
Two Rivers Water & Farming Company

**AMENDMENT #3**
TO THE PROMISSORY NOTE DATED April 26, 2017

The parties entered into a Promissory Note Dated April 26, 2017 in the Original Principal Amount of $330,000 (the "Note") by and between Two Rivers Water & Farming Company ("Company") and Black Mountain Equities, Inc. ("Holder");

WHEREAS: The Note has been amended on September 18, 2017 such that the Maturity Date was extended to Jan 1, 2018 and the Original Principal Amount was increased to $340,000.

WHEREAS: The Note has a the Outstanding Balance is $290,000

The parties agree that the Note is hereby amended as follows:

> Maturity: The Maturity Date shall be extended to March 1, 2018.
>
> Partial Conversion: The Holder shall immediately convert a portion of the Note in the amount of $50,000 into 192,308 shares of freely tradeable common stock of the Company. The remaining balance of the note shall be due and payable on March 1, 2018.

In the event of an occurrence of an Event of Default, as defined in the Note, the Note shall become immediately due and payable. The Company shall meet all requirements to satisfy the availability of Rule 144 to the Holder including but not limited to timely fulfillment of its filing requirements as a fully-reporting issuer registered with the SEC, requirements for XBRL filings, and requirements for disclosure of financial statements on its website. Failure to meet such requirements, or failure to deliver shares within three business days of the date of this Amendment #2, shall render the partial conversion null and void, and the shares shall be returned to treasury, the conversion amount shall be returned to the Outstanding Balance, and the January 1, 2018 Maturity Date shall be reinstated.

ALL OTHER TERMS AND CONDITIONS OF THE CONVERTIBLE NOTE REMAIN IN FULL FORCE AND EFFECT.

Please indicate acceptance and approval of this amendment dated January 22, 2018 by signing below:

| | |
|---|---|
| Wayne Harding | Adam Baker |
| Two Rivers Water & Farming Company | Black Mountain Equities, Inc. |
| Chief Executive Officer | President |

**AMENDMENT**
TO THE $330,000 PROMISORRY NOTE DATED April 26, 2017

This Amendment (this "**Agreement**") is entered into as of July 31, 2018 (the "**Effective Date**"), by and between Two Rivers Water & Farming Company a Colorado corporation (the "**Company**") and Black Mountain Equities, Inc. (the "**Holder**") collectively, the Company and Holder shall be referred to as the "**Parties**" and each a "**Party.**"

**RECITALS:**

**WHEREAS**, on April 26, 2017 (the "**Issuance Date**"), the Company and the Holder entered into a Promissory Note (the "**Note**") pursuant to which the Company promised to pay $330,000 (the "**Original Principal Amount**").

**WHEREAS**, the parties hereto desire to enter into this Amendment to the Note.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the Parties hereby agree as follows:

1) **Maturity.** The Maturity Date is herby extended to September ~~31~~ 30 /WEH, 2018.

2) **Partial Conversion.** The Holder shall immediately convert a portion of the Note in the amount of $50,000 into 500,000 shares of freely tradeable common stock of the company, subject to Rule 144 /WEH

3) **Outstanding Balance.** The Outstanding Balance is hereby amended to $138,370.

ALL OTHER TERMS AND CONDITIONS OF THE NOTE REMAIN IN FULL FORCE AND EFFECT.

Please indicate acceptance and approval of this amendment dated July 31, 2018 by signing below:

Wayne Harding
Two Rivers Water & Farming Company
Chief Executive Officer

Adam Baker
Black Mountain Equities, Inc.
Principal

BLACK MOUNTAIN
EQUITIES
13366 Greenstone Court
San Diego CA 92131

Mr. Bill Gregorak
Two Rivers Water and Farming Company
3025 South Parker Rd,
Aurora, CO/.80014

**NOTICE OF EXERCISE**

Dear Bill,

Please find within an exercise notice for 100,000 warrants for Black Mountain Equities.

Black Mountain is exercising these warrants on a cashless basis for 49,366 shares. The calculation is as follows:

Cashless exercise formula: $X = \frac{Y\,(A-B)}{A}$

Y = Number of warrants exercised
A = Market Price
B = Exercise Price

$$49{,}366 = \frac{100{,}000\,(.5277-.2672)}{.5277}$$

**Please arrange to have 49,366 shares sent DWAC to**:

LEK Secutirues
DTC #0512
Black Mountain Equities
ACT # DARBLACK

Please let me know if you would like me to have my attorneys prepare the opinion. The remaining balance of warrants is 1,052,695

Adam Baker
President

# EXHIBIT 41

SEC Revocation of Two Rivers Registration (August 19, 2022)

McKowen v. Harrington, et al.
No. 1:25-cv-00708-PAB-NRN (D. Colo.)

SECURITIES AND EXCHANGE COMMISSION
Washington, D.C.

SECURITIES EXCHANGE ACT OF 1934
Release No. 95549 / August 18, 2022

Admin. Proc. File No. 3-20722

In the Matter of

TWO RIVERS WATER & FARMING COMPANY

OPINION OF THE COMMISSION

SECTION 12(j) PROCEEDING

Grounds for Remedial Action

**Failure to Comply with Periodic Filing Requirements**

Company failed to file periodic reports in violation of Section 13(a) of the Securities Exchange Act of 1934 and Exchange Act Rules 13a-1 and 13a-13. *Held*, it is in the public interest to revoke the registration of the company's securities.

APPEARANCES:

*Sandhya C. Harris* and *Christopher Bruckmann* for the Division of Enforcement.

Two Rivers Water & Farming Company (CIK No. 1302946; ticker TURV) ("Respondent"), an issuer with a class of securities registered with the Commission, failed to file an answer in response to an order instituting proceedings (the "OIP") alleging that it did not file required periodic reports.[1] Respondent again failed to respond to an order to show cause why it should not be found in default.[2] We now find Respondent to be in default, deem the allegations of the OIP to be true, and revoke the registrations of its securities.

## I. Background

### A. The Commission issued an order instituting proceedings against Respondent alleging that it violated the Securities Exchange Act of 1934 and the rules thereunder by failing to file required periodic reports.

On January 27, 2022, the Commission issued the OIP against Respondent pursuant to Section 12(j) of the Securities Exchange Act of 1934. Section 12(j) authorizes the Commission as it deems necessary or appropriate for the protection of investors to suspend for a period not exceeding 12 months, or to revoke, the registration of a security if the Commission finds, on the record after notice and opportunity for hearing, that the issuer of such security has failed to comply with any provision of the Exchange Act or the rules and regulations thereunder.[3]

As explained in the OIP, Exchange Act Section 13(a) and the rules promulgated thereunder require issuers of securities registered pursuant to Exchange Act Section 12 to file with the Commission current and accurate information in periodic reports.[4] The periodic reports are required to be filed even if the registration is voluntary under Section 12(g).[5] Specifically, Rule 13a-1 requires issuers to file annual reports, and Rule 13a-13 generally requires domestic issuers to file quarterly reports.[6] These requirements are imposed "for the proper protection of investors and to insure fair dealing" in an issuer's securities.[7] A violation of these provisions does not require scienter.[8]

---

1 *Two Rivers Water & Farming Company*, Exchange Act Release No. 94085, 2022 WL 255314 (Jan. 27, 2022).

2 *Two Rivers Water & Farming Company*, Exchange Act Release No. 94586, 2022 WL 990187 (Apr. 1, 2022).

3 15 U.S.C. § 78*l*(j).

4 *See* 15 U.S.C. §§ 78m(a), 78*l*.

5 *See* 15 U.S.C. §§ 78m(a), 78*l*(g).

6 17 C.F.R. §§ 240.13a-1, .13a-13.

7 15 U.S.C. § 78m(a).

8 *Advanced Life Scis. Holdings, Inc.*, Exchange Act Release No. 81253, 2017 WL 3214455, at *2 (July 28, 2017) (citing *Citizens Capital Corp.*, Exchange Act Release No. 67313, 2012 WL 2499350, at *5 (June 29, 2012)); *accord SEC v. McNulty*, 137 F.3d 732, 740–41 (2d Cir. 1998).

The OIP alleges that Respondent is delinquent in its periodic filings with the Commission because it has repeatedly failed to meet its obligations to file timely periodic reports. The OIP further alleges that Respondent also failed to heed a delinquency letter sent to it by the Division of Corporation Finance requesting compliance with its periodic filing obligations or, by failing to maintain a valid address on file with the Commission, did not receive such letter.

Specifically, the OIP alleges that Respondent is a good standing Colorado corporation located in Denver, Colorado, with a class of securities registered with the Commission pursuant to Exchange Act Section 12(g). The OIP further alleges that Respondent is delinquent in its periodic filings with the Commission, having not filed any periodic reports since it filed a Form 10-Q for the period ended September 30, 2019, which reported a net loss attributable to common shareholders of $1,142,000 for the prior nine months. The OIP alleges that, as of January 10, 2022, unsolicited quotations for the common stock of Respondent were quoted on OTC Link operated by OTC Markets Group, Inc.

The OIP directed Respondent to file an answer to the allegations contained therein within ten days after service, as provided by Rule 220(b) of the Commission's Rules of Practice.[9] The OIP informed Respondent that if it failed to answer, it may be deemed in default, the proceedings may be determined against it upon consideration of the OIP, and the allegations in the OIP may be deemed to be true as provided in the Rules of Practice.[10]

### B. Respondent failed to answer the OIP or respond to a show cause order.

Respondent was properly served with the OIP, but did not answer it. On April 1, 2022, more than ten days after service on Respondent, it was ordered to show cause by April 15, 2022, why the registration of its securities should not be revoked by default due to its failure to file an answer and to otherwise defend this proceeding.[11] Respondent was warned that if it "fail[ed] to respond to th[e] order to show cause, it may be deemed in default, the proceeding may be determined against it, and the registration of its securities may be revoked." Respondent did not subsequently answer the OIP or respond to the show cause order.

## II. Analysis

### A. We hold Respondent in default, deem the OIP's allegations to be true, and find that Respondent violated the Exchange Act by failing to file required periodic reports.

Rule of Practice 220(f) provides that if a respondent fails to file an answer required by this rule within the time provided, such respondent may be deemed in default pursuant to Rule 155(a).[12] Rule 155(a) permits the Commission to deem such a respondent in default and "determine the proceeding against [it] upon consideration of the record, including the order

---

9 17 C.F.R. § 201.220(b).

10 *See* Rule of Practice 155(a), 17 C.F.R. § 201.155(a).

11 *See supra* note 2.

12 17 C.F.R. § 201.220(f).

instituting proceedings, the allegations of which may be deemed to be true."[13] Because Respondent has failed to answer, and has not responded to the order to show cause, we find it appropriate to deem Respondent in default and to deem the allegations of the OIP to be true.

The OIP alleges that Respondent had a class of securities registered with the Commission under Exchange Act Section 12(g), and that it has failed to file required annual and quarterly reports. The allegations of the OIP, deemed true, establish that Respondent violated Exchange Act Section 13(a) and the rules thereunder.[14]

**B. We deem it necessary and appropriate to revoke the registration of all classes of Respondent's registered securities.**

Section 12(j) authorizes us as we deem "necessary or appropriate for the protection of investors" to suspend for 12 months or less or revoke the registration of an issuer's securities if the issuer has failed to make required filings.[15] We apply a multifactor test to determine an appropriate sanction:

> [W]e will consider, among other things, the seriousness of the issuer's violations, the isolated or recurrent nature of the violations, the degree of culpability involved, the extent of the issuer's efforts to remedy its past violations and ensure future compliance, and the credibility of its assurances, if any, against further violations.[16]

Although these factors are nonexclusive, and no single factor is dispositive,[17] "[w]e have held that a respondent's repeated failure to file its periodic reports on time is 'so serious' a violation of the Exchange Act that only a 'strongly compelling showing' regarding the other *Gateway* factors would justify a sanction less than revocation."[18]

---

13 17 C.F.R. § 201.155(a) (specifically authorizing such action where a respondent fails "[t]o answer . . . or otherwise to defend the proceeding").

14 *See supra* notes 4–8 and accompanying text.

15 15 U.S.C. § 78*l*(j); *see also* 15 U.S.C. § 78m(a); 17 C.F.R. §§ 240.13a-1, .13a-13.

16 *Gateway Int'l Holdings, Inc.*, Exchange Act Release No. 53907, 2006 WL 1506286, at *4 (May 31, 2006).

17 *China-Biotics, Inc.*, Exchange Act Release No. 70800, 2013 WL 5883342, at *12 (Nov. 4, 2013).

18 *Calais Res. Inc.*, Exchange Act Release No. 67312, 2012 WL 2499349, at *4 (June 29, 2012) (quoting *Nature's Sunshine Prods., Inc.*, Exchange Act Release No. 59268, 2009 WL 137145, at *7 (Jan. 21, 2009)); *accord Cobalis Corp.*, Exchange Act Release No. 64813, 2011 WL 2644158, at *5 (July 6, 2011); *Am. Stellar Energy, Inc. (n/k/a Tara Gold*), Exchange Act Release No. 64897, 2011 WL 2783483, at *4 (July 18, 2011).

Respondent's violations were recurrent in that it has failed to file required annual and quarterly reports over multiple years.[19] These violations were serious because "reporting requirements are 'the primary tool[s] which Congress has fashioned for the protection of investors from negligent, careless, and deliberate misrepresentations in the sale of stock and securities.'"[20] An issuer's failure to file periodic reports violates "a central provision of the Exchange Act . . . , depriv[ing] both existing and prospective holders of its registered stock of the ability to make informed investment decisions based on current and reliable information."[21] Respondent's "'long history of ignoring . . . reporting obligations' evidences a 'high degree of culpability.'"[22] And because Respondent failed to answer the OIP or respond to the show cause order, it has submitted no evidence of any efforts to remedy its past violations and ensure future compliance. Nor has it made any assurances against further violations.

Accordingly, each of the factors we analyze favors revocation. Respondent has failed to make a "strongly compelling showing" to justify another sanction. We find it necessary and

---

19 *See, e.g.*, *Accredited Bus. Consolidators Corp.*, Exchange Act Release No. 75840, 2015 WL 5172970, at *2 (Sept. 4, 2015) (failure to file "any periodic reports for over two years" was recurrent); *China-Biotics*, 2013 WL 5883342, at *10 (failure to "file a single periodic report for more than a year and a half" was recurrent); *Nature's Sunshine Prods.*, 2009 WL 137145, at *5 (failure to file "required filings over the course of the two-year period in the OIP" was recurrent). We take official notice of Respondent's EDGAR filings, which demonstrate that its delinquency has continued since the issuance of the OIP. *See* Rule of Practice 323, 17 C.F.R. § 201.323 ("Official notice may be taken of . . . any matter in the public official records of the Commission . . . ."); *Nature's Sunshine Prods.*, 2009 WL 137145, at *5 & n.23, *6 n.27 (finding that we may consider "matters that fall outside the OIP[] in assessing appropriate sanctions," such as an issuer's failure to file additional required reports with the Commission).

20 *America's Sports Voice, Inc.*, Exchange Act Release No. 55511, 2007 WL 858747, at *4 n.17 (Mar. 22, 2007) (alteration in original) (quoting *SEC v. Beisinger Indus. Corp.*, 552 F.2d 15, 18 (1st Cir. 1977)); *see also supra* note 18 and accompanying text (recurrent failure to file periodic reports is "so serious" as to require a "strongly compelling showing" regarding other factors to justify a sanction less than revocation).

21 *Accredited Bus. Consolidators*, 2015 WL 5172970, at *2; *see also United States v. Arthur Young & Co.*, 465 U.S. 805, 810 (1984) (observing that "[c]orporate financial statements are one of the primary sources of information available to guide the decisions of the investing public").

22 *See, e.g.*, *Citizens Capital*, 2012 WL 2499350, at *5 (ellipsis in original) (quoting *America's Sports Voice*, 2007 WL 858747, at *3).

appropriate for the protection of investors to revoke the registration of all classes of Respondent's registered securities.

An appropriate order will issue.

By the Commission (Chair GENSLER and Commissioners PEIRCE, CRENSHAW, UYEDA, and LIZÁRRAGA).

Vanessa A. Countryman
Secretary

UNITED STATES OF AMERICA
before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 95549 / August 18, 2022

Admin. Proc. File No. 3-20722

In the Matter of

TWO RIVERS WATER & FARMING COMPANY

ORDER IMPOSING REMEDIAL SANCTIONS

On the basis of the Commission's opinion issued this day, it is

ORDERED that the registration of all classes of the registered securities of Two Rivers Water & Farming Company under Section 12(g) of the Securities Exchange Act of 1934 is hereby revoked pursuant to Exchange Act Section 12(j).

The revocation is effective as of August 19, 2022.

By the Commission.

Vanessa A. Countryman
Secretary

# EXHIBIT 42

Hunt Email (January 19, 2023)

McKowen v. Harrington, et al.
No. 1:25-cv-00708-PAB-NRN (D. Colo.)

**From:** Jennifer Hunt Jennifer.Hunt@coag.gov
**Date:** Thursday, January 19, 2023 at 6:04 PM
**To:** John McKowen john@vtanva.com, India Kidd-Aaron India.Kidd-Aaron@coag.gov
**Cc:** Jennifer Reynard Jennifer.Reynard@coag.gov
**Subject:** RE: Settlement Discussions

Mr. McKowen,

We continue to view this case very differently than you and do not agree either that you did not engage in any violations of Colorado securities laws or that the statute of limitations on the Commissioner's claims has run. The applicable statute was cited in the complaint.

As we discussed after the first day of your deposition, we will be happy to engage in serious discussions about settlement after we complete the second day of your deposition and any further written discovery we determine is necessary. We are not required to make a settlement demand. Regardless, you are welcome to make a settlement offer at any time. We have been very upfront that any settlement must include an injunction and likely a monetary component. You are free to pursue any action you want against other defendants, but that is not the Commissioner's concern .

**Jennifer H. Hunt**
*She/her/hers*
Senior Assistant Attorney General
Assistant Solicitor General
720.508.6215 | jennifer.hunt@coag.gov
Cross-Unit Litigation
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203

**From:** John McKowen john@vtanva.com
**Sent:** Thursday, January 19, 2023 7:49 AM
**To:** Jennifer Hunt Jennifer.Hunt@coag.gov; India Kidd-Aaron India.Kidd-Aaron@coag.gov
**Subject:** Settlement Discussions
**Importance:** High

Ms. Hunt & Ms. Kidd-Aaron,

In our first meeting at your offices, it was stated that I would receive a settlement offer shortly. One was not presented. Instead, it was indicated that one would be provided after my written disclosures and deposition. That has not happened.

Irrespective that I did not commit any fraud or failure to disclose, the statute of limitations has run out for the State on its claims. The statute of limitations has not run out on the GrowCo debt for debt holders, of which I am the largest noteholder. Nor has the ability been lost to foreclose on the Orlando assets utilizing the DoTs.

I received actionable information I did not know before in Wayne Harding's deposition. That information will greatly assist GrowCo investors, of which I am the largest, to potentially get all their capital back, perhaps with exemplary damages.

# EXHIBIT 43

Paulson Final Order (Dkt. 178) and Settlement Agreement
Package (Doc 180)

McKowen v. Harrington, et al.
No. 1:25-cv-00708-PAB-NRN (D. Colo.)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 19-cv-02639-PAB-NYW

JOHN PAULSON, Individually and on Behalf of all Others Similarly Situated,

Plaintiff,

v.

JOHN R. MCKOWEN,
WAYNE HARDING, and
TIMOTHY BEALL,

Defendants.

---

**ORDER**

---

This matter is before the Court on Plaintiff's Motion for Final Approval of the Settlement [Docket No. 169] and Plaintiffs' Motion for an Award of Attorneys' Fees, Incentive Award, and Reimbursement of Litigation Expenses [Docket No. 170].

## I. BACKGROUND

### A. Factual Background

Plaintiff brings a securities class action against defendants. Docket No. 56. Plaintiff's amended complaint alleges that John R. McKowen, Wayne Harding, and Timothy Beall (collectively, the "individual defendants") were officers of Two Rivers Water and Farming Company ("Two Rivers"). Docket No. 157 at 5.

Plaintiff alleges that Two Rivers and McKowen formed GrowCo, Inc. ("GrowCo")[1] to "capitalize on [the] burgeoning marijuana industry in Colorado." Docket No. 56 at 5, ¶ 17. To support their operations, defendants offered GrowCo securities to investors (the "Offerings"). *Id.* at 6, ¶ 28. With the Offerings, defendants provided "sales presentations, memoranda of terms, exchange note purchase agreements, exchange agreements, investor questionnaires, and other documents . . . which purported to make material disclosures to investors about GrowCo and the Securities Offerings." *Id.*, ¶ 27. Plaintiff alleges that the Offering documents omitted material information about McKowen, including a 1987 disciplinary action, fine, and suspension with the National Association of Securities Dealers, a 1995 bankruptcy, and a 1992 default judgment in connection with a complaint before the Indiana Securities division. *Id.* at 7-8, ¶¶ 30–41.

**B. Procedural Background**

Defendants dispute these allegations and deny liability for the claims. McKowen moved to dismiss the complaint, Docket No. 73, on the basis that the information underlying the allegations against him "concerned the distant past, was not required to be disclosed, and was not material to investors' decisions to purchase GrowCo securities." Docket No. 157 at 6. This motion was pending when the parties and defendants' insurance carrier, Starstone Specialty Casualty Insurance Company ("Starstone"), agreed to engage in mediation before retired Denver District Court Judge

[1] GrowCo was in bankruptcy when this action was initiated and is not a party to this action. Docket No. 157 at 5 n.3. On July 6, 2021, the Bankruptcy Court granted the United States Trustee's and Debtor's Stipulated Motion for Entry of Order Dismissing Chapter 11 Case. *In re GrowCo., Inc.*, No. 19-10512, Docket No. 263 (D. Colo. Bankr.).

William Meyer. *Id.* at 2-3. The parties ultimately reached a settlement in August 2020, *id.* at 7, and on October 9, 2020 plaintiff filed an unopposed motion for preliminary approval of the settlement, approval of the notice to the class, preliminary certification of the class for the purposes of settlement, appointment of class counsel, and the scheduling of a fairness hearing. *See* Docket No. 131.

On January 25, 2021, the assigned magistrate judge granted a motion to withdraw by counsel for Two Rivers and issued an order to show cause why she should not impose sanctions against Two Rivers for failure to defend based on its failure to hire counsel to represent it. Docket No. 137 at 6. On February 24, 2021, the Court entered an order informing the parties that, because granting the motion for preliminary approval of the class action settlement would trigger proceedings that necessitated Two Rivers's participation, through counsel, the Court would not rule on the motion for preliminary approval until counsel entered an appearance on behalf of Two Rivers. Docket No. 139. On March 10, 2021, the Court entered an order notifying the parties that the Court would deny the motion for preliminary approval without prejudice if Two Rivers did not enter an appearance on or before March 16, 2021. Docket No. 145.

On April 6, 2021, plaintiff filed a motion to dismiss Two Rivers as a party. Docket No. 149. On June 29, 2021, the Court granted plaintiff's motion to dismiss Two Rivers without prejudice. Docket No. 153 at 11. The Court also granted plaintiff leave to file a revised motion for preliminary approval of the class action settlement in light of Two Rivers' dismissal, Docket No. 154, which plaintiff subsequently filed. Docket No. 157.

On January 19, 2022, the Court granted plaintiff's motion for preliminary approval. Docket No. 162 at 25. On April 11, 2022, plaintiff filed a motion for final

approval and a motion for attorneys' fees. *See* Docket Nos. 169-170. On April 29, 2022, the Court held a fairness hearing. Docket No. 176.[2]

## II. FINAL APPROVAL OF CLASS ACTION CERTIFICATION

Approval of a class action settlement under Fed. R. Civ. P. 23 takes place in two stages. In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement. In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it addresses (1) any timely objections to the treatment of this litigation as a class action, and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *see, e.g., McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

District courts have broad discretion in granting or denying class certification. *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso* ("*Shook II*"), 543 F.3d 597, 603 (10th Cir. 2008). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b). Where the plaintiff applies for class

---

[2] The fairness hearing was conducted by United States District Judge Daniel D. Domenico.

certification, plaintiff bears the burden of proving that Rule 23's requirements are satisfied. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 386 F.3d 963, 968 (10th Cir. 2004)).

**<u>A. Rule 23(a)</u>**

Rule 23(a) requires that (1) the class be so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative party are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In the order on the motion for preliminary approval, Docket No. 162 at 10-16, the Court found each of the requirements met and incorporates those findings herein. The requirements of Rule 23(a) are met.

**<u>B. Rule 23(b)(3)</u>**

The Court preliminarily certified the class under Rule 23(b)(3), *id.* at 16-18, which states that a class action may be maintained if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court finds that final certification is appropriate for the same reasons it found preliminary approval was warranted. *See* Docket No. 162 at 16-18.

## III. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Overview of the Settlement Agreement

The settlement class consists of:

> [A]ll persons or entities that currently hold claims based on securities in GrowCo, and purchased or otherwise acquired the securities through Offerings during the period of October 2014 through December 2017 (the "Class Period"), and suffered Alleged Losses as defined above. For the avoidance of doubt, persons or entities who purchased or otherwise acquired the securities during the Class Period and who have assigned the securities to VitaNova Partners, LLC are not excluded as Class Members by virtue of such assignment. Excluded from the Class are (1) the Defendants; (2) the officers and directors of Two Rivers and GrowCo during the Class Period as set forth in the attached Exhibit E for securities purchased at the time or after they were officers or directors; (3) any judge or judicial officer who may hear any aspect of this Class Action and his or her law clerks; and (4) except as provided in clause (2) of this paragraph above, all persons or entities released in the Settlement. Also excluded from the Settlement Class are the persons and/or entities who request exclusion from the Settlement Class within the time period set by the Court in the Preliminary Approval Order.

| Name | Type | Approximate Amount Raised | Date Range |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $ 3,349,151 | December 2014 - January 2015 |
| $4 Million Note | Debt | $ 4,000,000 | March 2015 - September 2015 |
| GCP Super Units LLC | Equity | $ 5,297,157 | July 2015 - October 2017 |
| $1.5 Million Note | Debt | $ 100,000 | April 2016 |
| $6 Million Note | Debt | $ 6,000,000 | March 2016 - July 2016 |
| $7 Million Note | Debt | $ 2,977,000 | January 2016 - September 2017 |
| $2 Million Note | Debt | $ 1,080,000 | February 2017 - September 2017 |
| $2 Million Note | Debt | $ 440,000 | June 2017 |

*See* Docket No. 157 at 31-32, 34, ¶¶ 1.i, 1.s. There are no subclasses.

In exchange for the release of all claims of the Settlement Class against all defendants, the Settlement Agreement provides that Starstone will pay $1.5 million for the benefit of the Class. *Id.* at 29-30, 36-37, ¶ 1.ll, 3. The parties agreed that this amount provides a "substantial and immediate benefit to the Class" and is appropriate

given that GrowCo has been in bankruptcy and Two Rivers's financial situation makes it unlikely that it would be able to satisfy a judgment. *Id.* at 8. The parties arrived at this amount after reviewing defendants' insurance policy, which covers claims up to $2 million minus the cost of the defense. *Id.* The $1.5 million figure "represents substantially all of the remaining insurance coverage net of defense costs to date." *Id.*

The Claims Administrator, selected by Class Counsel, will administer the process of receiving, reviewing, and denying claims under Class Counsel's supervision and will determine each claimant's pro rata share of the Settlement Amount upon a Class Member's showing of loss. *Id.* at 40, ¶¶ 12–14. The $1.5 million Settlement Fund will be used to pay, among other things, attorneys' fees and expenses, costs and expenses reasonably and actually incurred in connection with locating and providing notice to potential Class Members, assisting with filing claims, and administering and distributing the Settlement Fund. *Id.* at 40-41, ¶ 15.

**B. Notice to the Settlement Class**

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement. *DeJulius v. New England*

*Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005). However, due process does not require that each Class Member receive actual notice to be bound by the adjudication of a representative action. *Id*. Instead, the procedural rights of absent class members are satisfied so long as “the best notice practicable [is given] under the circumstances including individual notice to all members who can be identified through reasonable effort.” *In re Integra Realty Resources, Inc*., 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted). Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar. *DeJulius*, 429 F.3d at 944.

Class counsel received a list of 82 investors and their addresses from GrowCo’s bankruptcy counsel. Docket No. 169 at 30, ¶ 43. The claim administrator mailed the notice to each of these persons by first class mail on February 2, 2022. *Id.* at 39, ¶ 3. Following this, the claim administrator received three additional names and addresses and mailed the notice to these addressed. *Id.*, ¶ 4. Eleven of the notices were returned undeliverable; the claim administrator took steps to find current addresses for each of these people. *Id.*, ¶ 5. On March 30, 2022, the claim administrator re-mailed a notice to 56 potential class members who had not filed a claim form. *Id.* at 40, ¶ 6. Additionally, on February 2, 2022, the claim administrator established a webpage containing the current status of this case, case deadlines, and important documents, including the notice. *Id.*, ¶ 8. The Court finds that this notice procedure satisfies Rule 23(c)(2)(B) and (e)(1).

**C. Objections**

Blue & Green, LLC ("Blue & Green"), a class member that holds two promissory notes executed by GrowCo, objects to final approval of the settlement. Docket No. 172. Blue & Green objects that the claims to be released by each class member are overbroad such that they could be construed to release the claims Blue & Green have against GrowCo based on the terms of the promissory notes. *Id.* at 3-4. The Settlement Agreement states:

> "Released Claims" means any and all Claims of or by the Releasors, as against the Releasees, and any and all Claims of or by the Defendants as against the Releasors, that were asserted, could have been asserted, or could in the future be asserted, arising from, based on, or relating to allegations in the Class Action. The term "Released Claims" does not include any claims for collection of any amounts due under the GrowCo securities pursuant to the terms of the securities, including claims in the event of a GrowCo liquidation, including in the GrowCo Bankruptcy Action.

Docket No. 157 at 35, ¶ 1.cc. Blue & Green clarified at the fairness hearing that it does not disagree with the definition of released claims, but its concern is with paragraph 28 of the settlement agreement. This paragraph states:

> The Settling Parties agree and acknowledge that this Settlement Agreement is intended to resolve and satisfy any and all claims that the Releasors have made or could have made against any of the Releasees arising out of the issuance or sale of GrowCo securities. The Parties agree and acknowledge that they shall seek as part of the Final Order Approving Settlement an order prohibiting further lawsuits and claims against the Defendants arising out of the issuance and sale of GrowCo securities which the Parties intend to operate as a complete bar to any lawsuits or claims against the Defendants arising out of the issuance or sale of GrowCo securities (the "Complete Bar Order"). The Complete Bar Order will not bar claims for collection of any amounts due under the GrowCo securities pursuant to the terms of the securities, including claims in the event of a GrowCo liquidation including in the GrowCo Bankruptcy Action.

*Id.* at 45-46, ¶ 28. Blue & Green argued at the hearing that the release in paragraph 28 could be construed to be broader than the definition of released claims and the description of released claims in paragraph 27. Blue & Green argues that its anticipated recovery from the settlement proceeds in this case should not be a bar to its ability to collect under the terms of the promissory notes or the rights under the deeds of trust securing the notes. Docket No. 172 at 4. Blue & Green asks the Court to clarify in its order that the scope of the release would not prohibit Blue & Green from collecting on its notes and security interest. *Id.*

Plaintiff filed a response to the objection, arguing that the language in the settlement agreement is not overbroad. Docket No. 173. At the hearing, plaintiff again argued that the release language is clear. The Court agrees with plaintiff. The settlement agreement makes clear that it releases claims relating to the class action, which was based on the omission of material information in the offering documents. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 765 (10th Cir. 2020) (unpublished) ("a court may release not only those claims alleged in the complaint and before the court, but also claims which 'could have been alleged by reason of or in connection with any matter or fact set forth or referred to in' the complaint" (quoting *In re Corrugated Container Antitrust Litig*., 643 F.2d 195, 221 (5th Cir. 1981)). The definition of released claim further clarifies that it does not apply to claims to collect on the terms of the securities. Accordingly, Blue & Green's objection is overruled and its request for the Court to add clarifying language is denied as unnecessary.

**D. Analysis of Rule 23(e) Factors**

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, "trial judges bear the important responsibility of protecting absent class members" and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims." *In re Pet Food Prods. Liab. Litig*., 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002). If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable*.* *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial presumption of fairness" to a proposed settlement where: (1) it is the result of arm's length negotiations; (2) it is based on

sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected). In addition, Fed. R. Civ. P. 23(e)(2) states that a court is to consider the following factors when determining whether a settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

"The goal of this amendment is . . . to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

The Settlement Agreement was the product of arms-length negotiations between the parties. Docket No. 169 at 8-10. These negotiations took place after the parties had litigated various motions and were facilitated by a third-party mediator. *See id.* The Court finds that the negotiations were done fairly and honestly. The value of immediate recovery outweighs the mere possibility of future relief because further litigation would deplete the insurance fund that the class now will obtain recovery from and Two Rivers' financial situation made it unlikely it would be able to satisfy a judgment. The parties believe that the consent decree is fair and reasonable and was

negotiated at arms length by experienced counsel. *Id.* at 13-14. Plaintiff and class counsel have adequately represented the class, the relief provided to the class is adequate, and the proposal treats class members equitably. *See id*. at 7-16. The Court additionally notes that class counsel represented to the Court at the fairness hearing that no class members have opted out of the settlement. Accordingly, the Court finds that the settlement is fair, reasonable, and adequate under the factors set forth in Rule 23(e)(2) and *Rutter*.

**IV. ATTORNEYS' FEES AND COSTS**

Plaintiff filed a motion for attorney fees, an incentive award, and reimbursement of litigation expenses. Docket No. 170 at 1. Class counsel requests an award of $495,959.12, which is one third of the net Settlement, a $5,000 incentive award for plaintiff, and $7,122.65 in litigation expenses for class counsel. *Id.* at 2. No class members have objected to the request for attorney fees. In a certified class action, the court may award reasonable attorney's fees that are authorized by the parties' agreement provided that (1) the claim for an award is made by motion under Rule 54(d)(2) and notice of the motion is directed to class members; (2) a class member or party from whom payment is sought may object; and (3) the Court finds facts and states its legal conclusions. Fed. R. Civ. P. 23(h). The notice provided to class members included that plaintiff would seek an award of attorneys' fees not to exceed 33.33% of the settlement, for costs not to exceed $10,000, and for an award of $5,000 to plaintiff. Docket No. 169 at 50.

**A. Attorney Fees**

In common fund cases, the Tenth Circuit has "recognized the propriety of awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis." *Uselton v. Commercial Lovelace Motor Freight, Inc*., 9 F.3d 849, 853 (10th Cir. 1993); *accord Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (holding that, although either method is permissible in common fund cases, "*Uselton* implies a preference for the percentage of the fund method"). Because this is a common fund case and because plaintiff's fee request is for a percentage of the common fund, the Court will consider the attorneys' fees award using the percentage of the fund approach. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (distinguishing common fund and statutory fees cases).

The "percentage reflected in a common fund award must be reasonable [and] the district court must 'articulate specific reasons for fee awards.'" *Brown*, 838 F.2d at 454 (quoting *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983). In determining the reasonableness of a percentage award, courts must apply the *Johnson* factors, which are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee-this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. at 454-55 (citing *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 717 (5th Cir. 1974); *see also Gottlieb*, 43 F.3d at 483. "[R]arely are all of the Johnson factors applicable; this is particularly so in a common fund situation." *Brown*, 838 F.2d at 455-56 ("The court here clearly considered all of the relevant Johnson factors and applied them appropriately."). Thus, in evaluating the reasonableness of a fee award, a court need not specifically address each Johnson factor. *Gudenkauf v. Stauffer Commc'ns, Inc*., 158 F.3d 1074, 1083 (10th Cir. 1998).

Class counsel represents that, under the lodestar method, they would have incurred $602,319.75 in attorneys' fees. Docket No. 170 at 14. Under the common fund request here, class counsel will receive less than would have been warranted under the lodestar method. *Id.* at 14-15. This weighs in favor of the reasonableness of the award.

Class counsel have significant experience in class action cases, as reflected in their histories provided to the Court. *See* Docket No. 157 at 145-58. Class counsel additionally took this case on a contingency basis, Docket No. 170 at 13, adding to the risk class counsel incurred by bringing the case. *See In re Crocs, Inc. Secs. Litig*., No. 07-cv-02351-PAB-KLM, 2014 WL 4670886, at *4 (D. Colo. Sept. 18, 2015) ("A contingent fee arrangement often weighs in favor of a greater fee because such a large investment of money and time places incredible burdens upon law practices." (internal alterations and quotation marks omitted)). A fee of one-third of the common fund is typical in complex cases. *See id.* at *3 (collecting cases). The recovery for the class is 6.4%, which plaintiff represents is in line with median settlement values of 7.6%.

Docket No. 170 at 9. Additionally, the value represents all of the remaining insurance policy, and there is substantial doubt about Two River's ability to satisfy a judgment. The Court finds that, under the *Johnson* factors, an award of $495,959.12 in attorney fees to class counsel is reasonable.

**B. Incentive Award**

"Courts have recognized that an award may be appropriate to provide an incentive to act as a named plaintiff." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 467 (10th Cir. 2017). Additionally, "courts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case." *Id.* at 468. Plaintiff represents that he "assisted in Plaintiff's Counsel's investigation, preparation, and prosecution of this Action by providing documents to Plaintiff's Counsel in connection with his GrowCo investment; reviewed and approved pleadings and briefs filed in this Action; and consulted with Plaintiff's Counsel regarding significant events in the litigation." Docket No. 170 at 19. Additionally, GrowCo named plaintiff as a defendant in an action related to GrowCo's bankruptcy due to plaintiff's status in this litigation. *Id.* Plaintiff further filed a limited objection in the bankruptcy case to prevent McKowen from accessing the insurance policy that provides the settlement in this case. *Id.* The Court finds that an award of $5,000 is fair and reasonable based on plaintiff's involvement in this case.

**C. Costs**

Class counsel requests $7,122.65 in costs. *Id.* at 20. Class counsel provides a break-down of the costs. *Id.* at 27-28, 32, 35-36. However, the declaration of Steve

Miller contains an inconsistency regarding costs; Mr. Miller states both that “[m]y firm has expended a total of $0 in unreimbursed costs and expenses” and that his firm had a total of $472 in unreimbursed costs. *Id.* at 35-36. Because of this inconsistency, the Court will reduce the costs award by $472. Accordingly, class counsel is awarded $6,650.65 in costs.

**V. CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that Plaintiff’s Motion for Final Approval of the Settlement [Docket No. 169] is **GRANTED**. It is further

**ORDERED** that Plaintiffs’ Motion for an Award of Attorneys’ Fees, Incentive Award, and Reimbursement of Litigation Expenses [Docket No. 170] is **GRANTED**. It is further

**ORDERED** that, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, and for the purposes of settlement only, the class is certified as follows:

> [A]ll persons or entities that currently hold claims based on securities in GrowCo, and purchased or otherwise acquired the securities through Offerings during the period of October 2014 through December 2017 (the “Class Period”), and suffered Alleged Losses as defined above. For the avoidance of doubt, persons or entities who purchased or otherwise acquired the securities during the Class Period and who have assigned the securities to VitaNova Partners, LLC are not excluded as Class Members by virtue of such assignment. Excluded from the Class are (1) the Defendants; (2) the officers and directors of Two Rivers and GrowCo during the Class Period as set forth in the attached Exhibit E for securities purchased at the time or after they were officers or directors; (3) any judge or judicial officer who may hear any aspect of this Class Action and his or her law clerks; and (4) except as provided in clause (2) of this paragraph above, all persons or entities released in the Settlement. Also excluded from the Settlement Class are the persons and/or entities who

request exclusion from the Settlement Class within the time period set by the Court in the Preliminary Approval Order.

| Name | Type | Approximate Amount Raised | Date Range |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $ 3,349,151 | December 2014 - January 2015 |
| $4 Million Note | Debt | $ 4,000,000 | March 2015 - September 2015 |
| GCP Super Units LLC | Equity | $ 5,297,157 | July 2015 - October 2017 |
| $1.5 Million Note | Debt | $ 100,000 | April 2016 |
| $6 Million Note | Debt | $ 6,000,000 | March 2016 - July 2016 |
| $7 Million Note | Debt | $ 2,977,000 | January 2016 - September 2017 |
| $2 Million Note | Debt | $ 1,080,000 | February 2017 - September 2017 |
| $2 Million Note | Debt | $ 440,000 | June 2017 |

It is further

**ORDERED** that the Court finds, solely for the purposes of this settlement, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the members of the settlement class are so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the class; (c) the claims of the named plaintiffs are typical of the claims of the class; (d) the named plaintiffs and plaintiffs' counsel have fairly and adequately represented and protected the interests of all of the class members; and (e) questions of law or fact predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. It is further

**ORDERED** that the Court finds that the notice given to members of the class was the best notice practicable under the circumstances, was reasonably calculated under the circumstances to apprise such members of the pendency of this action and to afford them an opportunity to object to, and meets the requirements of Rule 23

(c)(2)(B) and (e)(1). Because the Court has afforded a full opportunity to all class members to be heard, and no class member has opted-out of the settlement, the Court further determines that all members of the class are bound by the Settlement Agreement. It is further

**ORDERED** that, pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure, this Court finds that the Settlement Agreement is fair, reasonable, and adequate. Accordingly, the Court gives final approval to the Settlement Agreement in all respects and authorizes and directs the parties to consummate the Settlement Agreement in accordance with its terms and provisions. It is further

**ORDERED** that plaintiff shall file the Settlement Agreement as a separate docket entry within seven days of the entry of this ORDER. It is further

**ORDERED** that the parties and their counsel shall fulfill their obligations and duties under the Settlement Agreement. It is further

**ORDERED** that plaintiff and all class members are permanently enjoined and barred from asserting, initiating, prosecuting, or continuing any of the claims released by the Settlement Agreement. It is further

**ORDERED** that Class Counsel is awarded $495,959.12 from the Settlement Fund, which represents one third of the net Settlement Fund. It is further

**ORDERED** that plaintiff John Paulson is awarded an incentive award of $5,000 from the Settlement Fund. It is further

**ORDERED** that Class Counsel shall be reimbursed $6,650.65 in costs from the Settlement Fund. It is further

**ORDERED** that neither this Order nor the Settlement Agreement is an admission or concession by defendants respecting any facts, liabilities, or wrongdoing. It is further

**ORDERED** that, without affecting the finality of this Order, this Court retains jurisdiction to consider all further matters arising out of or connected with the Settlement Agreement, including its implementation. It is further

**ORDERED** that judgment shall be entered dismissing this case with prejudice.

DATED March 15, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-02639-PAB-NRN

JOHN PAULSON, Individually and on Behalf of all Others Similarly Situated,

Plaintiff,

v.

JOHN R. MCKOWEN,
WAYNE HARDING, and,
TIMOTHY BEALL,

Defendants.

---

**FINAL JUDGMENT**

---

In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

Pursuant to the Order [Docket No. 178] of Chief Judge Philip A. Brimmer, entered on March 15, 2023, it is

ORDERED that Plaintiff's Motion for Final Approval of the Settlement [Docket No. 169] is GRANTED. It is further

ORDERED that judgment shall be entered dismissing this case with prejudice. It is further

ORDERED that this case is closed.

Dated at Denver, Colorado this 16th day of March, 2023.

FOR THE COURT:
JEFFREY P. COLWELL, CLERK

By: s/ J. Dynes

J. Dynes, Deputy Clerk

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| **JOHN PAULSON, Individually and on Behalf of all Others Similarly Situated,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**TWO RIVERS WATER AND FARMING COMPANY, JOHN R. MCKOWEN, WAYNE HARDING and TIMOTHY BEALL,**<br><br>**Defendants** | **Civil Action No. 19-cv-02639-PAB-NYW** |

**SETTLEMENT AGREEMENT**

This Settlement Agreement is made pursuant to Rule 23 of the Federal Rules of Civil Procedure in the above-titled litigation (the "Class Action," or "Action"). Subject to the approval of the United States District Court for the District of Colorado (the "Court"), this Settlement Agreement is entered into among Plaintiff John Paulson ("Paulson" or "Plaintiff"), on behalf of himself and each of the Class Members (as defined below), and Defendants Two Rivers Water and Farming Company ("Two Rivers"), John R. McKowen ("McKowen"), Wayne Harding ("Harding") and Timothy Beall ("Beall") (Two Rivers, McKowen, Harding and Beall are referred to collectively as "Defendants"). Plaintiff and Defendants are referred to here as the "Settling Parties" or "Parties" and each individually as a "Party." The Parties intend this Settlement Agreement to resolve, discharge, and settle the Released Claims finally and forever according to the terms and conditions set forth below.

## I. RECITALS

WHEREAS, the Parties state the following:

### A. The Class Action Litigation

The Class Action was initiated on August 13, 2019, with the filing of a class action complaint captioned *John Paulson, individually and on behalf of all others similarly situated v. Two Rivers Water and Farming Company, John R. McKowen, Wayne Harding, and Timothy Beall*, Case No. 2019CV33099, in the District Court for the City and County of Denver, Colorado. The complaint asserted claims for violations of the Colorado Securities Act, C.R.S. §§ 11-51-101 *et seq.*, common law negligence, and negligent misrepresentations and omissions against Defendants arising out of the sales of securities of GrowCo, Inc. ("GrowCo") to Plaintiff and members of the proposed Class and the use of the sales proceeds. GrowCo was not named in the Class Action and has filed for Chapter 11 bankruptcy, *In Re GrowCo, Inc.*, Case No. 19-10512-JGR (D. Colo. Bankr.) (the "GrowCo Bankruptcy Action").

On September 16, 2019 Defendant McKowen removed the Class Action to this Court. (ECF 1).

On February 5, 2020, Plaintiff filed an amended complaint (the "Amended Complaint"). (ECF 57). Defendants McKowen and Beall moved for dismissal of the Amended Complaint. (ECF 73, 96).

Defendants dispute Plaintiff's allegations and deny all liability in the Class Action.

While the case was pending before this Court, the Parties filed and opposed various motions and engaged in discovery.

### B. Settlement Negotiations

In June 2020, the Parties agreed to explore a possible settlement of the Action. The Parties scheduled a mediation session with the Honorable William Meyer (Ret.) of the Judicial Arbiter Group, Inc. for July 21, 2020. On June 16, 2020, the Parties filed a Joint Motion to Stay Proceedings and Extend Certain Deadlines pending the results of the mediation (ECF 98), which request was granted by the Court. (ECF 100–103).

On July 21, 2020, the Parties and their insurer participated in a one-day mediation session before Judge Meyer. Although substantial progress was made, the Class Action did not settle on that date. The Parties sought, and the Court granted, additional extensions of case deadlines in order for the Parties to continue discussing settlement. (ECF 104-113). Settlement discussions continued with Judge Meyer's assistance. On August 7, 2020, the Parties reached an agreement in principle to settle the Class Action and executed a Confidential Settlement Term Sheet.

On August 7, 2020, the Parties filed a joint Status Report with the Court and a joint Motion to Stay Proceedings so the Parties could finalize the settlement. (ECF 114-115). On August 11, 2020, the Court entered an Order staying all proceedings except those related to approval of the class action settlement until further order of the Court, and also ordered the Parties to file a motion for preliminary approval of the settlement or otherwise inform the Court of the status of settlement by September 11, 2020, (ECF 119), which date was continued until October 6, 2020.

### C. Materiality of Recitals

Each of the foregoing Recitals represents an integral and material component of this Settlement Agreement and is incorporated by reference into this Agreement.

## II. TERMS OF THE SETTLEMENT

IT IS HEREBY STIPULATED AND AGREED, by and among the Representative

Plaintiff, individually and on behalf of the Class Members, by and through his counsel and by and through each Defendant and their respective counsel, that this Class Action and all matters that have been, could have been, and/or could be raised between the Plaintiff on the one hand and the Defendants on the other hand in the Class Action are hereby settled and compromised. This Action will be dismissed on the merits and with prejudice as to Defendants, and the Released Claims will be released as to Defendants and all other Releasees based upon the terms and conditions set out in this Settlement Agreement (including the Release), subject to the Court's approval, and such approval becoming Final.

**A. Definitions**

1. As used in this Settlement Agreement, the following capitalized terms have the following meanings:

a. "Alleged Losses" means the principal amount paid for the GrowCo securities.

b. "Approval Date" means the date on which the Court enters the Final Order Approving Settlement.

c. "Attorneys' Fees, Expenses and Service Award Application" means the application for fees, expenses, and Service Award to be made by Class Counsel pursuant to paragraphs 12, *et seq*. below.

d. "Attorneys' Fees and Expenses Award" means the fees and expenses awarded by the Court to Class Counsel and Additional Plaintiff's Counsel.

e. "Authorized Claim" means a claim for recovery of Alleged Losses from an Authorized Claimant that has been found to be timely and valid under the terms of this Settlement Agreement.

f. "Authorized Claimant" means a Class Member (or the representative of such Class Member, including, without limitation, agents, administrators, executors, heirs, predecessors, successor, affiliates or assigns) whose claim for recovery of Alleged Losses has been found to be timely and valid under the terms of this Settlement Agreement.

g. "Claim" or "Claims" means any and all tort-based claims, contract-based claims, or claims in equity that were or could have been asserted in the Class Action between the Plaintiffs and Class Members on the one hand and the Defendants on the other. The Parties agree, however, that the Class Members shall retain their GrowCo securities and are not releasing the limited claim for payment of their securities, including claims in the event of a GrowCo liquidation, including in the GrowCo Bankruptcy Action.

h. "Claim Form" means the form that Class Members must submit to the Claims Administrator in order to receive relief for their Alleged Losses pursuant to Section D of this Settlement Agreement, which will, subject to Court approval, be substantially in the form set out in Exhibit C.

i. "Class Members" or "Settlement Class" or "Settlement Class Members" means all persons or entities that currently hold claims based on securities in GrowCo, and purchased or otherwise acquired the securities through Offerings during the period of October 2014 through December 2017 (the "Class Period"), and suffered Alleged Losses as defined above. For the avoidance of doubt, persons or entities who purchased or otherwise acquired the securities during the Class Period and who have assigned the securities to VitaNova Partners, LLC are not excluded as Class Members by virtue of such assignment. Excluded from the Class are (1) the Defendants; (2) the officers and directors of Two Rivers and GrowCo during the Class Period as set forth in the attached Exhibit E for securities purchased at the time or after they were officers

or directors; (3) any judge or judicial officer who may hear any aspect of this Class Action and his or her law clerks; and (4) except as provided in clause (2) of this paragraph above, all persons or entities released in the Settlement. Also excluded from the Settlement Class are the persons and/or entities who request exclusion from the Settlement Class within the time period set by the Court in the Preliminary Approval Order.

j. “Class Counsel” means the following attorneys and law firms: Paul Scarlato and Alan Rosca of Goldman Scarlato & Penny, P.C., and J. Barton Goplerud and Brian Marty of Shindler, Anderson, Goplerud & Weese, P.C. “Additional Plaintiff’s Counsel” means Steve Miller of Steve A. Miller, P.C.

k. “Class Notice” or “Notice” means the notice described in Section D of this Settlement Agreement that will be disseminated to Settlement Class Members to inform them of the proposed Settlement, which notice shall, subject to Court approval, be substantially in the form set out in Exhibit B to this Settlement Agreement.

l. “Complete Bar Order” means the order described in Section I of this Settlement Agreement.

m. “Effective Date” means the first date by which all of the events and conditions specified hereafter occur: (i) execution of this Settlement Agreement and such other documents as may be required to obtain final Court approval of this Settlement Agreement in a form satisfactory to the Settling Parties, (ii) the Settlement Administration Account has been established as provided below, (iii) Defendants have not exercised their option to terminate the Settlement Agreement pursuant to Section M hereof, (iv) the Court has approved the Class Notice, substantially in the form of Exhibit B hereto, (v) the Court has entered the Final Order Approving

Settlement that, *inter alia*, dismisses with prejudice the Class Action and (vi) the Final Order Approving Settlement has become Final, as defined in Section A, paragraph "o" hereof.

n. "Fairness Hearing" means the hearing at or after which the Court will make a decision (i) whether to approve the Settlement as fair, reasonable and adequate; (ii) whether to certify the Settlement Class; and (iii) whether to grant the Attorneys' Fees, Expenses and Service Award Application.

o. "Final" means, when used in connection with any court order, that the order will be final: (1) if no appeal is taken, or the date on which the time to appeal from the order (including any potential extension of time) has expired; or (2) if any appeal is taken from the order, the date on which all such appeals—including any petitions for rehearing *en banc*, petitions for certiorari or any other form of review and any related appeals or petitions, including as to any appeal bond—have been finally disposed of, such that the time to appeal therefrom (including any potential extensions of time) has expired, in a manner resulting in an affirmance of the relevant order.

p. "Net Cash Settlement Amount" means the balance remaining in the Settlement Administration Account (including any interest that has accrued) after the payments described in Section H, paragraph 15 below are made from the Settlement Administration Account.

q. "Notice and Administrative Expenses" means all expenses associated with administration and implementation of this Settlement, including the Claims Administrator's fees and expenses; provided, however, that Notice and Administrative Expenses shall not include the Attorneys' Fees and Expenses.

r. “Objection Date” means the date by which objections to the Settlement proposed in this Settlement Agreement must be filed with the Court and served on counsel as set out in the Preliminary Approval Order.

s. “Offerings” means the GrowCo securities offerings identified in the GrowCo Bankruptcy Action as follows:

| **Name** | **Type** | **Approximate Amount Raised** | **Date Range** |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $3,349,151 | December 2014-January 2015 |
| $4 Million Note | Debt | $4,000,000 | March 2015-September 2015 |
| GCP Super Units LLC | Equity | $5,297,157 | July 2015-October 2017 |
| $1.5 Million Note | Debt | $100,000 | April 2016 |
| $6 Million Note | Debt | $6,000,000 | March 2016-July 2016 |
| $7 Million Note | Debt | $2,977,000 | January 2016- January 2017 |
| $2 Million Note | Debt | $1,080,000 | February 2017-September 2017 |
| $2 Million Note | Debt | $440,000 | June 2017 |

t. “Order Approving Settlement” means the order to be entered by the Court approving the Settlement and this Settlement Agreement as contemplated in Section K herein, which order shall be substantially in the form set out in Exhibit D to this Settlement Agreement.

u. “Plan of Allocation” means the terms and procedures for allocating the Net Cash Settlement Amount among, and distributing the Net Cash Settlement Amount to, Authorized Claimants, which shall be subject to Court approval.

v. “Preliminary Approval Date” means the date on which the Court enters the Preliminary Approval Order.

w. “Preliminary Approval Hearing” means the hearing at or after which the Court preliminarily approves the proposed Settlement.

x. “Preliminary Approval Order” means the order to be entered by the Court concerning notice, administration, and the Fairness Hearing as contemplated in Section J of this Settlement Agreement.

y. “Settlement Agreement” means this Settlement Agreement and its Exhibits attached hereto, including any subsequent written amendments agreed to by all Settling Parties.

z. “Recognized Claim” shall have the meaning attributed to it in the Plan of Allocation.

aa. “Recognized Alleged Loss” is the Alleged Loss amount of a claim under the Plan of Allocation and is the number used to calculate an Authorized Claimant’s Recognized Claim.

bb. “Release” means the release set forth in Section I of this Settlement Agreement.

cc. “Released Claims” means any and all Claims of or by the Releasors, as against the Releasees, and any and all Claims of or by the Defendants as against the Releasors, that were asserted, could have been asserted, or could in the future be asserted, arising from, based on, or relating to allegations in the Class Action. The term “Released Claims” does not include any claims for collection of any amounts due under the GrowCo securities pursuant to the terms of the securities, including claims in the event of a GrowCo liquidation, including in the GrowCo Bankruptcy Action.

dd. “Releasee” means each and every one of, and “Releasees” means all of, (i) Defendants and their attorneys in the Class Action, (ii) the past and present officers, directors, managers, attorneys, insurers, and/or employees of Two Rivers and GrowCo, as set forth in the attached Exhibit E for securities purchased at the time or after they were officers or directors, and

(iii) non-Defendants GrowCo, GrowCo Partners 1, LLC, GrowCo Partners 2, LLC, GCP Super Units, LLC, McGrow LLC, and TR Capital Partners, LLC.

ee. “Releasor” means each and every one of, and “Releasors” means all of (i) the Representative Plaintiff, (ii) all other Class Members, (iii) their respective past or present parents, predecessors, successors, current and former affiliates, divisions, business units, joint ventures, subsidiaries, assigns, any entities in which any Releasor has or had a controlling interest or that has or had a controlling interest in him, her, or it, and any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of Representative Plaintiff or any other Class Member and (iv) their respective past and present officers, directors, employees, officials, members, partners, and attorneys.

ff. “Service Award” means an application filed by Plaintiff for compensation for the Plaintiff’s efforts devoted to this Class Action and reimbursement of Plaintiff’s expenses.

gg. “Settlement” means the settlement terms, conditions and other provisions that are memorialized in this Settlement Agreement.

hh. “Claims Administrator” or the “Settlement Administration Agent” means Strategic Claims Services, 600 North Jackson Street, Suite 205, Media, PA 19063.

ii. “Settlement Administration Account” means the escrow account to be established by Class Counsel at Huntington Bank, which shall be an interest-bearing account into which the Settlement Payment will be paid pursuant to Section C of this Settlement Agreement.

jj. “Settlement Administration Account Agent” means Strategic Claims Services; the escrow agent for the Settlement Administration Account.

kk. “Settling Parties” means all Parties to this Settlement Agreement.

ll. “Settlement Payment” means $1,500,000.

mm. "Termination Date" means that date on which any of the Settling Parties provides notice that he, she or it is exercising a right to terminate this Settlement Agreement under Section M of this Settlement Agreement.

**B. Class Certification**

2. For purposes of this Settlement only, and subject to approval of the Court in accordance with Rule 23(e) of the Federal Rules of Civil Procedure, the Settling Parties stipulate to the certification of the Settlement Class, as defined herein; the appointment of John Paulson as Class Representative; and the appointment of Paul Scarlato and Alan Rosca of Goldman Scarlato & Penny, P.C., and J. Barton Goplerud and Brian Marty of Shindler, Anderson, Goplerud & Weese, P.C., as Class Counsel, and Steve Miller of Steve A. Miller, P.C. as Additional Plaintiff's Counsel.

**C. Settlement Consideration**

3. Prior to or upon entry of the Preliminary Approval Order, Class Counsel shall cause to be established the Settlement Administration Account at a financial institution selected by Class Counsel. In consideration of the settlement of claims asserted in this Class Action, and subject to the terms and conditions of the Settlement Agreement, Defendants shall cause their Insurer, Starstone Specialty Insurance Company (the "Insurer"), to deposit the Settlement Payment into the Settlement Administration Account by wire transfer within thirty days (30) days following the date of entry of the Preliminary Approval Order and receipt by Defendants of the name, address and wire payment information for both the payee and recipient of the Settlement Payment and a properly completed Form W-9 for the payee of the Settlement Payment, which Class Counsel agrees to provide upon execution of the Settlement Agreement.

**D. Notice to Class Members**

4. Subject to the requirements of the Preliminary Approval Order, Class Counsel shall cause the Class Notice and the Claim Form, substantially in the forms annexed hereto as Exhibits B and C, respectively, to be sent by first class mail, postage prepaid, and via email, within seven (7) days after the entry of the Preliminary Approval Order, to all Settlement Class Members at the address and email addresses set forth in the records of GrowCo. Plaintiff's Counsel shall use reasonable efforts to obtain from counsel in the GrowCo Bankruptcy Action to provide to the Claims Administrator, no later than five (5) business days after entry of the Preliminary Approval Order, a list of potential Settlement Class Members (consisting of names, addresses, and email addresses), in electronic form. Class Counsel shall, at least fourteen (14) days before the Fairness Hearing, file with the Court proof of mailing of the Class Notice and Claim Form. The date upon which Notice is first sent out shall be the "Notice Date."

**E. Notice and Administrative Expenses**

5. Notice and Administrative Expenses shall be paid out of the Settlement Fund.

**F. Procedures for Objections to the Settlement and Exclusions from the Class**

6. Any Class Member who wishes to object to the fairness, reasonableness or adequacy of this Settlement Agreement, to any term(s) of this Agreement or to the proposed Attorneys' Fees and Expenses Award or Service Award may do so no later than fourteen (14) days before the Fairness Hearing, and subject to the requirements set out in the Preliminary Approval Order. Class Members who fail to file and serve timely written objections in the manner specified in the Preliminary Approval Order shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.

7. Attorneys representing Class Members who object to this Settlement Agreement must file notice(s) of appearance.

8. Potential Class Members who wish to exclude themselves from the Class must submit a written statement requesting exclusion from the Class no later than twenty-one (21) days after the Notice Date (the "Opt-Out Deadline"). Such written request for exclusion must contain the name, address, and telephone number of the person requesting exclusion, must be returned by mail to the Claims Administrator at a specified address, must be postmarked on or before the Exclusion Deadline, and must otherwise be submitted in accordance with the Class Notice. The date of the postmark on the return mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. Any individual who opts out of the Class will not be entitled to any recovery under the Settlement Agreement and will not be bound by the Settlement Agreement or have any right to object, appeal or comment thereon. Class Members who do not submit a valid and timely request for exclusion on or before the Exclusion Deadline shall be bound by all terms of the Settlement Agreement if the Settlement is approved by the Court. Within five (5) days after the Opt-Out Deadline, the Claims Administrator shall provide Defendants with a list of the Class Members who have requested exclusion from the Class.

**G. Attorneys' Fees, Expenses and Service Awards**

9. Class Counsel shall file and serve the Attorneys' Fees, Expenses and Service Award Application not later than twenty-one (21) days prior to the Fairness Hearing.

10. Any Attorneys' Fees, Expenses and Service Award will be subject to approval by the Court.

11. The Attorneys' Fees, Expenses and Service Award shall be paid from the Settlement Administration Account established pursuant to Section A, paragraph "ii" above within seven (7) days from the date on which the Court enters a Final order approving such award.

**H. Claims Administrator**

12. The Claims Administrator shall be selected by Class Counsel and approved by the Court.

13. The Claims Administrator shall administer the process of receiving, reviewing and approving or denying claims under Class Counsel's supervision and subject to the jurisdiction of the Court.

14. The Claims Administrator shall receive Claims and determine first, whether the Claim is an Authorized Claim, in whole or in part; and second, each Authorized Claimant's pro rata share of the Net Cash Settlement Amount based upon each Authorized Claimant's Recognized Alleged Loss amount.

15. The Settlement Fund shall be applied as follows:

(1) to pay Class Counsel's Attorneys' Fees and Expenses, and the Service Award and expenses of Plaintiff (the "Attorneys' Fees, Expenses and Service Award"), if and to the extent allowed by the Court;

(2) to pay all the costs and expenses reasonably and actually incurred in connection with providing notice, locating Settlement Class Members, soliciting Settlement Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Claim Forms, and paying escrow fees and costs, if any;

(3) to pay any taxes and tax expenses; and

(4) to distribute the balance of the Settlement Fund to Authorized Claimants as allowed by the Settlement Agreement, the Plan of Allocation, or order of the Court.

16. The Plan of Allocation is not a necessary term of this Settlement Agreement, and it is not a condition of this Settlement Agreement that any particular Plan of Allocation be approved.

17. Each Authorized Claimant shall be allocated a pro rata share of the Net Cash Settlement Amount based on his, her or its Recognized Alleged Loss compared to the total Recognized Alleged Losses of all Authorized Claimants. Defendants shall not be entitled to any of the Settlement consideration once the Effective Date has occurred.

18. Any Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Cash Settlement Amount, but will otherwise be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Final Order Approving Settlement to be entered in the Class Action and the Releases provided for herein, and will be barred and enjoined from bringing any action against the Releasees concerning the Released Claims.

19. Class Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Cash Settlement Amount by the Claims Administrator. Defendants shall have no liability, obligation, involvement, or responsibility for the administration of the Settlement or disbursement of the Net Cash Settlement Amount. Class Counsel shall have the right, but not the obligation, to waive what they deem to be non-substantive or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

20. For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

a. Each Class Member shall be required to submit a Claim Form setting forth the Class Member's Alleged Losses, substantially in the form attached hereto as Exhibit C, supported by such documents as are designated therein, or as the Claims Administrator or Class Counsel, in their discretion, may deem acceptable.

b. All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, which the Parties will request to be sixty (60) days after mailing, unless such deadline is extended by Order of the Court. Any Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Cash Settlement Amount or payment pursuant to this Settlement Agreement (unless, by Order of the Court, late-filed Claim Forms are accepted), but shall in all other respects be bound by all of the terms of this Settlement Agreement and the Settlement including the terms of the Final Order Approving Settlement and the Releases provided for herein, and will be barred and enjoined from bringing any action against the Releasees concerning the Released Claims. A Claim Form shall be deemed to be submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in as per the instructions thereon.

c. Each Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Class Counsel, who shall determine in accordance with this Settlement Agreement, the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph "f" below;

d. Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, email or by telephone to give the Claimant the chance to remedy any

curable deficiencies in the Claim Form submitted. The Claims Administrator, under the supervision of Class Counsel, shall notify, in a timely fashion and in writing, all Claimants whose Claim they propose to reject in whole or in part, setting forth the reasons therefore, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below.

e. If any Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty-one (21) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot be otherwise resolved, Class Counsel shall thereafter present the request to the Court.

f. The administrative determinations of the Claims Administrator in accepting and rejecting Claims shall be presented for approval by the Court.

21. Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however that such investigation and discovery shall be limited to that Claimant's status as a Class Member and the validity and amount of the Claimant's Claim. No discovery shall be allowed on the merits of the Class Action or Settlement in connection with the processing of Claim Forms.

22. Class Counsel will apply to the Court for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses

associated with the administration of the Settlement from the Settlement Administration Account; and (c) if the Effective Date has occurred, directing payment of the Net Cash Settlement Amount to the Authorized Claimants.

23. The Net Cash Settlement Amount shall be distributed to Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Class Notice and approved by the Court. Any such Plan of Allocation is not a part of this Settlement Agreement. No funds from the Net Cash Settlement Amount shall be distributed to Authorized Claimants until the Effective Date. If there is any balance remaining in the Net Cash Settlement Amount after six (6) months from the date of distribution of the Net Cash Settlement Amount, Class Counsel shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion. Thereafter, any remaining balance shall be donated to one or more secular §501(c)(3) organization(s) selected by Class Counsel, not related or controlled by any Party or their counsel.

24. Payment pursuant to the Class Distribution Order shall be final and conclusive against all Class Members who are Authorized Claimants.

25. All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

26. The Claims Administrator is to be charged with, among other things, distribution of the Class Notice, setting up and running a toll-free center to respond to calls, receipt and handling of requests for information, receipt of requests for exclusion and distribution of settlement relief to Class Members in the Settlement.

**I. Releases and Waivers**

27. Pursuant to the Order Approving Settlement, without further action by anyone, and whether or not a Claim Form has been executed and/or delivered by or on behalf of any such Settlement Class Member, on and after the Effective Date, Representative Plaintiff and all other Settlement Class Members, on behalf of themselves and their other Releasors, for good and sufficient consideration, and all Releasors shall be deemed to have, and by operation of law and of the Order Approving Settlement shall have, fully, finally, and forever released, relinquished, settled, and discharged:

a. all Released Claims;

b. all Claims, damages, and liabilities against each and every one of the Releasees to the extent that any such Claims, damages, or liability relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to (i) the prosecution, defense, or settlement of the Class Action, (ii) the Settlement Agreement, (iii) the Settlement terms and their implementation, (iv) the provision of notice in connection with the proposed Settlement, and/or (v) the resolution of any Claim Forms filed in connection with the Settlement; and

c. all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiff's counsel, the settlement of the Class Action, or the administration of the Settlement, except as otherwise specified in the Settlement Agreement.

28. The Settling Parties agree and acknowledge that this Settlement Agreement is intended to resolve and satisfy any and all claims that the Releasors have made or could have made against any of the Releasees arising out of the issuance or sale of GrowCo securities. The Parties

agree and acknowledge that they shall seek as part of the Final Order Approving Settlement an order prohibiting further lawsuits and claims against the Defendants arising out of the issuance and sale of GrowCo securities which the Parties intend to operate as a complete bar to any lawsuits or claims against the Defendants arising out of the issuance or sale of GrowCo securities (the "Complete Bar Order"). The Complete Bar Order will not bar claims for collection of any amounts due under the GrowCo securities pursuant to the terms of the securities, including claims in the event of a GrowCo liquidation including in the GrowCo Bankruptcy Action.

29. Nothing in the Final Order Approving Settlement shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of the Settlement Agreement or the Order Approving Settlement.

30. The Releasors and each of them agree and covenant not to sue or prosecute, institute or cooperate in the institution, commencement, filing, or prosecution of any suit or proceeding in any forum based upon or related to any Released Claims against any Releasee.

31. Each of the releases, waivers, and covenants not to sue contained in this Section was separately bargained for and is an essential element of the Settlement Agreement.

**J. Preliminary Approval Hearing and Preliminary Approval Order**

Within five (5) business days or sooner following the execution of this Settlement Agreement but no later than October 6, 2020, Representative Plaintiff shall file a motion for Preliminary Approval of the Settlement requesting, among other things, that the Court preliminarily approve the Settlement as fair, reasonable and adequate, approve the form and manner of providing Notice to the Class, set a deadline for Class Members to object to the Settlement, set a deadline for Class Members to opt-out of the Class (the "Opt-Out Deadline"), set a deadline for submission of papers in support of the Final Order Approving Settlement, and set a

deadline for filing the request for Attorneys' Fees, Expenses and Service Award, which motion Defendants shall not oppose as long as the request is reasonable and consistent with the Settlement Agreement.

**K. Fairness Hearing, Final Order Approving Settlement**

32. The Settling Parties shall request that the Court schedule a Fairness Hearing within sixty (60) days after the entry of the Preliminary Approval Order, unless otherwise ordered by the Court, at which to consider whether (i) to approve this Agreement as fair, reasonable and adequate and in the best interest of the Settlement Class; (ii) to finally certify the Settlement Class; and (iii) to approve Class Counsels' request for an Attorneys' Fees and Expenses Award and Service Award.

**L. No Admissions**

33. This Settlement Agreement, whether or not consummated, and any proceedings taken pursuant to it:

a. shall not be offered or received against the Parties as evidence of, or construed as or deemed to be evidence of, any presumption, concession or admission by Party with respect to the truth of any fact alleged in the Amended Complaint or the validity of any claim that had been or could have been asserted against the Defendants in the Class Action, or in any litigation, or of any liability, negligence, fault or wrongdoing of the Defendants;

b. shall not be construed by any Party as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial;

c. shall not be construed as or received in evidence as an admission, concession or presumption that class certification is appropriate in this Class Action.

**M. Modification or Termination of This Settlement Agreement**

34. This Settlement Agreement may not be altered, amended or modified, nor may any of its provisions be waived, except in writing signed by all Settling Parties.

35. Any Settling Party shall have the right to terminate the Settlement if the Court does not approve the Settlement Agreement. If the Court modifies the Settlement Agreement in any way that a Settling Party in good faith determines is material, any Settling Party shall have the right to terminate the Settlement only after first conferring with the other Settling Parties in good faith in an effort to resolve the concern.

36. Representative Plaintiff may not terminate the Settlement based on any Attorneys' Fees, Expenses and Services Awards.

37. Each Defendant in the Class Action shall have the option (but not the obligation) to terminate the Settlement if valid exclusion requests with Alleged Losses totaling more than $750,000 are received from eligible Class Members. However, that if any Defendant is declaring the Settlement null and void, (a) he or it shall inform the other Defendants and Starstone in writing within ten (10) f days after the expiration of the Opt-Out Deadline; (b) the Defendants and Starstone shall meet and confer in person or telephonically in an attempt to come to an agreement; (c) if there is no agreement, the Defendants and Starstone will mediate before Judge Meyer; and (d) if there is no agreement after mediation, any Defendant may declare the Settlement null and void within ten (10) days after mediation by sending notification of such termination to all Parties via their counsel.

38. Unless otherwise ordered by the Court, in the event the Settlement Agreement shall terminate, or be canceled, or shall not become effective for any reason, within five (5) business days after written notification of such event is sent by Defendants' counsel, the Settlement

Payment (including accrued interest), less reasonable notice and administration expenses which have either been incurred or disbursed pursuant to Section H hereof, shall be refunded to Starstone pursuant to written instructions from Defendants' counsel. Representative Plaintiff has the right to terminate the Settlement if Defendants fail to timely and completely fund the Settlement in accordance with this Settlement Agreement.

**N. Additional Provisions**

37. As part of this Settlement, Plaintiff agrees to file a notice (a) withdrawing his Notice of Intent to Oppose Defendant Beall's motion to set aside clerk's default (ECF 95), (b) withdrawing his Response to Defendant Beall's Motion to Set Aside Clerk's Default (ECF 97), and (c) unconditionally and without qualification consenting to Defendant Beall's Motion to Set Aside Clerk's Default (ECF 94), and (d) stating that for the reasons set forth in Defendant Beall's Motion to Set Aside Clerk's Default, good cause exists under Fed. R. Civ. P. 55(c) to vacate the Clerk's default. Plaintiff agrees to use his best efforts to seek to vacate the Clerk's default against Defendant Beall. Plaintiff will file the notice contemporaneously with the motion for Final Approval of the Settlement. While the Parties understand only the Court can vacate a default, it is the Parties' intention and desire that the Court will vacate the default as part of the Settlement.

**Miscellaneous Provisions**

39. The Parties and their counsel agree to use their best efforts to obtain Court approval of this Settlement Agreement.

40. All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein. In the event of any difference between the terms of the Settlement Agreement and any of the exhibits, the terms of the Settlement Agreement shall control.

41. The Parties to this Settlement Agreement intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Representative Plaintiff, any other Class Members and their attorneys against the Releasees with respect to the Released Claims. The Parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense or settlement of the Class Action. The Parties agree that the amount paid by the Insurance Carrier and the other terms of the Settlement were negotiated at arm's-length and in good faith, including during a mediation conducted by a professional mediator, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

42. The administration and consummation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and litigation expenses to Class Counsel and enforcing the terms of this Settlement Agreement.

43. The waiver by one Party of any provision or breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other provision or any other prior or subsequent breach of this Settlement Agreement.

44. This Settlement Agreement and its exhibits constitute the entire agreement among the Parties hereto concerning the Settlement of the Class Action, and no representations, warranties or inducements have been made by any Party hereto concerning this Settlement Agreement and its exhibits other than those contained and memorialized in such documents.

45. This Settlement Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties.

46. The construction, interpretation, operation, effect and validity of this Settlement Agreement, and all documents necessary to effectuate it, shall be governed by the laws of the State of Colorado, except to the extent that federal law requires that federal law govern.

47. This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

48. All counsel and any other persons executing this Settlement Agreement and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Settlement Agreement to effectuate its terms.

Dated this 7th day of October, 2020.

John Paulson [signature]
____________________________
John Paulson

____________________________
Wayne Harding

____________________________
John McKowen

Two Rivers Water and Farming Company

By____________________________

Its____________________________

____________________________
Timothy Beall

DocuSign Envelope ID: EAFC5179-41FE-4602-BAB9-63739CE99748

46. The construction, interpretation, operation, effect and validity of this Settlement Agreement, and all documents necessary to effectuate it, shall be governed by the laws of the State of Colorado, except to the extent that federal law requires that federal law govern.

47. This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

48. All counsel and any other persons executing this Settlement Agreement and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Settlement Agreement to effectuate its terms.

Dated this ___day of October, 2020.

____________________________
John Paulson

DocuSigned by:
John McKowen
F1F9A03D5622481...
10/6/2020
John McKowen

____________________________
Timothy Beall

____________________________
Wayne Harding

Two Rivers Water and Farming Company

By____________________________

Its CEO

46. The construction, interpretation, operation, effect and validity of this Settlement Agreement, and all documents necessary to effectuate it, shall be governed by the laws of the State of Colorado, except to the extent that federal law requires that federal law govern.

47. This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

48. All counsel and any other persons executing this Settlement Agreement and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Settlement Agreement to effectuate its terms.

Dated this ___day of October, 2020.

| | |
|---|---|
| ____________________________ | *Wayne Harding* ____________________________ |
| John Paulson | Wayne Harding |
| ____________________________ | |
| John McKowen | |
| | Two Rivers Water and Farming Company |
| ____________________________ | By________________________________ |
| Timothy Beall | Its________________________________ |

46. The construction, interpretation, operation, effect and validity of this Settlement Agreement, and all documents necessary to effectuate it, shall be governed by the laws of the State of Colorado, except to the extent that federal law requires that federal law govern.

47. This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

48. All counsel and any other persons executing this Settlement Agreement and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Settlement Agreement to effectuate its terms.

Dated this ___ day of October, 2020.

____________________________
John Paulson

____________________________
Wayne Harding

____________________________
John McKowen

Timothy Beall

Two Rivers Water and Farming Company

By____________________________

Its____________________________

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| **JOHN PAULSON,**<br>**Individually and on Behalf of all Others Similarly Situated,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**TWO RIVERS WATER AND FARMING COMPANY, JOHN R. MCKOWEN, WAYNE HARDING and TIMOTHY BEALL,**<br><br>**Defendants** | ) | **Civil Action No. 19-cv-02639-PAB-NYW** |

**[PROPOSED] ORDER**
**(1) PRELIMINARILY CERTIFYING THE CLASS FOR SETTLEMENT PURPOSES;**
**(2) GRANTING PRELIMINARY APPROVAL OF SETTLEMENT; AND**
**(3) APPROVING CLASS NOTICE**

WHEREAS, the above-captioned putative class action (the "Class Action" or the "Action") is pending before the Court;

WHEREAS, Plaintiff and proposed class representative John Paulson ("Plaintiff"), and Defendants, Two Rivers Water and Farming Company ("Two Rivers"), John R. McKowen ("McKowen"), Wayne Harding ("Harding") and Timothy Beall ("Beall"), through their counsel, have entered into a Settlement Agreement dated October 7, 2020 (the "Settlement Agreement"), which is subject to review and approval under Rule 23 of the Federal Rules of Civil Procedure, and which, together with the exhibits thereto, sets forth the terms and conditions for the proposed settlement of the Action (the "Settlement") and the dismissal of the Action with prejudice;

WHEREAS, the Court has read and considered the Settlement Agreement[1] and exhibits thereto, and the accompanying documents;

WHEREAS, the Counsel for Plaintiff has submitted, and the Court has reviewed, a Motion and accompanying Memorandum of Law supporting preliminary approval of the proposed Settlement; and

WHEREAS, the Parties to the Settlement Agreement have consented to the entry of this Order:

NOW, THEREFORE, THE COURT HEREBY ORDERS, ADJUDGES AND DECREES THAT:

1. Pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court preliminarily certifies the following Class (the "Class"):

> All persons or entities that currently hold claims based on GrowCo securities and purchased or otherwise acquired the securities through Offerings listed below during the time period beginning October 2014 through December 2017 (the "Class Period") and suffered Alleged Losses. For avoidance of any doubt, persons or entities who purchased or otherwise acquired the securities during the Class Period and who have assigned the securities to VitaNova Partners, LLC are not excluded as Class Members by virtue of such assignment.

| **Name** | **Type** | **Approximate Amount Raised** | **Date Range** |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $3,349,151 | December 2014-January 2015 |
| $4 Million Note | Debt | $4,000,000 | March 2015-September 2015 |
| GCP Super Units LLC | Equity | $5,297,157 | July 2015-October 2017 |
| $1.5 Million Note | Debt | $100,000 | April 2016 |
| $6 Million Note | Debt | $6,000,000 | March 2016-July 2016 |
| $7 Million Note | Debt | $2,977,000 | January 2016- January 2017 |
| $2 Million Note | Debt | $1,080,000 | February 2017-September 2017 |
| $2 Million Note | Debt | $440,000 | June 2017 |

[1] Unless otherwise stated, all capitalized terms used herein have the meanings defined in the Settlement Agreement.

2. Excluded from the Class are (1) the Defendants; (2) the officers and directors of Two Rivers and GrowCo during the Class Period as set forth in the attached Exhibit E to the Settlement Agreement for securities purchased at the time or after they were officers or directors; (3) any judge or judicial officer who may hear any aspect of this Class Action and his or her law clerks; and (4) except as provided in clause (2) of this paragraph above, all persons or entities released in the Settlement. Also excluded from the Settlement Class are the persons and/or entities who request exclusion from the Settlement Class within the time period set by the Court in this Order.

3. The Court preliminarily finds that the prerequisites for maintaining a class action under Rule 23(a) of the Federal Rules of Civil Procedure have been satisfied, in that: (a) the number of Class Members is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to each member of the Class; (c) the claims of Plaintiff are typical of the claims of the members of the Class he seeks to represent; and (d) Plaintiff will fairly and adequately represent the interests of the Class.

4. The Court further finds that the prerequisites for maintaining a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure have been preliminarily satisfied for the Class, in that Plaintiff has demonstrated that: (a) the questions of law or fact common to the Class members predominate over any questions affecting only individual members; and (b) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

5. Pursuant to Fed. R. Civ. P. 23, and for purposes of this Settlement only, the Court hereby preliminarily appoints Plaintiff John Paulson as class representative of the Class (the "Representative Plaintiff").

6. Having considered the factors set forth in Fed. R. Civ. P. 23(g)(1), the Court hereby preliminarily appoints attorneys Paul Scarlato and Alan Rosca of the law firm of Goldman Scarlato & Penny, P.C., and attorneys J. Barton Goplerud and Brian Marty of the law firm of Shindler, Anderson, Goplerud & Weese, P.C. as Class Counsel, and the law firm of Steve A. Miller, P.C. as Additional Plaintiff's Counsel.

7. The Court preliminarily concludes that the Settlement was negotiated in good faith and is fair, reasonable and adequate, subject to proof to this Court's satisfaction in connection with final approval of the Settlement as set forth in ¶9 below ("Final Approval"). *See* Fed. R. Civ. P. 23(e). Accordingly, the Court hereby preliminarily approves the Settlement.

8. The Court reserves the authority to approve the Settlement with or without modification and with or without further notice of any kind. The Court further reserves the authority to enter its Final Order approving the Settlement Agreement and dismissing the Claims against Defendants on the merits and with prejudice regardless of whether it has awarded any attorneys' fees and expenses to counsel.

9. A Fairness Hearing (which, from time to time, and without further notice to the Class other than by filing a notice on the docket in the Class Action in advance of the Fairness Hearing, may be continued or adjourned by order of this Court) will be held by this Court on [60 days from Preliminary Approval], 2020 at ____ _.m. for the following purposes:

(a) to finally determine whether the Class satisfies the applicable prerequisites for certification under Fed. R. Civ. P. 23(a) and 23(b)(3);

(b) to finally determine whether the Settlement should be approved by the Court as fair, reasonable and adequate and in the best interests of the Class;

(c) to determine whether a Final Order should be entered pursuant to the

Settlement Agreement, dismissing the Class Action with prejudice against the Defendants and effectuating the releases set forth in the Settlement Agreement and Notice;

(d) to determine whether the proposed Plan of Allocation of the Settlement Fund set forth in the Notice is fair and reasonable, and should be approved by the Court;

(e) to consider any request by Class Counsel and Additional Plaintiff's Counsel for an award of attorneys' fees and reimbursement of litigation expenses ("Attorney's Fees and Expense Award"), and an application by Class Counsel on behalf of the Plaintiff for compensation for the Plaintiff's efforts devoted to the Action and reimbursement of Plaintiff's expenses ("Service Award");

(f) to hear and determine any objections to the Settlement or to any request by Class Counsel and Additional Plaintiff's Counsel for an Attorney's Fees and Expense Award or Service Award; and

(f) to rule on such other matters as the Court may deem appropriate.

10. The Court approves the substance and requirements of the Class Notice, in the form annexed as Exhibit B to the Settlement Agreement.

11. No later than seven (7) days after Preliminary Approval, Class Counsel shall mail, or cause to be mailed, and electronically transmit via email, or cause to be e-mailed, the Class Notice to those Class Members who can be identified through reasonable effort. Notice costs shall be paid or reimbursed from the Settlement Fund, as set forth in ¶5 of the Settlement Agreement.

12. The Court finds that mailing of the Notice, as described herein, constitutes the best notice practicable under the circumstances and is due and sufficient notice of the matters set forth in the Class Notice to all Class Members, and fully satisfies the requirements of due process and of Rule 23 of the Federal Rules of Civil Procedure.

13. The Court will consider any objections, and comments in support of or in opposition to the Settlement, the Plan of Allocation, or any request by Class Counsel for an Attorney's Fees and Expense Award and Service Award, only if such comments and any supporting papers are in writing and filed with the Clerk of the Court, United States District Court, Alfred A. Arraj United States Courthouse, Room A105, 901 19th Street, Denver, CO 80294-3589, and copies of all such papers are served, on or before ________________, 2020 [fourteen (14) days before the Fairness Hearing], upon each of the following by U.S. Mail and email:

Paul Scarlato
GOLDMAN SCARLATO & PENNY, P.C.
161 WASHINGTON STREET, SUITE 1025
CONSHOHOCKEN, PA 19428
EMAIL: SCARLATO@LAWGSP.COM

Alan Rosca
GOLDMAN SCARLATO & PENNY, P.C.
23250 CHAGRIN BLVD. SUITE 100
BEACHWOOD, OH 44122
ROSCA@LAWGSP.COM

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD & WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: (515) 223-4567
Facsimile: (515) 2223-8887
jbgoplerud@sagwlaw.com
marty@sagwlaw.com

Any replies to any objections or comments shall be filed and served upon any objector or commenter no later than ___________________, 2020 [ seven (7) days before Final Fairness Hearing].

14. Attendance at the Fairness Hearing is not necessary. However, persons wishing to be heard orally with respect to the approval of the Settlement, the Plan of Allocation, and/or any

request by Class Counsel and Additional Plaintiff's Counsel for an Attorney's Fees and Expense Award or Service Award, are required to indicate in their written comments or objections their intention to appear at the Fairness Hearing. Persons who intend to object to the Settlement, the Plan of Allocation, and/or any request by Class Counsel for an award of attorneys' fees and reimbursement of litigation expenses, and desire to present evidence at the Fairness Hearing, must include in their written objections the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the Fairness Hearing. Class Members do not need to appear at the hearing or take any action to indicate their approval.

15. Any person or entity who fails to object in the time and manner provided above shall be deemed to have waived such objection (including the right to appeal), and absent good cause found by the Court, shall forever be barred from making any such objection in the Class Action or any other action or proceeding or otherwise contesting any aspect of the Settlement, but shall otherwise be bound by the Final Order and Judgment to be entered and the releases to be given.

16. Each Settlement Class Member will be bound by all determinations and judgments in this Action, whether favorable or unfavorable, unless such person or entity mails or delivers a written request for exclusion from the Settlement Class, addressed to *Paulson v. Two Rivers Settlement*, EXCLUSIONS, c/o Strategic Claims Services, 600 N. Jackson St., Ste. 205, P.O. Box 230, Media, PA 19063, Fax (610) 565-7985 pursuant to the procedure set forth in the Class Notice. The request for exclusion must be received no later than _____________, 2020 (the "Exclusion Deadline"). Class Members will not be able to exclude themselves from the Settlement Class after the Exclusion Deadline.

17. All parties are hereby notified that Final Approval would result in the dismissal, with prejudice, of all claims in the Class Action as defined in the Settlement Agreement.

18. This Order, the Settlement Agreement, and any negotiations, discussions, or proceedings in connection with this Settlement shall not be offered or received against Defendants as evidence of, or deemed to be any admission or confession by Defendants, of the truth of any of the claims, allegations, facts, subjects, or issues that were or could have been set forth or raised in the Class Action.

SO ORDERED this ____ day of ___________, 2020.

____________________________

Philip A. Brimmer
Chief United States District Judge

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | | |
|---|---|---|
| **JOHN PAULSON, Individually and on Behalf of all Others Similarly Situated,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**TWO RIVERS WATER AND FARMING COMPANY, JOHN R. MCKOWEN, WAYNE HARDING and TIMOTHY BEALL,**<br><br>**Defendants** | ) | **Civil Action No. 19-cv-02639-PAB-NYW** |

**NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED CLASS ACTION DETERMINATION, PROPOSED SETTLEMENT OF CLASS ACTION, FAIRNESS HEARING AND RIGHT TO APPEAR**

**TO: ALL PERSONS OR ENTITIES THAT CURRENTLY HOLD CLAIMS BASED ON SECURITIES OF GROWCO, INC. ("GROWCO"), AND PURCHASED OR OTHERWISE ACQUIRED THE SECURITIES THROUGH THE OFFERINGS LISTED BELOW DURING THE TIME PERIOD BEGINNING OCTOBER 2014 THROUGH DECEMBER 2017 AND SUFFERED ALLEGED LOSSES:**

| Name | Type | Approximate Amount Raised | Date Range |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $3,349,151 | December 2014-January 2015 |
| $4 Million Note | Debt | $4,000,000 | March 2015-September 2015 |
| GCP Super Units LLC | Equity | $5,297,157 | July 2015-October 2017 |
| $1.5 Million Note | Debt | $100,000 | April 2016 |
| $6 Million Note | Debt | $6,000,000 | March 2016-July 2016 |
| $7 Million Note | Debt | $2,977,000 | January 2016- January 2017 |
| $2 Million Note | Debt | $1,080,000 | February 2017-September 2017 |
| $2 Million Note | Debt | $440,000 | June 2017 |

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS MAY BE AFFECTED BY THE LEGAL PROCEEDINGS IN THIS ACTION. IF THE COURT APPROVES THE PROPOSED SETTLEMENT, YOU WILL BE FOREVER BARRED FROM CONTESTING THE FAIRNESS, REASONABLENESS OR ADEQUACY OF THE PROPOSED SETTLEMENT OR PURSUING THE RELEASED CLAIMS AND UNKNOWN CLAIMS (AS DEFINED HEREIN).**

## I. THE PURPOSE OF THIS NOTICE

The purpose of this Notice is to inform you of the existence of the above-captioned class action (the "Class Action" or "Action") brought by Plaintiff John Paulson ("Plaintiff") against Two Rivers Water and Farming Company ("Two Rivers"), John R. McKowen ("McKowen"), Wayne Harding ("Harding") and Timothy Beall ("Beall") (collectively, "Defendants"), and its proposed settlement (the "Settlement").

This Notice also informs you of the Court's preliminary certification of a Class (as defined below in this Section) for purposes of the Settlement, and of your right to participate in a hearing (the "Fairness Hearing") to be held on ____________ 2020 at ____ m. before the Honorable Philip Brimmer, Chief Judge of the U.S. District Court for the District of North Colorado, Courtroom A701, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, CO 80294-3589 to: (a) determine whether the Settlement should be finally approved by the Court as fair, reasonable and adequate and in the best interests of Plaintiff and the Class; (b) determine whether a Final Order should be entered dismissing the Class Action with prejudice against the Defendants and effectuating the releases described below; (c) consider any request by Plaintiff's counsel for an award of attorneys' fees and out-of-pocket expenses, and a Service Award to the Representative Plaintiff; (d) hear and determine any objections to the Settlement or to any request by Plaintiff's counsel for an award of attorneys' fees and reimbursement of out-of-pocket expenses ("Attorneys' Fees and Expenses Award" and service award to the Representative Plaintiff ("Service Award"); and (e) rule on such other matters as the Court may deem appropriate.

The Court has determined that the Class Action shall be preliminarily certified as a class action under Rule 23 of the Federal Rules of Civil Procedure, for settlement purposes only, on behalf of all persons or entities who currently hold claims based on the GrowCo Securities and who purchased or otherwise acquired the securities through the Offerings identified above during the time period beginning on October 2014 through December 2017 and suffered Alleged Losses. This Notice describes the rights you may have under the Settlement and what steps you may, but are not required to, take in relation to the Settlement. If the Court approves the Settlement, Plaintiff and the Defendants in the Class Action (the "Parties") will ask the Court to enter a Final Order dismissing the Class Action with prejudice on the merits.

**THE FOLLOWING RECITATION DOES NOT CONSTITUTE FINDINGS OF THE COURT. IT IS BASED ON STATEMENTS OF THE PARTIES AND SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION OF THE COURT AS TO THE**

**MERITS OF ANY OF THE CLAIMS OR DEFENSES RAISED BY ANY OF THE PARTIES.**

## II. BACKGROUND OF THE ACTION

The Class Action was initiated by named Plaintiff John Paulson on August 13, 2019, with the filing of a class action complaint against Defendants Two Rivers, McKowen, Harding, and Beall, arising out of Paulson's purchase of securities in GrowCo, a Colorado corporation formed in 2014. GrowCo is currently in bankruptcy and is not a party to this Action. Plaintiff's Amended Complaint alleges that Defendants acted as control persons; sold and promoted GrowCo securities to Plaintiff and the class while omitting information that was material to investors about Defendant McKowen's background; and permitted Two Rivers' use of the proceeds of the sales. It asserts claims against Defendants under the Colorado Securities Act, 11-51-101 *et. seq.,* and Colorado common law arising out of the Defendants' conduct in connection with those sales and use of the proceeds. Defendants deny Plaintiff's allegations of wrongdoing and liability.

## III. SUMMARY OF SETTLEMENT TERMS

Defendants' insurer will pay $1.5 million in cash (the "Settlement Fund") to resolve the claims of Plaintiff and the Class. The Settlement Class and each member of the Class is limited solely to the Settlement Fund for the satisfaction of all Released Claims against all Released Parties (as provided more fully in the Settlement Agreement).

The Settlement Fund shall be applied as follows: (1) to pay counsel's Attorneys' Fees and Expenses Award, and the Service Award to the Representative Plaintiff to the extent allowed by the Court; (2) to pay the costs and expenses reasonably incurred in connection with providing Notice, locating Settlement Class Members, assisting with the filing of claims, administering and distributing the Net Cash Settlement Amount to Authorized Claimants, processing claim forms, and paying escrow fees and costs, if any; (3) to pay any taxes and tax expense; and (4) to distribute the balance of the Settlement Fund (the "Net Cash Settlement Amount") to Authorized Claimants as allowed by the Plan of Allocation, or order of the Court.

Authorized Claimant means a Class Member whose claim for recovery of losses has been found to be timely and valid under the terms of the Settlement Agreement.

## IV. PLAN OF ALLOCATION

Under a proposed Plan of Allocation, the Claims Administrator will first calculate each Authorized Claimant's Alleged Loss.

The Alleged Loss shall mean the principal amount each Authorized Claimant paid for the GrowCo securities.

The Claims Administrator will then calculate each Authorized Claimant's recovery under the Settlement by multiplying the Net Cash Settlement Amount by a fraction, (a) the numerator of which is the Class Member's Alleged Loss and (b) the denominator of which is the sum of each and every claiming Class Member's Alleged Loss.

The Plan is not a part of or a condition of approval of the Settlement. Under the Agreement, the Net Settlement Fund may be distributed in accordance with the proposed Plan or such other plan as the Court may approve.

## V. REASONS FOR THE SETTLEMENT

This Action was aggressively litigated from the onset. Plaintiff filed his initial complaint in Colorado state court setting out detailed facts as to Defendants' alleged wrongdoing. The Action was later removed to this Court by Mr. McKowen. Thereafter, the Court held an initial scheduling conference during which it set a schedule for the Action. Mr. McKowen then moved the Court to stay the Class Action pending the outcome of GrowCo's bankruptcy proceedings, which the Court denied. Separately, GrowCo initiated an adversary proceeding against Mr. Paulson in the bankruptcy court and filed a motion for a temporary restraining order ("TRO") and preliminary injunction asking the bankruptcy court to stop the Class Action. Plaintiff successfully opposed the motion to stay in this Court and was required to appear in the bankruptcy court to oppose the adversary proceeding, and to appear at an evidentiary hearing on GrowCo's request for a TRO and injunction, upon which Paulson prevailed.

Plaintiff subsequently filed an amended complaint (the "Amended Complaint") alleging additional facts and legal claims. Mr. McKowen moved to dismiss the Complaint and Plaintiff opposed that motion. Mr. McKowen's motion to dismiss was fully briefed and pending before the Court when the Parties reached the proposed Settlement.

The Parties engaged in discovery, which included Plaintiff serving requests for production of documents, interrogatories, and requests for admissions on each of the Defendants, and document subpoenas on numerous third parties. Plaintiff reviewed and analyzed numerous documents produced by Defendants McKowen and Beall, and from other sources. Plaintiff also obtained a clerk's default against Defendant Beall. Mr. Beall then moved to set aside the clerk's default against him and moved to dismiss the Amended Complaint.

Plaintiff's counsel have conducted a thorough investigation of the claims and allegations asserted in the Class Action before reaching an agreement in principle on a Settlement. In addition, the Settlement was the product of extensive arms-length negotiations conducted with the assistance of the Judge William Meyer of the Judicial Arbiter Group, Inc. serving as mediator. In evaluating the Settlement, Plaintiff and his counsel have considered: (a) the substantial benefits to the members of the Class from the Settlement; (b) the facts developed during Plaintiff's investigation and discovery; (c) the attendant risks of continued litigation and the uncertainty of the outcome of the Class Action; (d) the probability of success on the merits; (e) the availability of sufficient assets to fund a Settlement; and (f) the conclusion of Plaintiff's counsel that the terms and conditions of the Settlement are fair, reasonable, adequate and in the best interests of Plaintiff and the Class.

Each of the Defendants has denied, and continues to deny, that he or it committed any violation of the securities laws or any other law, or engaged in any of the wrongful acts alleged in the Class Action, and expressly maintains that he or it is entering into the Settlement solely to eliminate the burden, expense, distraction and uncertainties inherent in further litigation.

Plaintiff has stated, and continues to state, that he brought his claims in good faith, that he believes that his claims had substantial merit at all relevant times, and that he is agreeing to the terms of the Settlement only because he believes that the Settlement provides a substantial benefit to the Class and has concluded that the terms of the Settlement are fair, reasonable and adequate and in the best interests of the Class.

The $1.5 million Settlement Fund provides a substantial and immediate benefit to the Class. Although Class Counsel believes it will likely be able to prove merit to the claims asserted in the case, there is a substantial risk that Class Members would not be able to recover anything at all if the case were not settled. GrowCo is currently in bankruptcy and Two Rivers lacks substantial assets. Plaintiff would need to look to the personal assets of the individual Defendants for a recovery if the Settlement was not reached, making a substantial recovery directly from Two Rivers and/or its principals beyond any available insurance coverage questionable at best. To that end, Defendants have a single insurance policy that covers the claims asserted up to $2,000,000, which amount is reduced by the costs of defense. The $1,500,000 Settlement Fund represents substantially all of the remaining insurance coverage net of defense costs to date. In considering whether to settle, the Plaintiff considered the fact that if he persisted with the Action, the amount of insurance coverage available to satisfy a judgment would be substantially less than the Settlement Fund. In other words, as defense costs would continue to mount, each additional dollar spent on defending the Action would represent one less dollar available for a settlement. Finally, if the case were to continue to be litigated, the Class would still need to overcome various legal defenses in order to survive any dispositive motions or recover at trial.

## VI. RELEASES

Under the terms of the Settlement, Plaintiff and the Class Members ("Releasors") agree to the complete discharge, dismissal with prejudice, settlement and release of the Releasees.

"Releasor" means each and every one of, and "Releasors" means all of (i) the Representative Plaintiff, (ii) all other Class Members, (iii) their respective past or present parents, predecessors, successors, current and former affiliates, divisions, business units, joint ventures, subsidiaries, assigns, any entities in which any Releasor has or had a controlling interest or that has or had a controlling interest in him, her, or it, and any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of Representative Plaintiff or any other Class Member and (iv) their respective past and present officers, directors, employees, officials, members, partners, and attorneys.

The "Releasees" include each and every one of (i) the Defendants and their attorneys in the Class Action; (ii) the following past and present officers, directors, managers, attorneys, and/or employees of Two Rivers and GrowCo for securities purchased at the time or after they were officers or directors: Gus Blass III, Christopher Bragg, Gregg Campbell, Dennis Channer, James Cochran, Wayne Harding, Michael Harnish, John McKowen, Samuel Morris, John Stroh II, Rockey Joe Wells, Bradley Walker and T. Keith Wiggins. GrowCo's officer and directors during the Class Period were: Timothy Beall (however, Mr. Beall contends he was not an officer or director of GrowCo), Kirsty Cameron, Wayne Harding, Chad Kirby, Jan McCaffrey, John R.

McKowen, Joseph McKowen, Laura McKowen, I. Wistar Morris, Jeff Ploen and Aaron VanWingerden; and (iii) non-Defendants GrowCo, GrowCo Partners 1, LLC, GrowCo Partners 2, LLC, GCP Super Units, LLC, McGrow LLC, and TR Capital Partners, LLC.

"Released Claims" as defined in the Settlement Agreement means any and all Claims of or by the Releasors, as against the Releasees, and any and all Claims of or by the Defendants as against the Releasors, that were asserted, could have been asserted, or could in the future be asserted, arising from, based on, or relating to allegations in the Class Action. The term "Released Claims" does not include any claims for collection of any amounts due under the GrowCo securities pursuant to the terms of the securities, including claims in the event of a GrowCo liquidation, including in the GrowCo Bankruptcy Action.

If the Settlement is finally approved, Plaintiff and each Class Member on behalf of themselves and their other Releasors, for good and sufficient consideration, and all Releasors shall be deemed to have, and by operation of law and of the Order Approving Settlement shall have, fully, finally, and forever released, relinquished, settled, and discharged:

a. all Released Claims;

b. all Claims, damages, and liabilities against each and every one of the Releasees to the extent that any such Claims, damages, or liability relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to (i) the prosecution, defense, or Settlement of the Class Action, (ii) the Settlement Agreement, (iii) the Settlement terms and their implementation, (iv) the provision of Notice in connection with the proposed Settlement, and/or (v) the resolution of any Claim Forms filed in connection with the Settlement; and

c. all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiff's counsel, the settlement of the Class Action, or the administration of the Settlement, except as otherwise specified in the Settlement Agreement.

The Settlement Agreement further provides that:

- The Settling Parties agree and acknowledge that this Settlement Agreement is intended to resolve and satisfy any and all claims that the Releasors have made or could have made against any of the Releasees arising out of the issuance or sale of GrowCo securities. The Parties agree and acknowledge that they shall seek as part of the Final Order Approving Settlement an order prohibiting further lawsuits and claims against the Defendants arising out of the issuance and sale of GrowCo securities which the Parties intend to operate as a complete bar to any lawsuits or claims against the Defendants arising out of the issuance or sale of GrowCo securities (the "Complete Bar Order"). The Complete Bar Order will not bar claims for collection of any amounts due under the GrowCo securities pursuant to the terms of the securities, including claims in the event of a GrowCo liquidation

including in the GrowCo Bankruptcy Action.

- The Releasors and each of them agree and covenant not to sue or prosecute, institute or cooperate in the institution, commencement, filing, or prosecution of any suit or proceeding in any forum based upon or related to any Released Claims against any Releasee.

## VII. CLASS ACTION DETERMINATION

The Court has ordered that the Class Action shall be preliminarily certified as a class action for purposes of the Settlement only, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following Class:

> All persons or entities who currently hold claims based on Securities of GrowCo, and who purchased or otherwise acquired the securities through Offerings listed below, during the time period beginning October 2014 through December 2017 (the "Class Period"), and suffered Alleged Losses. For the avoidance of doubt, persons or entities who purchased or otherwise acquired the securities during the Class Period and who have assigned the securities to VitaNova Partners, LLC are not excluded as Class Members by virtue of such assignment:

| **Name** | **Type** | **Approximate Amount Raised** | **Date Range** |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $3,349,151 | December 2014-January 2015 |
| $4 Million Note | Debt | $4,000,000 | March 2015-September 2015 |
| GCP Super Units LLC | Equity | $5,297,157 | July 2015-October 2017 |
| $1.5 Million Note | Debt | $100,000 | April 2016 |
| $6 Million Note | Debt | $6,000,000 | March 2016-July 2016 |
| $7 Million Note | Debt | $2,977,000 | January 2016- January 2017 |
| $2 Million Note | Debt | $1,080,000 | February 2017-September 2017 |
| $2 Million Note | Debt | $440,000 | June 2017 |

Excluded from the Class are (1) the Defendants; (2) the officers and directors of Two Rivers and GrowCo during the Class Period as set forth in Exhibit E to the Settlement Agreement for securities purchased at the time or after they were officers or directors; (3) any judge or judicial officer who may hear any aspect of this Class Action and his or her law clerks; and (4) except as provided in clause (2) of this paragraph above, all persons or entities released in the Settlement. Also excluded from the Settlement Class are the persons and/or entities who validly request exclusion from the Settlement Class within the time period set forth herein.

At the Fairness Hearing, the Court will consider, among other things, whether the Class should be certified permanently.

## VIII. THE FAIRNESS HEARING

The Court has scheduled the Fairness Hearing to be held ________________ at the time identified in Section I above to determine: (a) whether the Court should finally approve the Settlement as fair, reasonable and adequate to the Class; (b) whether to enter an order dismissing the Class Action with prejudice and extinguishing and releasing the Released Claims; (c) whether the Class should be permanently certified pursuant to Rule 23 or the Federal Rules of Civil Procedure; (d) whether the Court should permanently certify Plaintiff as the Class Representative in the Class Action, and attorneys and law firms Paul Scarlato and Alan Rosca of Goldman Scarlato & Penny, P.C., and J. Barton Goplerud and Brian Marty of Shindler, Anderson, Goplerud & Weese, P.C. as Class Counsel, and Steve Miller of Steve A. Miller, P.C. as Additional Plaintiff's Counsel in the Class Action; (e) if the Court approves the Settlement, whether the Court should grant Plaintiff's application for an Attorneys' Fees and Expenses Award; (f) whether to grant Class Counsel's application for a Service Award for the Plaintiff and reimbursement of the Plaintiff's expenses, and (g) to consider such other matters as may properly come before the Court.

The Court may postpone, reschedule or adjourn the Fairness Hearing without further notice to the Class other than by filing a notice on the docket in the Class Action in advance of the Fairness Hearing, or by making an announcement at the Fairness Hearing or any adjournment thereof. The Court also has reserved the right to approve the Settlement at or after the Fairness Hearing with such modification(s) as may be consented to by the Parties and without further notice to the Class.

## IX. YOUR RIGHT TO APPEAR AND OBJECT

Any Member of the Class who objects to any aspect of the Settlement, certification of the Class, entry of the Final Order, and/or Plaintiff's counsel's application for payment of attorneys' fees and expenses, and for a Service Award, or who otherwise wishes to be heard, may appear in person by his, her or its attorney at the Fairness Hearing and present evidence or argument that may be proper and relevant; provided, however, that, except for good cause shown, no person shall be heard or entitled to contest the approval of the terms and conditions of the Settlement, or, if approved, the order to be entered thereon, and no papers or briefs submitted by any member of the Class or any other person shall be received and considered by the Court, unless, not later than [14 days before Fairness Hearing]. Any such objections, and comments must be in writing and filed with the Clerk of the Court and served on the counsel at the addresses listed below no later than fourteen (14) days before the Final Fairness Hearing. Such objections must include the following: (a) proof that such person or entity currently holds claims based on the GrowCo Securities and purchased or otherwise acquired the securities through any of the Offerings during the Class Period of October 2014 through December 2017 and suffered Alleged Losses; (b) written notice of the person's intention to appear; (c) a detailed statement of the objections and the reasons for desiring to appear and to be heard; and (d) a detailed statement of all of the grounds for such objections, as well as all documents or writings which the person desires the Court to consider.

The foregoing information concerning any objections should be filed not later than [14 days before Fairness Hearing] with:

Clerk of the Court
United States District Court

Alfred A. Arraj United States Courthouse, Room A105,
901 19th Street, Denver, CO 80294-3589

Copies of such objections must be served not later than [14 days before Fairness Hearing] on:

Paul Scarlato
Alan Rosca
GOLDMAN SCARLATO & PENNY, P.C.
161 WASHINGTON STREET, SUITE 1025
CONSHOHOCKEN, PA 19428
EMAIL: ROSCA@LAWGSP.COM
SCARLATO@LAWGSP.COM

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD & WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: (515) 223-4567
Facsimile: (515) 2223-8887
E-Mail: jbgoplerud@sagwlaw.com
marty@sagwlaw.com

Any person or entity who fails to object in the manner provided above shall be deemed to have waived such objection (including the right to appeal), and absent good cause found by the Court shall forever be barred from making any such objection in the Class Action or any other action or proceeding or otherwise contesting any aspect of the Settlement, but shall otherwise be bound by the Final Order to be entered and the releases to be given.

## X. YOUR RIGHT TO EXCLUDE YOURSELF FROM THE CLASS

Each Settlement Class Member will be bound by all determinations and judgments in this Action, whether favorable or unfavorable, unless such person or entity mails or delivers a written request for exclusion from the Settlement Class, addressed to *Paulson v. Two Rivers Settlement*, EXCLUSIONS, c/o Strategic Claims Services, 600 N. Jackson St., Ste. 205, P.O. Box 230, Media, PA 19063, Fax: (610) 565-7985. The request for exclusion must be ***received*** no later than ______________, 2020 (the "Exclusion Deadline"). You will not be able to exclude yourself from the Settlement Class after the Exclusion Deadline. Each Request for Exclusion must (a) state the name, address and telephone number of the person or entity requesting exclusion, and in the case of entities the name and telephone number of the appropriate contact person; (b) state that such person or entity "requests exclusion from the Settlement Class in *Paulson v. Two Rivers Settlement*, Civil Action No. 19-cv-02639"; (c) identify and state each and every purchase of GrowCo securities in the Offerings during the period from October 2014 through December 2017, as well as the type of security and the investment amount. A Request for Exclusion shall not be

valid and effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

If you do not want to be part of the Settlement Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any of the Released Claims against any of the Releasees.

If you ask to be excluded from the Settlement Class, you will not be eligible to receive any payment out of the Net Cash Settlement Amount with respect to the Settlement Class.

Defendants have the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Settlement Class in an amount that exceeds an amount agreed to by Plaintiff and Defendants.

## XI. FINAL ORDER OF THE COURT

If the Settlement is approved by the Court following the Fairness Hearing as fair, reasonable and adequate, the Parties will jointly request that the Court enter a Final Order which will, among other things: (a) certify the Class Action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class; (b) determine that the requirements of the Federal Rules of Civil Procedure and due process have been satisfied in connection with the Notice provided to the Class; (c) certify Plaintiff as Class Representative and Class Counsel and Additional Plaintiff's Counsel in the Class Action; (d) approve the Settlement as fair, reasonable and adequate to the Class; (e) vacate the Clerk's default against Defendant Beall; and (f) dismiss the Class Action with prejudice on the merits, as against any and all Defendants, without costs except as herein provided, (g) release Defendants and other Releasees from the Released Claims, and (h) enter a "Complete Bar Order" prohibiting further lawsuits and claims against the Defendants arising out of the issuance and sale of GrowCo securities.

## XII. THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Plaintiff intends to petition the Court at the Final Fairness Hearing for an award of attorneys' fees in an amount not to exceed $33^{1/3}$% of the Settlement Fund, and for reimbursement of costs and expenses advanced by Plaintiff's counsel not to exceed \$10,000, and for a Service Award to the Representative Plaintiff in the amount of \$5,000, and for reimbursement of his expenses not to exceed \$100. Final resolution by the Court of the fee application shall not be a precondition to the dismissal of the Class Action in connection with any final approval of the Settlement, and the fee application may be considered separately from the terms of the proposed Settlement of the Class Action.

## XIII. SCOPE OF THIS NOTICE

This Notice is not all-inclusive. The references in this Notice to the pleadings in the Class Action, the Settlement Agreement and all other papers or proceedings herein are only summaries and do not purport to be comprehensive. For the full details of the Class Action, the claims that

have been asserted in the Class Action and the terms and conditions of the Settlement, including a complete copy of the Settlement Agreement and related Orders and proposed forms of Orders, you are referred to the Court file for the Class Action.

## XIV. GENERAL INQUIRIES

General inquiries about the Settlement should be directed to the attention of Class Counsel as follows:

Paul Scarlato
Alan Rosca
GOLDMAN SCARLATO & PENNY, P.C.
161 WASHINGTON STREET, SUITE 1025
CONSHOHOCKEN, PA 19428
EMAIL: ROSCA@LAWGSP.COM
SCARLATO@LAWGSP.COM

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD & WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: (515) 223-4567
Facsimile: (515) 2223-8887
E-Mail: jbgoplerud@sagwlaw.com
marty@sagwlaw.com

**PLEASE DO NOT CALL OR WRITE THE COURT WITH GENERAL INQUIRIES.**

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| **JOHN PAULSON,** **Individually and on Behalf of all Others Similarly Situated,** | ) | **Civil Action No. 19-cv-02639-PAB-NYW** |
| **Plaintiff** | ) | |
| **v.** | ) | |
| **TWO RIVERS WATER AND FARMING COMPANY, JOHN R. MCKOWEN, WAYNE HARDING and TIMOTHY BEALL,** | ) | |
| **Defendants** | ) | |

## PROOF OF CLAIM AND RELEASE

**Deadline for Submission: ________________________**

IF 1) YOU CURRENTLY HOLD CLAIMS BASED ON SECURITIES OF GROWCO, INC. ("GROWCO"), AND 2) PURCHASED OR OTHERWISE ACQUIRED THE SECURITIES THROUGH THE OFFERINGS LISTED BELOW DURING THE CLASS PERIOD BEGINNING OCTOBER 2014 THROUGH DECEMBER 2017, AND 3) SUFFERED LOSSES, YOU MAY BE A CLASS MEMBER AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT PROCEEDS. FOR THE AVOIDANCE OF DOUBT, PERSONS OR ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED THE SECURITIES DURING THE CLASS PERIOD AND WHO HAVE ASSIGNED THE SECURITIES TO VITANOVA PARTNERS, LLC ARE NOT EXCLUDED AS CLASS MEMBERS BY VIRTUE OF SUCH ASSIGNMENT:

THE GROWCO OFFERINGS SUBJECT TO THIS SETTLEMENT ARE:

| Name | Type | Approximate Amount Raised | Date Range |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $3,349,151 | December 2014-January 2015 |
| $4 Million Note | Debt | $4,000,000 | March 2015-September 2015 |
| GCP Super Units LLC | Equity | $5,297,157 | July 2015-October 2017 |
| $1.5 Million Note | Debt | $100,000 | April 2016 |
| $6 Million Note | Debt | $6,000,000 | March 2016-July 2016 |
| $7 Million Note | Debt | $2,977,000 | January 2016- January 2017 |
| $2 Million Note | Debt | $1,080,000 | February 2017-September 2017 |
| $2 Million Note | Debt | $440,000 | June 2017 |

YOU MUST COMPLETE AND SUBMIT THIS PROOF OF CLAIM AND RELEASE FORM ("CLAIM FORM") IN ORDER TO BE ELIGIBLE FOR ANY SETTLEMENT BENEFITS.

YOU MUST COMPLETE AND SIGN THIS CLAIM FORM AND MAIL IT BY FIRST CLASS MAIL, POSTMARKED NO LATER THAN ________________________ TO THE CLAIMS ADMINISTRATOR, AT THE FOLLOWING ADDRESS:

*Paulson v. Two Rivers Settlement*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson Street, Suite 205
Media, PA 19063
Fax: (610) 565-7985
Email: info@strategicclaims.net

FAILURE TO SUBMIT YOUR POSTMARKED CLAIM FORM BY _______________ WILL SUBJECT YOUR CLAIM TO REJECTION AND MAY PRECLUDE RECEIPT OF ANY MONEY IN CONNECTION WITH THE SETTLEMENT OF THIS ACTION. DO NOT MAIL OR DELIVER YOUR CLAIM FORM TO THE COURT OR TO ANY OF THE PARTIES OR THEIR COUNSEL AS ANY SUCH CLAIM WILL BE DEEMED NOT TO HAVE BEEN SUBMITTED. SUBMIT YOUR CLAIM FORM ONLY TO THE CLAIMS ADMINISTRATOR.

**CLAIMANT'S STATEMENT**

1. I (we) purchased or otherwise acquired securities of GrowCo in one or more of the Offerings listed above during the Class Period and suffered losses. (Do not submit this Claim Form if you did not purchase GrowCo securities in the Offerings and during the designated Class Period described above).

2. By submitting this Claim Form, I (we) state that I (we) believe in good faith that I am (we are) a Class Member as defined above and in the Notice Of Pendency Of Class Action, Proposed Class Action Determination, Proposed Settlement Of Class Action, Fairness Hearing And Right To Appear (the "Notice"), or am (are) acting for such person(s); that I am (we are) not a Defendant in the Class Action or anyone excluded from the Class, as defined in the Notice; that I (we) have read and understand the Notice; that I (we) believe that I am (we are) entitled to receive a share of the Net Cash Settlement Amount, as defined in the Notice; that I (we) elect to participate in the proposed Settlement described in the Notice; and that I (we) have not filed a request for exclusion. (If you are acting in a representative capacity on behalf of a Class Member [*e.g.*, as an executor, administrator, trustee, or other representative], you must submit evidence of your current authority to act on behalf of that Class Member. Such evidence would include, for example, letters testamentary, letters of administration, or a copy of the trust documents.)

3. I (we) consent to the jurisdiction of the Court with respect to all questions concerning the validity of this Claim Form. I (we) understand and agree that my (our) claim may be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to my (our) status as a Class Member(s) and the validity and amount of my (our) claim. No discovery shall be allowed on the merits of the Litigation or Settlement in connection with processing of the Claim Form.

4. I (we) have set forth where requested below all relevant information with respect to each purchase or acquisition of GrowCo securities in the Offering(s) during the Class Period. I (we) agree to furnish additional information to the Claims Administrator to support this Claim Form if requested to do so.

5. I (we) have enclosed photocopies of the documents evidencing each purchase or acquisition, or retention of GrowCo securities listed below in support of my (our) claim. (IF ANY SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN A COPY OR EQUIVALENT DOCUMENTS BECAUSE THESE DOCUMENTS ARE NECESSARY TO VERIFY AND PROCESS YOUR CLAIM.)

6. I (we) understand that the information contained in this Claim Form is subject to such verification as the Claims Administrator may request or as the Court may direct, and I (we) agree to cooperate in any such verification. (The information requested herein is designed to provide the minimum amount of information necessary to process most simple claims. The Claims Administrator may request additional information as required to efficiently and reliably calculate your recognized claim. In some cases, the Claims Administrator may condition acceptance of the claim based upon the production of additional information, including.)

7. Upon the occurrence of the Court's approval of the Settlement, as detailed in the Notice, I (we) agree and acknowledge that my (our) signature(s) hereto shall effect and constitute a full and complete release by me (us) and my (our) respective past or present parents, predecessors, successors, current and former affiliates, divisions, business units, joint ventures, subsidiaries, assigns, any entities in which I (we) have or had a controlling interest or that have or had a controlling interest in him, her, or it, and any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or their respective past and present officers, directors, employees, officials, members, partners, and attorneys, ("Releasors"), of all Released Claims as defined as defined in the Settlement Agreement and Notice.

**PART I: CLAIMANT INFORMATION**

| | | | | |
|---|---|---|---|---|
| Beneficial Owner's Name (First, Middle, Last): | | | | |
| | | | | |
| Record Owner's Name (if different from beneficial owner listed above): | | | | |
| Address: | | | | |
| | | | | |
| City: | | | State: | ZIP: |
| Foreign Province: | | | Foreign Country: | |
| Day Phone: | | | Evening Phone: | |
| Email: | | | | |
| Social Security Number (for individuals): | OR | Taxpayer Identification Number (for estates, trusts, corporations, etc.): | | |

Specify one of the following:

____ IRA ____ Joint Tenancy ____ Employee ____ Individual ____ Other ________________________ (please explain)

**PART IIa. SCHEDULE OF TRANSACTIONS IN GROWCO SECURITIES**

**Purchases:**

B. Separately list each and every purchase of GrowCo securities during the period from October 2014 through December 2017, and provide the following information (*must be documented)*:

| Name of Offering | Type of Security Purchased | Investment Amount | Do You Still Hold The Security? (Y or N) | If You Do Not Still Hold The Security, Describe What You Did With It |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Sales:**

C. Separately list each and every sale or disposition of GrowCo securities, and provide the following information (*must be documented):*

| **Name of Offering** | **Type of Security Sold** | **Amount Received** | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**If additional space is needed, attach separate, numbered sheets, giving all required information, substantially in the same format, and print your name and Social Security or Taxpayer Identification number at the top of each sheet.**

**YOU MUST READ AND SIGN THE CERTIFICATION BELOW. FAILURE TO SIGN THE CERTIFICATION MAY RESULT IN A DELAY IN PROCESSING OR REJECTION OF YOUR CLAIM**

## PART III: CERTIFICATION

I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406 (a)(1)(c) of the Internal Revenue Code because: (a) I am (We are) exempt from backup withholding, or (b) I (We) have not been notified by the I.R.S. that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the I.R.S. has notified me (us) that I am (we are) no longer subject to backup withholding.

NOTE: If you have been notified by the I.R.S. that you are subject to backup withholding, please strike out the language that you are not subject to backup withholding in the certification above.

UNDER THE PENALTIES OF PERJURY UNDER THE LAWS OF THE UNITED STATES, I (WE) CERTIFY THAT ALL OF THE INFORMATION I (WE) PROVIDED ON THIS PROOF OF CLAIM AND RELEASE FORM IS TRUE, CORRECT AND COMPLETE.

Signature of Claimant (If this claim is being made on behalf of Joint Claimants, then each must sign):

______________________________________
(Signature)

______________________________________
(Signature)

______________________________________
(Capacity of person(s) signing, e.g., beneficial purchaser(s), executor, administrator, trustee, etc.)

☐ Check here if proof of authority to file is enclosed.
(See Item 2 under Claimant's Statement)

Date: ____________________

**ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME. THANK YOU FOR YOUR PATIENCE.**

Reminder Checklist:

1. Please sign and date the certification above. If this Claim Form is submitted on behalf of joint claimants, then both claimants must sign.
2. Remember to attach supporting documentation, if available.
3. DO NOT send original stock certificates.
4. Keep a copy of everything you submit for your records, including your Claim Form.
5. If you desire an acknowledgment of receipt of your mailed Claim Form, please send it Certified Mail, Return Receipt Requested.
6. If you move after submitting this Claim Form, please notify the Claims Administrator of the change in your address

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

**JOHN PAULSON,**
**Individually and on Behalf of all Others**
**Similarly Situated,**

**Plaintiff**

**v.**

**TWO RIVERS WATER AND**
**FARMING COMPANY, JOHN R.**
**MCKOWEN, WAYNE HARDING and**
**TIMOTHY BEALL,**

**Defendants**

**Civil Action No. 19-cv-02639-PAB-NYW**

## (PROPOSED) FINAL ORDER

WHEREAS, as of October 7, 2020, Plaintiff John Paulson ("Paulson" or "Plaintiff"), on one hand, and Defendants Two Rivers Water and Farming Company ("Two Rivers"), John R. McKowen ("McKowen"), Wayne Harding ("Harding") and Timothy Beall ("Beall), on the other hand, entered into a Settlement Agreement (the "Settlement Agreement")[1], in the above-captioned consolidated Class Action, which is subject to review under Rule 23 of the Federal Rules of Civil Procedure and which, together with the exhibits thereto, sets forth the terms and conditions of the proposed Settlement of the claims alleged in the Class Action on the merits and with prejudice.

WHEREAS, pursuant to the Order (1) Preliminarily Certifying the Class for Settlement Purposes; (2) Granting Preliminary Approval of Settlement; and (3) Approving Class Notice, (ECF No. ___), entered ________ ___, 2020 (the "Preliminary Approval Order"), the Court scheduled a hearing on ___________2020 (the "Fairness Hearing") for the following purposes:

[1] Unless otherwise stated, all capitalized terms used herein have the meanings defined in the Settlement Agreement.

(A) to finally determine whether the Class satisfies the applicable prerequisites for certification under Fed. R. Civ. P. 23(a) and 23(b)(3);

(B) to finally determine whether the Settlement should be approved by the Court as fair, reasonable and adequate and in the best interests of the Class;

(C) to determine whether a Final Order should be entered pursuant to the Settlement Agreement, dismissing the Class Action with prejudice as against the Defendants and effectuating the releases described below;

(D) to determine whether the proposed Plan of Allocation of the Settlement Fund set forth in the Notice is fair and reasonable, and should be approved by the Court;

(E) to consider any application by Class Counsel and Additional Plaintiff's Counsel for an Attorneys' Fees and Expenses Award, and for a Service Award to the Representative Plaintiff for efforts devoted to this Class Action and for reimbursement of his expenses;

(F) to hear and determine any objections to the Settlement or to any request by Class Counsel and Additional Plaintiff's Counsel for an Attorneys' Fees and Expenses Award, and Service Award; and

(G) to rule on such other matters as the Court may deem appropriate.

WHEREAS, the Court ordered that the Class Notice be mailed by first-class mail, postage prepaid, on or before __________ (the "Notice Date"), to all Class Members who can be identified with reasonable effort by the Class Counsel and Claims Administrator.

WHEREAS, the Class Notice advised Class Members of the date, time, place, and purpose of the Fairness Hearing. The Class Notice further advised that any objection to the Settlement was required to be filed with the Court and served on counsel on or before ___________ 2020.

WHEREAS, the Class Notice advised Class Members of the deadline (the "Exclusion Deadline") and procedures for requesting exclusion from the Settlement Class.

WHEREAS, the Court finds that the provisions of the Preliminary Approval Order as to notice were complied with.

WHEREAS, on ________, Plaintiff moved for final approval of the Settlement ("Final Approval"), as directed in the Preliminary Approval Order. The Fairness Hearing was duly held before this Court on ___________, 2020 at which time all interested persons were afforded the opportunity to be heard.

WHEREAS, this Court has duly considered Plaintiff's motion, the affidavits, declarations, and memoranda of law submitted in support thereof, the Settlement Agreement, and all of the submissions and arguments presented with respect to the proposed Settlement.

NOW, THEREFORE, after due deliberation, IT IS ORDERED, ADJUDGED AND DECREED that:

1. This Final Order ("Final Order") incorporates by reference the definitions in the Settlement Agreement and all capitalized terms used in this Final Order that are not otherwise defined herein shall have the same meanings as set forth therein.

2. This Court has jurisdiction over the subject matter of the Class Action and over all parties to the Class Action, including all members of the Class.

3. The Court hereby re-affirms its determinations in the Preliminary Approval Order and finally certifies, for the purposes of the Settlement only, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the following Class:

> All persons or entities that currently hold claims based on the GrowCo securities and purchased or otherwise acquired the securities through Offerings as listed below, during the period of October 2014 through December 2017 (the "Class Period") and suffered Alleged Losses. For avoidance of any doubt, persons or

entities who purchased or otherwise acquired the securities during the Class Period and who have assigned the securities to VitaNova Partners, LLC are not excluded as Class Members by virtue of such assignment.

| **Name** | **Type** | **Approximate Amount Raised** | **Date Range** |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $3,349,151 | December 2014-January 2015 |
| $4 Million Note | Debt | $4,000,000 | March 2015-September 2015 |
| GCP Super Units LLC | Equity | $5,297,157 | July 2015-October 2017 |
| $1.5 Million Note | Debt | $100,000 | April 2016 |
| $6 Million Note | Debt | $6,000,000 | March 2016-July 2016 |
| $7 Million Note | Debt | $2,977,000 | January 2016- January 2017 |
| $2 Million Note | Debt | $1,080,000 | February 2017-September 2017 |
| $2 Million Note | Debt | $440,000 | June 2017 |

4. Excluded from the Class are: (1) the Defendants; (2) the officers and directors of Two Rivers and GrowCo during the Class Period as set forth in Exhibit E to the Settlement Agreement for securities purchased at the time or after they were officers and directors; (3) any Judge or judicial officer who may hear any aspect of this Class Action and his or her law clerks; and (4) except as provided in clause (2) of this paragraph above, all persons or entities released in the Settlement. Also excluded from the Settlement Class are the persons and/or entities who request exclusion from the Settlement Class within the time period set by the Court in the Preliminary Approval Order.

5. The following persons or entities have validly requested exclusion from the Settlement Class:

6. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby re-affirms its determinations in the Preliminary Approval Order that: (a) Plaintiff John Paulson is certified as Representative Plaintiff for the Class; and (b) the following attorneys and law firms as Class Counsel: Paul Scarlato and Alan Rosca of Goldman Scarlato & Penny, P.C.; Barton Goplerud and Brian Marty of Schindler, Anderson, Goplerud &

Weese, P.C.; and the following attorney and law firm as "Additional Plaintiff's Counsel": Steve Miller of Steve A. Miller, P.C.

7. The Class Notice provided for and given to the Class: (i) was in compliance with the Preliminary Approval Order; (ii) constituted the best notice practicable under the circumstances; (iii) constituted notice that was reasonably calculated to apprise Class Members of the effect of the Settlement, of the proposed Plan of Allocation, of Class Counsel's request(s) for an Attorneys' Fees and Expenses Award, and a Service Award to the Plaintiff, of Class Members' right to object to the Settlement, the Plan of Allocation, and/or Class Counsel's request(s) for an Attorneys' Fees and Expenses Award and a Service Award, of their right to exclude themselves from the Class, and of their right to appear at the Fairness Hearing; (iv) constituted due, adequate, and sufficient notice to all persons entitled to receive notice of the proposed Settlement; and (v) satisfied the notice requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and all other applicable law and rules.

8. The Court is unaware of any objections to the Settlement submitted pursuant to Rule 23(e)(5) of the Federal Rules of Civil Procedure.

9. In light of the benefits to the Class, the complexity, expense and possible duration of further litigation of the Action, the risks of establishing liability and damages, and the costs of continued litigation, the Court hereby fully and finally approves the Settlement as set forth in the Settlement Agreement in all respects, and finds that the Settlement is, in all respects fair, reasonable and adequate, and in the best interests of Representative Plaintiff and Class Members. This Court further finds that the Settlement set forth in the Settlement Agreement is the result of arm's-length negotiations between experienced counsel representing the interests of the Parties.

The Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

10. Defendant Beall's Unopposed Motion to Set Aside Default filed May 22, 2020 [ECF No. 94] is granted. The Clerk's default entered against Defendant Beall on May 5, 2020 [ECF No. 90] is HEREBY vacated.

11. The Class Action is hereby dismissed in its entirety, with prejudice, and without costs to any party, except as otherwise provided in the Settlement Agreement.

12. Upon the Effective Date, Plaintiff and each and every other Class Member, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, shall be deemed to have fully, finally, and forever waived, released, discharged, and dismissed each and every one of the Released Claims as set forth in paragraph 1, subpart "cc" of the Settlement Agreement, against each and every one of the Releasees, as defined in paragraph 1, subpart "dd" of the Settlement Agreement, and shall forever be BARRED, ENJOINED AND RESTRAINED from commencing, instituting, prosecuting or maintaining any and all such Released Claims against any and all of the Releasees. The term Released Claims does not include any claims for payment of the Class Members' securities, including claims in the event of a GrowCo liquidation.

13. Each Member of the Class is bound by this Order, including, without limitation, the releases of claims as set forth above.

14. This Order and the Settlement Agreement, whether or not consummated, and any discussions, negotiations, proceedings or agreements relating to the Settlement Agreement, the Settlement, and any matters arising in connection with settlement discussions or negotiations, proceedings, or agreements, shall not be offered or received against or to the prejudice of the

Parties, or their respective counsel, for any purpose other than in an action to enforce the terms hereof, and in particular:

(a) do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by them with respect to the truth of any allegation by Plaintiff and the Class, or the validity of any claim that has been or could have been asserted in the Class Action or in any litigation, including but not limited to the Released Claims, or of any liability, damages, negligence, fault or wrongdoing of Defendants;

(b) do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by them, or against or to the prejudice of Plaintiff or any other Class Member as evidence of any infirmity in the claims of Plaintiff or other Class Members;

(c) do not constitute, and shall not be offered or received against or to the prejudice of Defendants, Plaintiff, any other member of the Class, or their respective counsel, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity or wrongdoing, or in any way referred to for any other reason against or to the prejudice of any of the Defendants, Plaintiff, other Members of the Class, or their respective counsel, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Settlement;

(d) do not constitute, and shall not be construed against Defendants, Plaintiff, or any other Class Member, as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

(e) do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Plaintiff or any other Class Member that any of their claims are without merit or infirm or that damages recoverable in the Class Action would not have exceeded the Settlement Amount.

15. The administration of the Settlement, and the decision of all disputed questions of law and fact with respect to the validity of any claim or right of any Class Member to participate in the distribution of the Net Settlement Fund, shall remain under the authority of this Court.

16. In the event that the Settlement does not become effective in accordance with the terms of the Settlement Agreement, then this Order shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement and shall be vacated; and in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

17. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement as circumstances warrant.

18. The Parties are hereby directed to consummate the Settlement Agreement and to perform its terms.

19. A separate order shall be entered regarding Class Counsel's application for an Attorneys' Fees and Expenses Award and Service Award as allowed by the Court. Such order shall in no way disturb or affect this Order and shall be considered separate from this Order.

20. Without affecting the finality of this Order in any way, this Court hereby retains continuing jurisdiction over: (i) implementation of the Settlement Agreement and Settlement; (ii) the allowance, disallowance or adjustment of any Class Member's claim on equitable grounds and any award or distribution of the Net Cash Settlement Amount; (iii) disposition of the Net Cash Settlement Amount; (iv) hearing and determining applications for Attorneys' Fees and Expenses Award; (v) all Parties for the purpose of construing, enforcing and administering the Settlement Agreement, Settlement and this Order; and (vi) other matters related or ancillary to the foregoing. There is no just reason for delay in the entry of this Order and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this ____ day of ___________, 2020

____________________________
Philip A. Brimmer
Chief United States District Judge

# EXHIBIT E

**List of Two Rivers and GrowCo Officers and Directors**
**During the Class Period**

1. Two Rivers represents that its officers and directors during the Class Period were:

a. Gus Blass III
b. Christopher Bragg
c. Gregg Campbell
d. Dennis Channer
e. James Cochran
f. Wayne Harding
g. Michael Harnish
h. John McKowen
i. Samuel Morris
j. John Stroh II
k. Rockey Joe Wells
l. Bradley Walker
m. T. Keith Wiggins

2. John R. McKowen represents that GrowCo, Inc.'s officers and directors during the Class Period were:

a. Timothy Beall (Mr. Beall contends he was not an officer and director of GrowCo., but Mr. Beall is already excluded from the Class because he is a Defendant in the Action)
b. Kirsty Cameron
c. Wayne Harding
d. Chad Kirby
e. Jan McCaffrey
f. John R. McKowen
g. Joseph McKowen
h. Laura McKowen
i. I. Wistar Morris
j. Jeff Ploen
k. Aaron Van Wingerden

# EXHIBIT 44

Stipulation for Injunction and Other Relief (May 5, 2023)

McKowen v. Harrington, et al.
No. 1:25-cv-00708-PAB-NRN (D. Colo.)

DATE FILED: May 5, 2023 9:18 AM
FILING ID: 308569A3D7947
CASE NUMBER: 2021CV33922

| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY COLORADO<br>1437 Bannock Street<br>Denver, CO 80202 | |
| TUNG CHAN, Securities Commissioner for the State of Colorado,<br><br>Plaintiff,<br><br>v.<br><br>TWO RIVERS WATER & FARMING COMPANY, et al.,<br><br>Defendants. | Case No.: 2021CV033922<br><br>Courtroom: 259 |

**STIPULATION FOR INJUNCTION AND OTHER RELIEF**

Plaintiff Tung Chan, the Securities Commissioner for the State of Colorado (hereinafter "Commissioner"), and Respondents Two Rivers Water & Farming Company (hereinafter "Two Rivers") and TR Capital Partners, LLC (hereinafter "TR Capital") (Two Rivers and TR Capital together hereinafter "Respondents") hereby enter into this Stipulation for Consent in this matter as follows:

WHEREAS the Commissioner commenced this action by filing a Complaint for Injunctive and Other Relief on December 10, 2021, seeking injunctive and other relief against Respondents (the "Complaint"); and,

WHEREAS the Court has jurisdiction over Respondents and the subject matter of this action; and

WHEREAS the Commissioner and the Respondents believe that it is in their best interests to enter this Stipulation for Injunction and Other Relief (the "Stipulation") to reduce costs of litigation and promote a fair, just, and equitable resolution of this action;

IT IS THEREFORE STIPULATED AND AGREED by and between the Commissioner and Respondents.

1. Respondents admit the following allegations made by the Commissioner and additional facts:

a. From 2014 through 2019, the following parties sold unregistered, non-exempt securities in Colorado: GrowCo, Inc.; GrowCo Partners 1, LLC; GrowCo Partners 2 LLC; GrowCo Partners Super Units, LLC.; Vitanova Partners, LLC; Vitanova Inc; Vitanova, LLC; Vitanova Colorado, LLC; McGrow, LLC; MCG, LLC; GCO Land, LLC; Waterton Financial, Inc.; Two Rivers Water & Farming Company; TR Capital Partners; John Roderick McKowen; Jan McCaffrey; George McCaffrey; Wayne Harding; Edward J Wallick; Richard G Wiwi; and Kirsty Cameron (the "Defendants").

b. Defendants made material misrepresentations and omissions to investors in the offer and sale of securities.

c. Defendants from 2014 through 2019 raised more than $19,000,000 through several debt and equity offerings of unregistered, non-exempt securities that were offered and sold by unlicensed broker-dealers.

d. The actions of prior management, specifically Wayne Harding and John McKowen, and various other co-conspirators (hereinafter "Prior Management"), caused the Respondents to undertake securities offerings which fraudulently included material misrepresentation of use of proceeds, bank fraud, share price manipulation, misleading financial statements, and conversion of company property.

e. Prior Management hired broker dealers, sales representatives, private placement companies and investor relations firms, who knowingly solicited investors to invest in Two Rivers and GrowCo related entities knowing that they were not compliant with Colorado state marijuana licensing. Prior Management of Two Rivers and GrowCo then knowingly and intentionally diverted those investor funds into various other business entities in a deliberate effort to conceal their actions from law enforcement, bank regulators, and investors by failing to advise that the funds were used for marijuana cultivation and distribution. Additionally, Prior Management failed to disclose that funds were also used for undisclosed personal enrichment.

f. Prior Management fraudulently used Two Rivers' subsidiaries, including, but not limited to, the assets of Orlando Reservoir No. 2

Company, LLC, Two Rivers Farms F-2, Inc., and other properties located throughout Colorado. Over several years, a practice of utilizing fraudulent conveyances and encumbrances which included the aforementioned properties, falsely portrayed providing secured interests to GrowCo related investors. In fact, the elaborate scheme was meant to shift control of the financial benefit of those assets among the Defendants and their co-conspirators.

g. When Greg Harrington became CEO on September 19, 2019, he became cognizant of the severe financial and legal position regarding the Respondents' assets. He slowly started uncovering the actions perpetrated by Prior Management. Prior Management participated in creative fraudulent accounting practices obscured by the creation of a multitude of subsidiaries in order to further lure investors and divert investor funds. Because of the foregoing, there remains only an adversarial relationship between Prior Management and new management based on Prior Management's fraudulent activities, which have had a devasting impact on the Respondents.

h. Prior Management engaged in a complex scheme of shifting assets and liabilities amongst various related entities. Through a pattern of seemingly benign transactions, Prior Management skillfully prepared false financial reports which overvalued assets and disguised liabilities, defrauding Mr. Harrington and various Harrington family-related entities as well as other investors identified in the Commissioner's Complaint.

i. Prior Management and others involved in the distribution of the GrowCo/Two Rivers offerings are currently attempting to continue benefiting from their prior fraudulent activities by making false and misleading claims to the GrowCo/Two Rivers investors.

j. The Commissioner and Respondents acknowledge that new management had no prior knowledge of the fraud perpetrated by the Defendants and other unnamed parties who acted as co-conspirators. New management has worked diligently to unwind the convoluted accounting web and deliberately intricate and complex system of business entity structure specifically created by Prior Management in its scheme to defraud investors.

2. The Commissioner and Respondents agree as follows:

a. Respondents voluntarily consent to entry of an order of injunctive relief whereby it will refrain from participating in any activity which would result in its requirement to be listed on any recognized securities exchange for a period of ten (10) years and shall further be prohibited from making any private offerings within or from the State of Colorado for a period of ten (10) years; in the form attached hereto as Exhibit A and incorporated herein by reference (the "Order").

b. Respondents shall pay $2,000,000.00 from the proceeds of any sale of company property. In the event the payment of $2,000,000.00 is not paid within twenty-four months from the filing of this Stipulation, an 8% interest rate shall accrue from the time of the execution of the Stipulation (the "Repayment Period"). The Commissioner shall provide written notice to Respondents, that shall be sent certified mail, of any default of this Stipulation. Upon receipt of the Commissioner's notice, Respondents shall have 90 days to cure. If Respondent fails to cure the Commissioner has remedies available specified in paragraph 2 (d) of this Stipulation.

c. The parties stipulate that any applicable statute of limitations is tolled during the Repayment Period, including any period allowed to cure Respondents' failure to make required payments and until such time as the Commissioner notifies Respondents that the cure period has expired and the Commissioner intends to pursue the collection remedies set forth in this Stipulation.

d. **Dismissal and Release by Commissioner:** In the event that the Respondents fully perform their obligations set forth in Paragraph 2.b. herein, the Commissioner shall release and acquit, and forever discharge the Respondents from any and all claims, rights, demands, obligations, actions, or causes of action set forth in the Complaint. In the event that the conditions for the foregoing release are not satisfied set out in Paragraph 2.b., the Commissioner may enforce the total amount of the Respondents' liability due under this Stipulation and include an interest of 8% as specified in paragraph 2.b.

3. **Dismissal and Release by Respondents:** Within seven (7) days of any order dismissing Respondents as Defendants, Respondents shall file a motion seeking leave to voluntarily dismiss their cross claims asserted in this matter.

a. Within fourteen (14) days from execution of this Stipulation and its approval by the Court, Two Rivers shall place the Orlando Reservoir No. 2 Company, LLC and Two Rivers Farms F-2, Inc. in Chapter 5 Bankruptcy, or such other Bankruptcy relief that may be applicable, so that the Bankruptcy Court may equitably distribute any sale proceeds to individual investors identified in this action, which is the primary concern of the Commissioner. In part, the purpose of the Bankruptcy is to clear title on the assets that were improperly and fraudulently incumbered by the Defendants and alleged unnamed co-conspirators.

b. As a party who has suffered loss and diligently worked to uncover the fraud perpetrated by Prior Management, Greg Harrington will agree to assist the Commissioner in reviewing the discovery of materials that provide proof of the fraud, both alleged and those not charged, and assist in providing all meeting minutes, emails, accounting records, and other related documents from at least January 2014 through December 2019.

c. This Stipulation is entered into as a compromise in the related matter. Respondents admit the allegations, grounds, or claims of liability asserted by the Commissioner in this Stipulation.

d. The Commissioner and Respondents represent and agree that this Stipulation resolves all claims brought, or which could have been brought, for damages, costs, or injuries whatsoever by or between the Commissioner and Respondents, limited to the direct allegations stated in the Complaint.

e. By agreeing to this Stipulation, Respondents agree not to take any action or to make, or permit to be made, any public statement denying, or directly or indirectly creating the impression that the Stipulation and Order is without factual basis. Respondents shall take all reasonably necessary steps to ensure that all their agents and employees understand and comply with this agreement.

f. Respondents acknowledges that they have had the opportunity to consult with legal counsel prior to executing this Stipulation, and that they have voluntarily executed this Stipulation and understand the legal consequences of the issuance of this Stipulation and accompanying Order, and that no promise, threat, or inducement of

any kind, except as stated herein, has been made to induce them to enter this Stipulation.

g. Respondents acknowledge that failure to comply with this Stipulation or the Order may be punished as contempt.

**BY RESPONDENTS:**

**Two Rivers Water & Farming Company and TR Capital Partners, LLC**

Two Rivers Water & Farming Co. ______, CEO    TR CAPITAL PARTNERS, LLC BY: ______ managing member

Greg Harrington, acting as the Chief Executive Officer of Two Rivers Water & Farming Company and Managing Member of TR Capital Partners, LLC.

**Subscribed to and sworn before me by:**

Gregory Harrington    5/4/2023

(Name)    (Date)

in Maricopa County, State of Arizona,

**NOTARY PUBLIC**

My Commission expires: June 6, 2026

SARAH HATCH
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 629763
Expires June 6, 2026

/s/ ______    5/4/2023

(NAME) Sarah Hatch    (DATE)

Counsel for Respondents,
Two Rivers Water and Farming Company and TR Capital Partners, LLC

______    5/4/2023

(NAME) Andrew Contiguglia    (DATE)

**BY PLAINTIFF:**

Tung Chan, Colorado Securities Commissioner

__________________ ____________ **May 5, 2023**___ (Date)

**Signed as to form:**

**PHIL WEISER**
Attorney General

*/s/ India Kidd-Aaron*

ROBERT W. FINKE, 40756*
First Assistant Attorney General
JENNIFER HUNT, 29964*
Senior Assistant Attorney General
INDIA KIDD-AARON, 48420*
Assistant Attorney General
Business & Licensing Section
Ralph L. Carr Judicial Center
1300 Broadway, 8th Floor
Denver, Colorado 80203
Phone: (720) 508-6401
Email: India.Kidd-Aaron@coag.gov

*Counsel for Tung Chan, Colorado Securities Commissioner*